# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DANIELLE BENSKY and JANE DOE 3, individually and on behalf of all others similarly situated,

$\qquad$ *Plaintiffs*,

v.

DARREN K. INDYKE and RICHARD D. KAHN,

$\qquad$ *Defendants*.

Civil Action No. 24 Civ. 1204 (AS)
[rel. 1:24-cv-02192 (AS)]

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS OR STRIKE</u>

**HUGHES HUBBARD & REED LLP**

Daniel H. Weiner, Esq.
Marc A. Weinstein, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Email: daniel.weiner@hugheshubbard.com
Email: marc.weinstein@hugheshubbard.com
Fax: (212) 299-6874
Fax: (212) 299-6460

*Attorneys for Defendant Darren K. Indyke*

**PATTERSON BELKNAP WEBB & TYLER LLP**

Daniel S. Ruzumna, Esq.
Tara J. Norris, Esq.
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email: druzumna@pbwt.com
Email: tnorris@pbwt.com
Fax: (212) 336-1205
Fax: (212) 366-1297

*Attorneys for Defendant Richard D. Kahn*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND AND STATEMENT OF ALLEGATIONS .......................................3

    A.    Defendants' Alleged Knowledge of and Participation in Epstein's Crimes............3

    B.    Defendants' Establishment of the EVCP and the Release of Claims .....................5

ARGUMENT ........................................................................................................7

I.    The Releases Bar Bensky's and Other Putative Class Members' Claims and Require that the Class Allegations Be Stricken ................................................8

    A.    The Releases Discharge Bensky's and Other Putative Class Members' Claims ...........................................................................................9

        1.    The Releases Unambiguously Cover and Discharge All Claims Alleged in the Complaint ...........................................................9

        2.    The Releases Specifically Discharge Claims Against Defendants ...........11

    B.    The Adult Survivors Act Does Not Create New Claims or Invalidate the Release of Claims Against Defendants .................................................12

    C.    The Class Allegations Should Be Stricken ...........................................13

        1.    Plaintiffs Do Not Plausibly Allege Numerosity or Typicality...................14

        2.    Plaintiffs Do Not Plausibly Allege that Common Issues Predominate, or that Class Treatment Is Superior to Other Forms of Adjudication ...........................................................16

    D.    Plaintiffs Should Not Be Given Leave to Amend.................................................18

II.    The Court Should Also Dismiss Counts I, II, IV, V, VI, and VII for Failure to State a Claim on which Relief Can Be Granted................................................18

    A.    Plaintiffs Cannot State a Claim for Aiding, Abetting, or Facilitating Battery (Count I).................................................................18

    B.    Plaintiffs Cannot State a Claim for Intentional Infliction of Emotional Distress (Count II).................................................................20

    C.    Plaintiffs Fail to Plead a Claim Under 18 U.S.C. § 1595 for Knowingly Benefitting from Participation in a Sex Trafficking Venture (Count IV).............21

D.    Plaintiffs Fail to Plead a Claim for Obstruction of the TVPA in Violation of 18 U.S.C. § 1591(d) (Count V) ........................................................................24

E.    Plaintiffs' Claim for Conspiracy to Violate the TVPA (Count VI) Must Be Dismissed.........................................................................................................25

F.    Plaintiffs Cannot State a Claim Under New York City's Gender-Motivated Violence Prevention Act (Count VII) ...................................................................28

CONCLUSION........................................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Daoud & Partners*,
  No. 09-cv-1237, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013) ...........................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................4, 19

*Borgese v. Baby Brezza Enterprises LLC*,
  No. 20 CIV. 1180 (VM), 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021).......................8, 14, 15

*Bowling v. Johnson & Johnson*,
  17-cv-3982 (AJN), 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) .......................................16

*Breest v. Haggis*,
  115 N.Y.S.3d 322 (N.Y. App. Div. 2019) .....................................................................28, 30

*Butala v. Agashiwala*,
  916 F. Supp. 314 (S.D.N.Y. 1996) .....................................................................................11

*Camacho v. City of New York*,
  No. 19 CIV. 11096 (DLC), 2020 WL 4014902 (S.D.N.Y. July 16, 2020).......................14, 15

*CIBC World Markets Corp. v. TechTrader, Inc.*,
  183 F. Supp. 2d 605 (S.D.N.Y. 2001).....................................................................................9

*Clark v. Abbott Labs.*,
  155 A.D.2d 35 (4th Dep't 1990) ...........................................................................................13

*Davis v. Navient Corp.*,
  No. 17-CV-00992-LJV-JJM, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018) .......................14

*Davito v. AmTrust Bank*,
  743 F. Supp. 2d 114 (E.D.N.Y. 2010) ..................................................................................15

*Deutsch v. Pressler, Felt & Warshaw, LLP*,
  535 F. Supp. 3d 322 (S.D.N.Y. 2021).....................................................................................8

*Doe I v. JPMorgan Chase Bank*,
  22-cv-10019, Dkt. 36 ...........................................................................................8, 19, 20, 27

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023).......................................................................... *passim*

*Doe 3 v. Indyke, et al.*,
    Civil Action No. 24 Civ. 2192 (AS) ............................................................................2

*Doe v. Yeshiva Univ.*,
    No. 22-cv-5405 (PKC), 2023 WL 8236316 (S.D.N.Y. Nov. 28, 2023) ................................21

*Eckhart v. Fox News Network, LLC*,
    No. 20-CV-5593 (RA), 2021 WL 4124616 (S.D.N.Y., Sep. 9, 2021) ..................................28

*Eskridge v. Diocese of Brooklyn*,
    180 N.Y.S. 3d 179 (N.Y. App. Div. 2022) ..............................................................21

*Freeman v. Jacobson*,
    No. 20-CV-10040 (SN), 2021 WL 3604754 (S.D.N.Y. Aug. 13, 2021) ................................18

*Garcia v. Execu|Search Grp., LLC*,
    No. 17CV9401, 2019 WL 689084 (S.D.N.Y. Feb. 19, 2019) .................................................8

*Gilbert v. United States Olympic Committee*,
    423 F. Supp. 3d 1112 (D. Colo. 2019) ......................................................................25

*Gitman v. Pearson Educ., Inc.*,
    No. 14 CIV 8626 GBD, 2015 WL 5122564 (S.D.N.Y. Aug. 31, 2015) .............................14

*Gruninger v. Nationwide Mut. Ins. Co.*,
    905 N.Y.S.2d 391 (N.Y. App. Div. 2010) ................................................................30

*Hartke v. Bonhams & Butterfields Auctioneers Corp.*,
    No. 22 Civ. 3571, 2024 WL 246139 (S.D.N.Y. Jan. 23, 2024)............................................11

*In re Initial Pub. Offering Sec. Litig.*,
    No. 21 MC 92 (SAS), 2008 WL 2050781 (S.D.N.Y. May 13, 2008) ..................................14

*In re Roman Catholic Diocese of Rockville Centre*,
    650 B.R. 58 (Bankr. S.D.N.Y. 2023) ................................................................9, 13

*In re WorldCom, Inc.*,
    296 B.R. 115 (Bankr. S.D.N.Y. 2003) ....................................................................11

*J.M. v. Church of Our Lady of the Annunciation*,
    203 A.D.3d 1280 (3d Dep't 2022) ..........................................................................13

*Jaffe v. Cap. One Bank*,
    No. 09 CIV 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010)...............................14

*Jean-Charles v. Perlitz*,
    937 F. Supp.2d 276 (D. Conn. 2013)......................................................................25

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)............................................................................................26

*Long v. O'Neill*,
    126 A.D.3d 404 (1st Dep't 2015) ...................................................................10

*M.M. v. Church of Our Lady of the Annunciation*,
    203 A.D.3d 1277 (3d Dep't 2022) ..................................................................13

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..............................................................................7

*Martin v. Citibank, N.A.*,
    762 F.2d 212 (2d Cir. 1985)............................................................................21

*Naughtright v. Weiss*,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011).............................................................19

*PFT of Am., Inc. v. Tradewell, Inc.*,
    No. 98 CIV. 64413(RPP), 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999)..............16

*Powell v. Omnicom*,
    497 F.3d 124 (2d Cir. 2007)..............................................................................9

*Pozo v. BlueMercury, Inc.*,
    No. 22-CV-7382 (VEC), 2023 WL 4980217 (S.D.N.Y. Aug. 3, 2023) ................14

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022) .........................................................................27

*Ratha v. Phatthana Seafood Co., Ltd.*,
    Case No. CV 16-4271-JFW, 2023 WL 2762044 (C.D. Cal. Mar. 3, 2023) .....26, 27

*Raymond v. Arcadia Recovery Bureau, LLC*,
    556 F. Supp. 3d 369 (S.D.N.Y. 2021)...............................................................4

*Rivera v. Wyckoff Heights Med. Ctr.*,
    113 A.D.3d 667 (2d Dep't 2014)........................................................................9

*Robert M.D. v. Sterling*,
    11 N.Y.S.3d 756 (N.Y. App. Div. 2015) ..........................................................30

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................................11

*Scollo v. Nunez*,
    847 N.Y.S.2d 899 (N.Y. Sup. Ct. 2007) .........................................................19

*Scollo ex rel. Scollo v. Nunez,*
 No. 22348/04, 2007 WL 2228771 (N.Y. Sup. Ct. Aug. 3, 2007), *aff'd*, 874
 N.Y.S.2d 380 (App. Div. 2009) ..................................................................................20

*Sesto v. Slaine,*
 171 F. Supp. 3d 194 (S.D.N.Y. 2016)........................................................................20

*Shaw v. Hornblower Cruises & Events, LLC,*
 No. 21 CIV. 10408 (VM), 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022) .........................8, 14

*Shea v. Cornell Univ.,*
 596 N.Y.S. 2d 502 (N.Y. App. Div. 1993) .......................................................19, 20

*Smickle v. City of New York,*
 No. 16-CV-3333 (VSB), 2018 WL 1578381 (S.D.N.Y. Mar. 29, 2018)...............................10

*Solis v. 666 Fifth Assoc. LLC,*
 No. 20 Civ. 5105 (AKH), 2021 WL 5998416 (S.D.N.Y. Dec. 20, 2021) .........................8, 12

*Spann v. AOL Time Warner, Inc.,*
 219 F.R.D. 307 (S.D.N.Y. 2003) ...............................................................................16

*St. Louis v. Perlitz,*
 3:13-CV-1132, 2016 WL 1408076 (D. Conn. Apr. 8, 2016)...................................................22

*Steinberg v. Goldstein,*
 279 N.Y.S. 2d 240 (N.Y. App. Div. 1967) ..............................................................19

*Talarico v. Port Auth. of N.Y. & N.J.,*
 367 F. Supp. 3d 161 (S.D.N.Y. 2019)........................................................................14

*Talley v. Wetzel,*
 No. 1:22-CV-01712, 2023 WL 5163289, . (M.D. Pa. July 17, 2023) ....................................18

*Tasini v. New York Times Co., Inc.,*
 184 F. Supp. 2d 350 (S.D.N.Y. 2002)........................................................................11

*United States v. Afyare,*
 632 Fed. App'x 272 (6th Cir. 2016) .........................................................................24

*United States v. Alessi,*
 638 F.2d 466 (2d Cir. 1980)........................................................................................27

*United States v. Beech-Nut Nutrition Corp.,*
 871 F.2d 1181 (2d Cir. 1989)....................................................................................27

*United States v. Evans,*
 476 F.3d 1176 (11th Cir. 2007) ................................................................................24

iv

*United States v. Farah*,
   766 F.3d 599 (6th Cir. 2014) ..................................................................................25

*United States v. Fuertes*,
   805 F.3d 485 (4th Cir. 2015) ..................................................................................30

*Velez v. Sanchez*,
   693 F.3d 308 (2d Cir. 2012)..................................................................17, 26, 27

*Whitehead v. Pine Haven Operating LLC*,
   201 N.Y.S.3d 697 (N.Y. App. Div. 2023) ..............................................................29

*Williams ex rel Williams v. Professional Sec. Bureau Ltd.*,
   803 N.Y.S. 2d 21 ..................................................................................................20

**Statutes**

18 U.S.C. § 1581 *et seq*..................................................................................................21

18 U.S.C. § 1591 ................................................................................................22, 23, 24, 25

18 U.S.C. § 1595 ..........................................................................18, 21, 22, 24, 26, 27

CPLR § 214-j ..................................................................................................................13

Pub. L. 108-193..............................................................................................................21

Pub. L. 110-457..............................................................................................................21

Pub. L. 117-347..............................................................................................................26

N.Y.C. Admin. Code § 10-1103 ..............................................................................28, 30

N.Y.C. Admin. Code § 10-1104 ..............................................................................28, 29

**Other Authorities**

Fed. R. Civ. P. 9 ..............................................................................................................11

Fed. R. Civ. P. 12.......................................................................................1, 7, 11, 8, 14, 15

Fed. R. Civ. P. 23..................................................................1, 7, 8, 14, 15, 16, 17

Fed. R. Civ. P. 45..............................................................................................................16

Defendants Darren K. Indyke and Richard D. Kahn respectfully submit this memorandum of law in support of their Motion to Dismiss or Strike Plaintiffs Danielle Bensky's and Jane Doe 3's Individual and Class Action Complaint (the "Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), and 23(d).  For the following reasons, the Court should (1) dismiss all claims asserted by Bensky, who signed a comprehensive release of claims against Defendants; (2) dismiss or strike the class allegations since Plaintiffs fail to plausibly allege the case is suitable for class treatment; and (3) dismiss Counts I, II, IV, V, VI, and VII for failure to state a cognizable claim.

## PRELIMINARY STATEMENT

In bringing this lawsuit, Bensky seeks a proverbial "second bite at the apple" for herself and virtually every other member of the putative class.  On January 31, 2021, Bensky executed a "General Release" that expressly releases and forever discharges "any and all claims" she has against Defendants as a condition of her receipt of a substantial payment from a victim compensation fund known as the Epstein Victims' Compensation Program (the "EVCP"), which Defendants set up after Jeffrey Epstein's death.[1]  As an alleged victim of Epstein, Bensky voluntarily participated in the EVCP and accepted a sizeable recovery, pursuant to which she affirmatively released Defendants (and other individuals to whom the Estate of Jeffrey Epstein (the "Epstein Estate") owe indemnification obligations) from any claims or causes of action.  Bensky made her decision to accept compensation in exchange for the release with the assistance of qualified counsel—the very same firm and same lawyers that represent her in this litigation.

Bensky is not alone in having released her claims against Defendants: 135 other women

---

[1] The amount of Bensky's EVCP award is covered by a confidentiality provision intended to protect the privacy of those who participated in the EVCP.

participated in and received compensation from the EVCP, and signed releases identical to Bensky's.  Outside of the EVCP, another 52 women threatened or brought claims against the Epstein Estate, resolved their claims, and signed settlement agreements that contain equally broad provisions discharging all claims against Defendants.  In light of these releases, the Court lacks subject matter jurisdiction over Bensky's claims and those of every other putative class member who expressly released her claims.  Because of this and other deficiencies, there is no plausible basis to find that a class of women with unreleased claims against Defendants exists; thus, Bensky's claims and the class claims must be dismissed or stricken.  Plaintiff Jane Doe 3 and her same counsel essentially concede as much, recently bringing claims against Defendants in their capacities as Co-Executors of the Epstein Estate on behalf of herself *but not a putative class*.  *See Doe 3 v. Indyke, et al.*, No. 24 Civ. 2192 (AS), Dkt. 1 (complaint filed Mar. 13, 2024).

Apart from the releases, Plaintiffs' intentional tort, Trafficking Victims Protection Act ("TVPA"), and New York City Gender-Motivated Violence Protection Act ("GMVPA") claims should be dismissed for additional reasons.  Plaintiffs do not allege that Defendants sexually abused them, or even that they ever met either Defendant.  Nonetheless, they seek to hold Defendants liable for Epstein's actions.  But the law does not allow Plaintiffs simply to bring claims against Defendants that they otherwise might have brought against Epstein or the Epstein Estate.  Other than conclusory allegations that must be disregarded, the Complaint does not allege that Defendants intentionally and knowingly participated in Epstein's sex trafficking; that Defendants intended to cause Plaintiffs harm, as required for claims of aiding and abetting battery and infliction of emotional distress; that the pleaded facts are sufficient to sustain federal anti-sex-trafficking claims; or that Defendants committed a gender-motivated violent act required to sustain Plaintiffs' claim under the GMVPA.

## BACKGROUND AND STATEMENT OF ALLEGATIONS

Plaintiffs filed the Complaint on February 16, 2024, seeking recovery for injuries they allegedly suffered at the hands of the now-deceased Jeffrey Epstein.  Bensky alleges that she was pressured to engage in sexual activity with Epstein in 2004 and 2005, Compl. ¶¶ 72–101, and Doe alleges that Epstein forcibly assaulted and raped her over an undefined time period, *id.* at ¶¶ 102–25.  But the Complaint does not allege claims against the Epstein Estate.  Instead, Plaintiffs seek to hold Indyke, formerly a lawyer for Epstein, and Kahn, formerly an accountant for Epstein, responsible for purportedly facilitating Epstein's trafficking and abuse.

### A.    Defendants' Alleged Knowledge of and Participation in Epstein's Crimes

Despite its length, the Complaint is notable more for what it does *not* allege as for what it does.  Plaintiffs accurately allege that Defendants are the Co-Executors of the Epstein Estate. Compl. ¶ 157.  But Plaintiffs do *not* allege that Defendants recruited, coerced, or sexually abused them or any other putative class member; nor do they allege that they ever met or interacted with Defendants.  Plaintiffs allege that Defendants flew on Epstein's plane, but not with Plaintiffs or any of Epstein's victims. *Id.* at ¶ 168.  Plaintiffs allege that Defendants were "frequent visitors to Epstein's various properties" and "had offices in structures where Epstein housed and abused his victims," but not that Defendants witnessed, much less participated in, any abuse or even that they encountered Epstein's victims at those properties or structures.  *Id.* at ¶¶ 167, 208.  Instead of allegations linking Defendants to Epstein's conduct, Plaintiffs claim that Defendants facilitated the abuse by providing legal and bookkeeping services to Epstein.  *See, e.g., id.* at ¶¶ 151, 154.

To bolster their claims, Plaintiffs variously allege that Defendants obtained cash from Epstein's bank accounts for Epstein's personal use (but not that Defendants made cash payments to them or any Epstein's victim), *id.* at ¶¶ 127, 129–32; held signatory authority over various bank accounts and signed off on wire transfers to "women with Eastern European surnames" and "young

women" (though not to Bensky or Doe), *id.* at ¶¶ 145–49; and served as officers of various corporate entities owned by Epstein, including companies that held real estate where abuse occurred, *id.* at ¶¶ 152–55.   According to the Complaint, the only interaction between Defendants and any Epstein victim occurred in connection with purported "sham marriages" between Epstein victims (not Bensky or Doe), which were purportedly intended to prevent one from being deported. *Id.* at ¶ 160.   Plaintiffs allege that Indyke, along with an immigration lawyer, helped prepare a victim for her interview with U.S. immigration officials, and later "tried to talk her out of a divorce" and "threatened that she would lose Epstein's protection." *Id.* at ¶ 161.   Kahn is alleged to have "provided a letter of reference for the immigration proceeding."   *Id.*   The Complaint is devoid of facts suggesting that Defendants knew that the marriage was part of a sex-trafficking operation designed to keep the victims "available to Epstein for his abuse."   *Id.* at ¶ 160.

Leaving aside, as the Court must, Plaintiffs' conclusory allegations that Defendants knew about Epstein's illegal activities,[2] the Complaint pleads only a limited set of facts relating to Defendants' alleged knowledge of Epstein's abuses.   For the most part, Plaintiffs rely on public information about Epstein to suggest that Defendants must have known about his sexual abuse of women:   they note that Epstein was convicted in Florida after a 2006 arrest for sex-related offenses, *id.* at ¶ 175; that news articles in 2006 reported that Epstein was a "serial sexual abuser and

---

[2] This Court is not required to accept as true Plaintiffs' "legal conclusion[s] couched as [] factual allegation[s]" regarding Defendants' purported knowledge.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Raymond v. Arcadia Recovery Bureau, LLC*, 556 F. Supp. 3d 369, 376 (S.D.N.Y. 2021) ("Although '[a] complaint is allowed to contain general allegations as to a defendant's knowledge, because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind,' a complaint *is* 'required to include allegations of the facts or events [the plaintiff] claim[s] give rise to an inference of knowledge.'").   Although Plaintiffs do not plead that Defendants were aware of them specifically, the Complaint is replete with conclusory allegations of knowledge of Epstein's illegal activity that merely track legal requirements and thus are insufficient to meet the federal pleading standards.   *See, e.g.*, Compl. at ¶¶ 8, 10, 62, 93, 135, 154, 165, 167, 170, 174.

4

trafficker" (although the Complaint does not identify any such articles), *id.* at ¶¶ 171, 173; that other reports contained "allegations that Epstein was involved with Eastern European women in particular" and was connected to a modeling agency, *id.* at ¶ 182; and that he was sued publicly for sexual abuse, *id.* at ¶ 177–78.  Plaintiffs also allege that Defendants were aware that Epstein had "sham" corporate entities with "no legitimate business reasons" for their transactions, *id.* at ¶ 169, though the Complaint does not explain how knowledge of a complex corporate structure would put a lawyer or an accountant on notice that a client was operating a sex-trafficking venture.

## B.  Defendants' Establishment of the EVCP and the Release of Claims

On August 8, 2019, Epstein executed his Last Will and Testament, which nominated Defendants as Co-Executors of the Epstein Estate.  *Id.* at ¶ 157.  That same day, Epstein created the 1953 Trust, naming Defendants as Co-Trustees and Co-Administrators. *Id.* at ¶ 158.  Two days later, on August 10, 2019, Epstein was found dead while in federal custody. *Id.* at ¶ 69.  On August 15, 2019, the Co-Executors filed with the Superior Court of the U.S. Virgin Islands a petition for probate and letters testamentary.  *Id.* at ¶ 157–58.  The Virgin Islands Superior Court ordered Epstein's will admitted to probate on September 6, 2019 and formally appointed Defendants as Co-Executors of the Epstein Estate.  *In re Estate of Jeffrey E. Epstein*, Probate No. ST-2019-PB-00080 (U.S.V.I. Sup. Ct.); *see also* Compl. at ¶ 158.

In their capacity as Co-Executors, Defendants faced numerous claims and potential claims against the Estate by women asserting they were trafficked and sexually abused by Epstein.  To address and to resolve the multitude of claims in an efficient and confidential manner, Defendants established the EVCP, which provided an expedited, orderly, and confidential path to voluntary resolution of claims arising out of Epstein's criminal activities.  In total, 136 women (including Bensky) received over $121 million in compensation from the EVCP—including (at Defendants' insistence) women whose claims were barred by applicable statutes of limitation or by previously-

entered releases.  As a condition of recovery, each EVCP participant was required to and did execute a release and discharge of claims (the "EVCP Release") against certain individuals and entities, including Defendants.  Bensky, assisted by her counsel in this action, executed an EVCP Release on January 31, 2021 in exchange for a substantial compensatory award.  *See* Declaration of Daniel S. Ruzumna ("Ruzumna Dec."), Ex. A.[3]

By its terms, the EVCP Release is a "broad release" that discharges any and all claims or causes of action, including without limitation those that arise from or otherwise concern acts of sexual abuse by Epstein.  *See id.* at 2.  The language of the EVCP Release contemplates state revival statutes, noting that "several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse" and recognizing that each EVCP claimant was aware that, by accepting her compensation offer, she was "waiv[ing] and releas[ing] certain individuals and entities from any and all claims or causes of action arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise."  *See id.* at 1.  The EVCP Release specifically applies to Defendants; it "releases and forever discharges" "the Co-Executors of the Estate of Jeffrey E. Epstein" and "the Co-Trustees of The 1953 Trust"—*i.e.*, Defendants.  *See id.* at 1; *see also* Compl. at ¶¶ 157, 158.  It also releases entities "owned or controlled in whole or [in] part by the Epstein Estate … and their respective current and former … officers, directors . . . [and] attorneys," *see* Ruzumna Dec., Ex. A at 1–2—language that applies to Defendants, *see* Compl. at ¶¶ 150–53.  And the EVCP Release releases claims against individuals who were engaged by, employed by, worked for, or provided services to Epstein or his entities, *see* Ruzumna Dec., Ex. A at 2, which includes Defendants, *see also* Compl. at ¶¶ 5, 25–26.

---

[3] All releases executed through the EVCP are identical, with the exception of (1) the name of the claimant, (2) the monetary amount awarded, and (3) any individuals specifically excluded or "carved out" of the release by name.  None of the EVCP Releases carves out Defendants.

A substantial number of women who claimed abuse by Epstein, but who did not participate in the EVCP, did not receive an EVCP compensation award, or rejected their EVCP award, still resolved claims with the Epstein Estate and, in so doing, expressly released any claims against Defendants and others.  In total, 52 women resolved claims against the Estate and entered releases (the "General Releases") equally as broad as the EVCP Release.  *See* Ruzumna Dec., Ex. B.[4]

In total, 188 women resolved claims with the Epstein Estate and entered comprehensive releases of all claims, including the putative class claims, brought in this litigation.  Nonetheless, on February 16, 2024, Plaintiffs filed this action as a putative class action on behalf of "[a]ll women who were sexually abused or trafficked by Jeffrey Epstein between January 1, 1995 and August 10, 2019."  Compl. at ¶ 189, in disregard of the unambiguous terms of Bensky's own release and of all other EVCP Releases and General Releases (collectively, the "Releases").

## ARGUMENT

The Court should dismiss or strike Bensky's claims, all but one of Doe's claims, and the putative class allegations, pursuant to Rule 12(b)(1), (b)(6), (f) and Rule 23(d).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings," such as the Releases, and a plaintiff invoking the jurisdiction of a federal court "has the burden of proving by a preponderance of the evidence that [jurisdiction] exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Even when considering a motion to dismiss under Rule 12(b)(6), as Judge Rakoff recently found in considering nearly identical claims brought against Deutsche Bank, the bar to considering an affirmative defense at that stage is "not absolute."  *See Doe 1 v. Deutsche Bank Aktiengesellschaft*,

---

[4] The General Releases signed by the 52 women who resolved their claims outside the EVCP do not materially differ from the EVCP Release with regard to the release of claims against Defendants.  *See* Ruzumna Dec., Ex. B.

671 F. Supp. 3d 387, 401 (S.D.N.Y. 2023) ("*Doe 1*").  A decision on dispositive affirmative legal defenses "should not be deferred" until later in the case.  *Doe I*, 671 F. Supp. 3d at 401; *see also Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) ("[I]f the Settlement Agreement would dispose of this matter (that is, if it is an agreement entered into in good faith) it makes no sense to deny dismissal simply because it was not referenced in the Complaint.").

Rule 12(f) provides the Court discretion to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter."  *See* Fed. R. Civ. P. 12(f); *see also Garcia v. Execu|Search Grp., LLC*, No. 17CV9401, 2019 WL 689084 (S.D.N.Y. Feb. 19, 2019).  Under Rule 23(d), where a complaint fails plausibly to establish the requirements for maintaining a class action, the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  *See* Fed. R. Civ. P. 23(d)(1)(D); *see also Shaw v. Hornblower Cruises & Events, LLC*, No. 21 CIV. 10408 (VM), 2022 WL 16748584, at *5 (S.D.N.Y. Nov. 7, 2022); *Borgese v. Baby Brezza Enterprises LLC*, No. 20 CIV. 1180 (VM), 2021 WL 634722, at *2-3 (S.D.N.Y. Feb. 18, 2021).

## I.  The Releases Bar Bensky's and Other Putative Class Members' Claims and Require that the Class Allegations Be Stricken

Bensky's and 187 other putative class members' claims are barred by the unambiguous terms of the Releases.  Because they entered binding releases discharging their claims against Defendants, Bensky's and these class members' claims are moot; the Court lacks subject-matter jurisdiction over them.  *See Solis v. 666 Fifth Assoc. LLC*, No. 20 Civ. 5105 (AKH), 2021 WL 5998416, at *3 (S.D.N.Y. Dec. 20, 2021) ("A settlement has the effect of mooting subsequent claims by a third party contemplated in the settlement agreement."); *see also* Wright & Miller, Federal Practice and Procedure § 3533.2 (settlement "removes the necessary element of

adversariness and moots the action").  Courts consider it "appropriate to grant a motion to dismiss based on a binding release agreement where the terms of the agreement are clear and unambiguous, absent some colorable defense to its enforcement."  *In re Roman Catholic Diocese of Rockville Centre*, 650 B.R. 58, 69 (Bankr. S.D.N.Y. 2023).  Under the circumstances, the Court should dismiss Bensky's claims since they are barred by her EVCP Release, and should strike the class allegations because Plaintiffs do not and cannot plausibly allege numerosity, typicality, or that common issues predominate.

### A.     The Releases Discharge Bensky's and Other Putative Class Members' Claims

The Releases—like all contracts—must be interpreted by their plain language.  *Rivera v. Wyckoff Heights Med. Ctr.*, 113 A.D.3d 667, 670 (2d Dep't 2014); *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  Here, the Releases expressly discharge Bensky's and 187 other putative class members' claims and demonstrate that this action is not suitable for class treatment.

#### 1.     The Releases Unambiguously Cover and Discharge All Claims Alleged in the Complaint[5]

The unambiguous language of the Releases "release[] and forever discharge[]" Defendants and other specified individuals and entities (collectively, the "Releasees") from all claims, including the seven alleged in the Complaint, up through the time of each Release (all of which were signed after Epstein's death and, thus, after the purportedly tortious conduct alleged in the Complaint).  *See* Ruzumna Dec., Exs. A, B; see also Compl. at ¶¶ 3, 189.  The Releases apply to

---

[5] If the Court were to find the Releases ambiguous—they are not—the parties' intent as to their release and discharge provisions would control.  *CIBC World Markets Corp. v. TechTrader, Inc.*, 183 F. Supp. 2d 605, 6011 (S.D.N.Y. 2001).  Plaintiffs' counsel would be critical witnesses, as both Mr. Boies and Ms. McCawley were directly involved in negotiating and executing the EVCP Release.  *See* Defendants' Motion for Imposition of Rule 11 Sanctions (filed contemporaneously herewith).  Accordingly, they would be disqualified as counsel in this action.  *See* N.Y. Rules of Pro. Conduct § 3.7(a) ("A lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness of a significant issue of fact.").

"any and all claims, demands, actions, causes of action …, whether sounding in equity, tort, common law, contract, statute, regulation or otherwise and whether [then] existing, hereafter existing or revived in the future …."  (*see* Ruzumna Dec., Ex. A at 2; B at 1), including without limitation "all claims or causes of action that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein"; each woman who signed a Release waived all claims she "ever had, now has [at the time of the Release] or hereafter can, shall or may have."  *Id.*

When interpreting expansive language in a general release, courts routinely conclude that such agreements dispose of all claims existing between the parties at the time of execution.  *See, e.g.*, *Long v. O'Neill*, 126 A.D.3d 404, 407–08 (1st Dep't 2015); *Smickle v. City of New York*, No. 16-CV-3333 (VSB), 2018 WL 1578381, at *3 (S.D.N.Y. Mar. 29, 2018) ("When general language is used in the releasing document, the release is to be construed most strongly against the releasor.") (citation omitted)).  Here, the Releases are replete with descriptions of their broad nature and their intent to fully and finally dispose of all claims by the releasors.  *See* Ruzumna Dec., Ex. A at 2 ("This General Release is a broad release of any and all Claims of Releasor against any and all Releasees, including without limitation any and all causes of action, lawsuits, claims, demands, damages and liability whatsoever…."); Ex. B at 1 (effectively the same); Ex. A at 2 ("This General Release is all-encompassing and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished…."); Ex. B at 1–2 (same); Ex. A at 3 ("[I]t is Releasor's intent hereby to fully, finally and forever settle and release all of the Claims, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed."), Ex. B at 2 (same).

Bensky's claims, which arise from Epstein's alleged abuse prior to her execution of the EVCP Release, are barred.  Compl. at ¶¶ 72–101.  All claims Plaintiffs attempt to bring on behalf

of the 187 other women who signed Releases are also foreclosed.[6]

### 2.    The Releases Specifically Discharge Claims Against Defendants

Not only are the Releases broad in their coverage, but they also discharge Defendants as "Releasees" in several ways.  The Releases expressly discharge (1) the Co-Executors of the Epstein Estate, (2) the Co-Trustees of The 1953 Trust, (3) the officers, directors and attorneys of Epstein-related entities, and (4) Epstein service providers.  With respect to the Releases, Bensky and other putative class members who executed Releases were "represented by legal counsel," "received legal advice prior to entering into" the Releases, and confirmed their understanding that the EVCP and/or General Release was "a full and final compromise … and resolution of any and all Claims" that they had against Defendants.  *See, e.g.*, Ruzumna Dec., Ex. A at 3-4; Ex. B at 2.

First, as the Complaint acknowledges, *see* Compl. at ¶ 157, Defendants are and always have been the Co-Executors of the Epstein Estate.  Accordingly, pursuant to their plain language, the Releases forever discharge claims against Defendants since Defendants are the only "Co-Executors of the Estate of Jeffrey E. Epstein."  *See, e.g.*, Ruzumna Dec., Ex. A at 1, B at 1.[7]

---

[6] The Complaint attempts to undercut the Releases' enforceability by alleging that Defendants "fraudulently and improperly used their control of Epstein's estate to attempt to conceal their participation in the Epstein Enterprise and to protect themselves, including from civil lawsuits." Compl. at ¶ 188.  This generic allegation falls short of the particularity requirement that applies to allegations of fraud under Federal Rule of Civil Procedure 9(b).  A plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  Compliance with Rule 9(b) is required to establish fraudulent inducement or wrongful concealment. *See In re WorldCom, Inc.*, 296 B.R. 115, 124 (Bankr. S.D.N.Y. 2003); *Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996).  Moreover, in response to a Rule 12(b)(1) challenge to subject matter jurisdiction, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002).  Accordingly, Bensky cannot save her claims from dismissal by asserting that Defendants obtained her Release "fraudulently."

[7] The Court may take judicial notice of public records in probate court proceedings in ruling on a motion to dismiss. *Hartke v. Bonhams & Butterfields Auctioneers Corp.*, No. 22 Civ. 3571, 2024 WL 246139, at *3 n.6 (S.D.N.Y. Jan. 23, 2024).

Second, Plaintiffs correctly allege that Defendants are "co-trustees of The 1953 Trust," *see* Compl. at ¶ 158; the Releases expressly release claims against "the Co-Trustees of The 1953 Trust." *See, e.g.*, Ruzumna Dec., Ex. A at 1, B at 1.

Third, according to the Complaint, Defendants were directors and officers of various corporate entities owned or controlled by Epstein, and Indyke acted as an attorney for many of them. *See* Compl. at ¶¶ 152, 153. The Releases discharge claims against "any entities owned or controlled in whole or part by the Epstein Estate … and their respective current and former … officers, directors … [and] attorneys." Ruzumna Dec., Ex. A at 1–2, B at 1.

Finally, Plaintiffs' entire theory of liability in this action is predicated on allegations that Indyke and Kahn served as Epstein's "personal lawyer and accountant, respectively," and that their legal and bookkeeping services facilitated his sexual abuse and trafficking. *Id.* at ¶¶ 5–12, 144–50, 154. But the Releases specifically discharge "any entities or individuals who are or have ever been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, [corporate entities owned or controlled by Epstein] or the Epstein Estate." *See, e.g.*, Ruzumna Dec., Ex A at 2; B at 1. Accordingly, Bensky's claims against Defendants and the claims of all other women who signed Releases are moot and therefore outside of the Court's subject matter jurisdiction.[8] *Solis*, 2021 WL 5998416, at *3.

## B. The Adult Survivors Act Does Not Create New Claims or Invalidate the Release of Claims Against Defendants

The Adult Survivors Act ("ASA"), on which Plaintiffs rely to assert their state claims, does

---

[8] In the recent class action against Deutsche Bank, Judge Rakoff found that the Bank was not covered by general release signed by the plaintiff, relying on the language of that release. *Doe 1*, 671 F. Supp. 3d at 387. But *Doe* plaintiff's release contained a carve-out providing that "[t]he parties *do not believe there is any reasonable interpretation* that this General Release could be construed to release Jes Staley [an employee of JPMorgan Chase], … *or [his] respective entity affiliations*." *Id.* at 401–02 (emphasis in opinion). Based entirely on that language, the Court concluded that the parties had not intended to discharge claims against financial institutions. *Id.*

not alter the scope of the binding Releases.  The ASA created a one-year revival period during which adult survivors of sexual abuse could sue their abusers despite expiration of the applicable statutes of limitations.  *See* CPLR § 214-j.  Revival statutes, however, do not create new rights or causes of action; rather, they remove the statutory time limitation during which a *preexisting* claim may be asserted.  *Clark v. Abbott Labs.*, 155 A.D.2d 35, 41 (4th Dep't 1990) (citing Siegel's N.Y. Practice § 34).  Thus, the ASA did not create any "new" claim for Bensky or any other Epstein victim; it simply allowed them to bring unasserted claims that were procedurally barred.  New York courts have concluded that revival statutes do not void previously-executed releases.  *See, e.g.*, *M.M. v. Church of Our Lady of the Annunciation*, 203 A.D.3d 1277 (3d Dep't 2022); *J.M. v. Church of Our Lady of the Annunciation*, 203 A.D.3d 1280 (3d Dep't 2022).

Here, the ASA has no effect on Bensky or the putative class claims, nor on the binding Releases.  *See M.M.*, 203 A.D.3d at 1278–79; *In re Roman Catholic Diocese*, 650 B.R. at 73.  In her Release, Bensky expressly acknowledged that "several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse," and further that, by accepting her compensatory award, she was "waiv[ing] and release[ing] certain individuals and entities from any and all claims or causes arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise."  Ruzumna Dec., Ex. A at 1.  There is no plausible argument that Bensky did not release and discharge her claims against Defendants.

### C.    The Class Allegations Should Be Stricken

In light of the 188 Releases, the Court should strike Plaintiffs' class allegations.  Under Rules 12(f) and 23(d)(1)(D), "a party may move to strike class allegations in a complaint if 'the complaint demonstrates that a class action cannot be maintained.'"  *Gitman v. Pearson Educ., Inc.*, No. 14 CIV. 8626 GBD, 2015 WL 5122564, at *3 (S.D.N.Y. Aug. 31, 2015); *see also Pozo v. BlueMercury, Inc.*, No. 22-CV-7382 (VEC), 2023 WL 4980217, at *7 (S.D.N.Y. Aug. 3, 2023);

*Shaw v. Hornblower Cruises & Events, LLC*, No. 21 CIV. 10408 (VM), 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022).  While such motions are on occasion deemed premature before a formal certification motion, courts in this Circuit frequently have stricken class allegations where obvious class defects are apparent at an early stage of the proceedings.  *E.g.*, *Borgese v. Baby Brezza Ent. LLC*, No. 20 CIV. 1180 (VM), 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021); *Davis v. Navient Corp.*, No. 17-CV-00992-LJV-JJM, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018), *report and recommendation adopted*, No. 17-CV-0992, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019); *Jaffe v. Cap. One Bank*, No. 09 CIV. 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2008 WL 2050781 (S.D.N.Y. May 13, 2008).

"The plausibility standard applies to such motions [to strike class allegations under Rules 12(f) and 23(d)(1)(D)]."  *Borgese*, 2021 WL 634722, at *3 (citing *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 173 (S.D.N.Y. 2019)).  Here, 188 women have individually resolved their claims against the Epstein Estate and released all claims against Defendants.  Because it is "already clear" that the Complaint cannot plausibly meet the requirements for class certification, the Court should strike the class allegations.  *See Camacho v. City of New York*, No. 19 CIV. 11096 (DLC), 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020).

### 1.    Plaintiffs Do Not Plausibly Allege Numerosity or Typicality

In making their best pitch to plead numerosity as required by Rule 23(a)(1), Plaintiffs claim that "[t]he Class consists of dozens of women," Compl. at ¶ 191, wholly ignoring that 188 putative class members have already released their claims against Defendants.  Over the last five years, these putative class members participated in the EVCP or resolved their claims outside of that program, and forever discharged all claims against Defendants.  Plaintiffs offer no explanation as to how or why the Court should assume that a class of women exists who have not already released their claims against Defendants.  *See Borgese*, 2021 WL 634722, at *6 (striking class claims for

failure to allege plausible entitlement to class relief).

In *Camacho v. City of New York*, six named plaintiffs brought federal and state claims of false arrest and malicious prosecution on behalf of a putative class of individuals who attempted to bring books into the Rikers Island detention facility.  2020 WL 4014902 (W.D.N.Y. July 16, 2020).  The defendants—the City of New York and twelve corrections officers—moved to strike the class allegations pursuant to Rule 12(f).  While recognizing that class allegations are not typically stricken before the filing of a class certification motion, the Court found it appropriate to do so, explaining that "Rule 23(c)(1)(A) requires a court to 'determine by order whether to certify the action as a class action' at 'an early practicable time after a person sues or is sued as a class representative.'"  *Id.* at *3.  Recognizing that numerosity of the putative class was an "obvious issue of concern," the Court struck the class allegations after limited discovery, finding that the plaintiffs could not "meet the numerosity requirement of Rule 23 based on this record."  *Id.* at *3-4; *see also Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 116–17 (E.D.N.Y. 2010) (striking class allegations where members of the proposed class had not exhausted the administrative claims process and thus would not be able to sustain claims as part of a class).

Likewise here, Plaintiffs cannot meet the numerosity requirement of Rule 23, and the Court should strike their class allegations.  Plaintiffs allege that the "exact size of the Class and the identities of the individual Class members" will be ascertained "through records maintained by the Epstein Estate and Defendants."  Compl. at ¶ 191.  But Plaintiffs' allegation is implausible as to a viable class with unreleased claims based on the history of Epstein-related cases: there have been multiple mechanisms to identify Epstein victims and for those victims to bring claims against the Estate (claims that have now been resolved with corresponding Releases discharging Defendants from liability).  Not only was the EVCP heavily publicized and widely used, but the Epstein Estate

and Defendants have also already been subject to extensive discovery *by Plaintiffs' own lawyers* to identify Epstein victims.  In recent class actions by Epstein victims against JPMorgan Chase and Deutsche Bank, Plaintiffs' counsel obtained extensive discovery from the Epstein Estate via Rule 45 subpoenas to, among other things, identify potential class members.  *See* Ruzumna Dec., Exs. C–F.  Any suggestion that additional discovery might identify class members who have not released claims against Defendants is implausible.  Leaving aside impermissible speculation, Plaintiffs cannot plausibly allege that the class is sufficiently numerous to justify a class action without disingenuously counting those women who already released all claims against Defendants. *See PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 CIV. 64413(RPP), 1999 WL 179358, at *1–2 (S.D.N.Y. Mar. 31, 1999) (striking class action allegation where plaintiffs' class allegations were "speculation" and not "formed after an inquiry reasonable under the circumstances").

Moreover, the Releases raise individual issues that will vitiate any class representative's satisfaction of Rule 23(a)(3)'s "typicality" requirement.  "In cases where some putative class members have signed releases that may be applicable to their claims, courts have declined to certify a class on the grounds that an 'attack on the settlements or releases would clearly present individual issues as to the circumstances surrounding the obtaining of the release.'"  *Bowling v. Johnson & Johnson*, 17-cv-3982 (AJN), 2019 WL 1760162, at *6 (S.D.N.Y. Apr. 22, 2019); *see also Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 (S.D.N.Y. 2003) ("The necessity for an individualized inquiry means that, so long as it is appropriate to consider the Releases at all, their existence presents an insurmountable barrier to class-wide adjudication of these claims.").

### 2.    Plaintiffs Do Not Plausibly Allege that Common Issues Predominate, or that Class Treatment Is Superior to Other Forms of Adjudication

Besides lack of numerosity and typicality, Plaintiffs do not plausibly demonstrate other requirements for class certification under Rule 23(b)(3).  *See* Compl. ¶ 189.  For Rule 23(b)(3)

certification, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed .R. Civ. P. 23(b)(3).  They cannot do so here.

As explained below, to prevail on several of their claims against Defendants, Plaintiffs and putative class members would have to show specific conduct directed at them and a gender-based animus towards them. *See infra* 18–20, 28–30.  Such claims are not prone to class treatment, nor are damages resulting from sexual abuse by Epstein.

Plaintiffs claim that a class action would be superior to other forms of adjudication despite that 188 women have individually pursued and received relief for their abuse.  Bensky settled her claims through the EVCP and, just recently, Doe filed individual claims against the Epstein Estate, implicitly recognizing that a class action is not viable because virtually all members of the putative class have already discharged their claims.  Plaintiffs' claim that, "[a]bsent a class action, most of the Class members would find the cost of litigating their claims to be cost-prohibitive and will have no effective remedy," Compl. ¶ 195, is belied by the facts.

Finally, Plaintiffs' proposed class—"[a]ll women who were sexually abused or trafficked by Jeffrey Epstein between January 1, 1995 and August 10, 2019, both dates inclusive," Compl. ¶ 189—is also vastly overbroad.  Counts IV, V, and VI in the Complaint are brought under the TVPA, which did not contain a private right of action until 2003. *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012); accordingly, women in the class who were abused between 1995 and 2003 lack any cognizable TVPA claim.  Nor can women who were abused outside of New York City sustain a claim under the GMVPA (Count VII).  Plaintiffs abused between 1995 and 2005 cannot possibly sustain claims against Defendant Kahn, who did not begin working for Epstein until 2005.

17

Compl. ¶ 204.  And Plaintiffs' claims that they or putative class members were abused or trafficked before 2014 are time-barred by the TVPA's ten-year limitations period.  18 U.S.C. § 1595(c)(1).

### D.  Plaintiffs Should Not Be Given Leave to Amend

Because Bensky has released all claims against Defendants and because of the multiple class defects, the Court should deny as futile any request for leave to amend.  *Talley v. Wetzel*, No. 1:22-CV-01712, 2023 WL 5163289, at *4 n5. (M.D. Pa. July 17, 2023) (amendment is futile where dismissal is for lack of subject matter jurisdiction).

## II.  The Court Should Also Dismiss Counts I, II, IV, V, VI, and VII for Failure to State a Claim on which Relief Can Be Granted

Even apart from Bensky's and other putative class members' Releases, all claims but Count III fail to state a claim on which relief can be granted and should be dismissed.

### A.  Plaintiffs Cannot State a Claim for Aiding, Abetting, or Facilitating Battery (Count I)

Plaintiffs' claim for aiding, abetting, and facilitating battery should be dismissed for failure to establish Defendants' knowledge of, or "substantial assistance" in, any battery.  *Freeman v. Jacobson*, No. 20-CV-10040 (SN), 2021 WL 3604754, at *9 (S.D.N.Y. Aug. 13, 2021). Specifically, the Complaint is devoid of facts that "the acts of [defendants] were specifically and intentionally directed at causing harm to the [Plaintiffs]."  *Doe 1*, 671 F. Supp. 3d at 416.

Under New York law, a plaintiff alleging a claim for aiding or abetting battery must plead "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation."  *Naughtright v. Weiss*, 826 F. Supp. 2d 676, 691 (S.D.N.Y. 2011) (quoting *Scollo v. Nunez*, 847 N.Y.S.2d 899 (N.Y. Sup. Ct. 2007)). The third element ("knowing and substantial assistance in the principal violation") requires a plaintiff to plead that the defendant (1) had "actual knowledge" of the specific act that harmed the

specific plaintiff (not just general knowledge that harm was likely to befall some victim), and (2) that the defendant committed an intentional, overt act "in furtherance of the battery of Plaintiff." *Doe 1*, 671 F. Supp. 3d at 416 (internal quotation marks omitted).

Even accepting all non-conclusory facts pleaded in Complaint as true, *Iqbal*, 556 U.S. at 678, the Complaint falls short of establishing the elements of this intentional tort.  The Complaint does not allege that either Defendant had actual knowledge of either Bensky's or Doe's existence, much less that Defendants knew that Epstein would subject them to sexual abuse.  In the absence of specific allegations to that end, Plaintiffs' claim must be dismissed.  *Doe I*, 671 F. Supp. 3d at 416 (dismissing claim for aiding and abetting battery because the defendant banks' alleged support of Epstein was not "specifically and intentionally directed at causing harm to the Jane Does").  The Complaint implicitly acknowledges that Defendants did not have actual knowledge of Epstein's abuse of Plaintiffs, instead alleging that Defendants "*could* readily foresee" and "*should have* foreseen" Plaintiffs' injuries.  Compl. ¶ 209 (emphasis added).  New York courts have rejected aiding and abetting claims even when presented with evidence that defendants "should have been aware of [the assailant's] crude and vulgar nature, his demeaning and malevolent attitude toward women, and … his history of hostile physical aggression toward women." *Shea v. Cornell Univ.*, 596 N.Y.S. 2d 502, 503 (N.Y. App. Div. 1993).  Where, as here, Plaintiffs invite only "conjecture" that Defendants must have inferred that Epstein was battering Bensky and Doe, their claim fails. *Steinberg v. Goldstein*, 279 N.Y.S. 2d 240, 242 (N.Y. App. Div. 1967).

Nor do Plaintiffs' allegations rise above "mere conjecture . . . to directly link [Defendants] to the [battery] and suggest complicity."  *Shea v. Cornell Univ.*, 596 N.Y.S. 2d 502, 504 (N.Y. App. Div. 1993).  To survive, Plaintiffs' claim must establish that Defendants "'encourag[ed] the wrongdoer' to act." *Scollo ex rel. Scollo v. Nunez*, No. 22348/04, 2007 WL 2228771, at *4 (N.Y.

Sup. Ct. Aug. 3, 2007), *aff'd*, 874 N.Y.S.2d 380 (App. Div. 2009).  But the Complaint does not identify a single act by either Defendant that would have encouraged Epstein to commit acts of battery; rather, it identifies administrative support that Plaintiffs contend facilitated Epstein's payments to victims and evasion of law enforcement.  Compl. ¶ 208.  Such allegations do not "demonstrate that any of these defendants encouraged or directly or indirectly participated in the offensive conduct alleged"—that is, Epstein's sexual battery of either Plaintiff—"or in creating a climate of imminent threat or fear that the offensive action would be effectuated." *Williams ex rel Williams v. Professional Sec. Bureau Ltd.*, 803 N.Y.S. 2d 21 (table), at *4 (N.Y. Civ. Ct. 2005)*. Accordingly, the claim for aiding, abetting, and facilitating battery must be dismissed.

### B.   Plaintiffs Cannot State a Claim for Intentional Infliction of Emotional Distress (Count II)

Under New York law, claims for intentional infliction of emotional distress ("IIED") are "highly disfavored" and "almost never successful." *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016).  "[S]uch claims are 'routinely dismissed on pre-answer motion.'" *Id.*  "Since almost all conduct that amounts to [IIED] also constitutes negligence, IIED claims are routinely dismissed for their redundancy with negligence claims." *Doe 1*, 671 F. Supp. 3d at 415.  Because Plaintiffs here plead a negligence claim against Defendants, Compl. at ¶¶ 223–34, the IIED claim must be dismissed as duplicative. *Doe I*, 671 F. Supp. 3d at 415 (duplicative nature of Epstein victims' negligence claim and IIED claim was "alone [] likely sufficient grounds for dismissal" of their IIED claim).

In addition, Defendants' alleged facilitating conduct is not "extreme" or "outrageous" conduct sufficient to result in liability for an IIED claim. *See Doe v. Yeshiva Univ.*, No. 22-cv-5405 (PKC), 2023 WL 8236316, at *12 (S.D.N.Y. Nov. 28, 2023) (claim that defendants "placed their concern for the reputation of the University over their concern for the rights and needs of"

plaintiff, a rape victim, did not meet "extreme and outrageous" standard). And intentional infliction of emotional distress under New York law requires a plaintiff to prove that the defendant's conduct was "intentionally directed" at that particular plaintiff. *Eskridge v. Diocese of Brooklyn*, 180 N.Y.S. 3d 179, 180 (N.Y. App. Div. 2022). The factual allegations in the Complaint do not support the inference that Defendants "directed their conduct at [Plaintiffs] specifically[.]" *Doe 1*, 671 F. Supp. 3d 387 at 415–16. It is not enough for Plaintiffs to plead that their harm was "a foreseeable consequence of defendants' actions," *id.*; rather, Plaintiffs must plead that Defendants intended to inflict emotional distress on them on an individual basis. *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985). Given the absence of allegations in the Complaint that Defendants were even aware of Bensky or Doe's existence, the IIED claim must be dismissed.

### C. Plaintiffs Fail to Plead a Claim Under 18 U.S.C. § 1595 for Knowingly Benefitting from Participation in a Sex Trafficking Venture (Count IV)

Plaintiffs fail to allege a viable claim against Defendants under 18 U.S.C. § 1595, which creates a civil cause of action for sex trafficking victims for violations of the criminal TVPA, 18 U.S.C. § 1581 *et seq*. In its first iteration, passed in 2003, § 1595(a) allowed claims only against the "perpetrators" of sex trafficking. *See* Pub. L. 108-193 (Dec. 19, 2003). In December 2008, § 1595(a) was amended to allow claims against anyone who "knowingly benefits, financially or by receiving anything of value[,] from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." Pub. L. 110-457 (Dec. 23, 2008). Here, Plaintiffs do not allege that Defendants are the "perpetrators" of sex trafficking; rather, they allege that Defendants "knowingly benefit[ed]" from their "participation" in a "venture which [they] kn[e]w or should have known [] engaged in" sex trafficking. Compl. at ¶ 237.

Neither Bensky, who alleges she was trafficked in 2004 and 2005, *id.* at ¶¶ 72, 83, nor any

other putative class member trafficked before December 2008, has a viable claim against Defendants under § 1595(a) because there was no cause of action against a non-perpetrator before 2008. The 2008 amendments to §1595(a) do not retroactively create liability for conduct occurring before they were enacted. *St. Louis v. Perlitz*, 3:13-CV-1132 (RNC), 2016 WL 1408076, at *3 (D. Conn. Apr. 8, 2016) (secondary liability prong against knowing beneficiaries does not apply retroactively); *Adhikari v. Daoud & Partners*, No. 09-cv-1237, 2013 WL 4511354, at *9 (S.D. Tex. Aug. 23, 2013) ("[F]or conduct from 2003 to 2008, only perpetrators were subject to liability [under § 1595.]"). Additionally, Bensky's and many of putative class members' TVPA claims are time-barred; civil claims under § 1595 are subject to a 10-year statute of limitations, 18 U.S.C. § 1595(c)(1), and Bensky's claims are nearly 20 years old.

But the problems with Count IV go beyond Plaintiffs' attempt to manufacture retroactive liability for Defendants. Plaintiffs also fail to plead that Defendants knew, or should have known, that Epstein was causing any person to engage in commercial sex acts by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a). Accepting the facts pleaded in the Complaint—but not the legal conclusions—as true, Plaintiffs plead that, during Epstein's life, Defendants:

- "[R]epeatedly obtained large stacks of cash for Epstein," Compl. at ¶¶ 127, 131–32, in amounts at banks' limits for third-party withdrawals, *id.* at ¶¶ 129–30;

- Structured withdrawals and managed requests to open new bank accounts in a manner that would avoid requiring Epstein to fill out reporting paperwork or triggering banks to prepare due diligence reports on Epstein, *id.* at ¶¶ 135–41;

- "[D]irected, approved, enabled, and justified" payments to or on behalf of women who were Epstein's victims or recruiters of victims, *id.* at ¶¶ 144–49;

- Held officer or director positions for various Epstein-related entities and managed their accounting and tax reporting, including entities that "put[] victims on the payroll and provid[ed] false reasons for the compensation," *id.* at ¶¶ 152–56;

- Provided legal support (Indyke) and a letter of reference (Kahn) in connection with immigration proceedings arising out of an "arranged marriage" between two Epstein victims to avoid the deportation of one victim, *id.* at ¶ 161, and "facilitated" other "sham

marriages" with "their legal and accounting work," *id.* at ¶ 162.

But even if true, Plaintiffs do not plead non-conclusory allegations that Defendants knew or should have known that they were facilitating acts of force, fraud, or coercion. (The statute imposes a restrictive definition of "coercion," extending only to threats of "serious harm," "physical restraint," or the "abuse or law or the legal process." 18 U.S.C. § 1591(e)(2).)

To bolster their claim of Defendants' purported knowledge, Plaintiffs pepper the Complaint with references to supposedly public information that, they contend, notified Defendants about Epstein's practice of forcing or coercing women into commercial sex acts. *See, e.g., id.* at ¶¶ 59, 138, 170, 171.[9] But without more information about the date of these reports and lawsuits and their actual content (beyond that they were "about [Epstein's] sexual proclivities," *id.* ¶ 59), it is impossible to find that they put Defendants on notice that Epstein was using force, fraud, or coercion to cause women to engage in commercial sex acts.

The only substantive public information described in the Complaint is Epstein's 2006 arrest and subsequent conviction for soliciting a minor for prostitution and felony solicitation of prostitution, *id.* at ¶ 57, and two "publicly filed" lawsuits against Epstein alleging that he engaged in sexual activity with minors, *id.* at ¶¶ 60–61. But these reports make no reference to the alleged pattern of fraud, force, or coercion that is necessarily at the core of *Plaintiffs'* TVPA claims, since they were both adult women when abused by Epstein. To the contrary, the Complaint acknowledges that Epstein entered into a Non-Prosecution Agreement with the Department of

---

[9] The Complaint references "evidence" that "publicly surface[d]" as a result of "civil lawsuits": "message pads," "flight logs," and "black books." Compl. at ¶ 178. But the Complaint does not identify the dates on which this "evidence" purportedly became publicly available, nor does it describe the content of the "evidence" to establish that it should have notified Defendants about Epstein's sexual abuse. The Complaint attempts to tar Defendants by incorporating after-the-fact reporting about Epstein with atmospheric references to items that have captured the popular imagination (the flight logs, for example, or the "black book"), rather than to plead a legally cognizable case against Defendants.

Justice that was made public in 2008. *Id.* at ¶ 180. As far as Defendants would have been aware, Epstein's crimes ended by 2008 and never involved force or coercion.

Stripped of its myriad conclusory allegations that Defendants knew about Epstein's sex trafficking venture and sought to further it, the Complaint shows at most a pattern of transferring Epstein's money to women (some of whom were employed by Epstein-owned companies, *id.* at ¶ 156), and withdrawing cash from Epstein's accounts on Epstein's behalf while seeking to avoid reporting requirements, despite knowing that Epstein had a criminal conviction for solicitation of a minor and had entered a Non-Prosecution Agreement. But this is not sufficient to establish that Defendants should have known that Epstein caused women to engage in commercial sex acts through force, fraud, or coercion, which is the requisite basis for their § 1595 claims. *See United States v. Evans*, 476 F.3d 1176, 1179 n.1 (11th Cir. 2007) (§ 1591(a) "does not criminalize all acts of prostitution"); *United States v. Afyare*, 632 Fed. App'x 272, 278 (6th Cir. 2016). Accordingly, the claim by these Plaintiffs—both adults—should be dismissed.

### D. Plaintiffs Fail to Plead a Claim for Obstruction of the TVPA in Violation of 18 U.S.C. § 1591(d) (Count V)

Plaintiffs' claim for "obstruction of the enforcement" of the TVPA in violation of 18 U.S.C. § 1591(d) must be dismissed. Even taking the allegations in the Complaint as true, Plaintiffs do not plead facts sufficient to establish that Defendants obstructed enforcement of the TVPA.

Section 1591(d) does not outlaw all acts that make it more difficult to uncover sex trafficking enterprises, nor does it criminalize acts taken with the intent of shielding illegal activity from discovery; rather, a violation is established only where the defendant *knows about an effort by the government to enforce the substantive provisions of § 1591*—such as an investigation into, or case against, a sex trafficker—and *intentionally obstructs or attempts to obstruct* that effort. *See, e.g.*, *United States v. Farah*, 766 F.3d 599, 612–13 (6th Cir. 2014); *Jean-Charles v. Perlitz*,

24

937 F. Supp.2d 276, 287–88 (D. Conn. 2013).  This statute is limited to obstruction of *government* enforcement efforts:  "Obstruction of a private investigation does not give rise to liability under Section 1590(b) or 1591(d)."  *Gilbert v. United States Olympic Committee*, 423 F. Supp. 3d 1112, 1142–44 (D. Colo. 2019)).

Plaintiffs' complaint falls short of alleging that Defendants were aware of government efforts to enforce the TVPA against Epstein, much less that they intended to scuttle such efforts. Instead, they allege Defendants made it more challenging for the government to enforce the TVPA by "structur[ing] withdrawals of large amounts of cash," "creat[ing] sham marriages and corporate structures," and "help[ing] Epstein set up the Butterfly Trust[.]"  Compl. at ¶¶ 262, 264–65.

But the Complaint is entirely silent as to Defendants' supposed awareness of or actual interference with governmental efforts to enforce the TVPA.  At most, Plaintiffs allege that Defendants were aware of Epstein's conviction in Florida for engaging in sex with a minor, and of "public allegations" and civil lawsuits and public media reports alleging sexual misconduct and "involve[ment] with Eastern European women in particular."  *Id.* at ¶¶ 175–77, 181–84, 196, 266. But the Complaint does not include allegations that Defendants were aware of a government investigation to enforce the TVPA, whether before the Florida conviction or anytime thereafter. If anything, Epstein's guilty plea and 2008 Non-Prosecution Agreement, *see id.* at ¶¶ 175, 180, indicated that government investigation of Epstein had concluded.  The Complaint does not plausibly allege that Defendants committed the crime of obstructing enforcement of the TVPA; thus, Plaintiffs cannot bring a civil claim arising out of violation of that criminal subsection.

### E.   Plaintiffs' Claim for Conspiracy to Violate the TVPA (Count VI) Must Be Dismissed

Plaintiffs rely on a 2023 amendment to the civil remedy provision of the TVPA, 18 U.S.C. § 1595(a), to assert a claim against Defendants for conspiracy to violate the TVPA.  Pub. L. 117-

347, Title I, § 102 ("Section 1595(a) of title 18, United States Code, is amended by inserting 'or attempts or conspires to benefit,' after "whoever knowingly benefits").  Prior to the 2023 amendment, the TVPA did not provide for a civil claim based on conspiracy to violate the TVPA, where the defendant had not committed a substantive violation of the Act.  Here, the injuries giving rise to Plaintiffs' claims occurred many years—even decades—before the 2023 amendment added a claim for conspiratorial liability.  Accordingly, Plaintiffs cannot bring claims for conspiracy to violate the TVPA unless the 2023 amendment applies retroactively.  It does not.  *See Ratha v. Phatthana Seafood Co., Ltd.*, Case No. CV 16-4271-JFW (ASx), 2023 WL 2762044, at *4–5 (C.D. Cal. Mar. 3, 2023) ("*Ratha II*").

In evaluating whether the 2023 amendment to the TVPA applies retroactively, the Court must begin its analysis with the "well-established presumption against the retroactive application of legislation, including amendments creating a private cause of action." *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012) (holding that 2003 TVPA amendment does not apply retroactively). The Court must "determine whether the new statute would have retroactive effect, *i.e.*, whether it would . . . increase a party's liability for past conduct . . . ." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).  A statute that imposes additional liability for past conduct is presumed to *not* operate retroactively "absent clear congressional intent favoring such a result." *Id.*

The 2023 amendment created a TVPA conspiracy claim, thereby expanding potential liability.  *See* Pub. L. 117-347, Title I, § 102.  The amendment came after a 2022 Ninth Circuit decision limiting the scope of liability under this subsection. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022) ("We therefore hold that the phrase 'knowingly benefits' as used in § 1595(a) does not encompass attempts to benefit.").  Following the 2023 amendment of the TVPA, the district court in *Ratha* found that applying the 2023 amendment retroactively would

impose new liability for pre-2023 conduct and, given the absence of clear Congressional guidance, refused to consider plaintiffs' TVPA claim.  *See Ratha II*, 2023 WL 2762044, at *5 (2023 amendment to the TVPA "cannot be applied retroactively in the absence of a clear statement from Congress, which it lacks").  The same reasoning and result apply here.

Moreover, Plaintiffs fail to plead facts sufficient to support conspiracy liability.  "'The gist of conspiracy is, of course, agreement.'  To be liable, each defendant must have 'entered into a joint enterprise with consciousness of its general nature and extent.'"  *Doe 1*, 671 F. Supp. 3d at 412 (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989) and *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir. 1980)).  Despite Plaintiffs' conclusory allegations that Defendants knew of and endorsed Epstein's sex-trafficking activities, the Complaint does not plausibly allege that Defendants had an "an agreement with Epstein and/or others to further his sex-trafficking operation."  *Doe 1*, 671 F. Supp. 3d at 412 (dismissing TVPA conspiracy claim brought against JPMorgan and Deutsche Bank).  The factual allegations on which Plaintiffs assert their conspiracy claim here are comparable to those found by the Court (Rakoff, J.) to be insufficient as to Epstein's bankers:   Epstein was arrested in Florida in 2006 and subsequently convicted, *compare* Compl. ¶¶ 171–75 *with Doe I*, 22-cv-10018, Dkt. 42 (First Amended Complaint) ("*DB* Compl."), at ¶¶ 187–99 *and Doe I v. JPMorgan Chase Bank*, 22-cv-10019, Dkt. 36 (First Amended Complaint) ("*JPMC* Compl."), at ¶¶ 79–81, 190, 195–98; Epstein faced civil claims alleging sexual abuse, *compare* Compl. ¶¶ 177–78 *with DB* Compl. at ¶¶ 46, 66–73, 197 *and JPMC* Compl. at ¶¶ 82–84, 200, 207–10; Epstein was the subject of news articles, *compare* Compl. ¶¶ 170–73 *with DB* Compl. at ¶¶ 46, 66–73, 197 *and JPMC* Compl. at ¶¶ 51, 81–82, 190; Epstein owned apartments in New York City, *compare* Compl. ¶¶ 166–67 *with JPMC* Compl. at ¶¶ 77–78; and Defendants facilitated money transfers to women, including those with

27

"Eastern European surnames" and facilitated requests for cash, *compare* Compl. ¶¶ 126–34, 144–49 *with DB* Compl. at ¶¶ 212–14, 217, 257 *and JPMC* Compl. at ¶¶ 45, 110, 129, 182, 243, 252–54.  Like the plaintiffs' claims against Deutsche Bank and JPMorgan, the Complaint does not sufficiently plead an agreement by Defendants to participate in a sex trafficking venture.

### F.    Plaintiffs Cannot State a Claim Under New York City's Gender-Motivated Violence Prevention Act (Count VII)

Finally, Plaintiffs cannot state a claim under the GMVPA, N.Y.C. Admin. Code § 10-1104, because the Complaint fails to support their conclusory allegations that Defendants engaged in a "crime of violence" or that their actions were motivated by an animus towards women.

"[T]o state a claim for a violation of the GMVPA, a plaintiff must plead that '(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (5) resulted in injury.'"  *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *25 (S.D.N.Y., Sep. 9, 2021).  The GMVPA provides for a civil cause of action for "injur[y] by an individual who commit[ted] a crime of violence motivated by gender."  *See Breest v. Haggis*, 115 N.Y.S.3d 322, 325 (N.Y. App. Div. 2019).  The statute contains a strict definition of "crime of violence," which encompasses either a misdemeanor or felony against the person or a misdemeanor or felony that "presents a serious risk of physical injury to another."  N.Y.C. Admin. Code § 10-1103.

The GMVPA was amended in January 2022 to extend civil liability to cover not only the direct perpetrators of violence (*e.g.*, Epstein) but also against parties who "direct[], enable[], participate[] in, or conspire[] in" a crime of violence motivated by gender.  *See* N.Y.C. Local L. 21/2022.  But this expansion of liability came years after Plaintiffs' alleged injuries—indeed, years after Epstein died.  Just as with the TVPA's claim for conspiracy liability, this expanded GMVPA

liability does not apply retroactively to Defendants' pre-2022 activities. *See Whitehead v. Pine Haven Operating LLC*, 201 N.Y.S.3d 697, 700 (N.Y. App. Div. 2023) ("Where . . . legislation 'would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' a presumption against retroactivity applies."). Because no clear legislative language affirming that "the Legislature has affirmatively assessed the potential for unfairness created by retroactivity and concluded that it is an acceptable price to pay for the anticipated benefits" appears in the 2022 amendment to § 10-1104, the expanded liability created under the statute does not apply retroactively to Defendants' alleged conduct. *Id.* at 701.

Here, Plaintiffs allege that Defendants committed "a crime of violence" not because of acts they themselves took against women, but instead because they "willingly participated, enabled, and conspired in the Epstein Enterprise—an illegal operation steeped in unlawful animus towards women and engaged in violent sexual acts against Bensky, Jane Doe 3 and the Class." Compl. ¶ 307. As to Defendants' conduct giving rise to liability, Plaintiffs allege that Defendants "knowingly, individually, and personally facilitated a decades-long international sex-trafficking operation." *Id.* In other words, Plaintiffs do not allege that Defendants acted violently; rather, they contend that Defendants are responsible for physically violent acts that others committed. Before January 2022, however, the GMVPA did not impose civil liability on participants, enablers, conspirators, or facilitators—only for those individuals who themselves acted violently.

Defendants' alleged conduct falls short of the "crime of violence" standard. Withdrawing cash, transferring money between accounts, serving as an officer, director, or attorney of a company, and participating in immigration proceedings—even "sham" ones—are not activities that pose a "serious risk of physical injury to another." Plaintiffs contend that *Epstein* committed

crimes of violence against them, but they do not allege that they ever met Defendants, much less that Defendants physically injured them.  Nor do any of the specific legal theories in the Complaint satisfy the definition of a "crime of violence"—or a crime at all.  Plaintiffs' claims for negligence, aiding and abetting battery, and intentional infliction of emotional distress, for example, are not criminal violations.  *Gruninger v. Nationwide Mut. Ins. Co.*, 905 N.Y.S.2d 391, 392 (N.Y. App. Div. 2010) (distinguishing between civil and criminal negligence); *Robert M.D. v. Sterling*, 11 N.Y.S.3d 756, 756 (N.Y. App. Div. 2015) (distinguishing civil battery from criminal offense). Similarly, Plaintiffs' allegations regarding Defendants' violations of the TVPA do not encompass any acts that themselves carry a risk of physical injury.  Federal courts have acknowledged that not all TVPA violations are violent.  *Cf. United States v. Fuertes*, 805 F.3d 485, 497–99 (4th Cir. 2015) ("[S]ex trafficking by force, fraud, or coercion may be committed nonviolently[.]").

Finally, Plaintiffs do not allege that Defendants' actions were perpetrated "because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."  N.Y.C. Admin Code § 10-1103.  To plead that Defendants' actions were done with animus, Plaintiffs must allege facts from which to infer that Defendants themselves acted with gender-based "malice or ill will."  *Breest*, 115 N.Y.S.3d at 330.  But Plaintiffs offer only one explanation for Defendants' alleged conduct—"money and power."  ¶ 9.  Even if this alleged motive were true, simple greed does not satisfy the GMVPA.  Count VII must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to (1) dismiss all claims asserted by Bensky, (2) dismiss Counts I, II, and IV-VII of the Complaint against both Plaintiffs, and (3) dismiss or strike the class allegations.

Dated:          New York, New York
                April 8, 2024

                                        Respectfully submitted,

                                        /s/ Daniel S. Ruzumna
                                        Daniel S. Ruzumna, Esq.
                                        Tara J. Norris, Esq.
                                        Patterson Belknap Webb & Tyler LLP
                                        1133 Avenue of the Americas
                                        New York, New York 10583
                                        Telephone: (212) 336-2034
                                        Facsimile: (212) 336-1205
                                        Email: druzumna@pbwt.com
                                        tnorris@pbwt.com

                                        *Counsel for Richard D. Kahn*

                                        /s/ Daniel H. Weiner
                                        Daniel H. Weiner, Esq.
                                        Marc A. Weinstein, Esq.
                                        Hughes Hubbard & Reed LLP
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Telephone: (212) 837-6874
                                        Facsimile: (212) 299-6874
                                        Email: daniel.weiner@hugheshubbard.com
                                        marc.weinstein@hugheshubbard.com

                                        *Counsel for Darren K. Indyke*