# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE BENSKY and JANE DOE 3, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 1:24-cv-01204 (AS) [rel. 1:24-cv-02192] |
| vs. | Honorable Arun Subramanian, U.S.D.J. |
| DARREN K. INDYKE and RICHARD D. KAHN, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RULE 11 SANCTIONS

**HUGHES HUBBARD & REED LLP**

Daniel H. Weiner, Esq.
Marc A. Weinstein, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Email: daniel.weiner@hugheshubbard.com
Email: marc.weinstein@hugheshubbard.com
Fax: (212) 299-6874
Fax: (212) 299-6460

*Attorneys for Defendant Darren K. Indyke*

**PATTERSON BELKNAP WEBB & TYLER LLP**

Daniel S. Ruzumna, Esq.
Tara J. Norris, Esq.
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email: druzumna@pbwt.com
Email: tnorris@pbwt.com
Fax: (212) 336-1205
Fax: (212) 366-1297

*Attorneys for Defendant Richard D. Kahn*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ........................................................................................2

    A.    THE ESTATE AND THE EPSTEIN VICTIMS' COMPENSATION
         PROGRAM.........................................................................................2

    B.    THE EVCP RELEASE ......................................................................4

    C.    OTHER RELEASES OF THE ESTATE..............................................6

    D.    PRE-SUIT COMMUNICATIONS WITH MR. BOIES AND MS.
         MCCAWLEY ....................................................................................6

ARGUMENT .............................................................................................................7

    I.    MS. BENSKY EXECUTED A BINDING RELEASE THAT
        UNEQUIVOCALLY BARS THE CLAIMS SHE ASSERTS IN THE
        COMPLAINT. ...................................................................................8

    II.    NO FACTUAL OR LEGAL BASIS EXISTS TO SUPPORT
        PLAINTIFFS' COUNSEL'S CONTENTION THAT THE EVCP
        RELEASES ARE VOID......................................................................9

        A.    The Argument that the EVCP Releases Do Not Cover Unknown
           and Future Revived Claims is Frivolous....................................10

           1.    The EVCP Release Expressly Covers Unknown and
               Revived Claims.......................................................... 10

           2.    The EVCP Release Covers Claims under the ASA and
               TVPA. ...................................................................... 11

        B.    The Argument that the Co-Executors Procured the EVCP Release
           by Fraud is Frivolous. ...............................................................13

        C.    The Argument that the Co-Executors Needed to Separately Provide
           Additional Consideration for the EVCP Release is Frivolous..................16

        D.    The Argument that the Co-Executors Exceeded Their Authority is
           Frivolous. ..................................................................................17

    III.    SANCTIONS AGAINST PLAINTIFFS' COUNSEL ARE
        WARRANTED. ...............................................................................18

CONCLUSION............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernard v. Sayegh*,
    961 N.Y.S.2d 444 (App. Div. 2013) ....................................................................................17

*Butala v. Agashiwala*,
    916 F. Supp. 314 (S.D.N.Y. 1996)......................................................................................14

*Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*,
    28 F.3d 259 (2d Cir. 1994)......................................................................................7, 18, 19

*Carroll v. Trump*,
    650 F. Supp. 3d 213 (S.D.N.Y. 2023)................................................................................12

*In re Cheng Ching Wang*,
    981 N.Y.S.2d 439 (App. Div. 2014) ..................................................................................16

*Glodek v. Kadmon Holdings, LLC*,
    No. 156177/2016, 2017 WL 1384210 (N.Y. Sup. Ct. Apr.18, 2017)....................................13

*Holmes v. Allstate Corp.*,
    No. 11 Civ. 1543, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012) ...........................................19

*Holmes v. Allstate Corp.*,
    No. 11 Civ. 1543, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012)
    ...........................................................................................................................7, 9, 11, 19

*Joint Venture Asset Acquisition v. Zellner*,
    808 F. Supp. 289 (S.D.N.Y. 1992)......................................................................................14

*Laugh Factory, Inc. v. Basciano*,
    608 F. Supp. 2d 549 (S.D.N.Y. 2009) ................................................................................17

*Lawrence v. Wilder Richman Sec. Corp.*,
    417 F. App'x. 11 (2d Cir. 2010) ........................................................................................18

*Long v. O'Neill*,
    5 N.Y.S.3d 42 (App. Div. 2015) ........................................................................................13

*M.M. v. Church of Our Lady of the Annunciation*,
    162 N.Y.S.3d 598 (3d Dep't 2022)......................................................................................12

*Morley v. Ciba-Geigy Corp.*,
    66 F.3d 21 (2d Cir. 1995) ....................................................................................................7

*Matter of New Brunswick Theological Seminary v. Van Dyke*,
    125 N.Y.S.3d 153 (2d Dep't 2020)............................................................................13

*Ottley v. Estate of Bell*,
    61 V.I. 480 (2014)..................................................................................................17

*RLI Ins. Co. v. Athan Contracting Corp.*,
    667 F. Supp. 2d 229 (E.D.N.Y. 2009) ....................................................................18

*In re Roman Cath. Diocese of Rockville Ctr.*,
    650 B.R. 58 (Bankr. S.D.N.Y. 2023) ......................................................................12

*Wang v. Enlander*,
    No. 17 Civ. 4932, 2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) ............................13

*In re WorldCom, Inc.*,
    296 B.R. 115 (S.D.N.Y. 2003) ...............................................................................14

**Statutes and Rules**

28 U.S.C. §§ 7101 *et. seq.* (2000)............................................................................13

CPLR 214-g ...............................................................................................................12

CPLR 214-j .................................................................................................................10

Fed. R. Civ. Proc. 11 ............................................................................... *passim*

N.Y. Gen. Oblig. Law § 15-303.................................................................................16

**Others/ Miscellaneous**

Restatement (Third) of Agency § 4.01 Comment b.....................................................18

Defendants Darren K. Indyke and Richard D. Kahn, the Co-Executors of the Estate of Jeffrey Epstein (together, the "Co-Executors"), submit this memorandum of law in support of their motion for sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 11(c).

## PRELIMINARY STATEMENT

In bringing this action, lead Plaintiff Danielle Bensky — advised by her attorneys David Boies and Sigrid McCawley — ignores her own signed agreement executed in return for her receipt ███████████████████ from the Epstein Victims' Compensation Program (the "EVCP" or the "Program"), a widely-praised victims' fund established by the Co-Executors, that expressly releases Messrs. Indyke and Kahn from all liability in any way related to Mr. Epstein's acts of sexual abuse.  Incredibly, Mr. Boies himself negotiated the terms of the release at issue, and privately conceded that the release protects Messrs. Indyke and Kahn.  As incredibly, Mr. Boies' partner Sigrid McCawley advised Ms. Bensky on the terms of her release, and Ms. McCawley herself signed it.

Allowing Ms. Bensky or any of the other 187 members of the purported class who also signed releases to proceed with this lawsuit would violate New York law.  It would also invalidate each of those 188 settlements, and jeopardize all future victims' compensation funds — an innovative mechanism that has brought relief to thousands damaged by the actions of the Catholic Church, sexual abuse of student-athletes at USC, Michigan and Baylor, and other victims of recent mass torts — by invalidating iron-clad agreements to release institutions and individuals in return for massive monetary payouts to well-deserving victims.  Simply invoking the name "Epstein" in this case does not change the law, and cannot excuse Plaintiffs' counsel's effort to end-run well-established legal principles that favor final resolution of claims in return for release from liability.

1

Because the claims asserted by Plaintiffs' counsel in this action — both individually on behalf of Ms. Bensky and on behalf of every other member of the putative class who expressly released the Co-Executors — violate the strictures of FRCP Rule 11, the Court should impose sanctions on Mr. Boies and Ms. McCawley, counsel who signed the Complaint.[1]

## **FACTUAL BACKGROUND**

### A.   THE ESTATE AND THE EPSTEIN VICTIMS' COMPENSATION PROGRAM

On August 10, 2019, Jeffrey Epstein died suddenly in the Manhattan Correctional Center located in New York City.  Mr. Epstein was domiciled in the United States Virgin Islands (the "USVI") on the date of his death, and the USVI Superior Court has jurisdiction over the probate of his estate (the "Estate").  On September 6, 2019, the Honorable Carolyn P. Hermon-Percell of the USVI Superior Court appointed Messrs. Indyke and Kahn as Co-Executors and authorized them to administer the Estate in the proceeding entitled *In re Estate of Jeffrey E. Epstein*, Probate No. ST-2019-PB-80 (V.I. Super. Ct.) (the "Probate Action").

Over the course of their administration of the Estate, and as widely reported in the news media, the Estate, the Co-Executors and various entities owned or controlled by Mr. Epstein prior to his death, as well as purported agents and employees of Mr. Epstein or those entities,

---

1. Prior to commencing this action, Mr. Boies and Ms. McCawley informed the Co-Executors that they intended to file this suit in Ms. Bensky's name only, both individually and as a class representative.  After the Co-Executors presented Mr. Boies and Ms. McCawley with a detailed, ten-page explanation of the multiple reasons that the threatened suit would violate FRCP Rule 11 (*see* Affirmation of Daniel H. Weiner dated March 18, 2024 ("Weiner Aff."), Ex. 10), Plaintiffs' counsel added Jane Doe 3 as a named Plaintiff.  On information and belief, Jane Doe 3 is unique in that she is not one of the multitude of women who participated in the EVCP or previously brought her claims against Mr. Epstein's estate, and thus did not execute a release.  Apparently realizing the multiple infirmities of this action, Jane Doe 3 — again represented by Mr. Boies and Ms. McCawley — recently filed a suit against Mr. Epstein's estate in New York state court alleging individual claims on her behalf.  *See Jane Doe 3 v. Indyke et al.*, Index No. 152161/2024 (N.Y. Sup. Ct., N.Y. Cnty.) (complaint filed March 12, 2024).

were named as defendants in dozens of civil suits filed in New York and elsewhere by individuals alleging damages arising from Mr. Epstein's conduct.  These suits sought hundreds of millions of dollars in damages and contained a litany of allegations going back to the 1990s.

Following Mr. Epstein's death, the Co-Executors immediately worked to establish an independent and voluntary claims resolution program as an alternative to litigation.  That program — which became the EVCP — was in the best interests of both the universe of potential claimants and the Estate because, among other things, it (1) employed a process sensitive to the experiences, concerns and privacy of claimants, treating them with compassion, dignity and respect, (2) helped reduce the time, expense and burden of handling those claims through the courts, which otherwise would have involved years of litigation and appeals and consumed enormous resources, along with inflicting costs attendant to delay and uncertainty on all affected parties, and (3) avoided the potential of disproportionate and inconsistent awards.  (*See* Weiner Aff. Ex. 1.)

The Co-Executors spent months negotiating the details of the Program with multiple counsel for the civil claimants (including Mr. Boies and Ms. McCawley), the Government of the USVI and the Program Administrator.[2]  On February 4, 2020, USVI Judge Hermon-Percell held a lengthy evidentiary hearing — which Mr. Boies and Ms. McCawley attended — and heard from all interested parties regarding the Program, including several claimants' counsel.  None of them objected to the Co-Executors' establishment of the Program or the concept of the EVCP Release, as defined below.  (*See* Weiner Aff. Ex. 2 (Excerpts from Transcript of Probate Action hearing held on Feb. 4, 2020) at 64, 93–94, 113:23–24 (THE COURT: . . . "I think we agreed

---

2.  Kenneth R. Feinberg and his colleagues Camille Biros and Jordana Feldman designed the Program, with Ms. Feldman acting as Program Administrator.

that everybody believes this is a great program . . . .").)  On June 2, 2020, the USVI court
approved establishment of the EVCP.  (Weiner Aff. Ex. 3 (Probate Action Order entered on Jun.
2, 2020) (noting that "all interested parties have finalized and are in support of the protocol for
the [EVCP]").)

Under the terms of the EVCP, the Co-Executors engaged independent, nationally
recognized experts in the field of victim compensation funds, who — with detailed input from
claimants' counsel, including Mr. Boies and Ms. McCawley — developed and implemented a
detailed Program protocol.  Individuals who had suffered sexual abuse by Mr. Epstein could
voluntarily choose to submit their claims to the EVCP and meet with and provide evidence on a
strictly confidential basis to the independent Program Administrator.  The Administrator then
evaluated each claim based on criteria identified in the Program protocol and, if the claim met
those criteria, offered a compensation award to the claimant, differing in amount depending on
the claimant's individual experiences.  The Co-Executors had no control over or input into the
awards offered by the Administrator (who had discretion to award any amount of compensation
with no cap or limitation), and any award was final and binding on the Estate.  If the claimant
wished to accept that award, she was required to sign a general release.  (*See* Weiner Aff. Ex. 4
at 1, 7.)  Alternatively, she was free to decline the amount offered and proceed with litigation.
As a result of the EVCP and the Co-Executors' efforts, 136 victims of Mr. Epstein's actions
received over $121 million in compensation from the Estate.

**B.     THE EVCP RELEASE**

As part of the negotiations among the Co-Executors, counsel for civil claimants, the
Government of the USVI and the EVCP Program Administrator, the parties hammered out the

terms of a general release (the "EVCP Release")[3] that would be required in return for the receipt of any compensation award from the EVCP.  Mr. Boies participated in these negotiations, explicitly agreed to the terms of the EVCP Release, and expressed his understanding that the EVCP Release would protect the Co-Executors and any other "persons who provided services to Epstein."  (Weiner Aff. Exs. 6–9, ¶¶ 4, 10.)  Each claimant who accepted an award from the EVCP signed the EVCP Release.

The EVCP Release expressly released the Co-Executors and, *inter alia*, all current and former employees of, agents of, or anyone else who had ever been engaged by Mr. Epstein, the Estate, or various entities owned or controlled by Mr. Epstein prior to his death, from any and all claims, whether then existing, thereafter existing or revived in the future.  (EVCP Release at 1–2.)  As the Co-Executors' counsel explained to Mr. Boies during negotiations, the EVCP Release allowed the Co-Executors to comply with their fiduciary obligations to the Estate, which obligated them to ensure finality in resolving claims made through the Program.  (Weiner Aff. Ex. 6.)  Without the EVCP Release, the Estate could be dragged back into litigation through third-party impleader claims based on theories of contribution, indemnity, *respondeat superior* or otherwise if a claimant who had already been compensated from the Estate sued, *inter alia*, a former employee or agent of Mr. Epstein or entity owned or controlled by Mr. Epstein prior to his death.[4]  (*Id.*)

---

3.  A copy of the EVCP Release signed by Ms. Bensky is attached to the Weiner Affirmation as Exhibit 5.  Citations to "EVCP Release" hereinafter are to that exhibit.

4.  To allow Program claimants to assert claims against persons who were not employed by Mr. Epstein, the EVCP Release permitted signatories to "carve out" by name specific individuals who could not implead the Estate (*e.g.*, Prince Andrew or Leon Black).  (EVCP Release at 4.)  Several EVCP participants took the opportunity to do so, identifying specific individuals against whom they preserved the right to bring claims.  (Weiner Aff. ¶ 14.)  No one — Ms. Bensky included — sought to carve out the Co-Executors.  (*Id.*)

Ms. Bensky is one of the many claimants who submitted their claims to the EVCP. (EVCP Release at 1.)  The Program Administrator offered her ▮▮▮▮ in compensation.  (*Id*.) Represented by Mr. Boies and Ms. McCawley, Ms. Bensky chose to accept this compensation and — like 135 other women — signed the EVCP Release.  (*Id*. at 5.)  Ms. McCawley also signed the EVCP Release, which contained the exact language that Mr. Boies endorsed during negotiations surrounding formation of the EVCP.  (*Id*. at 5, Weiner Aff. Exs. 6, 9.)

## C.    OTHER RELEASES OF THE ESTATE

Following the conclusion of the EVCP's operations in August 2021, the Estate faced additional claimants alleging wrongdoing by Mr. Epstein; many of these individuals either chose not to participate in the EVCP, declined to accept their Program awards, or had their claims rejected by the EVCP.  The Co-Executors reached settlement agreements with 52 of these claimants.  Each of these settlement agreements releases the Co-Executors from the claims set forth in the Complaint.  (Weiner Aff. ¶ 15.)

## D.    PRE-SUIT COMMUNICATIONS WITH MR. BOIES AND MS. MCCAWLEY

Prior to filing the Complaint, Mr. Boies and Ms. McCawley threatened to bring this class action with Ms. Bensky as class representative and offered various, shifting rationales in an attempt to avoid the binding legal effect of the EVCP Release.  (Weiner Aff. ¶ 16.)  In response, Messrs. Indyke and Kahn's counsel pointed out that the EVCP Release and applicable New York law barred Ms. Bensky's claims.  (Weiner Aff. ¶ 18.)  On January 5, 2024, the Co-Executors' counsel sent a detailed letter to Mr. Boies and Ms. McCawley explaining that, under well-established legal authorities, their proffered attempts to avoid the EVCP Release were unwarranted and frivolous, citing FRCP Rule 11(b)(2).  (Weiner Aff. Ex. 10.)

Notwithstanding these warnings, Mr. Boies and Ms. McCawley filed the Complaint in Ms. Bensky's name.  On March 18, 2024, the Co-Executors' counsel served a copy of this

motion, the Weiner Affirmation and accompanying exhibits on Mr. Boies and Ms. McCawley

pursuant to Rule 11(c).  (Weiner Aff. ¶ 20, Ex. 11.)  Counsel did not withdraw the Complaint.

## <u>ARGUMENT</u>

Under FRCP Rule 11(b), an attorney who "[b]y presenting to the court a pleading, written

motion, or other papers — whether by signing, filing, submitting, or later advocating it,"

> certifies that to the best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances:  (1) it is not being presented
> for any improper purpose, such as to harass, cause unnecessary delay, or needlessly
> increase the cost of litigation; (2) the claims, defenses, and other legal contentions
> *are warranted by existing law or by a nonfrivolous argument for extending,*
> *modifying, or reversing existing law or for establishing new law*; (3) the *factual*
> *contentions have evidentiary support* or, if specifically so identified, will likely
> have evidentiary support after a reasonable opportunity for further investigation or
> discovery . . . .

Fed. R. Civ. Proc. 11(b)(1)–(3) (emphasis added).

"In determining whether a plaintiff has engaged in conduct violating Rule 11's

requirements, courts apply an objective standard of reasonableness and look to see whether the

attorney's conduct was objectively reasonable at the time the pleading was signed."  *Holmes v.*

*Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 627238, at *14 (S.D.N.Y. Jan. 27, 2012) (citing

*Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).  "An argument constitutes a

frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of

reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to

extend, modify or reverse the law as it stands."  *Moreley*, 66 F.3d at 25 (citing *Caisse Nationale*

*de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)).

Here, the EVCP Release negotiated by Mr. Boies and signed by Ms. McCawley and Ms.

Bensky unequivocally bars the individual and class claims that Ms. Bensky alleges in the

Complaint.  Similarly, the EVCP Releases (as well as the releases entered by purported class

members outside of the EVCP process) bar purported class claims asserted by Plaintiff Jane

Doe 3.  The rationales proffered by Mr. Boies and Ms. McCawley in an attempt to avoid the

binding legal effect of the EVCP Release are unsupportable, and no reasonable inquiry could

lead one to believe that the claims, either individually on behalf of Ms. Bensky or on behalf of

the purported class, are warranted by existing law or a nonfrivolous argument for extending,

modifying or reversing existing law or establishing new law.  *See* Fed. R. Civ. Proc. 11(b)(2).

This is the extreme instance where Rule 11 sanctions are appropriate.

## I.     MS. BENSKY EXECUTED A BINDING RELEASE THAT UNEQUIVOCALLY BARS THE CLAIMS SHE ASSERTS IN THE COMPLAINT.

The EVCP Release signed by Ms. Bensky and Ms. McCawley states as follows:

> Claimant, for and on behalf of herself and her heirs, devisees, legatees, distributees, executors, administrators, trustees, personal representatives, successors and assigns (collectively, "Releasor") . . . *hereby releases and forever discharges the Co-Executors of the Estate of Jeffrey E. Epstein (the "Epstein Estate"), the Co-Trustees of The 1953 Trust, the Epstein Estate, any entities owned or controlled in whole or part by the Epstein Estate (the "Epstein Entities") and their respective current and former principals, officers, directors, stockholders, managers, members, partners, limited partners, trustees, beneficiaries, administrators, agents, employees, attorneys, predecessors, successors, assigns and affiliates, and any entities or individuals who are or have even been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, the Epstein Entities or the Epstein Estate (jointly and severally, the "Releasees")*, from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, variances, trespasses, damages and judgments, whether sounding in equity, tort, common law, contract, statute, regulation or otherwise and whether now existing, hereafter existing or revived in the future whatsoever in law, admiralty, equity or otherwise, including without limitation any and all claims or causes of action that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein (the "Claims") which against the Releasees, Releasor ever had, now has or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this General Release.

(EVCP Release at 1–2 (emphasis added).)

The EVCP Release also required Ms. Bensky (advised by Ms. McCawley) to expressly

acknowledge its "all-encompassing" scope, including for any and all unknown claims:

> *This General Release is a broad release of any and all Claims of Releasor against*

*any and all Releasees*, including without limitation any and all causes of action, lawsuits, claims, demands, damages and liability whatsoever, and also including without limitation to the extent of their respective liability for the same, any and all such claims against any and all Releasees for contribution as to any other person or persons who may be determined to have been joint tortfeasors arising out of or in any way related to any and all known and unknown personal injuries, and also including without limitation any derivative claims for loss of consortium, under any federal, state or local law, without limitation. *This General Release is all-encompassing and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished . . . .*

*This General Release extends to released Claims that Releasor does not know or suspect to exist in her favor*, which, if known by Releasor, would have materially affected her decision to enter into this General Release, and Releasor understands and agrees that she is releasing any and all such unknown or unsuspected Claims in Releasees' favor.

(*Id.* at 2 (emphasis added).)  This language unequivocally bars each of the causes of action Mr. Boies and Ms. McCawley set forth in the Complaint as to Ms. Bensky.  (*See also* Co-Executors' Motion to Dismiss the Complaint, filed contemporaneously with this Motion.)

The EVCP Release and the releases contained in direct settlement agreements likewise bar claims from the vast majority of the putative class.  Because all but two claimants who *ever* sought compensation from the Estate either signed the EVCP Release or a settlement agreement with substantively the same language (or had her claim dismissed), none of these claimants are appropriate members of the proposed class.  Instead, the "class" would consist only of Jane Doe 3 and others, if any, who now allege that they suffered abuse by Mr. Epstein, but never before sought to seek relief from the EVCP, in settlement directly with the Estate, or through litigation.  There is no basis to believe that such a putative class exists.

## II.  NO FACTUAL OR LEGAL BASIS EXISTS TO SUPPORT PLAINTIFFS' COUNSEL'S CONTENTION THAT THE EVCP RELEASES ARE VOID.

In pre-suit discussions, Mr. Boies and Ms. McCawley put forward four rationales to avoid the EVCP Release's binding legal effect:

1)  The EVCP Release allegedly does not release the Co-Executors from claims that "did

not exist" at the time Plaintiffs executed that Release due to the expiration of the applicable statute of limitations, but were subsequently revived under New York's Adult Survivors Act (the "ASA," codified as CPLR 214-j).

2) The Co-Executors purportedly procured the EVCP Release by fraud.

3) The EVCP Release supposedly is invalid as to the Co-Executors because they individually "provided no consideration" for it.

4) The Co-Executors ostensibly exceeded their authority in having the EVCP Release cover them.

(Weiner Aff. ¶ 16.)  As the Co-Executors' counsel explained to Mr. Boies and Ms. McCawley pre-suit — including providing them with a ten-page letter setting forth dispositive law (Weiner Aff. Ex. 10) — and as demonstrated below, each of these rationales is frivolous.

> **A.   The Argument that the EVCP Releases Do Not Cover Unknown and Future Revived Claims is Frivolous.**

Plaintiffs' counsel's argument that the EVCP Release does not release the Co-Executors from claims that "did not exist" at the time Ms. Bensky executed that EVCP Release is unwarranted by law or fact, and ignores prior decisions by the Court and New York state courts. The express language of the EVCP Release covers unknown and revived claims such as claims under the ASA.

> 1.   <u>The EVCP Release Expressly Covers Unknown and Revived Claims.</u>

As set forth above, the EVCP Release expressly covers unknown and revived claims. Most prominently, Ms. Bensky (advised by Ms. McCawley) specifically released claims "whether now existing, *hereafter existing or revived in the future* . . . including without limitation any and all claims or causes of action that arise *or may arise* from or which otherwise concern acts of sexual abuse by Mr. Epstein (the 'Claims') which against the Releasees, [Ms. Bensky] *ever had, now has or hereafter can, shall or may have* . . ."  (EVCP Release at 2 (emphasis added).)  Ms. Bensky also expressly acknowledged that the EVCP Release "extends to

released Claims that [Ms. Bensky] does not know or suspect to exist in her favor, which, if known by [Ms. Bensky] would have materially affected her decision to enter into" the EVCP Release.  (*Id*. at 2).

Mr. Boies and Ms. McCawley cannot credibly assert that Ms. Bensky somehow did not realize that this language covered claims later revived by statute.  The EVCP Release expressly notes that "several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse" (EVCP Release at 1), recites Ms. Bensky's awareness that she "waives and releases certain individuals . . . from any and all claims or causes of action arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise" (*id*.), and (as quoted above) goes on to release the Co-Executors from any claims, *et cetera*, including those "hereafter existing or revived in the future."  (*Id*. at 2.)

Likewise, Ms. Bensky (advised by Ms. McCawley) expressly forswore any claims that "may exist" based on "the discovery or existence of any . . . additional or different Claims or facts," acknowledging:

> Releasor acknowledges that she is aware that, after executing this General Release, Releasor or Releasor's attorneys or agents may discover released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this General Release, but that it is Releasor's intent hereby to fully, finally and forever settle and release all of the Claims, whether known or unknown, suspected or unsuspected, which now exist, *may exist*, or heretofore may have existed. In furtherance of this intent, this General Release shall be, and remain in effect as, a full and complete release of the Claims notwithstanding the discovery or existence of any such additional or different Claims or facts.

(EVCP Release at 3 (emphasis added).)

2.     The EVCP Release Covers Claims under the ASA and TVPA.

New York's Adult Survivors Act temporarily revived expired civil claims of certain sex offenses committed against those age 18 or older when the abuse took place.  Modeled after New

York's Child Victims Act (the "CVA"), CPLR 214-g, the ASA is a revival statute:  its "look-back window" does not create new substantive rights; rather, its purpose during that window is to negate a party's defense that substantive civil claims of sex abuse are time-barred.  *See Carroll v. Trump*, 650 F. Supp. 3d 213, 222 (S.D.N.Y. 2023).

As detailed above, the EVCP Release expressly released claims against the Co-Executors "that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein." (EVCP Release at 1–2.)  The ASA does not trump the EVCP Release.  *In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 58 (Bankr. S.D.N.Y. 2023) is instructive.  In that case, claimants (victims of child sexual abuse) argued that a general release was unenforceable because the CVA revived claims that did not exist at the time of the release.  The court rejected that argument, extensively reviewing New York law in its analysis:

> While the Claimants may be correct about the general objectives of the CVA, they fail to provide any support for the specific notion that the CVA—either explicitly or implicitly—modifies the legal rights of parties that have entered into settlements in the past or sought to enter into settlements post-enactment for revived claims. The CVA simply changed the time bar defenses available to defendants for certain types of sexual abuse claims. *See* N.Y. C.P.L.R. § 214-g . . .

> The Claimants cite to no specific language in the statute itself nor anything in the legislative history that supports the CVA having any effect on releases or settlement agreements. The Claimants also fail to cite caselaw showing that the CVA has been construed to have any effect—let alone a voiding effect—on existing releases or settlement agreements.

> Indeed, the Debtor notes that these specific arguments have been made and rejected by at least one appellate court in New York. *See M.M. v. Church of Our Lady of the Annunciation*, 162 N.Y.S.3d 598, 601 (3d Dep't 2022) ("[T]he fact that the statute of limitations was modified following the [execution of the] release to remove a bar to pursuing those claims does not alter that conclusion, as plaintiff 'may not reopen a voluntary settlement agreement to take advantage of a subsequent change in the law.'") (collecting cases). The Claimants fail to cite any instance where a statute passed by the New York legislature was construed to have any effect on the enforceability of releases or settlement agreements reached earlier in time. Courts in New York recognize that "freedom of contract is itself a strong public policy interest," and that contract terms should only be found unenforceable where that freedom is "overridden by another weighty and countervailing public

policy." *Matter of New Brunswick Theological Seminary v. Van Dyke*, 125 N.Y.S.3d 153, 159 (2d Dep't 2020) (citations omitted).

> The general policy objective that the Claimants have identified does not support the drastic result they seek here:  rendering the agreements reached between the Debtor and survivors before the enactment of the CVA unenforceable. . . . In conclusion, the Claimants have failed to adequately allege that the [ ] releases at issue are unenforceable as against public policy.

*Id*. at 73–74; *see also Glodek v. Kadmon Holdings, LLC*, No. 156177/2016, 2017 WL 1384210, at *4 (N.Y. Sup. Ct. Apr.18, 2017) ("[T]he First Department has held that a motion to dismiss will be granted when the release is so broad in scope so as to dispose of unique and contingent claims, including these that did not exist when the release was executed") (citing *Long v. O'Neill*, 5 N.Y.S.3d 42, 45–46 (App. Div. 2015)).[5]

### B.   The Argument that the Co-Executors Procured the EVCP Release by Fraud is Frivolous.

Under New York law, a plaintiff "must establish five distinct elements of fraud to set aside a release or waiver:  (1) there was a misrepresentation or active wrongful concealment of a material fact; (2) the representation was in fact false and was known to be at the time it was made or the concealment was intentional; (3) the misrepresentation was made for the purpose of inducing plaintiff to rely on it or the concealment was done to mislead the plaintiff; (4) plaintiff did, in fact, rely on the misrepresentation or she would have acted differently had she known of the concealment; and (5) plaintiff was caused injury as a proximate result of the misrepresentation on concealment." *Joint Venture Asset Acquisition v. Zellner*, 808 F. Supp.

---

5.   The ASA also did not revive claims under the federal Victims of Trafficking and Violence Protection Act, 28 U.S.C. §§ 7101 *et. seq.* (2000) (the "TVPA").  Because Ms. Bensky complains of actions that occurred during 2004–05 (Compl. ¶¶ 72, 83), her claims under the TVPA are additionally barred by the TVPA's 10-year limitations period.  18 U.SC. § 1595(a); *see Wang v. Enlander*, No. 17 Civ. 4932, 2018 WL 1276854, at *3–4 (S.D.N.Y. Mar. 6, 2018).

289, 302 (S.D.N.Y. 1992).  Ms. Bensky cannot satisfy *any* of these elements, much less all of them, and her counsel's contention that the Co-Executors somehow procured Ms. Bensky's signature on the EVCP Release by fraud is unsupported by evidence, unwarranted and frivolous.

The only specific basis Mr. Boies and Ms. McCawley provided for their suggestion of fraud was that Mr. Kahn's deposition testimony in *Doe v. JP Morgan Chase Bank, N.A.,* No. 1:22-cv-10019 (S.D.N.Y.) somehow formed the basis for an allegation of "fraudulent inducement" or "fraudulent concealment."  (Weiner Aff. ¶ 17.)  This argument is ludicrous on its face:  as Mr. Kahn was deposed on May 18, 2023 (*id*.), Ms. Bensky could not possibly have relied on his testimony in executing the EVCP Release on January 31, 2021, more than two years earlier.

Similarly, while Plaintiffs assert that the Co-Executors actively concealed an alleged human trafficking conspiracy, those allegations do not void the EVCP Release for fraud.  First, any such conduct would have to be pleaded with particularity, *see In re WorldCom, Inc.*, 296 B.R. 115, 123–24 (S.D.N.Y. 2003); *Butala v. Agashiwala*, 916 F. Supp. 314, 319–20 (S.D.N.Y. 1996), which it is not.  Second, the alleged conduct must have been done "for the purpose of inducing [Ms. Bensky] to rely on it" or "done to mislead" Ms. Bensky into signing the EVCP Release, and Ms. Bensky would have to show that she "rel[ied] on the misrepresentation or she would have acted differently [*i.e.*, not signed the EVCP Release] had she known of the concealment."  *Joint Venture Asset Acquisition*, 808 F. Supp. at 302.  None of the Co-Executors' alleged actions relates in any way to inducing Ms. Bensky into signing the EVCP Release; to the contrary, even if the allegations in the Complaint about the Co-Executors were true — which they are not — they would be exactly the type of actions that the EVCP Release covers.  (*See* EVCP Release at 1–2.)  Third, Mr. Boies concedes that Ms. Bensky had no substantive

conversations with either Mr. Indyke or Mr. Kahn (Weiner Aff. ¶ 17), precluding any possibility that she relies on comments by the Co-Executors to induce her to sign the EVCP Release.

There also can be no nonfrivolous suggestion that Ms. Bensky was fraudulently induced to sign the EVCP Release, because Mr. Boies himself expressly approved that Release.  By email dated March 26, 2020, the Co-Executors' counsel provided both Mr. Boies and Ms. McCawley with the proposed form of the EVCP Release — "the third-party release required by the Estate as part of its establishment of the Program" — negotiated by their co-counsel Bradley Edwards and the USVI Attorney General.  (*See* Weiner Aff. Ex. 6.)  The following afternoon, March 27, 2020, Mr. Boies spoke with the Co-Executors' representatives, who explained the Estate's desire for final resolution of claims against it, and its concomitant need to protect itself from third-party claims for contribution or indemnification.  (Weiner Aff. ¶ 10.)  In response, Mr. Boies agreed that the EVCP could use the EVCP Release in the exact same form the Co-Executors' representatives provided to him on March 26, 2020.  (*Id*.)

One week later, Mr. Boies confirmed that the EVCP Release would remain as the Co-Executors previously proposed to him on March 26, 2020, and would expressly cover "persons who provided services to Epstein,"[6] since the release of service providers would be "taken in account by the Administrator" and thus result in a larger award for EVCP participants:

> I am now in agreement that we should move forward with the claims process without trying to further modify the release.
>
> I am influenced by the desirability of getting the program underway so that our clients can begin getting compensation; by the fact that the release will be limited to persons who provided services to Epstein, with the release signed by individual victims who accept an award having a space to make clear that certain individuals (e.g., Prince Andrew or others to whom our clients were trafficked) are not released;

---

6.  The EVCP Release and other releases discharged claims against the Co-Executors specifically in several ways in addition to releasing claims against them as persons who "provided any services to Mr. Epstein."  (EVCP Release at 1–2.)

and by the fact that the release of Epstein's employees/service providers will be taken into account by the Administrator in setting the amount of the award. And, of course, this is a voluntary process where our clients get to decide whether to be bound after learning the amount of the proposed award.

(Weiner Aff. Ex. 9.)[7]  The language approved by Mr. Boies was the same text of the EVCP

Release that Ms. Bensky subsequently executed (on Ms. McCawley's advice).  (Weiner Aff.

Ex. 5.)

### C.    The Argument that the Co-Executors Needed to Separately Provide Additional Consideration for the EVCP Release is Frivolous.

Ms. Bensky's counsel's third putative basis for voiding the EVCP Release — the novel

proposition that each and every director, officer, executive, employee, agent, representative *et*

*cetera* of a released entity would have to separately and individually supply consideration in

order to be covered by a general release naming them as releasees — finds no support in the law.

Such a requirement would be both bad law and bad policy.

Under New York law, a "written instrument which purports to be a total or partial release

of all claims . . . shall not be invalid because of the absence of consideration."  N.Y. Gen. Oblig.

Law § 15-303.  New York courts have consistently found a release binding even where a

released party did not provide consideration.  *See In re Cheng Ching Wang*, 981 N.Y.S.2d 439,

440–41 (App. Div. 2014) (letter signed by petitioner in which she agreed to "waive any claim of

any kind or nature against [the decedent], [his] family or [his] estate" held binding despite no

consideration provided) (citations omitted); *Bernard v. Sayegh,* 961 N.Y.S.2d 444, 445–46 (App.

Div. 2013) (reversing lower court and dismissing complaint where plaintiff's release states that

---

7.  Mr. Edwards' April 3, 2020 email to Mr. Indyke's counsel, copying Mr. Boies and Ms. McCawley, reinforces this point.  As Mr. Edwards stated, "I think we all are on the same page that Epstein (and the estate standing in his shoes) will be released as will any related entity or individual whose acts may have allowed for his abuse. . . . ")  (Weiner Aff. Ex. 8.)

consideration provided by defendant hospital constituted "complete payment for all damages and injuries" and was intended to release hospital and "whether presently known or unknown, all tortfeasors liable or claimed to be liable jointly with the [hospital]; and, whether presently known or unknown, all other potential or possible tortfeasors liable or claimed to be liable jointly with the [hospital]"); *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 561 (S.D.N.Y. 2009) ("[U]nder New York law, no consideration is required to make a written release binding").

Here, Ms. Bensky received ███████ from the EVCP in consideration for her execution of the EVCP Release.  That consideration is sufficient to render binding her release of the Co-Executors.

### D.     The Argument that the Co-Executors Exceeded Their Authority is Frivolous.

Finally, Ms. Bensky's counsel's argument that the Co-Executors somehow exceeded their authority by approving an EVCP Release that covered them is ridiculous.  Messrs. Indyke and Kahn are the Co-Executors of the Epstein Estate, duly appointed by the USVI Superior Court in the Probate Action.  (Weiner Aff. Ex. 12.)  It is undisputed that, under the supervision of the USVI Superior Court, they are authorized to act on behalf of the Epstein Estate.  V.I.R. Prob. 3; *see Ottley v. Estate of Bell*, 61 V.I. 480, 493 (2014) ("The executor or administrator of an estate acts as an arm of the court . . .") (citations omitted).

It is also undisputed that the USVI Superior Court expressly approved the Co-Executors' establishment of the EVCP.  (Weiner Aff. Ex. 3.)  Following the evidentiary hearing held on February 4, 2020 (which Mr. Boies and Ms. McCawley attended), USVI Judge Hermon-Percell heard from all interested parties on that subject, including multiple claimants' counsel.  (Weiner Aff. ¶ 5, Ex. 2 at 64, 93–94, 113.)  Unsurprisingly in light of the fact that counsel for individuals alleging sexual abuse by Mr. Epstein (again, including Mr. Boies and Ms. McCawley) specifically negotiated the terms of EVCP's protocol with the Co-Executors' counsel and the

EVCP's Administrator, none of claimants' counsel objected to the EVCP or the concept of the EVCP Release.  (*Id*.)

As Mr. Boies acknowledged in April 2020, it is in the Estate's interest to obtain finality in resolving all potential claims against it arising from Mr. Epstein's conduct.  (*See* Weiner Aff. Ex. 9.)  It was precisely for that reason that the Co-Executors insisted that any claimant receiving an award through the EVCP or through an individual settlement execute an all-encompassing release.  Messrs. Indyke and Kahn fall squarely within the protection of those releases.[8]

## III.   SANCTIONS AGAINST PLAINTIFFS' COUNSEL ARE WARRANTED.

Once grounds for sanctions are established, the Court has wide latitude in determining the appropriate penalty.  The objective of Rule 11 sanctions is "not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses."  *Caisse Nationale*, 28 F.3d at 266.  In furtherance of that objective, Rule 11 permits the Court to "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion" and to issue "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. Proc. 11(c)(2), (c)(4); *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x. 11, 15 (2d Cir. 2010) (confirming sanctions award of attorneys' fees against party's attorneys as appropriate and reasonable under the district court's "broad discretion" to award prevailing party reasonable expenses under Rule 11(c)(2)); *see also Caisse Nationale*, 28 F.3d at 266 (same).

Here, Ms. Bensky's counsel violated FRCP Rule 11 by filing the Complaint in her name

---

8.  Even if one were to ignore the obvious benefit to the Estate of including its Co-Executors as releasees, Mr. Boies' suggestion that the Co-Executors exceeded their authority, even if true, would not vitiate the Release.  *See, e.g.*, *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 235–36 (E.D.N.Y. 2009); Restatement (Third) of Agency § 4.01 comment b.

— individually and on behalf of all other women who signed binding releases — despite knowing that it was barred by the EVCP Release and that they had no supportable, nonfrivolous argument for voiding that EVCP Release.  Ms. Bensky's counsel also violated FRCP Rule 11 by filing a Complaint that asserted claims on behalf of a purported class that Mr. Boies and Ms. McCawley *knew* was populated almost entirely by women who had already entered identical or nearly identical releases, and relying on those women's released claims to assert that "[t]he Class consists of dozens of women[.]"  (Compl. at ¶ 191.)  Ms. Bensky's counsel filed the Complaint after having been warned by Co-Executors' counsel repeatedly that Ms. Bensky's claims are barred by releases that Mr. Boies negotiated and that Ms. Bensky, Ms. McCawley and the vast majority of the putative class signed.  Such conduct has been recognized as sanctionable under FRCP Rule 11.  *See, e.g., Holmes v. Allstate Corp.*, 2012 WL 627238, at *16, *21 (in recommending award of attorneys' fees as a sanction against plaintiffs' attorney for a Rule 11 violation, considering that the attorney's decision to adhere to allegations that violated Rule 11 in the face of defendant's "repeated efforts to point" those out "was at least reckless");[9] Fed. R. Civ. Proc. 11, Advisory Comm. Note to 1993 Amends. (recognizing that "[w]hether the improper conduct was willful, or negligent" and "what amount is needed to deter similar activity by other litigants" are proper considerations in determining Rule 11 sanctions).  No justification exists for Mr. Boies and Ms. McCawley's calculated imposition on the Co-Executors of the burden of defending against the frivolous claims in the Complaint or encumbering the docket of this Court.  Nor should Mr. Boies and Ms. McCawley's frivolous attempts to invalidate the EVCP Release be allowed to jeopardize the compensation obtained by the 188 women who

---

9. Recommendation adopted by *Holmes v. Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 626262, at *2 (S.D.N.Y. Feb. 27, 2012).

signed binding releases involving the Estate, or the relief provided to thousands of well-deserving individuals and entities through victims' compensation funds.  Sanctions against Mr. Boies and Ms. McCawley in the form of attorneys' fees and costs are appropriate here.

<u>**CONCLUSION**</u>

For all these reasons, Messrs. Indyke and Kahn respectfully request that the Court grant the Motion and impose appropriate sanctions on Ms. Bensky's counsel.

Dated:  New York, New York
        April 8, 2024

HUGHES HUBBARD & REED LLP
*Attorneys for Defendant Darren K. Indyke*

By: _/s/ Daniel H. Weiner_____
    Daniel H. Weiner
    Marc A. Weinstein
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Email:  daniel.weiner@hugheshubbard.com
Email:  marc.weinstein@hugheshubbard.com

PATTERSON BELKNAP WEBB &
TYLER LLP
*Attorneys for Defendant Richard D. Kahn*

By: _/s/ Daniel S. Ruzumna_____
    Daniel S. Ruzumna
    Tara J. Norris
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email:  druzumna@pbwt.com
Email:  tnorris@pbwt.com