# EXHIBIT 10



**Hughes Hubbard & Reed**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Daniel H. Weiner
Partner
Direct Dial: +1 (212) 837-6874
Direct Fax: +1 (212) 299-6874
daniel.weiner@hugheshubbard.com

January 5, 2024

BY E-MAIL AND CERTIFIED MAIL

David Boies, Esq.
Boies Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

Sigrid McCawley, Esq.
Boies Schiller & Flexner LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301

   Re: Epstein Estate/Danielle Bensky

Dear Mr. Boies and Ms. McCawley:

   We write on behalf of the Co-Executors of the Estate of Jeffrey E. Epstein, Darren Indyke and Richard Kahn, to follow up on our recent conversations regarding potential claims by Danielle Bensky against Messrs. Indyke and Kahn.

   Acting on behalf of Ms. Bensky, you have threatened "to bring a class action under the Adult Survivor[s] Act and TVPA and other related claims on behalf of Epstein victims" against Messrs. Indyke and Kahn for their alleged "involvement with Jeffrey Epstein's sex trafficking ring." (S. McCawley email to Bennet Moskowitz, copying D. Boies, dated November 16, 2023.) Messrs. Indyke and Kahn reject and deny the factual accuracy of your allegations—quite simply, they were not involved in any sex trafficking ring and never did anything to knowingly facilitate such activity. In response to the threatened claims, we pointed out to you that, in consideration for receiving a ▊▊▊ compensatory award from the Epstein Victims' Compensation Program established by the Co-Executors, Ms. Bensky signed a General Release dated January 31, 2021 (the "EVCP Release"; copy attached as Exhibit A) that expressly released Messrs. Indyke and Kahn from all liability with regard to Mr. Epstein's sexual misconduct. You then proffered four rationales for avoiding the binding legal effect of the EVCP Release:

1.   You argued that the EVCP Release does not release the Co-Executors from claims that "did not exist" at the time Ms. Bensky executed that Release, but were subsequently revived under New York's Adult Survivors Act.

2.   You posited that the Co-Executors procured the EVCP Release by fraud.

3.   You asserted that the EVCP Release is invalid as to Messrs. Indyke and Kahn because they "provided no consideration" for it.

4.   You suggested that the Co-Executors exceeded their authority in having the EVCP Release cover them.

As detailed below, none of these purported rationales withstands scrutiny.

1.   **Ms. Bensky Executed A Binding General Release.**

   A.   The Language of the EVCP Release Expressly Covers Unknown and Future Revived Claims.

In the EVCP Release, Ms. Bensky (advised by Ms. McCawley) released the Co-Executors from all claims arising from or concerning her alleged sexual abuse by Mr. Epstein. In so doing, Ms. Bensky expressly released claims "hereafter existing or revived in the future":

> Claimant, for and on behalf of herself and her heirs, devisees, legatees, distributees, executors, administrators, trustees, personal representatives, successors and assigns (collectively, "Releasor") . . . hereby releases and forever discharges the Co-Executors of the Estate of Jeffrey E. Epstein (the "Epstein Estate"), the Co-Trustees of The 1953 Trust, the Epstein Estate, any entities owned or controlled in whole or part by the Epstein Estate (the "Epstein Entities") and their respective current and former principals, officers, directors, stockholders, managers, members, partners, limited partners, trustees, beneficiaries, administrators, agents, employees, attorneys, predecessors, successors, assigns and affiliates, and any entities or individuals who are or have even been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, the Epstein Entities or the Epstein Estate (jointly and severally, the "Releasees"), from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, variances, trespasses, damages and judgments, whether sounding in equity, tort, common law, contract, statute, regulation or otherwise and *whether now existing, hereafter existing or revived in the future* whatsoever in law, admiralty, equity or otherwise, including without limitation any and all claims or causes of action that arise or *may arise* from

or which otherwise concern acts of sexual abuse by Mr. Epstein (the "Claims") which against the Releasees, Releasor ever had, now has or *hereafter can, shall or may have,* for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this General Release.

(EVCP Release at 1-2; emphasis supplied.)

Ms. Bensky (advised by Ms. McCawley) also expressly acknowledged the "all-encompassing" scope of the EVCP Release, including for any and all unknown claims:

This General Release is a *broad release* of any and all Claims of Releasor against any and all Releasees, including without limitation any and all causes of action, lawsuits, claims, demands, damages and liability whatsoever, and also including without limitation to the extent of their respective liability for the same, any and all such claims against any and all Releasees for contribution as to any other person or persons who may be determined to have been joint tortfeasors arising out of or in any way related to any and all known and unknown personal injuries, and also including without limitation any derivative claims for loss of consortium, under any federal, state or local law, without limitation. This General Release is *all-encompassing and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished,* whether said Claims arose in Florida, New Mexico, New York, the United States Virgin Islands, France or any other country, state, territory, possession or jurisdiction, or otherwise.

*This General Release extends to released Claims that Releasor does not know or suspect to exist in her favor,* which, if known by Releasor, would have materially affected her decision to enter into this General Release, and Releasor understands and agrees that she is releasing any and all such unknown or unsuspected Claims in Releasees' favor.

(EVCP Release at 2; emphasis supplied.)

Ms. Bensky cannot credibly assert that she did not release claims subsequently revived by statute. The EVCP Release expressly notes that "several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse" (EVCP Release at 1), recites Ms. Bensky's awareness that she "waives and releases certain individuals . . . from any and all claims or causes of action arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise" (*id.*), and (as quoted above) goes on to expressly release the Co-Executors from any claims, demands, etc., including those "hereafter existing or revived in the future." (EVCP Release at 2.)

Finally, Ms. Bensky (advised by Ms. McCawley) expressly foreswore any claims that "may exist" in the future based on events that occurred up to her execution of the EVCP Release:

> Releaser acknowledges that she is aware that, after executing this General Release, Releasor or Releasor's attorneys or agents may discover released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this General Release, but that it is Releasor's intent hereby to fully, finally and forever settle and release all of the Claims, whether known or unknown, suspected or unsuspected, which now exist, *may exist*, or heretofore may have existed. In furtherance of this intent, this General Release shall be, and remain in effect as, a full and complete release of the Claims notwithstanding the discovery or existence of any such additional or different Claims or facts.

(EVCP Release at 3; emphasis supplied.)

B.    The EVCP Release Covers Ms. Bensky's Threatened Claims Under The ASA and TVPA.

As you know, New York State's Adult Survivors Act (the "ASA"), codified at CPLR §214-j, temporarily revived expired civil claims of certain sex offenses committed against those age 18 or older when the abuse took place. Modeled after New York's Child Victims Act (the "CVA"), CPLR 214-g, the ASA is a revival statute: its "look-back window" does not create new substantive rights; rather, its purpose during that window is to negate a party's defense that substantive civil claims of sex abuse are time-barred. *See Carroll v. Trump*, No. 22-cv-10016 (LAK), 2023 WL 185507 (S.D.N.Y. Jan. 13, 2023).

As detailed above, the EVCP Release expressly releases Messrs. Indyke and Kahn "that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein." (EVCP Release at 1-2.) The ASA does not trump that Release. *In re Roman Catholic Diocese of Rockville Center*, 650 B.R. 58 (Bankr. S.D.N.Y. 2023) is instructive. In that case, claimants (victims of child sexual abuse) argued that a general release was unenforceable because the CVA revived claims that did not exist at the time of the release. The court rejected that argument, extensively reviewing New York law in its analysis:

> While the Claimants may be correct about the general objectives of the CVA, they fail to provide any support for the specific notion that the CVA — either explicitly or implicitly — modifies the legal rights of parties that have entered into settlements in the past or sought to enter into settlements post-enactment for revived claims. The CVA simply changed the time bar defenses available to defendants for certain types of sexual abuse claims. *See* N.Y. C.P.L.R. § 214-g…

The Claimants cite to no specific language in the statute itself nor anything in the legislative history that supports the CVA having any effect on releases or settlement agreements. The Claimants also fail to cite caselaw showing that the CVA has been construed to have any effect—let alone a voiding effect—on existing releases or settlement agreements.

Indeed, the Debtor notes that these specific arguments have been made and rejected by at least one appellate court in New York. *See M.M. v. Church of Our Lady of the Annunciation*, 203 A.D.3d 1277, 162 N.Y.S.3d 598, 601 (3d Dep't 2022) ("[T]he fact that the statute of limitations was modified following the [execution of the] release to remove a bar to pursuing those claims does not alter that conclusion, as plaintiff 'may not reopen a voluntary settlement agreement to take advantage of a subsequent change in the law.'") (collecting cases). The Claimants fail to cite any instance where a statute passed by the New York legislature was construed to have any effect on the enforceability of releases or settlement agreements reached earlier in time. Courts in New York recognize that "freedom of contract is itself a strong public policy interest," and that contract terms should only be found unenforceable where that freedom is "overridden by another weighty and countervailing public policy." *Matter of New Brunswick Theological Seminary v. Van Dyke*, 184 A.D.3d 176, 125 N.Y.S.3d 153, 159 (2d Dep't 2020) (citations omitted).

The general policy objective that the Claimants have identified does not support the drastic result they seek here: rendering the agreements reached between the Debtor and survivors before the enactment of the CVA unenforceable. . . In conclusion, the Claimants have failed to adequately allege that the [ ] releases at issue are unenforceable as against public policy.

650 B.R. at 73-74; *see also Glodek v. Kadmon Holdings, LLC*, 2017 N.Y. Misc. LEXIS 1427, *10 (N.Y.Sup. Ct. N.Y. Cnty., April 18, 2017) ("[T]he First Department has held that a motion to dismiss will be granted when the release is so broad in scope so as to dispose of unique and contingent claims, including those that did not exist when the release was executed.") (citing *Long v. O'Neill*, 126 A.D.2d 404, 407-08, 5 N.Y.S.3d 42 (1st Dep't 2015)).

Finally, the ASA did not revive claims under the federal Victims of Trafficking and Violence Protection Act, 28 U.S.C. §§7101 *et. seq.* (2000) (the "TVPA"). Because Ms. Bensky complains of actions that occurred during the period 2004-2005, any claims by her under the TVPA have since 2015 been time-barred by the TVPA's 10-year limitations

period.   18 U.S.C. §1595(a); *see Hongxia Wang v. Enlander*, 2018 WL 1276854, at *3-4 (S.D.N.Y. 2018).[1]

2.   **No Factual Or Legal Basis Exists To Support Your Supposition That The Co-Executors Procured The EVCP Release By Fraud.**

In our recent discussions, you acknowledged that, to your knowledge, Ms. Bensky had no substantive conversations with either Messrs. Indyke and Kahn, and therefore could not have relied on comments by either of those individuals to induce her to enter into the EVCP Release.  Under New York law, "[a] plaintiff … must establish five distinct elements of fraud to set aside a release or waiver:  (1) there was a misrepresentation or active wrongful concealment of a material fact; (2) the representation was in fact false and was known to be at the time it was made or the concealment was intentional; (3) the misrepresentation was made for the purpose of inducing plaintiff to rely on it or the concealment was done to mislead the plaintiff; (4) plaintiff did, in fact, rely on the misrepresentation or she would have acted differently had she known of the concealment; and (5) plaintiff was caused injury as a proximate result of the misrepresentation or concealment." *Joint Venture Asset Acquisition v. Zellner*, 808 F. Supp. 289, 302 (S.D.N.Y. 1992).  Ms. Benksy cannot satisfy *any* of these elements, much less all of them.

The only specific basis you have offered for your assertions of "fraudulent inducement" or "fraudulent concealment" — *i.e.*, Mr. Kahn's deposition testimony in *Doe v. J.P. Morgan Chase Bank, N.A.*, Case No. 1:22-cv-10019 (JSR) (S.D.N.Y.) — is ludicrous on its face.  Mr. Kahn was deposed on May 18, 2023; Ms. Bensky could not possibly have relied on his testimony in executing the EVCP release more than two years *earlier*. *See generally DoubleLine Cap. LP v. Odebrecht Finance, Ltd.*, 323 F. Supp.3d 393, 454 (S.D.N.Y. 2018) (holding that statements made after plaintiffs purchased securities could not fraudulently induce purchase).  Similarly, your general references to purported acts of "active concealment" by Messrs. Indyke and Kahn of their roles in an alleged human trafficking conspiracy through immigration fraud or illicit financial transactions ignores that any such conduct would have to be pleaded with particularity, *see In re WorldCom, Inc.*, 296 B.R. 115, 123-24 (S.D.N.Y. 2003); *Butala v. Agashiwala*, 916 F. Supp. 314, 319-20 (S.D.N.Y. 1996), and the conduct must have been done "for the purpose of inducing [Ms. Bensky] to rely on it" or "done to mislead" Ms. Bensky into signing her release, and Ms. Bensky would have to show that she "rel[ied] on the misrepresentation or she would have acted differently [*i.e.*, not signed the EVCP Release] had she known of the concealment." *See Joint Venture Asset Acquisition*, 808 F. Supp. at 302.  In the absence of

---

1.   18 U.S.C. § 2255, as amended in September 2022, did not retroactively revive TVPA claims that were already time-barred as of that date.

direct interaction with either Messrs. Indyke or Kahn, Ms. Bensky cannot meet any of these legal bars.

Moreover, while you may have forgotten your express approval of the EVCP Release, we have not. By email dated March 26, 2020, the Co-Executors' counsel provided both of you with the proposed form of the EVCP Release — "the third-party release required by the Estate as part of its establishment of the Program" — negotiated by your co-counsel Bradley Edwards and the USVI Attorney General. (*See* Exhibit B.) The following afternoon, March 27, 2020, Mr. Boies spoke with the Co-Executors' representatives, me included. In that conversation, we explained the Estate's desire for final resolution of claims against it, and its concomitant need to protect itself from third-party claims for contribution or indemnification. In response, Mr. Boies agreed that the EVCP could use the EVCP Release in the exact same form we provided you on March 26, 2020. (*See* A. Tomback email to D. Boies, cc-ing me, dated March 28, 2020: "David – Thanks for speaking with us yesterday . . . We appreciate your agreement with respect to the release.") (copy attached as Exhibit C).[2]

One week later, Mr. Boies confirmed that the EVCP Release would remain as the Co-Executors previously proposed to you on March 26, 2020:

> I spoke with Dan and Andy (whom I am copying) this morning. *I am now in agreement that we should move forward with the claims process without trying to further modify the release.*
>
> I am influenced by the desirability of getting the program underway so that our clients can begin getting compensation; *by the fact that the release will be limited to persons who provided services to Epstein, with the release signed by individual victims who accept an award having a space to make clear that certain individuals (e.g., Prince Andrew or others to whom our clients were trafficked) are not released; and by the fact that the release of Epstein's employees/service providers will be taken into account by the Administrator in setting the amount of the award.* And, of course, this is a voluntary process where our clients get to decide whether to be bound after learning the amount of the proposed award.

(D. Boies email to B. Edwards, copying A. Tomback and me, dated April 7, 2020; emphasis supplied) (copy attached as Exhibit E).

---

2. Mr. Edwards' email to me, copying Mr. Boies and Ms. McCawley, dated April 3, 2020, reinforces this point. In that email (copy attached as Exhibit D), Mr. Edwards notes, "I think we all are on the same page that Epstein (and the estate standing in his shoes) will be released as will any related entity or individual whose acts may have allowed for his abuse . . . ")

Nearly one year later, Ms. Bensky (on Ms. McCawley's advice) executed the EVCP Release containing the exact same text as counsel negotiated and agreed.

### 3. The Co-Executors Did Not Need To Separately Provide Additional Consideration For The EVCP Release.

As noted above, Ms. Bensky received a ▮▮▮▮ compensatory award from the EVCP in consideration for her execution of the EVCP Release.[3] No legal basis exists for your unsupportable assertion that the EVCP Release is invalid as to Messrs. Indyke and Kahn because they did not separately provide additional consideration for that Release.

Under New York law, a "written instrument which purports to be a total or partial release of all claims . . . shall not be invalid because of the absence of consideration." N.Y. Gen. Oblig. Law §§ 15–303. New York courts have consistently found a release binding even where a released party did not provide consideration. *See In re Cheng Ching Wang,* 114 A.D.3d 939, 940–41, 981 N.Y.S.2d 439, 441 (2nd Dep't 2014) (letter signed by petitioner in which she agreed to "waive any claim of any kind or nature against the decedent, his family or his estate" held binding despite no consideration provided) (citations omitted); *Bernard v. Sayegh,* 104 A.D.3d 600, 600, 961 N.Y.S.2d 444, 445 (1st Dep't 2013) (reversing lower court and dismissing complaint where the plaintiff's "general release states that consideration provided by defendant hospital constituted "complete payment for all damages and injuries" and was intended to release not only the hospital but also, "whether presently known or unknown, all tortfeasors liable or claimed to be liable jointly with the [hospital]; and, whether presently known or unknown, all other potential or possible tortfeasors liable or claimed to be liable jointly with the [hospital]"); *Laugh Factory, Inc. v. Basciano,* 608 F. Supp. 2d 549, 561–62 (S.D.N.Y. 2009) ("[U]nder New York law, no consideration is required to make a written release binding, see N.Y. Gen. Oblig. Law. § 15–303.").

Your novel proposition — *i.e.,* that each and every director, officer, executive, employee, agent, representative, etc. of a released entity must separately and individually supply consideration in order to be covered by a general release identifying them as releasees — finds no support in the law; such a requirement would be both bad law and bad policy. We specifically note that, in the recent actions your firm brought and settled against JPMorgan Chase, "Released Defendant Party" was defined to mean:

> (i) any and all of Defendant and Defendant's Counsel and each of their successors, predecessors, and past, present, and future: parent corporations, sister corporations, subsidiaries, and affiliated Persons and (ii) any and all of the foregoing's

---

3. As you acknowledge, Ms. Bensky has or will receive substantial additional monetary compensation from the class-action settlements reached with JPMorgan Chase and Deutsche Bank.

> respective past, present, or future: principals, assigns, assignors, legatees, devisees, executors, administrators, estates, heirs, spouses, receivers and trustees, settlors, beneficiaries, members, equity holders, officers, directors, partners, managers, employees, servants, agents, insurers, reinsurers, representatives, attorneys, legal representatives, and successors-in-interest.

*See* Stipulation of Settlement, *Jane Doe v. JPMorgan Chase Bank, N.A.*, 22-cv-10019-JSR, Doc. 181-1 (S.D.N.Y. 06/22/23) at 14.   We do not understand any Released Defendant Party related to JPMorgan, with the exception of the bank itself, to have individually provided consideration for his or her inclusion in the release.  Nonetheless, Mr. Boies submitted a sworn declaration supporting the JPMorgan settlement, including what he described as a substantial payment for dismissal of the action and "full mutual releases" of all Released Defendant Parties.  *See* Joint Declaration of David Boies and Bradley Edwards in Support of Motions for (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation and (2) an Award of Attorneys' Fees and Expenses, *Jane Doe v. JPMorgan Chase Bank, N.A.*, 22-cv-10019-JSR, Doc. 237 (S.D.N.Y. 10/05/23) at 12. It cannot now be your position that those releases are ineffective with respect to all parties but JPMorgan itself.

4.    **The Co-Executors Authorization Did Not Exceed Their Authority.**

Messrs. Indyke and Kahn are the Co-Executors of the Epstein Estate, duly appointed on September 6, 2019 by the Superior Court of the United States Virgin Islands in *In the Matter of the Estate of Jeffrey E. Epstein*, Probate Case No. ST-19-PB-80.  It is undisputed that, under the supervision of the USVI Superior Court, they are authorized to act on behalf of the Epstein Estate.  V.I. R. Prob. 3; *see Ottley v. Estate of Bell*, 61 V.I. 480, 493 (V.I. Super. Ct. 2014) ("The executor or administrator of an estate acts as an arm of the court . . ."; citations omitted).[4]

It is also undisputed that the USVI Superior Court expressly approved the Co-Executors' establishment of the Epstein Victims Compensation Program.  Following a lengthy evidentiary hearing held in St. Thomas on February 4, 2020 (a hearing that Mr. Boies attended), the Honorable Carolyn P. Hermon-Percell heard from all interested parties on that subject, including multiple claimants' counsel.  None of them objected to establishment of the EVCP or the concept of the EVCP Release.  (*See* 2/4/2020 Hearing Tr. at 64, 93-94, 113  (THE COURT: . . . "I think we agreed that everybody believes this program is a great program . . .".) (copy attached as Exhibit G).  That is not surprising, since counsel for individuals alleging sexual abuse by Mr. Epstein (again, including Mr.

---

4.   *See* Letters Testamentary and Order for Probate, dated September 6, 2019 (copies attached as Exhibit F).

Boies) specifically negotiated the terms of EVCP's protocol with the Co-Executors' counsel and with the EVCP's Administrator. (*Id.* at 122-123.)[5]

As Mr. Boies acknowledged in April 2020, it is in the Epstein Estate's interest to obtain finality in resolving all potential claims against it arising from Mr. Epstein's conduct. It was precisely for that reason that the Co-Executors insisted that any claimant receiving an award through the Epstein Victims' Compensation Program execute an all-encompassing release: as detailed above, the EVCP Release expressly includes within its scope the Co-Executors, officers of Mr. Epstein's companies, and all persons who provided services to Mr. Epstein, the Epstein Estate or Mr. Epstein's companies.[6] Messrs. Indyke and Kahn fall squarely within its coverage.[7]

*    *    *    *    *

Based on the foregoing, no reasonable inquiry could lead you to believe that Ms. Bensky's purported claims are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law. *See* FRCP 11(b)(2). If you have controlling legal precedent contradicting the substance of this letter, please let us know. Otherwise, we request that you and your client reconsider the threatened claims against Messrs. Indyke and Kahn.

Sincerely,

*Daniel H. Weiner*

Daniel H. Weiner

cc:    Daniel Ruzumna, Esq.

---

5.  By order dated June 2, 2020 (copy attached as Exhibit H), Judge Hermon-Percell formally granted the Co-Executors' motion to establish the Epstein Victims' Compensation Program, noting that "all interested parties have finalized and are in support of the protocol for the Epstein Victims' Compensation Program." Those parties of course included your firm and its clients.

6.  As Ghislaine Maxwell's claim for indemnification by the Estate demonstrates (*Maxwell v. Estate of Jeffrey E. Epstein*, Case No. ST-20-CV-155 (U.S.V.I. Super. Ct.)), the Co-Executors' insistence on such a broad release was well-founded.

7.  Even if one were to ignore the obvious benefit to the Epstein Estate of including its Co-Executors as releasees, your suggestion that Messrs. Indyke and Kahn exceeded their authority, even if true, would not vitiate the EVCP Release. *E.g., RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 235-36 (E.D.N.Y. 2009); *see also* Restatement (Third) of Agency § 4.01 comment b.

# EXHIBIT A

# EPSTEIN VICTIMS' COMPENSATION PROGRAM ("EVCP")

## GENERAL RELEASE

This General Release is made this __31__ day of __January_____ 20__21__.

**WHEREAS,** _____Danielle Bensky_____ (the "Claimant"), submitted a claim for compensation to the Epstein Victims' Compensation Program ("EVCP") asserting that she is a victim of sexual abuse by Jeffrey E. Epstein; and

**WHEREAS,** the EVCP Program Administrator (the "Administrator") determined pursuant to the EVCP Protocol that Claimant is eligible to participate in the EVCP; and

**WHEREAS,** after reviewing Claimant's submissions and after careful consideration of documentation and proof, and after due deliberation, the Administrator issued a compensation determination to Claimant ("Compensation Offer"); and

**WHEREAS,** several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse; and

**WHEREAS,** Claimant is aware that, by accepting this Compensation Offer from the EVCP, Claimant waives and releases certain individuals and entities from any and all claims or causes of action arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise; and

**WHEREAS,** after careful consideration of the proposed Compensation Offer, including consultation with her legal counsel regarding the Compensation Offer, Claimant informed the Administrator that Claimant has decided to accept the Compensation Offer.

**NOW THEREFORE,**

Claimant, for and on behalf of herself and her heirs, devisees, legatees, distributees, executors, administrators, trustees, personal representatives, successors and assigns (collectively, "Releasor"), for and in consideration of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the Compensation Offer) to be received from the EVCP, the adequacy and sufficiency of which are hereby acknowledged, hereby releases and forever discharges the Co-Executors of the Estate of Jeffrey E. Epstein (the "Epstein Estate"), the Co-Trustees of The 1953 Trust, the Epstein Estate, any entities owned or controlled in whole or part by the Epstein Estate (the "Epstein Entities") and their respective current

1

and former principals, officers, directors, stockholders, managers, members, partners, limited partners, trustees, beneficiaries, administrators, agents, employees, attorneys, predecessors, successors, assigns and affiliates, and any entities or individuals who are or have ever been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, the Epstein Entities or the Epstein Estate (jointly and severally, the "Releasees"), from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, variances, trespasses, damages and judgments, whether sounding in equity, tort, common law, contract, statute, regulation or otherwise and whether now existing, hereafter existing or revived in the future whatsoever in law, admiralty, equity or otherwise, including without limitation any and all claims or causes of action that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein (the "Claims") which against the Releasees, Releasor ever had, now has or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this General Release.

This General Release is a broad release of any and all Claims of Releasor against any and all Releasees, including without limitation any and all causes of action, lawsuits, claims, demands, damages and liability whatsoever, and also including without limitation to the extent of their respective liability for the same, any and all such claims against any and all Releasees for contribution as to any other person or persons who may be determined to have been joint tortfeasors arising out of or in any way related to any and all known and unknown personal injuries, and also including without limitation any derivative claims for loss of consortium, under any federal, state or local law, without limitation. This General Release is all-encompassing and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished, whether said Claims arose in Florida, New Mexico, New York, the United States Virgin Islands, France or any other country, state, territory, possession or jurisdiction, or otherwise.

This General Release extends to released Claims that Releasor does not know or suspect to exist in her favor, which, if known by Releasor, would have materially affected her decision to enter into this General Release, and Releasor understands and agrees that she is releasing any and all such unknown or unsuspected Claims in Releasees' favor. Releasor acknowledges that she is familiar with Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN

HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasor expressly waives and relinquishes any right or benefit that Releasor has or may have under Section 1542 of the California Civil Code and under any other statute or legal principle with similar effect. In connection with such waiver and relinquishment, Releasor acknowledges that she is aware that, after executing this General Release, Releasor or Releasor's attorneys or agents may discover released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this General Release, but that it is Releasor's intent hereby to fully, finally and forever settle and release all of the Claims, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed. In furtherance of this intent, this General Release shall be, and remain in effect as, a full and complete release of the Claims notwithstanding the discovery or existence of any such additional or different Claims or facts.

The Administrator of the EVCP has retained Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort ("Epiq") to verify and resolve any lien or reimbursement claim that may be owed to Medicare Part A and/or Part B ("Medicare") and/or Medicaid with respect to compensation awarded to any participating claimant under the EVCP. If either entity asserts a lien or reimbursement claim, Epiq is hereby authorized to act on behalf of the EVCP to verify and resolve such lien or reimbursement claim. In the Claim Form, Releasor authorized the Administrator to use and/or disclose information as to Releasor for the resolution of Medicare and/or Medicaid liens. This includes providing to Epiq certain information as to Releasor, including: (1) first name, last name and middle initial, (2) Social Security number; (3) date of birth, (4) gender and (5) basic information regarding the nature of Releasor's Claims, and authorizing the Administrator and Epiq to use, exchange and report this information to Medicare and Medicaid, as may be necessary, for purposes of verifying and resolving Medicare and/or Medicaid liens and/or reimbursement claims and ensuring compliance with the Medicare Secondary Payer Act, 42 U.S.C. § 1395(y)(b), and its accompanying regulations. In the event that Epiq resolves the asserted claim or lien, the Epstein Estate will pay the negotiated amount in addition to any Compensation Offer determined by the Administrator.

Releasor represents and acknowledges that she is voluntarily and freely granting this General Release in exchange for payment of the Compensation Offer, and that she is legally competent to execute and deliver this General Release. Releasor further represents that she is represented by legal counsel and has received legal advice prior to

entering into this General Release and that she has been advised by said attorney regarding the terms and conditions of this General Release, which she has completely read and fully understands, including that accepting the Compensation Offer and signing this General Release is a full and final compromise, adjustment and resolution of any and all Claims that Releasor may now have or ever will have against Releasees.

Pursuant to the EVCP Protocol, the Administrator will maintain the confidentiality of all information and documentation relating to claimants who participate in the EVCP Program. This General Release does not require participating claimants to maintain such confidentiality and Releasor may -- at Releasor's voluntary and sole option -- disclose such information regarding the claims process and/or the Compensation Offer and any other information pertaining to her claim.

This General Release specifically does not include _____ as a Releasee or released party under this Agreement, and all parties expressly acknowledge, agree and understand that any and all claims that Releasor has or may have against _____ are expressly preserved.

Releasor represents and warrants that she has not assigned any Claims released pursuant to this General Release.

Releasor will dismiss with prejudice any and all legal actions -- whether lawsuits, probate claims or otherwise -- that Releasor has filed against any of Releasees, with each party to bear her, his or its own costs and attorneys' fees and will submit proof of dismissal to the Administrator along with or prior to the signed acceptance of the Compensation Offer and this executed Release.

This General Release contains the entire understanding of the Releasor and the Co-Executors of the Epstein Estate. Any modification of any of the provisions of this General Release shall be effective only if made in writing and executed by Releasor and the Co-Executors of the Epstein Estate with the same formality as this General Release.

**IN WITNESS WHEREOF,** Claimant has executed this General Release on the date below her signature.

_(signature)_

(Signature, Claimant)

1 / 31 / 2021

(Date)

STATE OF _NY_ )

ss:

COUNTY OF _Queens_ )

On _1 31_ , 2021, before me personally came _DAnielle Bensky_, to me known, who, by me duly sworn, did depose and say that deponent is the Releasor who executed the foregoing General Release.

> ARTHUR MULLAKANDOV
> Notary Public, State of New York
> Registration #01MU...
> Qualified in Queens County
> Commission Expires 05/02/2021

_(signature)_ Notary Public

Reviewed and approved:

Type (or print) Name of Claimant: _Danielle Hannah Bensky_

Attorney for Releasor:

Type (or print) Name of Attorney: _____

Signature: _____

5

**IN WITNESS WHEREOF,** Claimant has executed this General Release on the date below her signature.

(Signature, Claimant)

1 / 31 / 2021
(Date)

STATE OF _NY_ )

ss:

COUNTY OF _Queens_ )

On _1/31_ , 2021, before me personally came _Danielle Bensky_ , to me known, who, by me duly sworn, did depose and say that deponent is the Releasor who executed the foregoing General Release.

ARTHUR MULLAKANDOV
Notary Public, State of New York
Registration #01MU6341246
Qualified in Queens County
Commission Expires _02/24/2024_

Notary Public

Reviewed and approved:

Type (or print) Name of Claimant: _Danielle Hannah Bensky_

Attorney for Releasor:

Type (or print) Name of Attorney: _Sigrid McCawley_

Signature:

5

# EXHIBIT B

**From:** Tomback, Andrew <andrew.tomback@whitecase.com>
**Sent:** Thursday, March 26, 2020 3:06 PM
**To:** 'Josh Schiller' <JiSchiller@BSFLLP.com>; 'Sigrid McCawley' <Smccawley@BSFLLP.com>; 'David Boies2'
<xboies@gmail.com>
**Cc:** Tomback, Andrew <andrew.tomback@whitecase.com>; Weiner, Daniel H. <daniel.weiner@hugheshubbard.com>
**Subject:** FW: Epstein Victims' Compensation Program

---

**CAUTION: This email was sent by someone outside of the Firm.**

---

Dear Mr. Boies:

Ken Feinberg shared with me your recent communication with USVI Attorney General Denise George on the subject of the Epstein Victims' Compensation Program. On behalf of the Co-Executors, we want to clear up any misunderstanding regarding (1) the proposed role of Professor Marci Hamilton in the Program, and (2) the third-party release required by the Estate as part of its establishment of the Program.

Regarding Ms. Hamilton, our clients' position is the one set forth in my email to you of March 23, 2020, reproduced below. If she is to have any role in the Program, it would be on that basis. The Co-Executors are also of course prepared to proceed with the Program without Ms. Hamilton's participation, since the nationally recognized experts who designed and will implement the Program have extensive experience in handling claims of child sexual abuse. We understand that plaintiffs' counsel by and large feel the same way, since none raised any objection to Ms. Feldman, Mr. Feinberg and Ms. Biros.

As for the third-party release, that requirement allows the Co-Executors to comply with their fiduciary obligations to the Estate by ensuring finality in resolving claims through the Program, and avoids the Estate being dragged back into litigation through third-party impleader claims based on theories of contribution, indemnity, respondeat superior or otherwise. Accordingly, a third-party release has been a part of the proposed Program Protocol since it was first circulated in mid-December 2019. It was discussed by both Ms. Feldman and Mr. Feinberg during their testimony before the USVI Probate Court on February 4, 2020. (See February 4 Hearing Tr. at 118:25-119:13, 127:20-128:24 (Ms. Feldman); 179:12-180:22 (Mr. Feinberg).) It was also the subject of extensive discussion, without objection, in our face-to-face meeting with the Attorney General's representatives and Brad Edwards in Miami on March 5, 2020. For your information, we attach the form release we shared with the Attorney General on March 16, 2020. We received no comments on it from her or her representatives.

Sincerely,
Andrew E. Tomback

**Andrew E. Tomback** | Partner
T +1 212-819-8428    M +1 917-301-1285    E andrew.tomback@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

## EPSTEIN VICTIMS' COMPENSATION PROGRAM ("EVCP")

## <u>GENERAL RELEASE</u>

This General Release is made this _____ day of _____ 20____.

**WHEREAS**, _____ (the "Claimant"), submitted a claim for compensation to the Epstein Victims' Compensation Program ("EVCP") asserting that she is a victim of sexual abuse by Jeffrey E. Epstein; and

**WHEREAS**, the EVCP Program Administrator (the "Administrator") determined pursuant to the EVCP Protocol that Claimant is eligible to participate in the EVCP; and

**WHEREAS**, after reviewing Claimant's submissions and after careful consideration of documentation and proof, and after due deliberation, the Administrator issued a compensation determination to Claimant ("Compensation Offer"); and

**WHEREAS**, several jurisdictions within the United States have enacted claims revival statutes concerning the timeliness of claims of sexual abuse; and

**WHEREAS**, Claimant is aware that, by accepting this Compensation Offer from the EVCP, Claimant waives and releases certain individuals and entities from any and all claims or causes of action arising from Mr. Epstein's conduct, whether pursuant to claims revival statutes or otherwise; and

**WHEREAS**, after careful consideration of the proposed Compensation Offer, including consultation with her legal counsel regarding the Compensation Offer, Claimant informed the Administrator that Claimant has decided to accept the Compensation Offer.

**NOW THEREFORE,**

Claimant, _____, for and on behalf of herself and her heirs, devisees, legatees, distributees, executors, administrators, trustees, personal representatives, successors and assigns (collectively, "Releasor"), for and in consideration of _____ Dollars ($_____ ) (the Compensation Offer) to be received from the EVCP, the adequacy and sufficiency of which are hereby acknowledged, hereby releases and forever discharges the Co-Executors of the Estate of Jeffrey E. Epstein (the "Epstein Estate"), the Co-Trustees of The 1953 Trust, the Epstein Estate, any entities owned or controlled in whole or part by the Epstein Estate (the

"Epstein Entities") and their respective current and former principals, officers, directors, stockholders, managers, members, partners, limited partners, trustees, beneficiaries, administrators, agents, employees, attorneys, predecessors, successors, assigns and affiliates, and any entities or individuals who are or have ever been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, the Epstein Entities or the Epstein Estate (jointly and severally, the "Releasees"), from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, variances, trespasses, damages and judgments, whether sounding in equity, tort, common law, contract, statute, regulation or otherwise and whether now existing, hereafter existing or revived in the future whatsoever in law, admiralty, equity or otherwise, including without limitation any and all claims or causes of action that arise or may arise from or which otherwise concern acts of sexual abuse by Mr. Epstein (the "Claims") which against the Releasees, Releasor ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world through the date of this General Release.

This General Release is a broad release of any and all Claims of Releasor against any and all Releasees, including without limitation any and all causes of action, lawsuits, claims, demands, damages and liability whatsoever, and also including without limitation to the extent of their respective liability for the same, any and all such claims against any and all Releasees for contribution as to any other person or persons who may be determined to have been joint tortfeasors arising out of or in any way related to any and all known and unknown personal injuries, and also including without limitation any derivative claims for loss of consortium, under any federal, state or local law, without limitation. This General Release is all-encompassing and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished, whether said Claims arose in Florida, New Mexico, New York, the United States Virgin Islands, France or any other country, state, territory, possession or jurisdiction, or otherwise.

This General Release extends to released Claims that Releasor does not know or suspect to exist in her favor, which, if known by Releasor, would have materially affected her decision to enter into this General Release, and Releasor understands and agrees that she is releasing any and all such unknown or unsuspected Claims in Releasor's favor. Releasor acknowledges that she is familiar with Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasor expressly waives and relinquishes any right or benefit that Releasor has or may have under Section 1542 of the California Civil Code and under any other statute or legal principle with similar effect. In connection with such waiver and relinquishment, Releasor acknowledges that she is aware that, after executing this General Release, Releasor or Releasor's attorneys or agents may discover released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this General Release, but that it is Releasor's intent hereby to fully, finally and forever settle and release all of the Claims, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed. In furtherance of this intent, this General Release shall be, and remain in effect as, a full and complete release of the Claims notwithstanding the discovery or existence of any such additional or different Claims or facts.

The Administrator of the EVCP has retained _____ to confirm that the Centers for Medicare and Medicaid Services ("CMS") and Medicaid will not assert any reimbursement claim or lien with respect to compensation awarded to any participating claimant under the EVCP; provided, however, that if either entity does assert any such interest, _____ is hereby authorized to act on behalf of the EVCP to verify and resolve such lien or reimbursement claim. Releasor agrees to allow the Administrator to provide to _____ certain information as to Releasor, including: (1) first name, last name and middle initial, (2) Social Security number; (3) date of birth, (4) gender and (5) basic information regarding the nature of Releasor's Claims, and hereby authorizes the Administrator and _____ to use, exchange and report this information to Medicare, if necessary, for purposes of ensuring compliance with the Medicare Secondary Payer Act, 42 U.S.C. § 1395(y)(b), and its accompanying regulations.

Releasor represents and acknowledges that she is voluntarily and freely granting this General Release in exchange for payment of the Compensation Offer, and that she is legally competent to execute and deliver this General Release. Releasor further represents that she is represented by legal counsel and has received legal advice prior to entering into this General Release and that she has been advised by said attorney regarding the terms and conditions of this General Release, which she has completely read and fully understands, including that accepting the Compensation Offer and signing

this General Release is a full and final compromise, adjustment and resolution of any and all Claims that Releasor may now have or ever will have against Releasees.

Pursuant to the EVCP Protocol, the Administrator will maintain the confidentiality of all information and documentation relating to claimants who participate in the EVCP Program. This General Release does not require participating claimants to maintain such confidentiality and Releasor may -- at Releasor's voluntary and sole option -- disclose such information regarding the claims process and/or the Compensation Offer and any other information pertaining to her claim.

This General Release specifically does not include _____ as a Releasee or released party under this Agreement, and all parties expressly acknowledge, agree and understand that any and all claims that Releasor has or may have against_____ are expressly preserved.

Releasor represents and warrants that she has not assigned any Claims released pursuant to this General Release.

As soon as is reasonably practicable after payment of the Compensation Offer is made, and in no event later than three (3) business days from the date thereof, Releasor will dismiss with prejudice any legal actions -- whether lawsuits, probate claims or otherwise – that Releasor has filed against any of Releasees, with each party to bear her, his or its own costs and attorneys' fees.

This General Release contains the entire understanding of the Releasor and the Co-Executors of the Epstein Estate. Any modification of any of the provisions of this General Release shall be effective only if made in writing and executed by Releasor and the Co-Executors of the Epstein Estate with the same formality as this General Release.

**IN WITNESS WHEREOF**, Claimant has executed this General Release on the date below her signature.

_____
(Signature: Claimant)

_____
(Date)

STATE OF _____)

                            ss:

COUNTY OF _____)

On _____, 20__, before me personally came _____, to me known, who, by me duly sworn, did depose and say that deponent is the Releasor who executed the foregoing General Release.

_____
Notary Public

Reviewed and approved:

      Type (or print) Name of Claimant:_____

Attorney for Releasor:

      Type (or print) Name of Attorney: _____

      Signature: _____

# EXHIBIT C

**From:** Tomback, Andrew <andrew.tomback@whitecase.com>
**Sent:** Saturday, March 28, 2020 5:22 PM
**To:** 'David Boies' <xboies@gmail.com>
**Cc:** Weiner, Daniel H. <daniel.weiner@hugheshubbard.com>; Tomback, Andrew <andrew.tomback@whitecase.com>
**Subject:** FW: Epstein Victims' Compensation Program


David –

Thanks for speaking with us yesterday.  Assuming the Program goes forward – as we all hope it does, and soon – the Co-Executors are willing to let the Program Administrator (Ms. Feldman) determine on a case-by-case basis the need to anonymize individual claimants' files before sharing them with Professor Hamilton.  We appreciate your agreement with respect to the release.

Best,

Andy

**Andrew E. Tomback** | Partner
T +1 212-819-8428    M +1 917-301-1285    E andrew.tomback@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**


From: Tomback, Andrew
Sent: Thursday, March 26, 2020 3:06 PM
To: 'Josh Schiller' <JiSchiller@BSFLLP.com<mailto:JiSchiller@BSFLLP.com>>; 'Sigrid McCawley'
<Smccawley@BSFLLP.com<mailto:Smccawley@BSFLLP.com>>; 'David Boies2'
<xboies@gmail.com<mailto:xboies@gmail.com>>
Cc: Tomback, Andrew <andrew.tomback@whitecase.com<mailto:andrew.tomback@whitecase.com>>; Dan Weiner
<daniel.weiner@hugheshubbard.com<mailto:daniel.weiner@hugheshubbard.com>>
Subject: FW: Epstein Victims' Compensation Program

Dear Mr. Boies:

Ken Feinberg shared with me your recent communication with USVI Attorney General Denise George on the subject of the Epstein Victims' Compensation Program.  On behalf of the Co-Executors, we want to clear up any misunderstanding regarding (1) the proposed role of Professor Marci Hamilton in the Program, and (2) the third-party release required by the Estate as part of its establishment of the Program.

Regarding Ms. Hamilton, our clients' position is the one set forth in my email to you of March 23, 2020, reproduced below.  If she is to have any role in the Program, it would be on that basis.  The Co-Executors are also of course prepared to proceed with the Program without Ms. Hamilton's participation, since the nationally recognized experts who designed and will implement the Program have extensive experience in handling claims of child sexual abuse.  We understand that plaintiffs' counsel by and large feel the same way, since none raised any objection to Ms. Feldman, Mr. Feinberg and Ms. Biros.

1

As for the third-party release, that requirement allows the Co-Executors to comply with their fiduciary obligations to the Estate by ensuring finality in resolving claims through the Program, and avoids the Estate being dragged back into litigation through third-party impleader claims based on theories of contribution, indemnity, respondeat superior or otherwise. Accordingly, a third-party release has been a part of the proposed Program Protocol since it was first circulated in mid-December 2019. It was discussed by both Ms. Feldman and Mr. Feinberg during their testimony before the USVI Probate Court on February 4, 2020. (See February 4 Hearing Tr. at 118:25-119:13, 127:20-128:24 (Ms. Feldman); 179:12-180:22 (Mr. Feinberg).) It was also the subject of extensive discussion, without objection, in our face-to-face meeting with the Attorney General's representatives and Brad Edwards in Miami on March 5, 2020. For your information, we attach the form release we shared with the Attorney General on March 16, 2020. We received no comments on it from her or her representatives.

Sincerely,
Andrew E. Tomback
Andrew E. Tomback | Partner
T +1 212-819-8428<tel:+1212-819-8428>    M +1 917-301-1285<tel:+1917-301-1285>    E andrew.tomback@whitecase.com<mailto:andrew.tomback@whitecase.com>
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
[cid:image001.png@01D60380.03DF9590]

# EXHIBIT D

**From:** Brad Edwards <brad@epllc.com>
**Sent:** Friday, April 3, 2020 4:17 PM
**To:** Weiner, Daniel H. <daniel.weiner@hugheshubbard.com>
**Cc:** Singer, Linda <lsinger@motleyrice.com>; Brittany Henderson <brittany@epllc.com>; smccawley@bsfllp.com; David Boies (xboies@gmail.com) <xboies@gmail.com>; Andrew Tomback <andrew.tomback@whitecase.com>
**Subject:** Re: Epstein Victims' Compensation Program

I'm not sure whether that communication made the issue better or worse.  I think we are all on the same page that Epstein (and the estate standing in his shoes) will be released as will any related entity or individual whose acts may have allowed for his abuse.  If someone else abused a claimant, whether at Epstein's property or anywhere else on the planet then the estate is not looking to settle for that other person.  For instance, if Prince Andrew committed an act of sexual abuse then he is not being released.  I believe everyone is on the same page with this. If that is not already clear, is there an additional sentence that makes it clear so that this can move forward?

My understanding is that this is the scenario the AG wants to make sure is not released and also one the Estate is not trying to release.  There is no way what amounts to an agreement should stand in the way of the program starting for even a second. When there were disagreements, I understood. Now, all parties agree on the issue and still we can't find simple language that gives the comfort necessary for everyone to file an agreement with the court?

Sent from my iPhone

> On Apr 3, 2020, at 3:59 PM, Weiner, Daniel H. <daniel.weiner@hugheshubbard.com> wrote:
>
> Linda –
>
> We believe that this is a communications issue rather than a substantive disagreement.
>
> As we've said from the outset, the Co-Executors have two ways of addressing claims brought by those alleging sexual abuse at the hands of Mr. Epstein:  defense of civil litigation or participation in a voluntary compensation program.  For reasons explained at length in the Co-Executors' multiple filings with the USVI Probate Court and at the February 4 hearing before Judge Percell, the Program is far preferable from the point of view of the Estate and most claimants, including those who for various reasons may not be able to prosecute their claims through litigation.
>
> An indispensable element of the Program – both practically and as a matter of the Co-Executors' fiduciary obligations under USVI law -- is the Estate's need to achieve finality of resolution with regard to individual claimants.   If a particular claimant demonstrates to the Program Administrator that compensation is appropriate, that claimant will have the choice – fully informed by her own counsel – whether to accept or reject the proposed compensation determination. If she elects to accept it, that will fully and finally resolve all claims by her against the Releasees described in the General Release we

circulated on March 16.  However, that Release would <u>not</u> preclude the claimant from pursuing alleged individual wrongdoers not affiliated with the Epstein Entities who, in your words, "themselves sexually abused victims (as opposed to facilitating Epstein's abuse.)"

Brad Edwards, who as you know represents nearly two dozen actual and potential claimants, yesterday stated with regard to the General Release that, "[w]hatever language allows the Estate to finally move forward is fine with me."  David Boies, whose firm also represents several claimants, has also approved the General Release.

The Attorney General is the only person preventing the Program from becoming a reality.  While we have asked Judge Percell to move forward and establish the Program over the Attorney General's objection, the Co-Executors would much prefer to have your client allied with claimants and the Estate in this entirely voluntary, non-adversarial mechanism to achieve justice.

Best,
Dan


**Daniel H. Weiner** | Partner

**Hughes Hubbard & Reed LLP**
One Battery Park Plaza, 15th floor | New York, NY 10004-1482
Office +1 (212) 837-6874 | Cell +1 (917) 574-3407 | | Fax +1 (212) 299-6874
daniel.weiner@hugheshubbard.com | bio

# EXHIBIT E

From: David Boies <xboies@gmail.com>
Sent: Tuesday, April 7, 2020 10:48 AM
To: Brad Edwards <brad@epllc.com>
Cc: Weiner, Daniel H. <daniel.weiner@hugheshubbard.com>; Andrew Tomback <andrew.tomback@whitecase.com>
Subject: Where we are

I spoke with Dan and Andy (whom I am copying) this morning. I am now in agreement that we should move forward with the claims process without trying to further modify the release. I am influenced by the desirability of getting the program underway so that our clients can begin getting compensation; by the fact that the release will be limited to persons who provided services to Epstein, with the lease signed by individual victims who accept an award having a space to make clear that certain individuals (e.g., Prince Andrew or others to whom our clients were trafficked) are not released; and by the fact that the release of Epstein's employees/service providers will be taken into account by the Administrator in setting the amount of the award. And, of course, this is a voluntary process where our clients get to decide whether to be bound after learning the amount of the proposed award.

# EXHIBIT F

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

IN THE MATTER OF THE ESTATE OF    )
)        PROBATE NO. ST-19-PB-80
)
JEFFREY E. EPSTEIN,            )
Deceased   )
)

## LETTERS TESTAMENTARY

**TO ALL TO WHOM THESE PRESENTS SHALL COME, GREETING:**

KNOW YE, that the Last Will and Testament of **JEFFREY E. EPSTEIN** dated the 8th

day of August 2019, which is hereto annexed, has been duly proven in this Court, and that

**DARREN K. INDYKE** and **RICHARD D. KAHN**, who have been nominated as Co-Executors

therein have been duly appointed Co-Executors of the estate of **JEFFREY E. EPSTEIN**.

This, therefore, authorizes **DARREN K. INDYKE** and **RICHARD D. KAHN** to

administer the Estate of **JEFFREY E. EPSTEIN**, deceased, according to law.

DATED: _September 6th_, 2019

_____
CAROLYN P. HERMON-PERCELL
Magistrate Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**ESTRELLA H. GEORGE**
**Clerk of the Court**

By: _Edotcia Thomas Hodge_
**EDOTCIA THOMAS-HODGE**
**Court Clerk Supervisor** _9 / 6 / 2019_

A CERTIFIED TRUE COPY
DATE: _September 6, 2019_
ESTRELLA H. GEORGE
CLERK OF THE COURT
BY _Jamal Marbo_
COURT CLERK II

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

IN THE MATTER OF THE ESTATE OF  )
              )  PROBATE NO. ST-19-PB-80
              )
JEFFREY E. EPSTEIN,      )
       Deceased  )
              )

## ORDER FOR PROBATE

Upon consideration of the Petition filed herein, and it appearing to the satisfaction of the Court that **JEFFREY E. EPSTEIN** died, testate, in Manhattan, New York, on August 10, 2019, and the adult heirs-at-law and next of kin of the deceased have been served with process or have consented to said Petition, and the Last Will and Testament of **JEFFREY E. EPSTEIN** dated the 8th day of August 2019 having been duly proved in this Court, and there being no valid objection to the probate of the said Will, it is

**ORDERED** that the Will is admitted to probate and recorded as the Last will and Testament of **JEFFREY E. EPSTEIN** valid to pass real and personal property, and that Letters Testamentary be issued to **DARREN K. INDYKE** and **RICHARD D. KAHN**, the Co-Executors named therein, who may qualify hereunder without bond, conditioned on the faithful performance of trust.

**IN TESTIMONY WHEREOF** I have hereunto subscribed my name and caused the Seal of the Court to be affixed this ___6th___ day of ___September___, 2019.

               **CAROLYN P. HERMON-PERCELL**
               **Magistrate Judge of the Superior Court**
               **of the Virgin Islands**

**ATTEST:**
**ESTRELLA H. GEORGE**
**Clerk of the Court**

By: _Edotcia Thomas Hodge_
 **EDOTCIA THOMAS-HODGE**
 **Court Clerk Supervisor** _9 / 6 /2019_

A CERTIFIED TRUE COPY
DATE September 6, 2019
ESTRELLA H. GEORGE
CLERK OF THE COURT
BY _Carol Marks_
COURT CLERK II

# EXHIBIT G

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
Division of St. Thomas/St. John
_____O_____

In the Matter of the Estate of: )
                                ) PROBATE CASE
                                )
                                ) NO. ST-19-PB-0080
                                )
JEFFREY E. EPSTEIN,             )
                                ) ACTION FOR TESTATE
                    Deceased.   ) ADMINISTRATION
                                )

Official Transcript
FEBRUARY 4, 2020

BEFORE:          THE HONORABLE CAROLYN P. H. PERCELL
                 Magistrate Judge Presiding

APPEARANCES:     ARIEL SMITH, ESQ.,
                 PAMELA TEPPER, ESQ.,
                 Assistant Attorneys General
                 Department of Justice
                 GERS Building, Second Floor
                 St. Thomas, Virgin Islands
                 { On Behalf of the Government}

                 _____

                 William Blum, Esq.
                 Christopher Kroblin, Esq.
                 Marjorie Whalen, Esq.
                 Shari D'Andrade, Esq.
                 Andrew Tomback, Esq.
                 Daniel Weiner, Esq.
                 {On Behalf of the Co-Executors }

COPY

1    Program is what is being proposed by the

2    estate to address these claims that are going

3    to be filed in multiple jurisdictions,

4    numerous of them pending in New York, right?

5                ATTORNEY BLUM: Correct. Most of

6    them.

7                THE COURT: Most of them in New

8    York.  There's also in Florida.

9                ATTORNEY BLUM: And Minnesota.

10                THE COURT: And Minnesota, right.

11                ATTORNEY BLUM: And we expect more.

12                THE COURT: And we expect more.

13                Let me summarize it --and

14    everyone listen and if anybody has an

15    objection to what I am going to say, then you

16    can raise it.

17                How I read,  all the persons who

18    have filed claims through Counsel present here

19    in this courtroom, they have, the claimants

20    have no objection to the Voluntary Claims

21    Resolution Program. Their concern is how much

22    money is to be expended to set up this

23    program.

24                I think it was Attorney Benham--

25    is he still here? Do you see him in the

1    claims are paid. This is about the victims.

2    It's about the people's whose lives are ruined

3    and we are very in favor of the voluntary

4    program. The victims desperately need help.

5    It's pressing and we would urge the Court to

6    hear from the administrators and perhaps we

7    can resolve this today.  Thank you, Your

8    Honor.

9                THE COURT: Thank you.

10               Have I heard from all the

11   attorneys representing persons who may be

12   filing or have filed claims against the

13   estate?

14               ATTORNEY BOURNE-VANNECK: Good

15   morning, Your Honor. Richard Bourne-Vanneck on

16   behalf of the claimant Tela Davis. I would

17   second the issues that have been raised by

18   Attorney Benham. I thought he did it

19   adequately so that is why I sat back down.

20   Thank you.

21               THE COURT: Thank you. So if I

22   understand what the persons here, the

23   attorneys representing the claimant, what we

24   really just need to get is testimony on the

25   numbers. I think everybody says they're in

1  favor of this program.   They're satisfied how

2  the program may be set up.  We just need to

3  know how much monies we are talking about that

4  would be allotted to this program.

5          ATTORNEY SMITH: Your Honor, I

6  would just state one thing.  I really just

7  want an opportunity to present our own

8  witnesses. I think there's information that we

9  may have that I would like to present to the

10 Court also before the Court can make its final

11 decision.

12         THE COURT:  I'm not making a

13 decision.  I specifically said that.  I'm

14 going to take the testimony because the

15 persons are here to testify.

16         ATTORNEY SMITH: Okay.

17         THE COURT: I think I specifically

18 said I'm not ruling on this and I'm also going

19 to require Counsel to brief the Court on the

20 effects of this lien as to anything how this

21 estate proceeds as far as it wants to set up

22 the claims. I understand that the estate just

23 want at this point permission to set up this

24 program.  That is what I am understanding –

25 permission to set up the program.

1  shed light on what the proposed design was so

2  that she understood that many of her

3  assumptions about the program were incorrect

4  and had been addressed in the draft protocol.

5            ATTORNEY TOMBACK: Your Honor,

6  I'd like to have marked as Exhibit 3 that

7  letter. It's dated January 16, 2020.  It's

8  written by Ms. Feldman to the Honorable Denise

9  N. George, Attorney General.

10           THE COURT: Okay.

11 By Attorney Tomback:

12          Q.  Is that the letter you wrote, Ms.

13 Feldman, to Attorney General George?

14          A.  I don't have a copy.

15           ATTORNEY SMITH: Your Honor, I'm

16 not questioning the witness but I do believe

17 that this goes beyond what the Court was

18 anticipating.

19           THE COURT: I think Attorney

20 Tomback is going to bring me to what I need to

21 know about the monies. I haven't heard that,

22 setting that up.  That is really what I want

23 to know.

24            I think we agreed that everybody

25 believes this program is a great program but

1    what is going to be the costs of setting up

2    this program?

3              ATTORNEY TOMBACK:  Your Honor,

4    the short answer is that the costs definitely

5    justifies the program and we are going to get

6    to the cost but I just want help on one item

7    and you tell me if I should do it or not, but

8    I think that while I have Ms. Feldman here

9    --and quite frankly it's wonderful to come

10   down here.  It's  beautiful, but Ms. Feldman

11   is here and Mr. Feinberg is here.  I'd like to

12   close the gap for the Court and so the

13   Attorney General understand the proposed

14   program is not what the Attorney General wrote

15   about.  It just isn't remotely related to the

16   process that is laid out in her papers.

17             Judge, there's no live person

18   that the Attorney General represents. The

19   Attorney General represents a claim of a

20   client that is historical. I've just been

21   admitted to be pro hac. I don't profess to be

22   an expert of the law but I think it's clear to

23   everyone in the courtroom that this program

24   needs to go forward to save the estate, quite

25   frankly, just to address the victims or the

1   eligibility criteria, the methodology for

2   determining compensation, proof requirements

3   and claims procedures, close quote.

4          Can you briefly address program

5   protocol?

6          **A.**  Yes. It just, it lays out the

7   terms and conditions or the proposed terms and

8   conditions of how the program would operate.

9   It gives some visibility of the criteria that

10  we'll apply when evaluating claims for

11  eligibility and compensation and outlines the

12  way that we'll process the claims and the

13  expectations in terms of timing.

14         **Q.**  And how is the protocol developed?

15         **A.**  So Mr. Feinberg, Ms. Biros and I

16  drafted the protocol in November and December

17  of 2009. One of our main objectives was to

18  make it as broad and as claimant friendly as

19  possible and with that in mind, we removed a

20  lot of the barriers that would apply or could

21  apply in litigation.  The Statute of

22  Limitations is not an issue that we'll keep in

23  allowing people to participate; prior

24  settlement would not preclude someone from

25  participating in the program; and so we

1   developed a protocol with that in mind.

2                We want any victim who suffered

3   abuse to be able to come in and participate in

4   the program and once we had an initial draft,

5   we circulated it to the estate, to the

6   Plaintiff's lawyers, to the USVI Attorneys

7   Office, in the Southern District of New York

8   to get their feedback on the protocol.

9         Q.   And just to be clear, I might not

10  have heard you but I take it numerous

11  Plaintiff's met with you and proceeded with

12  you or Plaintiff's Counsel, some of whom are

13  here?

14        A.   Yes, we met with nearly all of the

15  lawyers we know about who represented

16  Plaintiffs.

17        Q.   And if the Attorney General or her

18  representative wanted to meet with you or just

19  talk to you on the phone or have a series of

20  meetings to express concerns, will you listen

21  to her?

22        A.   Absolutely.  In fact, in my letter

23  I invited an opportunity to meet with her and

24  discuss more about the program and seek her

25  input.

# EXHIBIT H

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

IN THE MATTER OF THE ESTATE OF:    )
                                   )    PROBATE NO. ST-19-PB-80
                                   )
JEFFREY E. EPSTEIN,                )    ACTION FOR TESTATE
                   deceased.       )    ADMINISTRATION
                                   )

## ORDER

THIS MATTER is before the Court on the Co-Executors' Status Report on Voluntary Compensation Program and Presentation of Program Protocol filed on June 1, 2020, wherein, in pertinent part, the Co-Executor notify that all interested parties have finalized and are in support of the protocol for the Epstein Victims' Compensation Program (hereinafter "the Program").[1] The Court having received testimony concerning the Program at the hearing held on February 4, 2020, and having reviewed said Status Report, it is hereby

ORDERED that the *Expedited* Motion for Establishment of a Voluntary Claims Resolution Program filed on November 14, 2019, is GRANTED; and it is further

ORDERED that the Co-Executors are AUTHORIZED to commence the Epstein Victims' Compensation Program on or about June 15, 2020.

Dated: June 2, 2020                    _____
                                       CAROLYN P. HERMON-PERCELL
                                       Magistrate Judge of the Superior Court of the Virgin Islands

ATTEST:
TAMARA CHARLES
Clerk of the Court

By: _____
    EDOTCIA THOMAS-HODGE
    Court Clerk Supervisor  6/3/2020

CERTIFIED A TRUE COPY
DATE_____6/3/2020_____
        TAMARA CHARLES
        CLERK OF THE COURT
BY_____
        COURT CLERK

---

[1] At the hearing held on February 4, 2020, while the Court did not allow the Attorney General of the U.S. Virgin Islands to intervene, the Court did request the Co-Executors and the Attorney General to resolve their differences concerning the proposed compensation program, which has garnered the support of all interested parties, including claimants' counsel. The Co-Executors now inform that "[b]ecause the need for the Program has grown increasingly urgent, and with the support of claimants' counsel and the USVI Attorney General – and because the remaining impediments have been resolved and the interested parties have consented to the Protocol," they and the Attorney General have reached an agreement in which the latter will promptly lift previously imposed liens to pay amounts owed for the Program and to begin funding the Program's active operations, including payment of compensation determinations to eligible claimants. Co-Executors' Status Report on Voluntary Compensation Program and Presentation of Program Protocol, at 6, June 1, 2020.