UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE BENSKY and JANE DOE 3, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>*Defendants*. | Civil Action No. 1:24-cv-1204 (AS)<br><br>[rel. 1:24-cv-2192 (AS)] |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS**

HUGHES HUBBARD & REED LLP

Daniel H. Weiner, Esq.
Marc A. Weinstein, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Email: daniel.weiner@hugheshubbard.com
Email: marc.weinstein@hugheshubbard.com
Fax: (212) 299-6874
Fax: (212) 299-6460

*Attorneys for Defendant Darren K. Indyke*

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel S. Ruzumna, Esq.
Tara J. Norris, Esq.
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email: druzumna@pbwt.com
Email: tnorris@pbwt.com
Fax: (212) 336-1205
Fax: (212) 366-1297

*Attorneys for Defendant Richard D. Kahn*

Defendants Darren K. Indyke and Richard D. Kahn (together, the "Co-Executors"), the co-executors of the Estate of Jeffrey Epstein (the "Estate"), submit this memorandum of law in opposition to Plaintiffs' motion for sanctions against the Co-Executors' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. No. 45).

## PRELIMINARY STATEMENT

In their quarter-hearted effort to distract the Court via a tit-for-tat Rule 11 motion, Plaintiffs' counsel ignore both the facts and the law. The Co-Executors' well-grounded Rule 11 motion is not sanctionable, and Plaintiffs' counsel do not appear interested in proving otherwise. They cite no case law sanctioning any attorney for filing a Rule 11 motion that challenges an attorney's good-faith basis for filing a complaint premised on claims that have been expressly "release[d] and forever discharge[d]." Instead, Plaintiffs' counsel attempt to justify — however weakly — their considered decision to disregard *releases that they themselves negotiated and signed*, based on unsupported allegations of fraud and an untenable procedural ground — *i.e.*, that the Court should not consider Plaintiff Danielle Bensky's release and the other 187 releases (collectively, the "Releases") when considering the Co-Executors' motion to dismiss the Complaint because those Releases constitute an "affirmative defense."

Plaintiffs' counsel's position is without merit. By their Rule 11 motion, they seek to muddy the waters surrounding their own frivolous conduct, drawing a false equivalence between their decision to file a baseless Rule 11 motion and the Co-Executors' effort to hold them accountable for their cavalier disregard of the Releases.

But the Court and Plaintiffs' counsel cannot simply ignore the Releases signed by Ms. Bensky and 187 other women, who together received over $163 million in compensation from the Estate in return for fully and finally discharging their claims against the Estate, the Co-Executors and others.[1]  The Co-Executors' Rule 11 motion seeking to hold Plaintiffs' counsel accountable for filing Ms. Bensky's claims and the class claims without a good-faith basis is not sanctionable; to the contrary, the Co-Executors' motion is the appropriate mechanism to deter such frivolous conduct.

## ARGUMENT

**I.  FILING THE COMPLAINT AFTER THEIR CLIENT EXPRESSLY RELEASED HER CLAIMS IS FRIVOLOUS.**

Plaintiffs' counsel complain that the Co-Executors "fail[] to cite a single case sanctioning a party for filing claims barred by a release."  (Pls.' Mem. at 1.)  The paucity of decisions addressing this issue is unremarkable:  no responsible counsel would file his or her client's claims after negotiating and co-signing a binding release of those very claims.  In the extremely rare instances where counsel did file claims in the face of releases, courts have not hesitated to impose Rule 11 sanctions.  *See, e.g.*, *Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 957 (E.D. Cal. 2012) (where plaintiff and defendant entered into agreement that released state law claims that plaintiff subsequently asserted in his complaint, court imposed Rule 11 sanctions on plaintiff for

---

1.  Each of these women presumably also shared in $365 million in settlement payments made by JPMorgan Chase and Deutsche Bank in separate litigations in this Court.  *See Doe 1 v. JPMorgan Chase Bank*, N.A., 22-cv-10019 (JSR), 2023 WL 3945773 (S.D.N.Y. June 12, 2023); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023).

2

his "frivolous" claims); *White v. Gen. Motor Corp.*, 126 F.R.D. 563, 565 (D. Kan. 1989), *aff'd in part, vacated in part*, 908 F.2d 675 (10th Cir. 1990) (imposing Rule 11 sanctions on plaintiff's attorneys who were aware of agreement releasing the claims asserted by plaintiff; court noted, "it appears that plaintiffs' attorneys proceeded to file the complaint as if no releases existed, despite the fact that they had been put on notice of their existence.")  Here, it is uncontested that both Mr. Boies and Ms. McCawley were well aware of Ms. Bensky's signed release:  Mr. Boies negotiated the language of that release, and Ms. McCawley signed it.  (*See* Defs.' Mem. in Supp. of Mot. for Rule 11 Sanctions ("Defs.' Rule 11 Mem."), Dkt. No. 33, at 3-5, 15-19.)  And the Co-Executors explicitly reminded Plaintiffs' counsel of Ms. Bensky's release and informed them of the 187 other Releases before they filed this action.  (Aff. of Daniel H. Weiner ("Weiner Aff."), Dkt. No. 34, Ex. 10.)

Plaintiffs' counsel make a feeble attempt to justify filing claims expressly barred by the Releases, arguing that "a plaintiff has no obligation to anticipate affirmative defenses in a complaint."  (Pls.' Mem. at 3.)  But that argument is irrelevant here.  Mr. Boies and Ms. McCawley cannot pretend that they were unaware of Ms. Bensky's release, or that they failed to anticipate that it would apply to the Complaint.  On January 5, 2024, the Co-Executors sent both Mr. Boies and Ms. McCawley a detailed, 10-page letter with documentary exhibits (including Ms. Bensky's signed release), and cautioned them that they could face Rule 11 sanctions if they filed this action.  (Weiner Aff. Ex. 10.)  Mr. Boies and Ms. McCawley filed the Complaint with full knowledge that Ms. Bensky's release barred her claims.

Plaintiffs' suggestion that the Federal Rules of Civil Procedure allow an attorney to knowingly file a pleading that asserts previously released claims is as absurd as it is unworkable. Even if the existence of a release were only an affirmative defense and not also a jurisdictional defect, allowing plaintiffs to pursue released claims without limitation would void critical benefits to defendants in settling contested claims. There would be no certainty that the costs and potential consequences of future litigation could be avoided. This case poses a particularly striking example of those costs, since Plaintiffs have argued that the Co-Executors not only must incur the cost of briefing their pending Motion to Dismiss (Dkt. Nos. 29-31), but also that full-scale discovery should proceed on both Ms. Bensky's and the putative class's claims during the pendency of that Motion. If a defendant cannot avoid the costs of litigation and the burdens of discovery by settling claims in return for a binding, irrevocable release, the incentives for settling would largely disappear. Plaintiffs' position would undermine litigants' ability to resolve matters and clutter the courts with cases with little alternative but trial.

The case that Plaintiffs cite to suggest that their counsel were permitted to knowingly file frivolous claims even though those claims were barred by an "affirmative defense," *Bowling v. Johnson & Johnson*, 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019), states nothing of the kind. *Bowling* does not address the legal status of releases at all, and it certainly does not endorse Plaintiffs' bizarre proposition that a release has no impact on an attorney's Rule 11 obligations because it can be asserted as an affirmative defense. Rather, in *Bowling*, the Court (Nathan, J.) held that the plaintiff's covenant not to sue arising from a settlement agreement in an unrelated lawsuit *defeated class certification*; the

4

Court noted that, "[i]n cases where some putative class members have signed releases that may be applicable to their claims, courts have declined to certify a class on the grounds that an 'attack on the settlements or releases would clearly present individual issues as to the circumstances surrounding the obtaining of the release.'"  (*Id*. at *6.) *Bowling* does not suggest that Plaintiffs may initiate litigation on released claims at their counsel's whim.  Rather, that decision supports the Co-Executors' Rule 11 motion in that it confirms that the class action allegations in the Complaint lack legal support, since the existence and enforceability of the Releases are individual issues unsuitable for class adjudication.

## II.  FILING THE COMPLAINT BASED ON NO LEGAL AUTHORITY IS FRIVOLOUS.

Ms. Bensky's counsel assert that, "[p]rior to filing the Complaint, Plaintiffs' counsel researched the effects of the 'release' that the [Co-Executors'] Motion claims bars her claims."  (Pls.' Mem. at 3.)  But they do not describe any results of their supposed research, nor do they provide the Court with *a single case, treatise or other legal authority* supporting their untenable position in this action that a binding, irrevocable release has no legal effect.

Given the absence of any viable argument from Plaintiffs that Ms. Bensky's claims are not released, the Co-Executors' Rule 11 motion is neither frivolous nor sanctionable. To the contrary, it is squarely grounded in law and fact and should be granted.  Plaintiffs' suggestion that the Co-Executors should have reserved their arguments about the Releases for their pending Motion to Dismiss and not also brought a Rule 11 motion (Pls.'

Mem. at 4) has no support in law. Mere dismissal of claims that both Plaintiffs' counsel and the Co-Executors know cannot possibly lead to a judgment (because Ms. Bensky has already released her claims) would be cold comfort: substantial litigation costs have already been incurred and Plaintiffs have now served the Co-Executors with extremely onerous discovery requests. Rule 11 is intended precisely to deter counsel from creating situations like this.

### III.  FILING THE COMPLAINT IN THE ABSENCE OF FACTUAL SUPPORT IS FRIVOLOUS.

Plaintiffs' counsel also protest that the Co-Executors "misstate that Plaintiffs' only basis for their fraud claims was Defendant Kahn's deposition testimony in the *JP Morgan* case" and claim that their "bases for bringing this action are tied to various different facts that had been intentionally concealed by Defendants during the EVCP process. . . ." (Pls.' Mem. at 3.) But it will not do for Plaintiffs' counsel to magically invoke "various different facts" that purportedly support their clients' claims *without ever once describing what those supposed facts are*. It is not as if the Co-Executors didn't seek an explanation: over and over again before Plaintiffs' counsel filed this action, the Co-Executors specifically asked Mr. Boies and Ms. McCawley to particularize the purported factual basis for their claim that Ms. Bensky signed her January 31, 2021 EVCP Release because of some misrepresentation made to her by the Co-Executors. (*See* Weiner Aff. ¶ 17 and Ex. 10.) Even setting aside that Plaintiffs' counsel concede that Ms. Bensky never met or spoke with either of the Co-Executors (*id.*), the one and only thing that Plaintiffs' counsel have

ever pointed to on this issue is Mr. Kahn's deposition testimony taken in May 2023, more than 2 years <u>after</u> Ms. Bensky signed her Release.  (*See* Weiner Aff. Ex. 10 at 6.)

Plaintiffs' counsel offer nothing — not a single fact nor a single legal authority — to challenge the detailed showing that the Co-Executors could not have, and did not, procure Ms. Bensky's EVCP Release by fraud.  (*See* Defs.' Rule 11 Mem. at 13-16.)  Instead, they proffer the Hail Mary argument that the Co-Executors' "direct involvement in facilitating Epstein's criminal affairs after he was charged with sex crimes was unknown to the EVCP's participants at the time any releases were signed."  (Pls.' Mem. at 4.)  But even if that *ipse dixit* claim were true, the Releases expressly release the Co-Executors from any such claims:

> "*This General Release is all-encompassing* and is specifically made and given on the premise that any and all Claims by Releasor are hereby released and extinguished . . .
>
> *This General Release extends to released Claims that Releasor does not know or suspect to exist in her favor, which, if known by Releasor, would have materially affected her decision to enter into this General Release, and Releasor understands and agrees that she is releasing any and all such unknown or unsuspected Claims in Releasees' favor.*"

(Weiner Aff. Ex. 5 (EVCP Release at 1-2) (emphasis added).)

Given the unambiguous language of the Releases, and Plaintiffs' counsel's inability to articulate a single coherent argument in favor of disregarding those Releases, the Co-Executors' Rule 11 motion is not frivolous and their counsel should not be sanctioned.

## CONCLUSION

For the forgoing reasons, the Court should deny Plaintiffs' Rule 11 motion.

Dated: New York, New York  Respectfully submitted,
April 19, 2024

HUGHES HUBBARD & REED LLP
*Attorneys for Defendant Darren K. Indyke*

By: */s/ Daniel H. Weiner*
 Daniel H. Weiner
Marc A. Weinstein
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Email: daniel.weiner@hugheshubbard.com
Email: marc.weinstein@hugheshubbard.com

PATTERSON BELKNAP WEBB & TYLER LLP
*Attorneys for Defendant Richard D. Kahn*

By: */s/ Daniel S. Ruzumna*
 Daniel S. Ruzumna
Tara J. Norris
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email: druzumna@pbwt.com
Email: tnorris@pbwt.com