## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Danielle Bensky and Jane Doe 3,
individually and on behalf of all
others similarly situated,

      Plaintiffs,                        CASE NO:      1:24-cv-01204-AS

v.

Darren K. Indyke and Richard D. Kahn,

      Defendants.

_____

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 11 MOTION

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 1

ARGUMENT ............................................................................................................ 4

    A.  Defendants' motion abuses Rule 11 to inappropriately challenge the merits of the
        Complaint........................................................................................................ 4

    B.  No grounds for sanctions exist where Plaintiffs' claims are predicated on
        nonfrivolous grounds. ...................................................................................... 6

        1.  Plaintiffs' position that the EVCP Agreement should be invalidated due to
            Defendants fraud is nonfrivolous. .............................................................. 6

        2.  Plaintiffs' position that Defendants failed to provide required consideration to
            support a covenant not to sue is nonfrivolous. ........................................... 8

            a.  Ms. Bensky executed a covenant not to sue with Defendants for claims
               unavailable at the time of entering into the EVCP Agreement........................ 8

            b.  Covenants not to sue require consideration. ..................................................... 9

            c.  Defendants did not pay valid consideration to Plaintiffs and therefore the
               EVCP Agreements are non-binding............................................................. 10

        3.  Plaintiffs claim that any alleged releases regarding Defendants in the personal
            capacity do not apply is nonfrivolous. ....................................................... 11

        4.  Because Plaintiffs have valid, nonfrivolous positions supporting their claims
            against Defendants, sanctions cannot be warranted.................................... 13

CONCLUSION....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Archie Comic Publications, Inc. v. Decarlo*,
 2000 WL 1731341 (S.D.N.Y. Nov. 21, 2000) ......................................................................... 5

*Bell v. SL Green Realty Corp.*,
 2021 WL 516575 n.1 (S.D.N.Y. Feb. 11, 2021) ...................................................................... 7

*Benedict v. Amaducci*,
 1993 WL 87937 (S.D.N.Y. Mar. 22, 1993) ........................................................................... 10

*Berweger v. Cnty. of Orange*,
 121 F. Supp. 2d 334 (S.D.N.Y. 2000)..................................................................................... 14

*Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*,
 2024 WL 989841 (S.D.N.Y. Mar. 7, 2024) ............................................................................. 7

*Cahill v. Regan*,
 5 N.Y.2d 292 (1959) ............................................................................................................... 12

*Clinton Street Food Corp.*,
 254 B.R. 523 (Bankr. S.D.N.Y. 2000) .................................................................................... 12

*Colton v. New York Hosp.*,
 414 N.Y.S.2d 866, 873 (Sup. Ct. 1979).................................................................................... 9

*E. Gluck Corp. v. Rothenhaus*,
 252 F.R.D. 175 (S.D.N.Y. 2008) .................................................................................. 4, 5, 13

*Fishoff v. Coty Inc.*,
 634 F.3d 647 (2d Cir. 2011).................................................................................................... 14

*Glodek v. Kadmon Holdings, LLC*,
 2017 WL 1384210 (N.Y. Sup. Ct. Apr. 18, 2017)................................................................... 15

*Huang v. Llerena-Salazar*,
 203 N.Y.S.3d 341 (2023) ........................................................................................................ 12

*In re Actrade Fin. Techs., Ltd.*,
 424 B.R. 59 (Bankr. S.D.N.Y. 2009)....................................................................................... 12

*In re Roman Cath. Diocese of Rockville Ctr., New York*,
 650 B.R. 58 (Bankr. S.D.N.Y. 2023)....................................................................................... 15

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
 481 F. Supp. 2d 253 (S.D.N.Y. 2007)........................................................................................ 7

*Jawbone, LLC v. Donohue*,
2002 WL 1424587 (S.D.N.Y. June 28, 2002) ........................................................ 4

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2002).......................................................................... 6, 14

*Lee v. Grand Sichuan E.* (N.Y.) Inc.,
2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ....................................................... 5

*Lucent Technologies, Inc. v. Gateway, Inc.*,
470 F. Supp. 2d 1195 (S.D. Cal. 2007)........................................................... 13

*Mangini v. McClurg*,
24 N.Y.2d 556 (1969) ................................................................................... 12

*Marcus v. W2007 Grace Acquisition I, Inc.*,
203 F. Supp. 3d 332 (S.D.N.Y. 2016)............................................................. 14

*Mareno v. Rowe*,
910 F.2d 1043 (2d Cir. 1990).......................................................................... 6

*Pegram v. Herdrich*,
530 U.S. 211 (2000)..................................................................................... 10

*Rubenstein v. Live Nation Ent.*,
272 F. Supp. 3d 544 (S.D.N.Y. 2017).............................................................. 14

*Sacerdote v. New York Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021). ............... 10

*Salvini v. ADVFN PLC*,
2016 WL 1703414 (S.D.N.Y. Apr. 27, 2016)..................................................... 14

*Silverman v. Town of Riverhead*,
2008 WL 11449317 (E.D.N.Y. Sept. 11, 2008), *report and recommendation adopted*,
2008 WL 11450630 (E.D.N.Y. Sept. 29, 2008) ................................................. 4

*Tantaros v. Fox News Network LLC*,
2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018) .................................................... 14

*W. Chelsea Buildings, LLC v. United States*,
109 Fed. Cl. 5 (2013), *aff'd* No. 13-5066 (Fed. Cir. Feb. 12, 2014)...................... 9

*Wade Park Land Holdings, LLC v. Kalikow*,
589 F. Supp. 3d 335 (S.D.N.Y. 2022), *amended*, 2022 WL 2479110 (S.D.N.Y. July 6,
2022) ........................................................................................................ 9

*Weiss v. Equifax, Inc.*,
    2020 WL 3840981 (E.D.N.Y. July 8, 2020) ........................................................................ 7

**Other Authorities**

Jacob Shamsian, *Jeffrey Epstein's estate prevented his victims from suing Ghislaine Maxwell*, Business Insider, https://www.businessinsider.com/jeffrey-epstein-victims-compensation-program-accusers-cant-sue-ghislaine-maxwell-2021-12 (Dec. 15, 2021) .......................................................................................................................... 3

Politico, *Did Jeffrey Epstein's Victims Fund Protect His Allies?*,
    https://www.politico.com/news/magazine/2021/10/01/jeffrey-epstein-victim-fund-ken-feinberg-511829 (Oct. 1, 2010) .......................................................................... 2

Plaintiffs Danielle Bensky and Jane Doe 3, individually and on behalf of all others similarly situated, by and through undersigned counsel, oppose Defendants' Motion for Rule 11 Sanctions (ECF No. 32) and respond as follows.

## INTRODUCTION

Jeffrey Epstein's right-hand men, Defendants Darren K. Indyke and Richard D. Kahn, have moved for sanctions in a desperate attempt to silence Plaintiffs and the putative Class for seeking to hold them accountable for their roles as the indispensable leaders of Epstein's sex-trafficking enterprise.  As the Complaint sets forth, Indyke and Kahn, Epstein's personal lawyer and accountant, respectively, personally participated in Epstein's sex-trafficking enterprise from approximately 1995 onward and reaped multi-million-dollar rewards for their participation.  After Epstein's death, Indyke and Kahn were named co-executors of Epstein's Estate.  Defendants concealed their personal involvement in the sex-trafficking venture for years; however, they have since been exposed as part of Epstein's innermost circle, and key facilitators of sex trafficking.

Defendants' motion for sanctions is meritless and itself deserving of sanctions.  *See* ECF No. 44.  The motion wrongly speculates about, misstates, and ignores the bases of the Complaint, and misstates Plaintiffs' Rule 11 obligations.  Rather than having bona fide grounds under Rule 11, Defendants' motion is itself filed with the improper purpose of threatening, harassing, and intimidating Plaintiffs and their counsel.  The motion misstates Plaintiffs' position and ignores law that supports Plaintiffs' claims.  It should be denied in its entirety.

## BACKGROUND

Two days before Epstein's sudden death, on August 8, 2019, Epstein executed a last will and testament appointing Indyke and Kahn as the executors of his Estate.  Epstein died suddenly on August 10, 2019, while under indictment for federal sex-trafficking charges.  Five days later, on August 15, 2019, Defendants executed oaths of willingness to serve as executors of the Estate.

As executors, Defendants have approved the release of Estate funds to pay for the legal fees and costs of other co-conspirators. Defendants are in sole control of the Estate and have been since his death. They are also administrators and co-trustees of The 1953 Trust, created by Epstein, who "amended and restated" its terms only two days before his death—the same day on which he revised his last will and testament. Epstein's last will and testament transferred all of his "property, real and wherever situated" to The 1953 Trust.

Faced with a barrage of civil litigation from Epstein's many victims, Defendants created the Epstein Victims' Compensation Program (EVCP) to handle each victim's claims more quickly. Defendants invited input from the victims' attorneys in the hopes they would ultimately choose to go through the EVCP rather than continue filing lawsuits against the Epstein estate. The EVCP ran for a little over a year between June 2020 and August 2021 before it came to a halt. While the EVCP issued roughly $125 million to some survivors, it offered small settlements or no money at all to others. *See* Politico, *Did Jeffrey Epstein's Victims Fund Protect His Allies?*, https://www.politico.com/news/magazine/2021/10/01/jeffrey-epstein-victim-fund-ken-feinberg-511829 (Oct. 1, 2010). Unlike many other victim funds, the EVCP did not receive any source of outside funding; it was initiated by Defendants as the overseers of Epstein's Estate, which was valued at $635 million in court filings after Epstein's death. *Id.* Lawyers and experts hired to administer the fund (by Defendants) were also compensated for their work out of the Estate's funds. *Id.*

The EVCP's claims administrator, Jordana Feldman, had autonomy over all aspects of the program except one: the form agreement requiring EVCP claimants to promise not to sue Epstein's Estate or co-conspirators ("EVCP Agreement"). Stylized as a "[g]eneral [r]elease," the EVCP Agreement purports to cover claims in a timespan ranging "from the beginning of the

world" up until the date of the Agreement's execution.  While the EVCP Agreement permitted victims to carve out individuals they intended to sue, they needed permission from the Estate's overseers—Indyke and Kahn—to do so.  *See* Ex. 1, Excerpt of Kahn Dep. Tr. 220:6–13 █████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████  And Defendants refused to permit victims to carve out certain of Epstein's key co-conspirators from the Agreement, such as Ghislaine Maxwell, Epstein's now-incarcerated madame.  *See* Jacob Shamsian, *Jeffrey Epstein's estate prevented his victims from suing Ghislaine Maxwell*, Business Insider, https://www.businessinsider.com/jeffrey-epstein-victims-compensation-program-accusers-cant-sue-ghislaine-maxwell-2021-12 (Dec. 15, 2021).  At base, Defendants themselves were the arbiters of who victims could carve out of the Agreement and still receive compensation for their abuse.

Those who acquiesced to Defendants' language in the EVCP Agreement, including Plaintiffs' counsel, and victims who signed it, including Ms. Bensky, all did so without knowing the full extent of Defendants' involvement in Epstein's sex-trafficking enterprise while Epstein was alive.  Had they known, Ms. Bensky and other Class Members would never have agreed not to sue Epstein's right-hand men; nor would Plaintiffs' counsel have agreed to Defendants' proposed language releasing themselves from liability—essentially, a "self-pardon."  Discovery will bear out, and the evidence will show, that Defendants fraudulently concealed their involvement and culpability with Epstein's sex-trafficking enterprise.

## ARGUMENT

No grounds for sanctions against Plaintiffs or their counsel exist here. *First*, Defendants are inappropriately attempting to use their Rule 11 filing to challenge the merits of Plaintiffs' Complaint. *Second*, Plaintiffs have several nonfrivolous legal grounds for bringing their Complaint against Defendants, including that the EVCP Agreement was procured by fraud, that it contained a covenant not to sue for unavailable claims for which valid consideration to Plaintiffs was not paid, and that any alleged releases regarding unknown claims were impermissibly vague. At any rate, the existence of a covenant not to sue or a release is an affirmative defense, which Plaintiffs had no obligation to plead around in their Complaint.

### A.    Defendants' motion abuses Rule 11 to inappropriately challenge the merits of the Complaint.

Defendants' motion for sanctions fails first and foremost because it improperly challenges the merits of the pleadings, and such arguments are not properly raised in a motion for sanctions. Courts in the Second Circuit recognize that "a Rule 11 sanctions motion "may not properly substitute for a motion to dismiss[.]" *Silverman v. Town of Riverhead*, 2008 WL 11449317, at *6 (E.D.N.Y. Sept. 11, 2008), *report and recommendation adopted*, 2008 WL 11450630 (E.D.N.Y. Sept. 29, 2008). The Advisory Committee's notes to Rule 11 itself recognize that Rule 11 "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11. Argument on the merits of a plaintiff's claims belongs in a motion to dismiss, not a Rule 11 motion. *See E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) ("The appropriateness of sanctions is distinct from the underlying merits of a claim . . . [O]n a Rule 11 motion, the Court will not evaluate the merits of the parties' claims and defenses."); *Jawbone, LLC v. Donohue*, 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (refusing to issue sanctions "without the benefit of discovery and a

4

thorough analysis of the merits of the case").  Indeed, this Court has enforced this principle by awarding costs to parties for having defend Rule 11 motions "wholly grounded in the merits" of other briefing and plainly filed to "bolster" such other filings.  *See e.g.*, *Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *3 (S.D.N.Y. Jan. 17, 2014).

Here, there can be no question that Defendants' motion is nothing more than a self-granted page extension of their pending motion to dismiss, labeled as a sanctions motion.  Defendants' memorandum of law contains approximately eleven pages of legal argument, *nine* of which are devoted to argument on the legal issue of whether Ms. Bensky's claims are barred by a release as opposed to whether sanctions are warranted.  Defendants repeat these same arguments in their pending motion to dismiss.  ECF No. 30.  Ultimately, Defendants ask the Court to decide the merits of Ms. Bensky's claims in their sanctions motion by ruling on whether her claims should be dismissed pursuant to a release, which is improper.  *See Rothenhaus*, 252 F.R.D. at 179.

Even if Defendants' motion were proper, the Court should defer ruling on it until the proceedings are over or, at the very least, the Court has ruled on Defendants' motion to dismiss. The Advisory Committee Note to the 1983 amendment to Rule 11 makes clear that "the time when sanctions are to be imposed rests in the discretion of the trial judge" and "normally will be determined at the end of the litigation" in the case of pleadings. *See also Archie Comic Publications, Inc. v. Decarlo*, 2000 WL 1731341, at *1 (S.D.N.Y. Nov. 21, 2000).  As Judge Kaplan explained, this "makes a good deal of sense," as it (1) "takes maximum advantage of the strong statistical likelihood of settlement of litigation by ensuring that courts spend their time deciding only those sanctions motions that ultimately *require* decision", and (2) "tends to keep the temperature between counsel at an acceptable level by averting the proliferation of *casi belli* during the course of the case." *Archie*, 2000 WL 1731341, at *1.  Defendants' motion for sanctions is

entirely premature and any such Rule 11 motion should only be brought after the proceedings are over and Plaintiffs have had the opportunity to present their case and, at the very least, fully respond to and argue Defendants' motion to dismiss.

**B.    No grounds for sanctions exist where Plaintiffs' claims are predicated on nonfrivolous grounds.**

Plaintiffs have taken no legal position that comes close to being sanctionable.  No grounds for sanctions exist and Defendants' motion is without basis.  "A pleading, motion or other paper violates Rule 11 . . . where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted). "To constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands."  *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990).

**1.    Plaintiffs' position that the EVCP Agreement should be invalidated due to Defendant's fraud is nonfrivolous.**

Plaintiffs' position that Defendants fraudulently concealed their involvement in Epstein's sex-trafficking enterprise from Plaintiffs and the Class is anything but frivolous.  As the Complaint describes, "[f]or many years, Indyke and Kahn intentionally concealed the extent of their personal involvement in the sex-trafficking venture including specific false denials of their role in the Epstein Enterprise, making themselves out to be mere outside advisors to Epstein—but . . . have since been exposed as part of Epstein's inner most circle, and key facilitators of sex trafficking." Compl. ¶ 11.  *See also Id*. at. ¶ 9 ("Defendants denied and concealed their personal involvement in the Epstein Enterprise to evade prosecution and civil liability from individuals such as Danielle Bensky and Jane Doe 3); *Id*. at ¶ 164 ("Defendants publicly and privately denied their role in the

6

Epstein Enterprise, including in March of 2020, when Defendants publicly, and falsely, denied allegations that they were an integral part of the Epstein Enterprise . . . Defendants' false denials included denials that were made, and conspired to be made, under oath).

Defendants argue that Plaintiffs were obligated to plead with particularity the facts supporting their argument that any release signed by Plaintiffs was invalidated by fraud. ECF No. 33 at 14. Not so. Plaintiffs were "not required to plead facts to negate the Release" because "[r]eliance on a contractual release is an affirmative defense." *Bur-Tex Hosiery, Inc. v. World Tech Toys, Inc.*, 2024 WL 989841, at *3 (S.D.N.Y. Mar. 7, 2024); *see also Bell v. SL Green Realty Corp.*, 2021 WL 516575, at *7 n.1 (S.D.N.Y. Feb. 11, 2021) ("To survive a motion to dismiss, a Complaint is not required to plead facts negating possible affirmative defenses[.]"); *Weiss v. Equifax, Inc.*, 2020 WL 3840981, at *1 (E.D.N.Y. July 8, 2020) ("[P]laintiff was not required to anticipate and negate this defense in his pleading."); *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) ("Defendants have the burden to plead the affirmative defense, by answer or by motion; the plaintiff is not required to allege facts to negate the affirmative defense.").

As a factual matter, Defendants erroneously contend that Plaintiffs' only basis for their fraud claims was Kahn's deposition testimony in the *Doe v. JP Morgan* case. *See* ECF No. 33 at 19. Nonetheless, even if that assertion were true (it is not), the gravity of Kahn's deposition testimony is appropriately determined in merits briefing rather than taken up as a part of a sanctions motion filed before Defendants' motion to dismiss has even been argued or affirmative defenses plead. Plaintiffs are fully prepared to prove the full factual basis of their argument that the release signed by Plaintiffs was procured by fraud and will do so at the proper procedural posture.

2.    **Plaintiffs' position that Defendants failed to provide required consideration to support a covenant not to sue is nonfrivolous.**

Although Defendants and the EVCP Agreement use the term "release" to describe all the legal effects of the EVCP Agreement, the document contains both releases and covenants not to sue.  With respect to claims the EVCP Class had at the time of the Settlement, the EVCP Agreement provided releases.  With respect to claims the EVCP Class did not have at the time of the Settlement – including the claims brought by Ms. Bensky and the Class in the present matter – the EVCP Agreement provided for covenants not to sue.  The distinction between a release and a covenant not to sue is significant, as unlike a release, a covenant not to sue requires proper consideration to be binding.  The EVCP Agreement facilitates consideration paid by the Estate to the victims of Epstein for certain covenants not to sue the Estate and its officers in their official capacity.  The EVCP Agreement does not explicitly or implicitly facilitate consideration paid by any party to secure covenants not to sue for officers of the Estate in their personal capacity.  Plaintiffs' suit against Defendants is related to their personal conduct pre-dating the Estate, and therefore the covenants not to sue that Defendants purport to rely upon are non-binding under New York law.  Accordingly, Ms. Bensky's claims are not subject to dismissal—and they are certainly not frivolous.

a.    **Ms. Bensky executed a covenant not to sue with Defendants for claims unavailable at the time of entering into the EVCP Agreement.**

When Ms. Bensky and other class members, entered the Settlement with Defendants, their purported "release" of claims "that Releasor does not know or suspect to exist" including "all such unknown or unsuspected Claims in Releasees' favor" (Ex. 2, EVCP Agreement at 2) represent covenants not to sue rather than releases.  Under New York law, a release differs from a covenant not to sue, as a "purported release of a duty that does not yet exist . . . is not a release but a promise

8

to discharge a duty in the future." *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 369 (S.D.N.Y. 2022) (citing Restatement (Second) of Contracts § 284 cmt. a (1981)), *amended*, 2022 WL 2479110 (S.D.N.Y. July 6, 2022).  "A purported release of a duty that is revived on the occurrence of a condition is not a release but a contract not to sue." *Id*.  Put another way, while [a] release is retrospective; a covenant not to sue, like any other covenant, is prospective." *Colton v. New York Hosp.*, 414 N.Y.S.2d 866, 873 (Sup. Ct. 1979).  That a covenant not to sue is stylized as a "release" or contains text "recit[ing] the familiar litany "release and forever discharge;" is "of no moment." *Id.*  (finding that agreement barring claims not in existence was covenant not to sue "notwithstanding its use of traditional words of release").

Here, claims brought by Plaintiffs through New York's Adult Survivors Act (Counts I–III) and under New York City's Victims of Gender-Motivated Violence Act (Count VII) were claims unavailable to Plaintiffs at the time of the Settlement and later revived on the occurrence of new legislation that provided a look-back period.  As such, with respect to those claims, Ms. Bensky and others entered into covenants not to sue rather than releases ("EVCP Covenants").

**b.    Covenants not to sue require consideration.**

The EVCP Covenants required valid consideration to be binding.  Under New York law, a covenant not to sue requires consideration.  *W. Chelsea Buildings, LLC v. United States*, 109 Fed. Cl. 5, 17 (2013), *aff'd* No. 13-5066 (Fed. Cir. Feb. 12, 2014). (describing a covenant not to sue as a "unique type of contract," but still one that requires the basic elements of a contract, *i.e.*, offer, acceptance, consideration, mutual assent, and intent to be bound).  The law is clear that covenants not to sue require valid consideration.  Here, the EVCP Covenants would only be binding if Defendants paid valid consideration to Plaintiffs, but the consideration paid by the Estate cannot be interpreted to support EVCP Covenants with respect to Defendants in their personal capacity

for their personal conduct outside their role as trustees of the Estate. Therefore, for that personal conduct, Defendants are not protected by the EVCP Covenants.

> **c.    Defendants did not pay valid consideration to Plaintiffs and therefore the EVCP Agreements are non-binding.**

In the EVCP Agreement, the Estate provided consideration for itself, its officers, its beneficiaries, and others tied to the Estate in their official capacity. However, both the Estate and Defendants failed to provide valid consideration to validate the covenants not to sue them in their personal capacity.

When the Estate paid consideration for the EVCP Agreement, the Estate only paid consideration on behalf of the following parties in their official capacity relating to the Estate:

> Co-Executors of the Estate of Jeffrey E. Epstein (the "Epstein Estate"), the Co-Trustees of The 1953 Trust, the Epstein Estate, any entities owned or controlled in whole or part by the Epstein Estate (the "Epstein Entities") and their respective current and former principals, officers, directors, stockholders, managers, members, partners, limited partners, trustees, beneficiaries, administrators, agents, employees, attorneys, predecessors, successors, assigns and affiliates, and any entities or individuals who are or have even been engaged by (whether as independent contractors or otherwise), employed by, worked in any capacity for, or provided any services to Mr. Epstein, the Epstein Entities or the Epstein Estate.

EVCP Agreement at 1–2.

The payments from the Estate to the EVCP victims for consideration can only be interpreted as for the benefit of the above individuals in their official capacities because the Estate has a fiduciary duty to act only in its beneficiaries' best interest. "'The most fundamental duty owed by the trustee to the beneficiaries of the trust is the duty of loyalty…. It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries.'" *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 283 (S.D.N.Y. 2018) (citing *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000)), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Benedict v. Amaducci*, 1993 WL 87937, at *4 (S.D.N.Y. Mar. 22,

1993) ("imposition of duty of undivided loyalty permits trustees to be granted broad discretion in managing trust affairs because of faith that they will always act in beneficiary's best interests"). Here, Defendants had a duty of loyalty to the beneficiaries of the Estate to act only in the Beneficiaries' best interest. Paying consideration to support covenants not to sue the co-executors in their personal capacity related to conduct for which the Estate would not be liable cannot not be in the Beneficiaries' best interest. Therefore, any consideration paid by the Estate cannot be interpreted as consideration to support such covenants.

Even if Defendants were to argue the Estate breached its fiduciary duty and in fact paid the consideration to support covenants not to sue Defendants personally, the text of the EVCP Agreement does not support such an extraordinary action by the Estate. The language of the EVCP Agreement does not specifically name Indyke and Kahn individually, but only describes them in the context of their duties as executors of the Estate. As such, any payments made by the Estate pursuant to the EVCP Agreement is not consideration for Plaintiffs' covenant not to sue Defendants in their personal capacity. Without valid consideration, the EVCP Covenants do not protect Defendants in their personal capacity. As such, Plaintiffs' claims are not barred from moving forward, let alone frivolous and subject to Rule 11 sanctions.

### 3. Plaintiffs claim that any alleged releases regarding Defendants in the personal capacity do not apply is nonfrivolous.

Even if the EVCP Agreement is not fraudulent and as it relates to Defendants personal liability is interpreted to be a release rather than a covenant not to sue, those releases would be invalid under New York law. Defendants contend that the language of the EVCP Covenants unequivocally bars unknown and future claims. This argument is wrong and, even if the Court were to agree, does not support imposing Rule 11 sanctions.

11

Defendants' argument is wrong under New York law.  "It is [] a firm principle of New York law that it is less likely that claims are covered by a general release if they are unknown at the time of the release." *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 72 (Bankr. S.D.N.Y. 2009) (citing *Clinton Street Food Corp.*, 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000)). "A release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made.'" *Huang v. Llerena-Salazar*, 203 N.Y.S.3d 341, 344 (2023) (citation omitted); *accord Mangini v. McClurg*, 24 N.Y.2d 556, 567–69 (1969).  The requirement of an 'agreement fairly and knowingly made' covers situations where because "the releasor has had little time for investigation or deliberation, or because of the existence of overreaching or unfair circumstances, it was deemed inequitable to allow the release to serve as a bar to the claim of the injured party." *Huang*, 203 N.Y.S.3d at 344; *see also In re Actrade Fin. Techs., Ltd.,* 424 B.R. at 69 ("[a]lthough the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed . . . its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given.  Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of." quoting *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959)).

In *Clinton Street Food Corp.*, the court, applying New York law, dealt with a release that was "[c]oncededly . . . quite broad, and look[ed] like it should embrace the Trustee's claims against [one of the defendants] . . . ." 254 B.R. at 534. Although the "final WHEREAS clause in the stipulation indicates the intention to enter into a global release of all claims, not just the claims asserted in the pending lawsuit," the Court nevertheless concluded that:

> The general release was given in the context of the settlement of a specific and entirely unrelated action . . . Nothing in the stipulation or the record of the earlier

lawsuit focuses on the specific issue in this litigation . . . This is not surprising. *The pending claims were unknown to the trustee* and hence not the subject of a dispute at the time, making it less likely they are covered by the release. In addition, it does not appear that the parties bargained over the auction claims, or that the estate received any additional consideration for releasing such potentially valuable claims. Thus, the Court denied the defendant's motion to dismiss based on the defense of release.

*Id.* (emphasis added; citation omitted); *see also Lucent Technologies, Inc. v. Gateway, Inc.*, 470 F. Supp. 2d 1195, 1202 (S.D. Cal. 2007) (applying New York law, court concluded that despite the facially broad language, the remaining portions of the agreement established an unambiguous context, that the parties were concerned only with a dispute over maintenance service overpayments, and that the release could not be construed to cover the patent infringement claims later at issue). Similarly here, the EVCP Agreement specifically contemplated the release of claims against the Estate and Defendants as its executors, but nothing in the context of the Agreement suggests that it was intended to cover Plaintiffs' claims against Defendants personally and individually as instrumentalities in Epstein's sex-trafficking enterprise while he was alive. Indeed, these claims were unknown to the Plaintiffs at the time, as Plaintiffs were not aware of their personal roles in the Epstein sex-trafficking venture until after the EVCP Agreement was signed. As such, the EVCP Agreement and any releases it purports to contain should not be interpreted to apply to Defendants' personal role in the Epstein sex-trafficking venture.

### 4. Because Plaintiffs have valid, nonfrivolous positions supporting their claims against Defendants, sanctions cannot be warranted.

As explained above, Plaintiffs' basis for bringing their suit is valid under existing law. By bringing a claim consistent with existing law, Plaintiffs' actions are not sanctionable. *E. Gluck Corp.*, 252 F.R.D. at 181.

Even if there were reasonable disagreement as to whether Plaintiffs' claims are valid under existing law, at a minimum Plaintiffs' claims represent a good-faith extension of the existing law.

The fact that a legal theory is novel or creative is not sanctionable. *Fishoff v. Coty Inc.*, 634 F.3d 647, 655 (2d Cir. 2011) (refusing to issue sanctions, noting that "[t]he fact that a legal theory is a long-shot does not necessarily mean it is sanctionable"); *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (denying motion for sanctions when "it is not completely inconceivable that a novel legal theory could have been developed"); *Tantaros v. Fox News Network LLC*, 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018) ("Nor will this Court impose sanctions on Plaintiff's counsel for asserting tenuous claims based on novel legal theories[.]"); *Rubenstein v. Live Nation Ent.*, 272 F. Supp. 3d 544, 547 (S.D.N.Y. 2017) (denying motion for sanctions because "Plaintiff's position, though a 'long-shot,' fell short of frivolity'"); *Salvini v. ADVFN PLC*, 2016 WL 1703414, at *4 (S.D.N.Y. Apr. 27, 2016) ("attempting to extend the law to a novel application is not an appropriate basis for sanctions").

Defendants' cases do not support an award of sanctions either. Courts in this Circuit have declined to issue sanctions in similar circumstances, even when those claims fail to survive a motion to dismiss. *See, e.g.*, *Berweger v. Cnty. of Orange*, 121 F. Supp. 2d 334, 348 (S.D.N.Y. 2000) (finding that plaintiff had "signed a valid release," but refusing to issue sanctions because the "suit was not frivolous, unreasonable, or without any justification"); *Marcus v. W2007 Grace Acquisition I, Inc.*, 203 F. Supp. 3d 332, 343 (S.D.N.Y. 2016) ("Although Plaintiffs' claims are indeed barred by the SPAs, their filings do not support a conclusion that their claims were clearly frivolous or were alleged in bad faith.").

Defendants make much of *In re Roman Cath. Diocese of Rockville Ctr., New York*, 650 B.R. 58, 72 (Bankr. S.D.N.Y. 2023), which is not a sanctions decision, where the court enforced a release for claims related to sexual violence. But, in that case, the court specifically found that "the claim that [Plaintiff] assert[ed] was not covered by the release was certainly not unknown—

it was completely within his knowledge." *Id.* In contrast, here, Plaintiffs will prove that their present claims were unknown at the time they executed the EVCP Agreements due to Defendants' failures to disclose material information during the negotiations process. Defendants also rely on *Glodek v. Kadmon Holdings, LLC*, 2017 WL 1384210, at *6 (N.Y. Sup. Ct. Apr. 18, 2017). In *Glodek*, while the court concluded that a release barred the plaintiffs' claim, the Court denied the motion for sanctions.

Finally, Defendants' motion exaggerates the risks of the Court accepting Plaintiffs' arguments, claiming that allowing this lawsuit to proceed would somehow "jeopardize all future victims' compensation funds." ECF No. 33 at 1 (citing as past examples funds involving the Catholic Church and sexual abuse of student athletes at USC, Michigan, and Baylor). Defendants do not explain how or why all victims' compensation would be at risk if Ms. Bensky were permitted to pursue her claims against Defendants—Defendants cannot seriously contend that they will attempt to claw back all funds the EVCP distributed, they do not explain what legal principles would permit them to do so, and they do not explain what would give them such authority given that they did not administer the EVCP. And, in any event, this case is factually unique from the examples Defendants provide, however, because Defendants' direct involvement in facilitating Epstein's criminal affairs after he was charged with sex crimes was unknown to the EVCP's participants at the time any releases were signed.

## **CONCLUSION**

Defendant's Rule 11 motion is baseless. It should be denied in its entirety.

DATED: April 22, 2024                          Respectfully submitted,

                                               /s/  *Sigrid McCawley*

                                               David Boies

Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com

Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com