# EXHIBIT L

NB9sDOEc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JANE DOES,

 4                    Plaintiffs,

 5          v.                              22 Civ. 10019 (JSR)

 6   JP MORGAN CHASE,

 7                    Defendant.

 8   ------------------------------x
                                           New York, N.Y.
 9                                         November 9, 2023
                                           4:15 p.m.
10
     Before:
11                          HON. JED S. RAKOFF,

12                                         District Judge

13                          APPEARANCES

14   BOIES, SCHILLER & FLEXNER LLP
          Attorneys for Plaintiffs
15   BY:  DAVID BOIES
          SIGRID S. MCCAWLEY
16
     EDWARDS POTTINGER LLC
17        Attorneys for Plaintiffs
     BY:  BRADLEY J. EDWARDS
18        BRITTANY HENDERSON

19   WILMER, CUTLER, PICKERING, HALE and DORR, LLP
          Attorneys for Defendant
20   BY:  ALAN SCHOENFELD
          FELICIA H. ELLSWORTH
21
     ALSO PRESENT:
22   JAMES W. GRAYSON
     Office of the Attorney General (New Mexico)
23
     TRAVIS W. ENGLAND,
24   Office of the Attorney General (New York)

25   SIMONE LELCHUK, Claims Administrator
```

NB9sDOEc

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE DEPUTY CLERK:  Will the parties draw a microphone |
| 3 | close to them and identify themselves for the record. |
| 4 | MR. BOIES:  Good afternoon, your Honor. |
| 5 | David Boies of Boies Schiller Flexner. |
| 6 | With me today, I have my partner Sigrid McCawley. |
| 7 | THE COURT:  Good afternoon. |
| 8 | MR. EDWARDS:  Good afternoon, your Honor. |
| 9 | Brad Edwards of the law firm Edwards Henderson |
| 10 | Lehrman, here today with my law partner, Brittany Henderson. |
| 11 | THE COURT:  Good afternoon. |
| 12 | MR. SCHOENFELD:  Good afternoon.  Alan Schoenfeld and |
| 13 | Felicia Ellsworth for JP Morgan chase. |
| 14 | THE COURT:  Good afternoon. |
| 15 | MR. GRAYSON:  Good afternoon, your Honor.  James |
| 16 | Grayson on behalf of amicus, the State of New Mexico, and with |
| 17 | me is Travis England. |
| 18 | James Grayson from the State of New Mexico for the |
| 19 | State of New Mexico as amicus and on behalf of the amici |
| 20 | states, and with me at counsel table is Travis England from the |
| 21 | New York Attorney General's office. |
| 22 | THE COURT:  Good afternoon. |
| 23 | All right.  Please be seated.  Let me mention at the |
| 24 | outset, I have a jury deliberating in another matter.  So if |
| 25 | they come in with a note or a verdict, we'll have to interrupt |

NB9sDOEc

```
 1    to take that.
 2              So a number, not many, but a number of objections have
 3    been raised to the proposed final settlement.  I guess the
 4    first person I would like to hear from is the objectors from
 5    the various state attorney general's office.
 6              Let me hear first from counsel.
 7              MR. GRAYSON:  Your Honor, do you mind if I use the
 8    podium?
 9              It appears to have a microphone.
10              THE COURT:  Please.
11              MR. GRAYSON:  Good afternoon, your Honor.
12              Your Honor, the states in this case wrote to the court
13    and alerted the court to an issue in the settlement because the
14    states have noticed a concerning trend in civil settlements in
15    which release language is drafted in a very broad way between
16    private parties that purports to relate to claims of soverance.
17    That is of particular concern in this case, your Honor, to the
18    state attorney general that have appeared before the court as
19    amici because of the relative novelty of the Trafficking
20    Victims Protection Act, and in particular Section 1595(d) of
21    that Act which has not yet been interpreted by the courts.
22              As a result this is a situation, your Honor, where --
23              THE COURT:  Well, when this and the related Deutsche
24    Bank case were first brought, the government of the Virgin
25    Islands promptly brought a parallel action which, of course,
```

NB9sDOEc

| | |
|---|---|
| 1 | was consolidated with this and resolved by settlement. |
| 2 | I don't recall that any of the signatory states to |
| 3 | your letter brought any action. |
| 4 | MR. GRAYSON:  No, your Honor.  There have been no |
| 5 | actions filed. |
| 6 | THE COURT:  So why not? |
| 7 | If you're really concerned about this, and this was |
| 8 | not exactly a secret, it was a well-publicized litigation, it |
| 9 | went on for some months before it was resolved.  The government |
| 10 | of the Virgin Islands received favorable rulings from this |
| 11 | court.  It was able to proceed, and you guys sat on your hands |
| 12 | and now you want to object to the settlement. |
| 13 | MR. GRAYSON:  Well, your Honor, the states, the |
| 14 | attorneys general that appeared before the court, object on |
| 15 | public policy grounds to this language. |
| 16 | In addition to that, I can inform the court that the |
| 17 | State of New Mexico has an ongoing investigation into the |
| 18 | matter.  We do have a tolling agreement with the defendants in |
| 19 | this case, and so the State of New Mexico does have that |
| 20 | separate interest. |
| 21 | But the attorneys general -- |
| 22 | THE COURT:  Do any of the other states? |
| 23 | MR. GRAYSON:  I'm not aware of that, your Honor. |
| 24 | But the attorneys general, your Honor, they appear |
| 25 | before you to express a public policy concern because in this |

NB9sDOEc

```
 1   situation, the language --
 2          THE COURT:  It's always good that a state is
 3   expressing a public policy as opposed to some personal
 4   interest.
 5          What else is there for a state to express but a public
 6   policy?
 7          MR. GRAYSON:  That's true, your Honor.
 8          THE COURT:  Right.
 9          MR. GRAYSON:  It was true.
10          I think the state's concern is the breadth of the
11   language in the settlement.  So Section 1.25 of the settlement
12   it relates to, first of all, claims is how it starts and its
13   claims on behalf of victims, and including those brought by any
14   sovereign or government and relating to the matters raised in
15   this case.
16          THE COURT:  Yes, but there is also language "to the
17   maximum extent allowable under law," which would seem to mean
18   that if you feel you still have a legal basis for proceeding,
19   then it's not precluded.
20          MR. GRAYSON:  Certainly that's true, your Honor.
21   Certainly the states can bring an action.
22          I think there are two things that concern the states.
23   One is that, essentially, if this language is of no force and
24   effect, it is curious why the defendants want to keep it in the
25   settlement.
```

NB9sDOEc

1          And the second is, under the *Baldwin* opinion, your

2   Honor, what happened in *Baldwin* was very different from what

3   happened here.  In *Baldwin*, the states brought what the court

4   found to be very much salacious litigation to essentially

5   increase the amount of federal settlement, and the defendants

6   in that case filed an injunction against the states in this

7   district and in New York.

8          The case ultimately ended up in the Second Circuit,

9   but I think, your Honor, that shows that --

10          THE COURT:  Yes, I've heard of that.  Yes.

11          MR. GRAYSON:  Yes, your Honor.

12          I think that case shows that this is relevant for

13   purposes of the court's approval of the settlement today,

14   because ultimately what could happen is that JP Morgan could

15   file an injunction down the road if it believes that a state

16   will file a claim in another district or another jurisdiction.

17   This is not an advisory matter.  It's not a matter to be

18   decided by another jurisdiction.  It is actually of relevance

19   to this court's approval of the settlement.

20          THE COURT:  Well, why do you have standing at all to

21   assert this objection?

22          MR. GRAYSON:  Your Honor, I think a standing was

23   raised in the defendant's response to the state's letter.

24   Standing, your Honor, from the state's perspective, that is not

25   an issue because we're not seeking to intervene.  We are not

NB9sDOEc

1    seeking to acquire standing for purposes of filing an appeal.

2            We are appearing as friends of the court to alert the

3    court to a concern that we have about a provision in the

4    settlement that conflicts with the Trafficking Victims

5    Protection Act.

6            THE COURT:  Well, I'm always glad to have some

7    friends.  My wife will be quite surprised, but there it is.

8            What about the argument that the class members

9    substantively have every right to release any claim by the

10   state.  They are getting here a very large settlement.  My

11   understanding is that it works out, per capita, something like

12   a million dollars per victim, if it were to be allocated across

13   the board.

14           In return for getting a million bucks, why shouldn't

15   the class members say, I don't want anything further that the

16   state might be able to get me, some states might be able to get

17   me.

18           MR. GRAYSON:  Your Honor, that's a question that

19   arises from the defendant's response.  Unlike the *Chapman* case,

20   the *Chapman v. TriStar* case that decided in the response, the

21   states here, as I mentioned, do not seek to intervene.  We do

22   not seek to object to the terms of the settlement, with the

23   exception of this release language, and that is because this

24   release language doesn't actually affect the plaintiffs.

25           In the defendant's response, they mention that their

NB9sDOEc

1    concern is with double recovery.  But this language goes far

2    beyond that.  The states have no interest in seeking double

3    recovery and couldn't recover it if they wanted to.  Courts

4    will impose an offset if there were to be a recovery.

5            Your Honor, under the TBPA, Section 1595(d) creates an

6    independent action on the part of the states and it's not an

7    action for the victim.  So this is not a derivative claim.

8            THE COURT:  That's true, but that's why I ask whether

9    anyone brought any action, because the Virgin Islands alleged

10   that they had a particular need for their action because so

11   much of the alleged misconduct of Mr. Epstein had occurred in

12   the Virgin Islands.  He had a private island there that he used

13   for his alleged terrible misconduct.

14           So here, most of the amici have not even brought

15   investigations, as to your knowledge at least, and in your case

16   there is a pending investigation, but I totally agree that

17   applies.  So I'm not quite sure whether this is more than just

18   a hypothetical.

19           MR. GRAYSON:  Your Honor, it's more than a

20   hypothetical because the states not only could have -- not only

21   could bring an action against the defendants in this case, but

22   the states could bring actions down the road under the TBPA.

23   And it's important to establish, your Honor, that in this

24   settlement between private parties -- and this is something the

25   defendants essentially concede, and this is on page five of the

NB9sDOEc

1   response -- on page six they say, the bottom line is simple,

2   and then on page five they say that it's unremarkable to say

3   that private parties cannot release the claims of a

4   governmental entity.

5          That's precisely the point here, your Honor, is what

6   they are trying to do -- and there is no incentive on the part

7   of the plaintiffs to object to a term like this, if that is

8   something that the defendants want as between private parties.

9   The plaintiffs simply want to settle, and the attorneys general

10  certainly support the settlement for them.  The attorneys

11  general want them to receive the recovery that they are

12  entitled to and without delay.

13         But the defendants are slowing throwing this term in,

14  essentially, and it was thrown in while the action was pending

15  against the *United States v. Virgin Islands*.  There was

16  knowledge --

17         THE COURT:  Well, what does any defendant want in a

18  class action?

19         They want to end the matter, to have final resolution,

20  to the extent that the plaintiffs are able to give it to them.

21  And here the plaintiffs are saying, to the extent we have the

22  power to release these claims, we do.

23         So why isn't it perfectly natural for the defendants

24  to want that kind of resolution if they are paying

25  $290 million?

NB9sDOEc

| | |
|---|---|
| 1 | MR. GRAYSON: Well, your Honor, the bottom line is |
| 2 | that the private parties don't have that authority. So what |
| 3 | the defendants are asking the private -- |
| 4 | THE COURT: If they don't have that authority, then |
| 5 | you don't have a problem because of the language they mentioned |
| 6 | earlier, which is that the release only releases claims "to the |
| 7 | maximum extent allowable under law." |
| 8 | MR. GRAYSON: That's correct, your Honor. |
| 9 | Your Honor -- |
| 10 | THE COURT: I apologize profusely, but my boss here |
| 11 | says we have a jury verdict in the criminal case. |
| 12 | So why don't you all just go to the back of the |
| 13 | courtroom and I'll be with you shortly. |
| 14 | MR. EDWARDS: Your Honor, should we remove our stuff? |
| 15 | THE COURT: Yes. |
| 16 | THE DEPUTY CLERK: Please move it forward so no one |
| 17 | takes it by accident. |
| 18 | THE COURT: Don't leave any of the $290 million on the |
| 19 | table. |
| 20 | (Recess) |
| 21 | It appears everyone is back. No one accidentally went |
| 22 | into the cell block. |
| 23 | So we are ready to continue. |
| 24 | MR. GRAYSON: Thank you, your Honor. |
| 25 | I believe your Honor left with the question why can't |

NB9sDOEc

1    the defendants ask for it.  And the answer, your Honor, is

2    Rule 23.

3            Rule 23 requires that the settlement be reasonable and

4    fair, and as part of this court's review, the court reviews the

5    breadth of the release.  And so if a defendant asks a

6    plaintiff, a defendant can certainly ask a plaintiff why don't

7    you release all claims forever.  They can ask, but that's not

8    an acceptable release under Rule 23.  It has to be for the

9    claims that are broad or it has to be an identical actual

10   predicate of those claims.

11           The same is true here, your Honor.  No force and

12   effect under the law, so they can't ask the plaintiffs to

13   release a sovereign claim under 1595(d).  These are independent

14   claims.  They are not claims derivative of victims claims.

15   These are claims on behalf of the states --

16           THE COURT:  Again, I come back, if that's the case,

17   why aren't they fully preserved by the terms of the settlement?

18           MR. GRAYSON:  Well, your Honor, the states do take the

19   position that this language is of no force and effect, but

20   because that of, your Honor, the language should simply be

21   stricken from the settlement.

22           THE COURT:  All right.  Well, let me hear from counsel

23   for the parties.

24           MR. GRAYSON:  Thank you, your Honor.

25           THE COURT:  Thank you.

NB9sDOEc

1          MR. SCHOENFELD:  May I?

2          MR. BOIES:  Sure.

3          MR. SCHOENFELD:  Thanks very much, your Honor.  Alan

4    Schoenfeld for JP Morgan chase.

5          First, I think Mr. Grayson from the New Mexico

6    Attorney General's Office acknowledged the attorneys general

7    here are here as amici and not as objectors, as they profess in

8    their letter.

9          THE COURT:  I'm always glad to get whatever help I

10   can.

11         MR. SCHOENFELD:  Absolutely glad to be able to clarify

12   the issue now.  The issue is about the scope of the release.

13   It does affect their ability to appeal from any order of the

14   court granting final approval.

15         I think, your Honor --

16         THE COURT:  Well, that, of course, is a question for

17   the other court that was referred to.

18         MR. SCHOENFELD:  Your Honor is entirely right.  This

19   may not be a concern.  This issue may or may not arise.  If it

20   arises, it will arise --

21         THE COURT:  No.  Even though they want this language

22   stricken, isn't actually to their benefit to have this language

23   in there, because it makes clear that, by implication, that

24   there may well be something out there that can be brought such

25   as the actions they contemplate.

NB9sDOEc

1          MR. SCHOENFELD:  I'll leave it to Mr. Grayson to say

2     whether it is or is not.

3          But your Honor is aware of the context which this

4     arose.  *U.S. Virgin Islands* asserted claims that we argued or

5     forms of relief which we argued were unavailable under 1595(d)

6     because they are not parens patriae quasi-sovereign interest

7     being vindicated, instead were relief that the U.S. Virgin

8     Islands sought on the individual victims of Mr. Epstein.

9          In that respect, this release language is meant to do

10     no more than make clear that sovereigns, when they purport to

11     sue for recovery on behalf of particular victims, JPMC is

12     released of those claims, and the soverance can't do that

13     whether under 1595(d) or any other theory.

14          So I think the main points are, number one, it's a

15     hypothetical concern.  This issue only arises if and when JP

16     Morgan Chase asserts affirmative defense of release in some

17     other matter.

18          Number two, as your Honor correctly pointed out, there

19     is important language in there cabining this to only being

20     enforceable to the maximum extent allowable by law.  But even

21     more than that, the language itself is fully lawful.  The

22     Second Circuit's decision in *Baldwin* makes that point entirely

23     clear.  It says in that case, as Mr. Grayson described, Judge

24     Bryant entered a post-settlement injunction against the states,

25     and the post-settlement injunction would have barred the states

NB9sDOEc

 1    from bringing state law claims derivative of the plaintiffs

 2    rights.  And the court said that is perfectly fine.

 3         Were it not the case, the finality of virtually any

 4    class action involving pendent state claims could be defeated

 5    by subsequent suits by the states asserting rights derivative

 6    of those released by the class members.  All JP Morgan Chase is

 7    looking for here, as your Honor pointed out, is final

 8    resolution of the claims brought by or in respect of these

 9    class members.

10         The last point I'll make, your Honor, is Mr. Grayson

11    pointed to 1595(d).  That is a parens patriae statute, as this

12    court is very well aware presiding over the Virgin Islands

13    case.  When a state or territory sues parens patriae, they are

14    limited to relief for quasi-sovereign injuries.  Quasi-

15    sovereign injuries are not injuries brought on behalf of the

16    individual residents of the island or other territory.  They

17    are injuries to the sovereign itself.

18         That makes that clear, and all the cases that your

19    Honor is familiar with make that clear.  When this issue has

20    arisen in other cases, courts very carefully parsed between

21    sovereign and non-sovereign claims.  The New Mexico case is a

22    very good example of that.  If this issue arises and there is a

23    dispute about whether a form of relief an Attorney General

24    seeks to advance or seeks to recover is either sovereign or

25    non-sovereign, in the sense that it is trying to get relief on

NB9sDOEc

|   |   |
|---|---|
| 1 | behalf of or in respect of any particular member of the class, |
| 2 | the court can adjudicate the issue at that time. |
| 3 | This shouldn't and hasn't arisen in this context.  As |
| 4 | your Honor pointed out, there is no reason to believe it's |
| 5 | going to.  It's speculative, it's lawful, and it should be |
| 6 | enforced as part of the release of the class members. |
| 7 | THE COURT:  All right.  Is there anything plaintiffs |
| 8 | counsel wanted to say? |
| 9 | MR. BOIES:  Very briefly, your Honor.  I'm not sure |
| 10 | that there is any real dispute here. |
| 11 | The attorney generals have said that they are not |
| 12 | seeking to preserve claims on behalf of the victims only, |
| 13 | independent claims, and we made clear on the record, I did and |
| 14 | counsel for JP Morgan agreed, that at the preliminary approval |
| 15 | stage, that those claims, the independent claims were not being |
| 16 | affected. |
| 17 | So I think that what the preservation does, at least |
| 18 | if there is any ambiguity about the language, both counsel for |
| 19 | JP Morgan and we have clarified that on the record. |
| 20 | THE COURT:  Anything else that the attorney generals |
| 21 | wanted to say? |
| 22 | MR. GRAYSON:  Your Honor, the only thing I would add |
| 23 | is that under section -- I agree with counsel for the |
| 24 | defendants.  Under Section 1595(d), this is a parens patriae |
| 25 | claim, and congress has established that this is an independent |

NB9sDOEc

1  claim of states, and private parties have no business releasing

2  that claim.

3          THE COURT:  Well, to the extent that you were to

4  purport to bring an action seeking only to recover on behalf of

5  victims, wouldn't that be barred?

6          MR. GRAYSON:  Barred under the release, your Honor?

7          THE COURT:  Yes.

8          MR. GRAYSON:  Well, as counsel for the defendants

9  pointed out in their response, your Honor, the states do not

10 bring claims on behalf of victims, and particularly under

11 Section 1595(d).

12         THE COURT:  I understand that.

13         So the point is, although I'm not sure that is totally

14 100 percent clear from the legislation.  But in any event, the

15 point is that if you were to make such a claim, which you say

16 you're not able to, if you were to make such a claim, then they

17 might have an argument to bar it under this release, right?

18         MR. GRAYSON:  Certainly, your Honor.

19         If the language said before the word claims, if the

20 language said derivative claims or if the language said double

21 recovery, the states would not have an issue.  The states have

22 an issue because of the breadth of the language.  It says

23 relating to and on behalf of when, in fact, the states brings

24 claims on behalf of all the citizens, which could include

25 victims.

NB9sDOEc

1            THE COURT:  All right.  Thank you very much.

2            MR. GRAYSON:  Thank you, your Honor.

3            THE COURT:  So I'm grateful to the attorney generals

4    for bringing this issue to the court's attention.  But in the

5    end, I think the release is fine insofar as the language they

6    are complaining about is concerned.

7            I don't need to reach the question whether they have

8    standing.  That would be a question, at best, for the Second

9    Circuit.  I don't have to reach the question of the scope of

10   what the victims here are able to release, because that would

11   only be resolved in the unlikely event that the state attorney

12   generals brought an action that seemed to be directed at just

13   recovery for the victims.

14           But I don't need to reach any of that because it seems

15   to me clear that the language is perfectly straightforward, and

16   as plaintiffs' counsel has pointed out, if anything has been

17   clarified by the discussion here today.  But even short of

18   that, the release is only "to the maximum extent allowable

19   under law."  I think that is a very straightforward and fully

20   justified provision, and so I will approve it.

21           Now, there were two other objections.  One was from

22   Jane Doe 7, who also objected to the Deutsche Bank settlement.

23   I have considered her renewed objections, and as I promised at

24   the time of the Deutsche Bank settlement, I will resolve them

25   through a written opinion for her benefit and so that she can

NB9sDOEc

 1    have a document to appeal from, if she's able to appeal it.

 2    But the bottom line is I'm not persuaded by her objections.

 3            There were also some objections, however, raised by a

 4    new objector, Jane Doe 10, whose counsel is present by video

 5    with the court's permission, but is not, as I understand it,

 6    requesting to speak.

 7            But let me just make certain whether either Jane

 8    Doe 10 or her counsel wishes to speak orally.

 9            Are you there, counsel?

10            MR. MARSH:  Is this Sarah Ransome, your Honor?

11            THE COURT:  Yes.

12            MR. MARSH:  Is Jane Doe 10 someone else?

13            THE COURT:  No.  That's who it is.

14            MR. MARSH:  It's Ms. Ransome.  Ms. Ransome.  Yes,

15    James Marsh from the Marsh Law Firm on behalf of Sarah Ransome,

16    who has been publicly identified in these documents, and she

17    would like to extrapolate on her statement submitted in the

18    objection as to why this is not fair, reasonable, or adequate

19    in terms of a settlement.

20            She is a recognized victim.  She has filed a claim in

21    this case, and she would like to be heard by the court and to

22    this determination.

23            THE COURT:  I'm happy to hear it.

24            Let's hear from her now.

25            MR. MARSH:  Thank you, your Honor.

NB9sDOEc

1          MS. RANSOME:  Can you guys hear me OK?

2          THE COURT:  Yes.

3          MS. RANSOME:  OK.  First of all, before I start, I

4    would just like the court to acknowledge the devastation that

5    I'm feeling right now and, quite frankly, I feel like ripping

6    my speech up, actually, because I've just witnessed a man be

7    found guilty in a court of law for drugs.

8          Yet, to date, in a sex-trafficking operation that has

9    spanned for decades, that has not only seen myself raped

10   repeatedly and sex trafficked, but hundreds, if not thousands,

11   of children and young women.  And today in court a man is found

12   guilty for drugs and only one conviction, successful

13   conviction, has been made in rape and sex trafficking.

14         So I just want everyone around who have been following

15   the Epstein case to acknowledge what has just happened in the

16   highest court of law in America.  So I will continue, your

17   Honor.

18         Your Honor, Judge Rakoff, I would like to take this

19   opportunity to thank you and the court for all your hard work

20   and dedication over the last few months bringing us all to this

21   very moment in time, the final hearing.

22         Before I proceed, your Honor.

23         THE COURT:  I'm sorry.  You're fading out.

24         MS. RANSOME:  Sorry.

25         Before I proceed, your Honor.  May I please ask you

NB9sDOEc

1  and the court, your permission to ask a straightforward legal

2  question, which is simply an answer based on your experience?

3        THE COURT:  Well --

4        MS. RANSOME:  Your Honor --

5        THE COURT:  -- my role is not usually to answer

6  questions, but to ask them.

7        MS. RANSOME:  I'll take that as a no, which has kind

8  of ruined my speech.

9        But anyways, my question was:  if two parties sign a

10  legal agreement that clearly states legal obligations to a

11  client by the attorney that has repeatedly breached in a court

12  of law, would that contract become null and void, especially

13  bearing in mind that the repeated breach has caused tremendous

14  psychological and financial harm to victims of rape and sex

15  trafficking?

16        And, quite frankly, your Honor, I think the $290

17  million is atrocious, and that is from a victim of rape and sex

18  trafficking.  So I would, first of all, like to address Epstein

19  victims.

20        My darling Epstein survivors.  Well, what can I say?

21  It's been a long fight and, perhaps, our fight is not over for

22  justice, freedom, liberty.  But I come before you today and

23  say, don't be afraid.  I share your pain, your anguish, your

24  terror of repeated trauma, being exploited time after time, and

25  the uncertainty of not knowing what tomorrow brings for us all.

NB9sDOEc

1        But I say this.  It is always darkest just before

2   dawn, and tomorrow is a new dawn for hope, faith, and the

3   knowledge that love is stronger than any evil or hate.  They

4   will not break us.  We will walk with our heads held high and

5   with dignity.  We will all lead lives of happiness, joy, and

6   love because we won't let them steal our souls, even though

7   they stole our bodies.  We will never be silenced because then

8   they will win.  Let everyone hear our cries today and

9   forevermore.

10        To the lead attorneys, David, Sigrid, Brad and Stan

11   Pottinger.  Well, well, well.  Hasn't time been a wonderful

12   friend despite the misfortune of having not only been

13   represented by you in the past, but witnessing the complete and

14   utter devastation and carnage unfold before my very eyes.  I

15   briefly skimmed over your objection.  However, you have not

16   addressed my main concern about the role of Stanley Pottinger.

17   What role did he play in both class actions?  And what role did

18   Stan Pottinger play in the Epstein victims' lives?

19        I have gone through your statement of clients' victims

20   rights.  You have broken every single statement of your

21   clients' rights.  You are entitled to be treated with courtesy

22   and consideration at all times by a lawyer.  You are entitled

23   to have your attorney handle your legal matter competently and

24   diligently.

25        Well, Brad, you didn't even take my statement about

NB9sDOEc

1    adding Castellani, who was the vice president of media

2    relations for JP Morgan while I was being raped and trafficked.

3    So you have broken and breached every single clause in your

4    contract, all of you.  And not only that, judging by your

5    retainer, this was never about the victims, and I personally

6    can vouch on this.  OK.  So as far as I'm concerned, that is

7    null and void for all the victims to the attorneys.

8            And I won't be much longer, Judge Rakoff.

9            You have completely and utterly broken your contract.

10   This whole court case is null and void.  For this reason, I ask

11   your Honor that you and the court in no way, shape, or form,

12   compensate David, Sigrid, and Stanley Pottinger for doing the

13   job they were actually paid to do.  They should not be

14   compensated out of the victims' rape and trafficking

15   compensation for merely doing their job.

16           Please, I also ask the court, seeming as this in no

17   way, shape, or form, in all due respect Rakoff, if you sign

18   this off, then you should be fired literally and egg on your

19   face because this is just terrible.  So I do ask the court to

20   not use financial and starvation methods to punish the Epstein

21   victims or me collectively into compliance and subservience

22   just because it's the easier thing to do, Judge Rakoff.

23           And any delay in compensation, as you know, Judge

24   Rakoff, or perhaps you don't because you've never been raped or

25   sex-trafficked, would be catastrophic to all of us.

NB9sDOEc

 1    Respectfully, we have all been through enough and shouldn't

 2    have to suffer any longer.

 3         Thank you.

 4         THE COURT:  All right.  Anything that counsel for the

 5    parties wanted to say in response?

 6         If not, I need to turn to some of the more specific

 7    objections.

 8         MR. BOIES:  We don't have anything to respond to, your

 9    Honor.

10         MR. SCHOENFELD:  Nothing from JP Morgan, your Honor.

11         THE COURT:  So one of the objections, the only one

12    that seemed to me to warrant further discussion, was that

13    whereas in the Deutsche Bank settlement, there was an automatic

14    minimum recovery to any victim and the possibility that the

15    claims administrator would give a considerably higher recovery.

16    Here, there is no such provision, and the objection that was

17    raised was that this is giving too much discretion to the

18    claims administrator.

19         I understand the claims administrator is here.

20         MR. BOIES:  Yes, your Honor.

21         THE COURT:  So why don't you come up to the rostrum as

22    well, but I'll hear first from counsel.

23         MR. BOIES:  I think the court is aware --

24         MS. RANSOME:  Your Honor, we cannot hear you if you're

25    speaking.  We can't hear anyone speaking.  I'm not sure why.

NB9sDOEc

```
 1              THE COURT:  Can you hear me?

 2              You heard everything before, that's clear from the

 3    speech that was just given, so I think the problem has got to

 4    be at your end.

 5              MS. RANSOME:  Your Honor, we can't hear anything.

 6              MS. MCCAWLEY:  Your Honor, on my screen is says that

 7    your mic has been muted.  Press star six to unmute.

 8              THE COURT:  My mic.

 9              Let's find out what's going on there.

10              (Pause)

11              Can you hear me now?

12              Can you hear me now?

13              It seemed to be unmuted, according to what we have.

14              All right.  Well, in any event, we've heard from the

15    only objector other than amici.

16              MS. RANSOME:  Sorry, your Honor.  We can't hear

17    anything.  I can't hear what David Boies is saying.

18              THE COURT:  OK.  Hold on.

19              MS. RANSOME:  We can't hear anything since I stopped

20    speaking.

21              THE COURT:  I'll ask my court law clerk --

22              They can't hear me.  Sign them off and then redo it.

23              (Pause)

24              Start with counsel, if you can, because he's the only

25    one who has a right and the other was given as a favor.
```

NB9sDOEc

1          (Pause)

2          All right.  So let the record reflect that, thanks to

3     the brilliance of my law clerk, we were able to fix that

4     problem.

5          Mr. Boies.

6          MR. BOIES:  It's the advantage of having younger law

7     clerks, your Honor.

8          THE COURT:  Don't I know it.

9          MR. BOISE:  I think there are two factors.  The first

10    is that I, as I think the court is aware, typically in a class

11    action settlement, you would not have any minimum.  We adopted

12    the minimum in the Deutsche Bank case because a very large

13    number of the claimants were outside the United States, and

14    were in cultures that were not as receptive, were not as used

15    to responding to court procedures and class action invitations

16    as people in the United States.

17         We thought both that by giving $75,000, we would get

18    money to people who might not be prepared to apply.  And in

19    addition to that, we would by sending out real money, encourage

20    people to apply when they might not otherwise do that.

21         Now, with respect to JP Morgan, because most of the

22    people were in the United States, we did not think that that

23    was necessary.  However, I just confirmed this with the claims

24    administrator.  The procedure that was adopted in order to keep

25    the two equal was that any claimant who was a legitimate

NB9sDOEc

```
 1   claimant, who was found to have been an Epstein survivor, will

 2   get a minimum of at least $75,000 from the JP Morgan

 3   settlement, so that even though the settlement agreement does

 4   not expressly provide for that.  In order to make sure that the

 5   people in this settlement are being treated comparable to the

 6   people in the other settlement, the claims administrator will

 7   be providing at least the minimum $75,000 to everyone who is a

 8   legitimate victim.

 9            THE COURT:  All right.  I think the broader

10   question -- and maybe we need to hear from the claims

11   administrator -- is whether her discretion is too broad.

12            But let me, why don't we get her to the microphone.

13            MR. BOIES:  Certainly.

14            MS. LELCHUK:  Hi, your Honor.  It's Simone Lelchuk.

15            THE COURT:  So you're being asked to divide up a very

16   large amount of money.

17            I appreciate from the words we just heard from one of

18   the victims that, perhaps, no amount of money will ever

19   compensate for the wrongs that they suffered.  But, of course,

20   Mr. Epstein committed suiside and therefore punishment of him,

21   which might be psychologically at least of some value to the

22   victims, is not in the hands of us mere mortals.

23            So, but I am a little concerned, even though you come

24   very highly credentialed and very respected by both sides, that

25   there is no real guidance as to how you're going to determine
```

NB9sDOEc

1    who gets what.

2              What about that?  What about that?

3              MS. LELCHUK:  First of all, your Honor, it is an honor

4    to be here and to work with all of these women who have gone

5    through terrible situations, and also I just wanted to take a

6    minute to say that I have, in the JP Morgan class I have, while

7    meetings with survivors was not mandatory, over 100 of the

8    women have chosen to meet with me.  And I have held hour-long

9    meetings either via Zoom or in person, at the survivors'

10   election, and I've had an overwhelming positive comments from

11   those meetings, positive comments how class counsel has handled

12   this case, and how the survivors who I have met with and spoken

13   with feel about this case.

14             But to answer your question more directly, there are a

15   tremendous number of people who have been harmed here.  There

16   are roughly 100 -- not roughly -- there are 191 people who

17   applied to this fund.  And while the settlement is, in my

18   opinion, an excellent result, when you have 190 people to

19   divide that -- 191, excuse me -- 191 people, and there is

20   probably a few people in there who are not legitimate

21   claimants, so some number along those lines, to divide up the

22   290 it doesn't go -- there is not that much money per survivor,

23   especially as you said, if you take it just on a math

24   standpoint.

25             So if you look at all the work I've done, I've been in

NB9sDOEc

1  a tremendous number of mediations with sexual assault survivor

2  victims, especially in New York because of the recent passing

3  of the CVA and the ASA, and I have a real sense of how these

4  cases might settle and for what type of harm results and what

5  type of value.  I've previously worked on other settlement

6  funds that have also sexual assault allegations, so I have a

7  sense of what those cases would be worth.

8          So applying all of that knowledge to this case, I

9  think I have a good and fair sense of what the alleged harm

10  that each survivor went through would result in per the fund.

11  But as you said -- and I know Ms. Ransome feels strongly, and

12  I'm sure other people feel strongly for what these women went

13  through -- there probably is no amount of money that could and

14  will ever rectify everything.

15          THE COURT:  So, of course, again, there are, of

16  course, in this very cruel world, things that happen that no

17  amount of money can possibly rectify.

18          I don't usually mention this, but I will for the

19  benefit of the objector, that my beloved older brother was

20  murdered in cold blood when he was in his early 40s, and that

21  has left a scar on my psyche to this very day.

22          So I don't purport to appreciate the full pain and

23  suffering that the victims here have gone through, but I'm not

24  totally oblivious to it as well.  Life has so many tragedies in

25  this less-than-perfect world.

1          But my issue or question for you is really a much more

2     specific one.  What you've just told me is that, based on your

3     extensive experience and your feel for prior cases, you have a

4     feel of how much each of these victims should get from this

5     substantial fund.  I'm worried that even the most Solomonic

6     claims administrator might not always be perfect in her

7     judgment.

8          And so what I'm concerned about is that there is a

9     little bit less of a specificity.  At least in the Deutsche

10    Bank there was some specificity.  Here, none.

11          But let me suggest and see if this commands itself to

12    counsel for the parties as well as you.  I indicated orally

13    when I approved the Deutsche Bank settlement, that nevertheless

14    I would want to oversee, in a general sense, what you were

15    going to do there.  I thought in this case maybe we should make

16    it a little more formal that every three months, you would

17    provide me on a confidential basis, but in writing, a summary

18    of the decisions you had made during that three-month period.

19    And if I felt that I needed more, I would then reach out to

20    you.  If I felt I needed to hear from any of the victims

21    involved, I would reach out to them.  I don't want to automatic

22    say that would happen, but at least I would reserve the option

23    of doing that.

24          Does that sound agreeable to you?

25          MS. LELCHUK:  Yes.  I would be happy to do that.

NB9sDOEc

```
 1              THE COURT:  How about the plaintiffs, are you
 2   agreeable to that?
 3              MR. BOIES:  Absolutely, your Honor.  I think that's an
 4   entirely appropriate way to proceed.
 5              THE COURT:  And the defense?
 6              MR. SCHOENFELD:  Your Honor, yes.
 7              THE COURT:  All right.  So we will do that, and that
 8   should be recorded in the final order.  I know I have a draft
 9   order from you folks, but maybe you can revise it in the next
10   day or two to incorporate that language.
11              MR. BOIES:  We will do that and get it to your Honor.
12              THE COURT:  Yes, ma'am.
13              MS. LELCHUK:  I just want to make sure that whatever
14   we do agree on, it protects everybody's confidentiality.
15              THE COURT:  Yes.  This would be submitted to me
16   ex parte.
17              MS. LELCHUK:  Yes.
18              THE COURT:  And if I felt the need to file it, it
19   would be filed under seal, and only unsealed after hearing from
20   the effective persons.  I doubt I would need to unseal it in
21   most cases.
22              MS. LELCHUK:  One of the reasons I just raised it, as
23   one of the promises that I know class counsel and I have made
24   to anybody impacted, is that everybody's privacy is of our
25   utmost concern.
```

NB9sDOEc

1          THE COURT:  Yes, of course.

2          MS. LELCHUK:  Thank you.

3          THE COURT:  All right.  So I've considered all the

4    objections.  I've also considered whether the settlement meets

5    the requirements not only of Rule 23, but also the so-called

6    Grinnell factors.  I've considered all nine of those factors,

7    and I think all of the Rule 23 factors are met and the great

8    weight of the Grinnell factors also favors this settlement,

9    which notwithstanding some of the statements of the objector,

10   the court regards as a really excellent settlement.

11          Now we need to turn to the question of attorneys'

12   fees, to which there was also an objection.

13          In the Deutsche Bank where I approved the 30 percent

14   fee and there were two arguable differences with the 30 percent

15   fees that's being requested in this case, one was that the

16   overall settlement is much larger, therefore 30 percent

17   translates into a lot more money and, of course, that's money

18   therefore not available for distribution to the victims.

19          Secondly, that the lodestar in the -- the lodestar

20   multiple in the Deutsche Bank was 2.2 and here it's 5.9.  On

21   the other hand, of course, that reflects the very good result

22   that was obtained for the plaintiffs.  I'm a little taken aback

23   by some of the statements that were made by the objector.

24          In my 27 years on the bench, I have not seen such a

25   good settlement arrived in such a short order in a case of

NB9sDOEc

similar complexity or the like, and that's because it wasn't

the plaintiffs who were speaking for themselves directly, it

was their representative.  The very fine lawyers, highly

skilled lawyers -- and, by the way, highly skilled on the

defense side as well -- who were able to arrive at a very

large, very positive, and very swift settlement of this

extraordinarily complex case.

So, nevertheless, I'm a little concerned by the total

amount of the proposed fee.  So let me hear, I know defense

counsel has nothing to say of this subject, the bank has a lump

sum of money they are giving.

But let me hear from plaintiff's counsel.

MR. BOIES:  Thank you, your Honor.

And I acknowledge it is a large fee.  I think I would

say to the court a couple of things.

One, a matter of policy, and one, maybe a circumstance

related to this case.  I think that it would be undesirable to,

you know, in effect penalize a result because we got it faster.

I remember the old days when, you know, class action fees

depended primarily on lodestar, and what you had was people who

simply tried to build lodestar and they would hire contract

attorneys, or I remember something called confirmatory

discovery, where people would reach agreement and then they

would have confirmatory discovery to build their lodestar.

And I do think there is an important role for the

NB9sDOEc

```
1    court to play in scrutinizing a fee.  I don't think 30 percent
2    ought to be automatic, but I think that where you have a good
3    result and where you have a case that is particularly difficult
4    case.  I mean, this was not a case like a securities class
5    action where there is a precipitous drop in stock price or an
6    antitrust case where there is a government investigation or
7    guilty pleas and the court has all sorts of lawyers clambering
8    to be class counsel because everybody knows that's a good case
9    and everybody wants to do it.
10         THE COURT:  There were considerable difficulties of
11   not only the sort you mentioned, and very able defense counsel
12   raised all sorts of important defenses, that while I was able
13   to resolve them in the short-term, who knows what would have
14   happened in the longer term.
15         MR. BOIES:  Exactly, your Honor.
16         I think that was why nobody else brought this lawsuit.
17   None of the attorney generals, none of the other -- I mean,
18   many of the victims and survivors are represented by their own
19   counsel.  Nobody else really wanted to take this case on.
20         THE COURT:  And forgive me for interrupting, but I
21   think it should not be lost that this case sent a message
22   through this very substantial settlement that banking
23   institutions and other such have responsibilities that,
24   perhaps, were not fully recognized in the past.
25         And, therefore, to that extent, this case is of
```

NB9sDOEc

```
 1    benefit to future victims or preventing the victimization of
 2    future persons because of what the banks now know will be the
 3    consequences.
 4             MR. BOIES:  I think that's right, your Honor.
 5             I know myself and I know co-counsel, that's one of the
 6    things we are proudest about in this case.  I think it did take
 7    an important step in holding people to account, and I think
 8    that is going to -- I think that's going to have a benefit
 9    going forward.
10             THE COURT:  All right.  So largely for the reasons
11    articulated by counsel and those also mentioned by the court, I
12    will approve the 30 percent fee in this case.
13             Once again, I know you've sent me a draft order.  We
14    need to have you do the arithmetic.
15             MR. BOIES:  We will do that, your Honor.
16             THE COURT:  I have imposed too much on my law clerk
17    already.
18             All right.  Is there anything else we need to take up
19    today?
20             MR. BOIES:  Not from us, your Honor.
21             MR. SCHOENFELD:  Nothing from JP Morgan.
22             THE COURT:  Very good.
23             That concludes this proceeding.
24             ALL PRESENT:  Thank you, your Honor.
25             (Adjourned)
```