

**VIA ECF**                                                                                      September 23, 2024

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, New York 10007

**Re:**   ***Bensky, et al v. Indyke, et al*, Case No. 24-cv-1204 (AS)**

Dear Judge Subramanian:

    Pursuant to Individual Rule 5.D., Plaintiff requests an informal conference to compel
Defendants Darren K. Indyke and Richard D. Kahn to produce documents responsive to Plaintiff's
First Requests for Production.  Defendants' productions so far contain glaring deficiencies with
respect to documents and communications concerning: (1) the New York State Department of
Financial Services' findings as to ATTORNEY-1, ACCOUNTANT-1, and related paragraphs of
the DFS Order (RFPs 3–6) ("DFS RFPs"); (2) wire transfers between Epstein individuals and
entities (RFP 7) ("Wire RFPs"); and (3) cash withdrawals and cash payments made on behalf of
Jeffrey Epstein (RFPs 8, 16, 17) ("Cash RFPs").  These RFPs all target the heart of the Epstein
Enterprise and the indispensable roles Defendants played as Epstein's bagmen and fixers.
Accordingly, the Court should compel Defendants to run Plaintiff's proposed search terms and
produce documents expeditiously, mindful of currently scheduled depositions and the case's
October 28 fact discovery deadline.

I.   **Background**

    Since the Court lifted the stay of discovery on June 26, 2024, Dkt. 74, Defendants have
slow-walked production of documents responsive to the DFS, Wire, and Cash RFPs.  Plaintiff has
worked diligently to resolve discovery disputes, including by making reasonable compromises
consistent with the Court's instruction at the June 26 hearing.  The parties have held four meet and
confers (each lasting approximately one hour) attended by Lead Trial Counsel for both sides on
July 18 and 22, August 19, and September 18, and have attempted to negotiate search terms to
mitigate any burden concerns.  After allowing this much time to pass without producing relevant
documents, Plaintiff can only infer that Defendants are deliberately stalling to prejudice Plaintiff's
case.  To date, despite having worked almost exclusively for Jeffrey Epstein and his related entities
for decades, Defendants Kahn and Indyke have only produced 1,498 and 976 documents,
respectively.  These figures are wholly insufficient given the importance of this litigation and the
volume of relevant but unproduced documents that must exist due to Defendants' years of service
to history's most notorious sex trafficker.

    Plaintiff served her first RFPs on Defendants on April 10; Defendants responded on May
10.  In their response, Defendants refused to produce documents in response to the DFS RFPs. Ex.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



A at 9–12; Ex. B at 9–11.  Because they refused to "speculate" or admit that they are the individuals described in the order, Defendants refused to investigate or produce documents concerning the order's underlying factual findings and only committed to running the following DFS-related terms: "DFS," "Accountant-1," and "Attorney-1," which would concern only the consent order itself.  Three months after the stay in this case was lifted, and even after Indyke's admission that he is "▮▮▮▮▮▮▮" ATTORNEY-1 in the DFS Order, Ex. C at 220:13-25, Defendants still refuse to produce documents for the actions described in the DFS Order.

As for the Wire Requests and the Cash Requests, Defendants committed to search for documents related to this request after the stay of discovery was lifted.  To date, Defendants have only produced smithereens of the wire transfer forms, which were all signed by Indyke, *see, e.g.,* Ex. D, and are in the possession of both Defendants.  Similarly, Defendants have produced summary evidence that they were withdrawing cash in amounts of $▮▮▮ or $▮▮▮ on at least a monthly basis, *see* Dkt. 120-4, but have failed to produce more than a handful of communications concerning the vast majority of these transactions.  Defendants insist that they kept "meticulous" records but have not produced comprehensive records of cash withdrawals.  During his deposition, Indyke testified generically and self-servingly about his process for signing over ▮▮▮▮▮▮ ▮▮▮▮▮ of dollars to women over the years he worked (purportedly as an attorney) for Epstein, which included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. C at 224:5-13.  Indyke also testified that his frequent withdrawals of thousands of dollars of cash in NYC were somehow used to pay for expenses related to Epstein's properties in ▮▮▮▮▮▮▮ and the ▮▮▮▮  *Id.* at 221:4-223:25.  This explanation defies logic, and Plaintiff is entitled to documents to refute the veracity of those assertions as Defendants' knowledge as to what Epstein was paying for is the single most relevant factual issue that remains in dispute.

## II.  The Court Should Grant Plaintiff's Motion to Compel.

The Court should compel Defendants to produce documents in response to the DFS RFPs, Wire RFPs, and Cash RFPs.  "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992).  Plaintiff's RFPs comply with Rule 26, which allows discovery of non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The DFS RFPs, Wire RFPs, and Cash RFPs seek documents plainly relevant to elements of Plaintiff's claims, including Defendants' knowledge and participation in the Epstein Enterprise.

First, the RFPs all clear the relevance bar with ease.  The relevance of the DFS RFPs is apparent given Indyke's sworn admission that he is "▮▮▮▮▮▮▮" ATTORNEY-1.  Ex. C at 220:13-221:3.  Documents relating to the Wire RFPs and Cash RFPs are relevant because Plaintiff alleges Defendants were integrally involved with sourcing cash for and paying cash to victims, as well as working to keep the Epstein Enterprise secret from law enforcement.  *See* Dkt. 80 at 2-3 (citing Compl.).  Across several conferences, Defendants have failed to offer any serious argument as to why any cash payments would not be relevant, instead resting on undue burden arguments.



Second, there is no undue burden on Defendants in producing documents in response to these RFPs. The DFS Consent Order contains specific references to the documents Plaintiff is seeking, such as records of the 97 cash withdrawals Indyke made from 2013 to 2017, the inquiry that Indyke made as to how often he could withdraw cash, or Kahn's representations to bank personnel that payments to the accounts of women were made for school tuition. *See* Dkt. 120-1 ¶¶ 46, 48, 50. Additionally, as to the wire and cash documents, Defendants have access to accounting software and bank records and Defendants' counsel have repeatedly represented that their clients kept "meticulous records." To the extent Defendants take the position that some subset of Epstein-related cash payments is irrelevant, Plaintiff disagrees.

Defendants have refused to run Plaintiff's proposed search terms or propose reasonable alternatives. Ex. D.[1] Instead, Defendants demanded that Plaintiff limit the disputed RFPs to either (1) cash payments dealing with certain types of abuse (e.g., "cash payments for massages") or (2) to a discreet list of victims, proposing the illusory compromise that they will provide documents concerning cash payments clearly for sexual or "recruiter" services. *Id.* These limitations would exclude highly probative documents. As Indyke testified, Epstein told him face-to-face in jail that ████████████████████████. Ex. C at 84:6-10. It is highly unlikely, therefore, that after his release his lieutenants would include in their accounting of cash payments explicit descriptions of "massages," "sex," or "girls," rendering Defendants' counter-proposed terms effectively useless.

Finally, Plaintiff is prejudiced by Defendants' refusal to produce documents in response to her RFPs. In 2018 alone, there were over ███ cash payments or wire transfers made to various victims totaling over $████, yet Plaintiff has not received any of these documents or underlying communications concerning these transactions. *See* Dkt. 120-5 at 55. At Indyke's deposition, he testified that he "████████" or was ████ of the wire transfers and cash payments. Ex. C at 276:3-281:17. Plaintiff is prejudiced by her inability to test Defendants' faulty memory with documents that defense counsel at two large law firms could easily retrieve after a reasonable search.

Plaintiff respectfully asks the court to compel Defendants to comply with their obligations.

---

[1] This includes Plaintiff's request for Defendants to run search terms for and review (i) direct communications with Jeffrey Epstein; (ii) documents concerning Ghislaine Maxwell; and (iii) documents concerning Jean-Luc Brunel, using search parameters tailored to alleviate burden concerns. Direct communications with Jeffrey Epstein are the most important source of Defendants' knowledge of his abuse of hundreds of women over decades. Defendants' argument that there are too many communications with Epstein to review is itself evidence that they should have known what was occurring contemporaneously. Documents concerning Ghislaine Maxwell and Jean-Luc Brunel, who were both arrested and either convicted or avoided conviction through suicide, are highly probative as there are no legitimate business reasons for Defendants' communications concerning those individuals. The world at large questions why prosecutions of Epstein's Enterprise did not take place earlier to stop the abuse sooner, and the above-described categories of documents are highly probative to Plaintiff's obstruction claims under the TVPA.



Respectfully submitted,

_/s/ Sigrid S. McCawley_

Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff*

cc:     All counsel of record (via ECF)