

October 2, 2024

**VIA ECF**

The Hon. Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007
(212) 805-0238

Re: *Bensky et al. v. Indyke et al.*, Case No. 1:24-cv-01204-AS

Dear Judge Subramanian:

     Plaintiff Jane Doe 3 writes to update the Court on the developments since the status conference on Friday, September 27, 2024. In the hours after the conference, Plaintiff sent a letter describing, with particularity, the documents that her request for DFS-related documents was seeking, *see* Ex. A, and followed up by email with narrowed terms along with questions that would allow her to propose further narrowed terms, *see* Ex. B. The parties met and conferred twice on Monday and Tuesday. While the parties were able to reach agreement on a number of issues, the parties remain at an impasse on several others in advance of this afternoon's conference.

The Parties' Agreements

     The parties have reached agreement on the following issues:

1. On Friday afternoon, Plaintiff identified a category of documents (wire transfers and related accounting backup) that Defendants could easily collect from centralized locations. Defendants confirmed that such a repository of documents exists and agreed to produce approximately 12,000 documents reflecting wire transfers and the accounting backup (emails, instructions to pay, etc.) to women Defendants know allege to have been abused by Epstein.

2. In response to Defendants' asserted need for copious amounts of cash, Plaintiff identified for Defendants accounting spreadsheets reflecting that Epstein spent tens of thousands of dollars a month using various credit cards that he paid for and gave victims access to. Plaintiff requested, and Defendants agreed, to produce approximately 19,000 documents

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

from a centralized location that reflect credit card purchases made by women who Defendants know have alleged to be victimized by Epstein.

Remaining Disputes

The parties remain at an impasse on the following issues:

1. <u>Search terms</u>: After claiming that Plaintiff's terms were unduly burdensome because they resulted in 1.7 million hits, Plaintiff on Friday afternoon sent over revised terms which reduced the number of terms in half, dropping over 100 terms in their entirety, including the terms "credit card" and "cash" that the Court noted were overbroad. Plaintiff's revised terms resulted in Kahn having to review just 60,071 additional documents, and Indyke reviewing 78,000. At the parties' first meet and confer held on Monday afternoon, Plaintiff further agreed to all exclusions for false positives Defendants identified and requested that Defendants provide any other specific additional limiting terms. At Plaintiff's request, Defendants also identified additional terms that they felt were overbroad and should be eliminated. After reviewing the proposals and reasoning, Plaintiff agreed to drop another eight terms. Plaintiff could not agree, however, to modify or drop certain other terms given the likelihood that they would return probative documents. Plaintiff also could not agree to Indyke's request to exclude or modify terms based on Indyke's assertion that it would return documents that were responsive but unduly burdensome due to privilege (discussed below).

2. <u>Maxwell Privilege</u>: At meet and confer, Indyke identified 14,292 documents with hits and families that, based on a "sample review" were responsive but, in his view, privileged. Because these documents are responsive to Plaintiff's requests, they should not be excluded for the review entirely. Plaintiff has offered to continue negotiating ways to alleviate Indyke's burden for logging purportedly privileged documents but cannot exclude them from the review population, particularly given Plaintiff's concerns that the large volumes of documents currently being withheld are not genuinely privileged or otherwise subject to exceptions such as the crime-fraud exception. Plaintiff requests that the Court order Indyke to include these documents in his review even if he believes that a large portion of them will be privileged.

3. <u>Direct communications with Epstein</u>: Whereas Defendants have previously sought to distance themselves from Epstein by stating that they did not see him or meet with him with great frequency, direct emails with Epstein were apparently in the hundreds of thousands for both Defendants. This suggests that Defendants had good visibility into what Epstein was doing on a daily basis. While Plaintiff views all communications with Epstein to be highly probative, based on Defendants' representation that there were no easily identifiable exclusions, Plaintiff proposed the following limiter "(EMAIL FIELDS include

one of Epstein's addresses) AND ("Sex*" OR "woman" OR "women" OR "girl*" OR "massage")" for communications directly between Epstein and Defendants. Defendants have not provided a hit report with these limitations and Plaintiff requests the that the Court compel the production of these documents.

4. <u>DFS Consent Order</u>: At Monday's meet and confer, Defendants represented that they refused to produce the emails referenced in the DFS Consent Order that Plaintiff has been looking for throughout the entirety of the discovery period because their "process" does not include small productions. Plaintiff explained that, given the exigencies and time constraints, the communications underlying the DFS Consent Order should be produced immediately. Defendant Kahn made a small production of some of these documents after the parties' second meet and confer on Tuesday, but still have not produced all the emails referenced by the Order or any internal communications reflecting discussions leading up to their communications with their bankers as to what certain payments were for. Within hours, Plaintiff immediately provided a set of additional terms in an effort to capture the documents. While Plaintiff remains willing to negotiate to the extent her proposed additional terms are unexpectedly overbroad, the Court should require Defendants to review Plaintiff's additional terms until Defendants have reviewed a large enough portion of them to propose meaningful limiters.

Respectfully submitted,

*/s/ Sigrid McCawley*
Sigrid McCawley