# Exhibit A

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 3, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>Defendants. | Civil Action No. 24 Civ. 1204 (AS)<br>[rel. 1:24-cv-02192 (AS)] |

## EXPERT REPORT OF GAIL E. COHEN

I.   **QUALIFICATIONS**

1.   I am Chair *Emeritus* of the Board of Directors of Fiduciary Trust Company International ("Fiduciary Trust"), where I have spent the last 31 years of my professional career. Commencing in 1994, I have held several positions at Fiduciary Trust — first as Senior Vice President, then as Executive Vice President, and ultimately as Chair of the firm from 2016 through 2023. At all times from 1998 to 2023, I also held the position of General Trust Counsel. I attach as Exhibit A a summary of my biographical information.

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

2

2. I graduated from Mount Holyoke College in 1978 with a Bachelor of Arts (BA), and from Brooklyn Law School in 1985 with a Juris Doctor (JD) degree, *summa cum laude*. After law school, I worked as an attorney at the Law Offices of Edward S. Schlesinger, P.C. (1985-1988) and then at Debevoise & Plimpton LLP (1988-1994). I am admitted to the bar in New York and New Jersey.

3. I am a Fellow of the American College of the Trust and Estate Counsel, have been elected into the Estate Planning Hall of Fame of the National Association of Estate Planners & Councils, and have been honored by the Trusts and Estates Lawyers Division of the UJA Federation. I am a recent former member of the Investment Committee of the New York City Bar Association and am also a former member of that Bar Association's Committee on Estate and Gift Tax, which I chaired from 1998 to 2001. I am also a former Chair, Vice Chair, and Treasurer of the New York Bankers Association; I was that organization's first female Chair.

4. I have served on the board of several non-profit organizations, including Graham Windham and the Boca Raton Museum of Art. I currently serve on The Rockefeller University Committee on Trust and Estate Gift Plans and the New York Presbyterian Planned Giving Advisory Council.

5. I have served as an adjunct professor of law at Brooklyn Law School and I am currently a lecturer on estate planning in the Masters in Wealth Management program at the Columbia University School of Professional Studies. I also frequently write and lecture for attorney groups, including the University of Miami's

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

3

Heckerling Institute, the Notre Dame Tax Institute, the Practicing Law Institute (PLI), the New York State Bar Association and the Society of Trust and Estate Practitioners.

6. Through my nearly 40 years of experience as an attorney and officer of Fiduciary Trust, I have become a well-known authority on trust and estate law and wealth-management strategies for high-net-worth individuals. I have advised dozens of such wealthy men, women and families on these strategies and related issues.

II. **ASSIGNMENT**

7. I have been retained in this matter by counsel for Defendants Darren K. Indyke and Richard D. Kahn. I do not know either Mr. Indyke or Mr. Kahn, and I have not previously been engaged in any capacity by either of them or their counsel in this case.

8. I have been asked to review Plaintiff Jane Doe 3's allegations in her lawsuit regarding the multiple corporate entities formed for Jeffrey Epstein during his lifetime, each owned directly or indirectly by Mr. Epstein. Specifically, I have been asked to opine on whether the creation and operation of such multiple corporate entities — described by Plaintiff in her Complaint as "corporate entities with no legitimate business purpose" or "sham" entities (Compl. ¶¶7, 152, 169) — is in itself evidence of wrongdoing, including as a vehicle to accomplish sex-trafficking or sexual abuse.

9. In reaching my opinion, I reviewed the Complaint in this action, as well as corporate formation documents for the individual companies identified in Plaintiff's Complaint. These include the following corporate entities:

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

4

| | |
|---|---|
| LSJE, LLC | Zorro Development Corporation |
| C.O.U.Q. Foundation | Nautilus, Inc. |
| Gratitude America Ltd. | Poplar, Inc. |
| J. Epstein Virgin Islands Foundation | Great St. Jim, LLC |
| FT Real Estate Inc. | Cypress, Inc. |
| Hyperon Air, Inc. | Maple, Inc. |
| Jeepers, Inc. | Laurel, Inc. |
| Mort, Inc. | Southern Trust Company, Inc. |

### III.   OPINION

10.   In her Complaint, Plaintiff describes Mr. Epstein as follows: "During all times relevant to this Complaint, Jeffrey Epstein was an extraordinarily wealthy man with multiple residences in the United States, including a New York City mansion, a Palm Beach mansion, an apartment in France, and an island in the U.S. Virgin Islands." (Compl. ¶20.)  I am informed that Mr. Epstein also owned an extensive ranch in New Mexico, as well as <u>two</u> islands in the U.S. Virgin Islands ("USVI") and several aircraft, including jet airplanes and a helicopter.  I am also informed that, as of the time of his death in August 2019, Mr. Epstein's estate was valued at over $640 million.

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

5

11.     In my experience, it is quite common for extremely wealthy individuals such as Mr. Epstein to have others— sometimes individuals, sometimes a "family office" — administer the operations of their various households, including paying expenses or withdrawing cash at pre-authorized levels.  It is also quite common for such wealthy individuals to form and own multiple corporate entities — sometimes called "single-purpose" entities — with each one holding and administering individual properties or assets, including residences and aircraft, or administering charitable programs.  First and foremost, such a structure protects the wealthy individual's other, unrelated assets from being called on to cover the liabilities of the particular corporate entity at issue.  For example, if a catering company for a gala event held at a wealthy individual's Manhattan residence demands compensation for unexpected damage to its delivery vehicles, it is limited to seeking compensation from the particular entity that owns the property in question or with which the caterer contracted.[1]

12.     There are additional reasons that wealthy individuals commonly use single-purpose entities to own their assets.  As noted above, one is ease of administration.  For example, if an individual owns multiple homes in different jurisdictions, each with their own set of multiple expenses — such as maintenance, repair, household staff, gardeners, utilities, etc. — is easier to keep track of each home's expenses and income (if any) if the home is held by its own single-purpose entity.  The same is true for aircraft, which are often run like businesses.

---

[1] See, for example, Duncan E. Osborne and John A. Terril, II, "Fundamentals of Asset Protection Planning," *ACTEC Journal 331* (2006) at page 31 for a description of the use of LLC's for ownership of real estate to limit liability.

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

6

13. It is also common for real estate in multiple jurisdictions to be held in single-purpose entities for estate purposes. Most top estate planning professionals will advise their wealthy clients to create these types of entities for their real estate. Upon a person's death, their will is required to be offered for probate, often (but not always) in the jurisdiction in which the decedent resided. If the decedent owns real estate at his or her death in other jurisdictions, the personal representatives of the estate are required to offer the will for probate (known as "ancillary probate") in those jurisdictions where the real estate is located in order to transfer title to that real property. By holding the properties in a single-purpose entity, the decedent at death can minimize or avoid ancillary probate because the ownership is no longer of real estate but rather of a corporate entity or LLC, which is typically not considered real estate for probate purposes. Ancillary probate proceedings are costly and lengthy, but they may be avoided through the use of single-purpose entities.

14. Another reason wealthy people own real and personal property in single-purpose entities is the avoidance of local estate taxes at death. While not always the case, if real property is located in a jurisdiction that imposes a separate state estate tax and the decedent is not domiciled in that state, some states will not subject the single-purpose corporate entity or LLC to estate tax even though the real estate would be subject to such tax.

15. It is also a "best practice" for wealthy individuals to accurately track and account for expenses and income associated with their various assets. By accounting for each single-purpose entity's expenses and income in its own books and records,

Docusign Envelope ID: A137A93C-5EFF-499A-B16F-5075A56A4CBC

7

wealthy individuals are better positioned to demonstrate the corporate separateness of each single-purpose entity, thereby better shielding each entity from the liabilities of the others, and to ensure appropriate tax reporting. Carefully itemizing expenses also helps wealthy individuals avoid waste by identifying excessive, duplicative or unnecessary expenses by the many individuals working for them.

16. It is incorrect to allege that, by their very existence, single-purpose corporate entities "have no legitimate purpose" or are "shams" — rather, they can serve the very real purposes of limiting their owner's potential financial liability, reducing the substantial costs of household administration, saving estate probate fees, limiting local estate taxes and keeping track of expenses and income.

17. Nor can one fairly or legitimately conclude that the creation and operation of multiple corporate entities, all ultimately owned by a single high-net-worth individual, is in itself evidence of any wrongdoing. In the United States, this is how many wealthy individuals — from tech multimillionaires to star professional athletes to Oscar-nominated film stars to award-winning singers to trust fund recipients — operate, all completely within the law.

Dated: New York, New York
       October 14, 2024

Signed by: *Gail Cohen*     10/13/2024
DE459F40DD9C4A3...
Gail E. Cohen

281853681_4