

October 25, 2024

<u>**VIA ECF**</u>

The Hon. Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

> Re: *Jane Doe 3 et al. v. Indyke et al.,* **Case No. 1:24-cv-01204-AS**
> *Jane Doe 3 v. Indyke et al.*, **Case No. 1:24-cv-02192-AS**

Dear Judge Subramanian:

Plaintiff Jane Doe 3 opposes Defendants' ***second*** request for the Court to reconsider its denial of their attempt to depose Plaintiff's husband. Dkt. 212. As discovery has proceeded in this case, it has become even more clear that Plaintiff's husband knows nothing about Plaintiff's abuse at the hands of Epstein and that her emotional and family stability will be threatened if she is forced to reveal the horrific rapes she had to endure to her husband. Defendants' motive of intimidating and harassing Plaintiff into dropping this case is plainly evident. The Court should not reconsider its prior decisions to deny Defendants' request.

As the Court already previously held, denial of Defendants' request for foreign discovery from Plaintiff's husband is proper "given his lack of knowledge about the abuse" Plaintiff experienced, and his testimony is therefore irrelevant. Dkt. 111 at 1; *see also id.* at 2 ("The Court will not impose a request for international judicial assistance to obtain a deposition that is unlikely to lead to any relevant, nonduplicative, or admissible testimony."); *Ackermann v. N.Y. City Dept. of Info. Tech. & Telecomms*., 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010) ("Mr. Bello states that he has no personal knowledge of plaintiff's claim, his motion to quash the subpoena requesting his deposition is granted."); *Eisemann v. Greene*, 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998) (when deponent "has no knowledge of any facts," and "in light of the doubtful and tangential relevance, at best, of anything that could reasonably be expected to emerge from . . . deposition, the Court finds that enforcement of the subpoena would 'constitute an unreasonable or burdensome misuse of the discovery process'" (internal citation omitted)); *Pearlstein v. BlackBerry Ltd.*, 2019 WL 5287931, at *3 (S.D.N.Y. Sept. 20, 2019) ("There is no additional indication here that Mr. Douglas has any knowledge of the PlayBook or why the minimal relevance of the PlayBook is proportional to the burden on the non-party or to the needs of the case more generally."). The inappropriateness of this request is only amplified by the unique privacy issues in these cases and by Defendants' apparent improper motive, which is to harass and intimidate Plaintiff, *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61–62 (W.D.N.Y. 2003) (denying discovery where

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



relevance was "clearly outweighed by the potential that [the] information may be used to harass, oppress or intimidate the plaintiffs"); *Balistrieri v. Holtzman*, 52 F.R.D. 23, 24–25 (E.D. Wis. 1971) (declining to vacate protective order prohibiting certain depositions where "interrogation by the defendants would harass the plaintiff *and* the proposed witnesses rather than lead the defendants to relevant evidence").

Defendants do not meet the "strict" standard for reconsideration. *Great Am. Ins. Co. v. Zelik*, 439 F. Supp. 3d 284, 286 (S.D.N.Y. 2020). Motions for reconsideration are "generally denied," *id.*, and should "only" be granted if the losing party "identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr*., 729 F.3d 99, 104 (2d Cir. 2013) (internal citation omitted). None of those circumstances are present here. Defendants wrongly attempt to use the current motion as "a vehicle for relitigating old issues," and are trying to "tak[e] a second bite at the apple." *Diakite v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 2884047, at *1 (S.D.N.Y. May 14, 2024).

Defendants' argument that Plaintiff's husband can provide "uniquely relevant" testimony has already been decided and rejected by the Court last month. The "documentary evidence" that Defendants allude to, Dkt. 212 at 1, was in their possession at the time when they filed their prior motion over two months ago, and they attached an example as an exhibit to that motion, Dkt. 89-5. So none of these communications create "new facts" or "meaningfully undermine[] or modif[y] the facts presented to [the court]" that would justify reconsideration. *Rodo Inc. v. Guimaraes*, 2023 WL 2734464, at *5 (S.D.N.Y. Mar. 30, 2023). Moreover, none of these documents—which the Court already considered at the time of its prior rulings—change the Court's finding that Plaintiff's husband's testimony would be irrelevant because he "lack[s] . . . knowledge about the abuse," Dkt. 111 at 1. Indeed, the facts that have developed, including Plaintiff's parents' and friend's statements that Plaintiff's husband has no knowledge that Plaintiff was abused by Epstein (as they too testified they had no knowledge until Plaintiff was forced to tell them as a result of Defendants' actions in this case), only further corroborate Plaintiff's husband's lack of knowledge about the abuse. Ex. A at Tr. 52:15–53:12, 236:10–237:5, 249:18–21, 315:25–316:4; Ex. B at 103:1–13; Ex. C at 55:8–56:12; Ex. D at 44:11–21.

Likewise, Defendants' speculation that Plaintiff's husband would be a "unique source" of information about Plaintiff's emotional harm is not a proper justification for reconsideration. Defendants have known that Plaintiff was seeking damages for emotional distress since the beginning of the case and had the opportunity to probe Plaintiff's symptoms during her deposition and the depositions of her parents and friend. It should not have taken an expert report for Defendants to consider that Plaintiff, a victim of sexual abuse, ████████████████. And even so, Defendants were in possession of Dr. Raghavan's expert report prior to the depositions of Plaintiff's parents and friend. Indeed, it is unclear what if any meaningful testimony Plaintiff's husband—a layperson who is not an expert psychologist—can provide on Plaintiff's mental health. Defendants further fail to explain why the fact of ███████████ is a "new fact" that is



significant enough to justify reconsideration, *Hanover Ins. Co. v. Weirfield Coal, Inc.*, 2022 WL 21296023, at *2 (E.D.N.Y. May 26, 2022) (denying reconsideration where evidence was not "new," but even if it were, was not "of such importance that it probably would have changed the outcome" of the Court's prior ruling)—especially here where it will almost certainly require the Court to modify its scheduling order and require the parties to expend substantial resources flying overseas for a third time, *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("[T]he Court's scheduling order 'shall not be modified except upon a showing of good cause.'").

Defendants' claim that Plaintiff "directly put her husband's testimony at issue" by submitting an expert report, Dkt. 212 at 2, is untrue. First, Plaintiff is *not* seeking any damages for injury to her marriage, nor has Plaintiff *ever* argued that "she is entitled to damages for [her] allegedly injured relationship." *Id.* Indeed, Defendants take Dr. Raghavan's report out of context by claiming that she is alleging damages to her injured relationship. On multiple occasions, including in the sentence right before the one Defendants cite, Dr. Raghavan says that Plaintiff has ███████████████████████████████████████. Ex. E at 22 (Plaintiff "█████████████████████████"); 24 (Plaintiff has a "████████████████████████████" and reports a "█████████████████"). Defendants had ample opportunity to probe Dr. Raghavan's testimony on these points at her deposition. Indeed, to resolve this issue Plaintiff is willing to stipulate that she has a good relationship with her husband if that is what is necessary to avoid forcing her to have to reveal the horrific details of Epstein's abuse to her husband.

Finally, Defendants' disagreement with the Court's finding that the confidential marital communications privilege applies is not a valid basis for reconsideration. "[A] mere disagreement with the Court's legal determination is not a valid basis for reconsideration." *In re M/V RICKMERS GENOA Litig.*, 2011 WL 9154839, at *1 (S.D.N.Y. July 8, 2011).

Defendants' justifications for reconsideration are dubious at best and pretextual. There is no doubt that Defendants' strategy of blitzing through Plaintiff's personal life and relationships is aimed at one thing — intimidating her into dropping her case. Indeed, Defendants' latest tactical maneuver of moving for reconsideration arises just a few days after Plaintiff's friend, when asked whether Plaintiff had told her husband about her abuse, testified that Plaintiff would █████████ ██████████████████████████ if forced to reveal this information to her husband. Ex. D 45:17–21. Defendants' strategy is (and has been from the start) to shame Plaintiff for bringing this case and threaten to expose her identity in an effort to scare her from proceeding further in this litigation. *See, e.g., id.* at 130:16–132:1. Victims of abuse should not be forced to sacrifice their ability to hold those who facilitated their abuse accountable by vicious litigation tactics that are only intended to further damage a person who has already suffered more than anyone should ever have to suffer.  Plaintiff respectfully requests that the Court deny Defendants' reconsideration' request.



Respectfully submitted,

*/s/ Sigrid McCawley*
*Sigrid McCawley*