# EXHIBIT B

Megan Nyman<br>
Telephone: (954) 356-0011<br>
Email: mnyman@bsfllp.com

October 1, 2024

**VIA EMAIL**
Daniel H. Weiner
Marc A. Weinstein
Karen Chau
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Email: daniel.weiner@hugheshubbard.com
Email: marc.weinstein@hugheshubbard.com
Email: karen.chau@hugheshubbard.com

  **Re:** *Jane Doe 3 v. Indyke and Kahn,* **Case No. 1:24-CV-01204 (AS)**
    *Jane Doe 3 v. Indyke and Kahn*, **Case No. 1:24-CV-02192 (AS)**

Dear Counsel:

  Plaintiff has concerns with Defendant Indyke's privilege review and addresses deficiencies with Defendant Indyke's First Privilege Log dated September 21, 2024, below. Please let us know your ability to meet and confer tomorrow.

  ***First***, Defendant Indyke has withheld all documents on the basis of attorney-client privilege without even specifying whether Defendant Indyke was receiving or providing legal advice. Plaintiff requests that Defendant Indyke immediately provide revised privilege logs that designate whether the entries pertain to Defendant Indyke's provision of attorney services to Jeffrey Epstein or others, or Indyke's receipt of attorney services from his own attorneys. *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (privilege log was inadequate because it did "not identify which privilege is being asserted (attorney-client or work product)" and often did "not identify the parties to the communication"); *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 497 (S.D.N.Y. 2013), *on reconsideration in part*, 2013 WL 6098484 (S.D.N.Y. Nov. 20, 2013) (finding that a party's "privilege logs are not sufficient" because they do not "allow either plaintiffs or this Court to evaluate what, if any, claims of privilege [the party] may have").

  ***Second***, many of the entries have individuals who appear to be attorneys copied, but without an "Esq." designation or law firm email address, including: [redacted]. Without these designations, Plaintiff cannot determine with certainty who the third parties are and whether they were providing legal advice. Plaintiff requests that Defendant Indyke immediately provide a revised privilege log that designates whether each third party is an attorney.

*Third*, Defendant Indyke's privilege log identifies emails and documents with individuals who appear not to be attorneys, *see, e.g.*, Log Nos. 184, 229, 230, 476, 521, and 522, including ████████████████████████████████████ prior to this litig████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████ ████████████████████ all of the Log's descriptions for the basis of privilege are too vague and conclusory to substantiate a privilege claim. Indeed, Plaintiff is hard pressed to find a single entry with sufficient descriptions under law. "The log must "provide[ ] information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." *Chevron Corp. v. Donziger*, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013). In *Chevron*, the court concluded that the defendants had to amend their privilege log and produce certain do█████████████████ █████████████████████████████████ "Email concerning █████████ ████████████████████████ igation status and strategy re Donziger 1782," and "Email concerning draft memo." *Id.* The court found the insufficiency especially problematic "given the applicability of the crime-fraud exception." *Id.* Even the most substantial entries in Defendant Indyke's privilege log are less descriptive than the ones the court found insufficient in *Chevron*.

Without sufficient descriptions, Plaintiff also cannot determine if the communications pertain to non-legal business advice, which Defendant Indyke apparently provided a lot of. "The fact that a person is an attorney does not render privileged everything he says or does, for or with a client." *United States v. Loften*, 507 F. Supp. 108, 112 (S.D.N.Y. 1981). "[N]on-legal business advice" "is not privileged." *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1236 (S.D. Fla. 2018); *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 693 (S.D.N.Y. 2020) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged."). If the communication between client and lawyer "is not designed to meet problems which can fairly be characterized as predominately legal, the privilege does not apply." *Ramooe, Inc. v. City of New York*, 2017 WL 5054713, at *2 (E.D.N.Y. Nov. 2, 2017). In *MSF Holding, Ltd. v. Fiduciary Trust Company International*, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005), for example, the court held that emails from in-house counsel constituted business advice because counsel "never alluded to a legal principle in the documents nor engaged in legal analysis."

Particularly in light of Defendant Indyke's deposition testimony about the advice he was providing Epstein and his associates, it is entirely unclear from many of the Log entries whether Defendant Indyke was providing business advice or legal advice in the course of his communications with Epstein and others. Any documents that discuss the Epstein's provision of advice on business deals, would not necessarily be privileged and your vague descriptions have proved insufficient to allow Plaintiff to discern the purpose of many, if not all, of the communications included in the Log.

*Fifth*, Defendant Indyke has claimed that the Work Product doctrine applies to 625 documents without once identifying the pending litigation for any entry. While the subject lines at

2

times reference litigation, it is not possible for Plaintiff to determine with certainty whether the communication pertains to that litigation. And many of the entries claim work product privilege ██████████████████████████████████████ was. For example, ████████
████████████████████████████████████████████████████████████████████████████
████████████████ A document must have been prepared in anticipation of litigation to fall within the work product doctrine. Please identify the anticipated or pending litigations for each entry, and the date that each litigation ended.

**Sixth**, Defendants have withheld all their communications based on "Common Interest" without providing any description whatsoever of what the common interest is or between whom and whom the common interest lies. *See* Log Nos. 41–60, 87–89 ████████████████
██████████████████████████████████████████████ 90–97, 593–596 ████████
████████████████ "The common interest rule does not apply merely because two parties share the same attorney or because one party has an interest in a litigation involving another party." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 434 (S.D.N.Y. 2013). Rather, "'[t]here must be a substantial showing by parties attempting to invoke the protections of the privilege of the need for a common defense as opposed to the mere existence of a common problem.'" *Id*. In *Egiazaryan*, the court concluded that the common interest privilege did not apply where the entity was "not a party to any of [the party's] various lawsuits and thus ha[d] no need to develop a common litigation strategy in defending those lawsuits." *Id*.

**Seventh**, Defendant Indyke should produce with redactions communications that appear to involve non-legal discussions or underlying facts that are not privileged.

**Eighth**, as you well know, for over 20 years, Defendant Indyke, Epstein's personal lawyer, enabled and participated in the Epstein Enterprise that resulted in the sex-trafficking and abuse of hundreds of young females. Indyke's responsibilities included authorizing wire transfers to females who Epstein was abusing, structuring sham entities that Epstein used to facilitate his scheme, aiding with immigration paperwork for young females who Epstein sought to bring to the U.S. to abuse, and even at times helping young females Epstein was abusing enter into sham marriages so that Epstein's victims could obtain green cards, among other wrongful conduct. To date in this litigation against him, Indyke has produced less than a thousand documents, half of which are Google Alerts about Epstein. Your Privilege Logs, however, contain thousands of entries. Many of these are communications between Epstein and Indyke over the years with only vague descriptions or no information about the subject whatsoever as explained above. And some, from the subject lines alone, seem to be plainly in contemplation of furthering Epstein's crimes. The crux of this litigation is that Defendants facilitated and participated in Epstein's criminal conduct. Defendant Indyke should not be permitted to hide behind his privilege log in this case where he was enabling Epstein's criminal activity.

To date, despite Epstein being dead, your client Indyke, who only holds the privilege because he is the executor of the estate, is hiding behind Epstein's privilege in an effort to try to cover up his own participation in these crimes. He should agree to waive the privilege but seeing

that he has refused, Plaintiff intends to move under the crime fraud exception to eviscerate his fraudulent claim of privilege. *Greenwood v. State of N.Y.*, 1992 WL 203859, at *5 (S.D.N.Y. Aug. ████████████████████████████████████ 15 (1933)) ("A c█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████therance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984).

The crime-fraud exception has two prongs. First, there must be a factual basis that establishes "probable cause to believe that a fraud or crime has been committed." *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y 2013) (quoting *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997)). Second, there must be a factual basis that ███████████████████████ ████████████████████████████████████████████████████████████ce of the fraud o█████████ █████████████████████████████████████████████████████████████████████████████████ █████████████████████oldings, S.A. v. Lehman Bros., Inc.*, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999). The moving party simply must point to facts which "strike a prudent person as constituting a reasonable basis to suspect the perpetration of a crime or fraud." *DRC Ventures, LLC v. Dalpour*, 2024 WL 2137828, at *5 (S.D.N.Y. 2024) (internal quotations omitted).

The facts show "probable cause to believe that a fraud or crime has been committed" by Epstein. *Amusement Indus.*, 293 F.R.D. at 426. At a minimum, an indictment establishes probable cause that a crime has been committed. *See, e.g., United States v. Levin*, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015); *see also Gerstein v. Pugh*, 420 U.S. 103, 117 n.9 (1975) (holding that a grand jury's return of an indictment "conclusively determined the existence of probable cause."). A conviction conclusively establishes the first prong of the crime-fraud exception." *United States v. Costanzo*, 2024 WL 2046053, *3 (S.D.N.Y. May 8, 2024). Although Epstein was never convicted because he committed suicide while awaiting trial, he was indicted for sex trafficking and conspiracy to commit sex trafficking by a grand jury in 2019. Indictment, *U.S. v. Jeffrey Epstein*, No. 19-cr-490. He also entered into a Non-Prosecution Agreement in 2008 after pleading guilty to felony prostitution following an investigation by the Palm Beach Police Department into accusations that Epstein was abusing minors. There is no serious question that Epstein committed crimes.

In addition, the facts show "probable cause to believe that the communication[s] in question was in furtherance of the fraud or crime." *Amusement Indus.*, 293 F.R.D. at 426. When determining whether communications were made in furtherance of a crime, the "relevant intent is the client." *Id.* Evidence that counsel was aware of their client's wrongdoing "only strengthens the case for a finding of probable cause." *United States v. Costanzo*, 2024 WL 2046053, *4 (S.D.N.Y. May 8, 2024). Communications falling under this exception include those made in procuring funding for criminal act or concealing wrongdoing. *See, e.g., United States v. Spinosa*, 2021 WL 2644936, *7 (S.D.N.Y. June 28, 2021) (client "used the law firm as a tool for executing the charged frauds"); *see also United States v. Parnas*, 2022 WL 3047123, at *3 (S.D.N.Y. Aug. 1, 2022) (holding that the crime-fraud exception applied where there was a "reasonable basis" to conclude that correspondence with counsel was "in furtherance of the alleged scheme" to violate campaign finance law, including attorney's "efforts to conceal [co-conspirator's] role in the scheme");

*United States v. Levin*, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015) (finding "sufficient factual basis" to conduct in camera review when evidence presented showed that the "two defendants discuss changing the name of their business-opportunity entities to avoid disclosure requirements").

Here, the evidence demonstrates Indyke's communications with Epstein were in furtherance of Epstein's crimes. A number of the communications fail to include sufficient descriptions and therefore the privilege should be waived and crime fraud exception applied. Other communications appear to plainly reveal Indyke enabling Epstein's criminal conduct.



To the extent he claims ignorance, Defendant Indyke's assertions that he did not know that his actions were in furtherance of a crime are not credible and fall flat because it is *Epstein*'s intent that is relevant. *Amusement Indus.*, 293 F.R.D. at 426. Given Indyke's role in arranging marriages between victims and concealing Epstein's payments to his victims, there is reasonable basis to assume that Epstein "used" Indyke "as a tool" to commit his crimes. *Spinosa*, 2021 WL 2644936, at *7.

As we have just started to receive your incremental privilege log, and the logs received to date are severely insufficient, this is notice that we intend to go to the Court on our crime fraud issue and will continue to address crime fraud entries as we receive additional logs relating to your rolling production which has been severely delayed to date.

We are reviewing Defendants' recent productions and Defendant Indyke's September 29, 2024, Privilege Log, and reserve all rights.

                                                         Warm regards,

                                                         */s/ Megan Nyman*
                                                         Megan Nyman