

www.pbwt.com

October 23, 2024

Daniel Ruzumna
Partner
(212) 336-2034
druzumna@pbwt.com

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:   *Doe 3 v. Indyke et al.*, Case No. 24-cv-1204 (AS)

Dear Judge Subramanian:

We write to request a conference to address Defendants' request for reconsideration of Your Honor's September 4, 2024 ruling, denying Defendants' motion for the issuance of a letter of request seeking international judicial assistance to obtain Plaintiff Jane Doe 3's husband's testimony (ECF No. 111); in the alternative, Defendants seek a letter of request for that testimony.

On August 16, 2024, Defendants moved for issuance of a letter of request to obtain deposition testimony from Doe's husband, her parents, and her close friend ▌▌▌▌▌.[1] ECF No. 86. On September 4, 2024, the Court issued an order granting Defendants' request as to Doe's parents and ▌▌▌ but denying it as to Doe's husband. ECF No. 111. Defendants first raised reconsideration of the ruling during a telephonic conference with the Court that day. Your Honor directed Defendants to take Doe's parents' and ▌▌▌▌ depositions first to determine whether their testimony sufficiently addressed the relevant issues. Defendants took those depositions on October 16 and 17, and their testimony revealed that those witnesses are not adequate substitutes for Doe's husband, ▌▌▌▌▌. In fact, the depositions demonstrated that ▌▌▌▌ deposition is crucial for Defendants to obtain relevant testimony that the other witnesses could not provide.

**Jane Doe 3's Husband Can Provide Testimony That Other Witnesses Cannot**

Doe's husband's testimony is uniquely relevant to this case for three reasons. First, documentary evidence shows that Doe and ▌▌▌▌ discussed her work and travel with Epstein

---

[1] Defendants filed their motion after weeks of seeking Doe's counsel's input on how best to obtain evidence abroad. Ex. A (Email from D. Weiner to S. McCawley, 07/29/2024 at 10:51 p.m.). Defendants specifically raised concerns about the potential delay in seeking international judicial assistance prior to the close of discovery but delayed their application as a "professional courtesy" to account for Doe's counsel's inability to contact their client. Ex. B (Email from F. Tabatabai to S. McCawley, 08/09/2024 at 11:53 a.m.). After Defendants secured international judicial assistance with the aid of this Court, Plaintiff produced Doe's parents and friend voluntarily. In an effort to avoid unnecessary process this time, Defendants have asked Plaintiff whether she will voluntarily produce her husband if the Court grants this motion; Plaintiff said she would not.

Hon. Arun Subramanian
October 23, 2024
Page 2

contemporaneously in 2014—years before Doe's marriage to ▮▮▮▮ in ▮▮. See Ex. A; Ex. B. Doe's parents denied any knowledge of those communications and were thus unable to provide any substantive testimony about them. See Ex. C (▮▮▮▮ Tr.) at 112:7-9; Ex. D (▮▮▮▮ Tr.) at 58:9-12. Only ▮▮▮▮ can provide testimony about what conversations Doe had regarding Epstein—including conversations that may contradict the factual account Doe has provided so far.

Second, ▮▮▮▮ is a unique source of relevant testimony for Doe's claim for emotional distress damages.[2] ECF No. 1 at ¶ 201; Ex. E (Raghavan Report) at 6. ▮▮▮▮—who ▮▮▮▮ (see Ex. G (Doe Dep.) at 318:6-8)—has a much closer view of her daily well-being than her parents or friend. Doe's expert, Dr. Chitra Raghavan, reports that Doe has "▮▮▮▮." Ex. E (Raghavan Report) at 23. Doe's father and friend had no knowledge of these incidents.[3] Ex. C (▮▮▮▮ Tr.) at 126:1-127:13; Ex. F (▮▮▮▮ Tr.) at 101:6-102:17. Only ▮▮▮▮ is in a position to have observed any such sleep disruptions and testify as to whether they occurred, and, if so, the severity of those incidents. Likewise, Dr. Raghavan opines that Doe ▮▮▮▮" Raghavan Report at 6. Doe's parents and ▮▮▮▮ testified to the contrary. See, e.g., Ex. F (▮▮▮▮ Tr.) at 103:23-25 (▮▮▮▮); Ex. C (▮▮▮▮ Tr.) 41:7-42:1 ▮▮▮▮). Because he lives with her in an intimate relationship, ▮▮▮▮ is uniquely situated to testify regarding his wife's daily mental health.

Third, Doe directly put her husband's testimony at issue by submitting an expert report on September 30, 2024 that purports to describe her relationship with her husband and seeks damages for injury to it. Ex. E (Raghavan Report) at 24 (claiming "▮▮▮▮"). At deposition, Doe testified that ▮▮▮▮. Doe Tr. at 322:22-24 (▮▮▮▮; 114:20-115:2 (same). ▮▮▮▮ testimony is crucial to understanding these discrepancies. Doe's parents and ▮▮▮▮ were asked about Doe's marriage and believed it is stable, but could offer few specifics. ▮▮▮▮ Tr. at 102:21-103:2 ▮▮▮▮; Ex. D (▮▮▮▮ Tr.) at 55:3-5 (▮▮▮▮); Ex. C (▮▮▮▮ Tr.) at 34 (▮▮▮▮). ▮▮▮▮ is the only witness who can shed light on Doe's claim that she is entitled to damages for their allegedly injured relationship.

---

[2] Defendants are prepared to drop their request if Doe withdraws her claims for emotional distress and treatment costs.

[3] Doe's mother knew less and testified her husband has a closer relationship with Doe. See e.g., Ex. D (▮▮▮▮ Tr.) at 21:1-5 ▮▮▮▮.)

Hon. Arun Subramanian
October 23, 2024
Page 3

## The Confidential Marital Communications Privilege is Inapplicable

In its September 4 Order, the Court found that information sought from Doe's husband, "including what Doe told him about her relationship with Epstein, is covered by the rule protecting confidential marital communications." ECF No. 111. But the confidential marital communications privilege "can be successfully asserted only when there exists a marriage valid at the time the communication is made." *In re Witness Before Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986); *see also Trammel v. United States*, 445 U.S. 40, 51 (1980) (confidential marital communications privilege protects "information privately disclosed . . . in the confidence of the marital relationship").[4]  Defendants seek testimony about Doe's communications with ▮▮▮▮ regarding Epstein in 2014, years before they married in ▮▮▮▮. Ex. G (Doe Tr.) at 101:8–22; Ex. G (Doe Tr.) at 13:18. Thus, these communications are not protected marital communications.

Likewise, the testimony Defendants seek regarding ▮▮▮▮ observations of Doe's demeanor and his relationship to Doe over the years does not implicate *communications* between ▮▮▮▮ and Doe; rather, it concerns ▮▮▮▮ *observations* of Doe before and after they were married. *See Engelmann v. Nat'l Broad. Co.*, No. 94-CV-5616 (MBM) (AJP), 1995 WL 214500, at *3 (S.D.N.Y. Apr. 10, 1995) ("the communications privilege. . . does not include observations made of a spouse's activities").

In any event, Doe waived her confidential marital communications privilege by offering her own and her expert's testimony about her communications with her now-husband. *See United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y.*, 71 F.3d 1067, 1072 (2d Cir. 1995); *see, e.g.,* Ex. G (Doe Tr.) at 52:12–20; 101:12-102:22; 104:12-109:17; 234:6–36:9. As this testimony relates to the same topics about which Defendants intend to ask Doe's husband, Doe has waived any confidential marital communications privilege. This Court should not permit Doe to selectively wield the privilege and deny Defendants the opportunity to investigate topics that Doe herself has put at issue.

*        *        *        *        *

Doe has repeatedly maligned Defendants' intent in seeking fact depositions, suggesting that Defendants should refrain from taking discovery while she publicly accuses them of being sex traffickers and seeks a judgment against them personally. (ECF No. 194 at 16 & n.2.) That is contrary to the law, which guarantees Defendants the opportunity to defend themselves and does not require them to refrain from seeking discovery of relevant witnesses at Plaintiff's request. Defendants should be permitted to "follow [] discovery (whatever it is) as far as it leads," including by "gather[ing] witnesses . . . to bolster their case." ECF No. 134 at 4 (concluding Defendants are not prejudiced by Plaintiff's anonymity because they can still identify and seek discovery from witnesses). Plaintiff is not entitled to simultaneously maintain claims and avoid discovery.

---

[4] *Trammel* also addresses the adverse spousal privilege, which is inapplicable here because (1) it applies only in criminal cases, *Chevron Corp. v. Donziger*, No. 11-CV-0691 (LAK), 2019 WL 2235882, at *1 (S.D.N.Y. May 13, 2019), and (2) the privilege can be invoked only by the witness-spouse (here, Doe's husband), *Trammel*, 445 U.S. at 53.

Hon. Arun Subramanian
October 23, 2024
Page 4

                                            Respectfully submitted,

                                            Daniel S. Ruzumna

cc: All counsel of record (via ECF)

Defendants' motion for reconsideration is GRANTED. The Court agrees that the marital-communications privilege cannot be invoked with respect to pre-marital communications or observations about Doe. Of course, to the extent any testimony is elicited that is privileged, it won't be allowed in at trial or considered on any motion. The Court also agrees that Doe put her relationship with her husband at issue by seeking damages in the form of treatment costs to address the harm that Epstein's abuse caused her relationship, among other things. The Court does not see defendants' request as an attempt to pressure Doe into dropping the lawsuit, but rather an attempt to defend themselves, which they are entitled to do.

That said, defendants have agreed to drop this request if Doe withdraws her request for emotional distress and treatment costs, and Doe has agreed to stipulate that she and her husband had a good relationship. So the parties should see if they can reach an agreement that would obviate the need for Doe's husband's testimony.

If not, defendants should submit a letter rogatory to the Court by October 31, 2024. Given the administrative difficulties associated with coordinating with a foreign government and traveling abroad, defendants will have until November 30, 2024, to take Doe's husband's testimony.

The corresponding motions to seal are granted. The Clerk of Court is respectfully directed to terminate the motions at ECF No. 200, 201, 202, 210, 211, and 212.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: October 28, 2024