

VIA ECF
October 28, 2024

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, New York 10007

      Re:    *Jane Doe 3 v. Indyke, et al*, Case No. 24-cv-1204 (AS)

Dear Judge Subramanian:

    Pursuant to Rule 37 and Individual Rule 5, Plaintiff moves to compel disclosure of withheld communications under the crime fraud exception identified in Appendix 1. For over 20 years, Defendant Indyke, Epstein's personal lawyer, facilitated Epstein's sex-trafficking and abuse of hundreds of young females. Indyke's responsibilities included authorizing wire transfers to females who Epstein was abusing, structuring sham entities that Epstein used to facilitate his scheme, aiding with immigration paperwork for young females who Epstein sought to bring to the U.S. to abuse, and even at times helping young females Epstein was abusing enter into sham marriages so that Epstein's victims could obtain green cards, which allowed Epstein to continue to abuse them. Ex. A. To date in this litigation against him, Indyke has produced approximately 4,230 documents, over 900 of which are Google Alerts about Epstein. His four Privilege Logs produced so far, however, contain thousands of entries. Indyke should not be permitted to hide behind his privilege log in this case where he was enabling Epstein's criminal activity.

    **I.**    **Background**

    Indyke first produced Privilege Logs on September 21, 2024 and September 29, 2024. After reviewing the entries, Plaintiff sent Defendants a letter on October 1 explaining that Indyke's privilege log was insufficient for Plaintiff to determine whether the claimed privileges applied. Ex. B. The parties met and conferred on the crime fraud issue on October 3 and could not reach an agreement on the applicability of the crime fraud exception. Indyke subsequently sent revised versions of his first and second privilege logs on October 18 and October 19 and third and fourth privilege logs on October 23 and October 27. Ex. C. On October 19, Indyke also produced a metadata log of unreviewed communications related to Epstein and Maxwell which Indyke claims were presumably (or largely) privileged.[1] *Id*. The amended logs do not alter Plaintiff's position that the crime-fraud exception applies to a large number of the logged communications. Accordingly, this issue is now ripe for the Court's consideration.

    **II.**    **The Court Should Grant Plaintiffs' Motion to Compel**

    The Court should compel Defendant Indyke to produce documents wrongfully designated as protected by attorney-client privilege. Defendant Indyke may not abuse the attorney client

---

[1] Appendix 1 only includes entries from Indyke's first and second amended privilege logs. Plaintiff has just received many of the logs and will submit a supplemental Appendix with entries from the logs expeditiously.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



privilege to escape accountability for wrongdoing. *Greenwood v. State of N.Y.*, 1992 WL 203859, at *5 (S.D.N.Y. Aug. 10, 1992) (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933)) ("A client who consults an attorney for advice that will service him in the commission of a fraud will have no help from the law."); *see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) (no protection for communications "if they related to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct").

The crime-fraud exception has two prongs. First, there must be a factual basis that establishes "probable cause to believe that a fraud or crime has been committed." *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y 2013). Second, there must be a factual basis that establishes "probable cause to believe . . . that the communications in question were in furtherance of the fraud or crime." *Id*. The moving party's evidentiary burden is not "overly demanding." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999). The moving party simply must point to facts which "strike a prudent person as constituting a reasonable basis to suspect the perpetration . . . of a crime or fraud." *DRC Ventures, LLC v. Dalpour*, 2024 WL 2137828, at *5 (S.D.N.Y. May 13, 2024).

<u>First</u>, the facts show "probable cause to believe that a fraud or crime has been committed" by Epstein. *Amusement Indus.*, 293 F.R.D. at 426. At a minimum, an indictment establishes probable cause that a crime has been committed. *See, e.g., United States v. Levin*, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015); *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (holding that a grand jury's return of an indictment "conclusively determine[d] the existence of probable cause."). A conviction conclusively establishes "the first prong of the crime-fraud exception." *United States v. Costanzo*, 2024 WL 2046053, *3 (S.D.N.Y. May 8, 2024). Although Epstein was never convicted because he committed suicide while awaiting trial, he was already a registered sex offender for his crimes in Florida and was indicted for sex trafficking and conspiracy to commit sex trafficking by a grand jury in 2019 and his co-conspirator Ghislaine Maxwell was convicted of sex trafficking. Indictment, Dkt. 2, *United States v. Epstein*, No. 19-cr-490 (RMB) (S.D.N.Y. July 2, 2019). There is no serious question that Epstein committed crimes.

<u>Second</u>, the facts show "probable cause to believe that the communication[s] in question was in furtherance of the fraud or crime." *Amusement Indus.*, 293 F.R.D. at 426. When determining whether communications were made in furtherance of a crime, the "relevant intent is the client." *Id*. Evidence that counsel was aware of their client's wrongdoing "only strengthens the case for a finding of probable cause." *Costanzo*, 2024 WL 2046053, *4. Communications falling under this exception include those made in procuring funding for criminal act or concealing wrongdoing. *See, e.g., United States v. Spinosa*, 2021 WL 2644936, *7 (S.D.N.Y. June 28, 2021) (client "used the law firm as a tool for executing the charged frauds"); *see also United States v. Parnas*, 2022 WL 3047123, at *3 (S.D.N.Y. Aug. 1, 2022) (holding that the crime-fraud exception applied where there was a "reasonable basis" to conclude that correspondence with counsel was "in furtherance of the alleged scheme" to violate campaign finance law, including attorney's "efforts to conceal [co-conspirator's] role in the scheme").

Here, the log is largely either too vague to tell or otherwise suggests Indyke's communications with Epstein were in furtherance of Epstein's crimes. As an initial matter, many



communications fail to include descriptions that are sufficient to determine whether the crime-fraud exception applies. *Chevron Corp. v. Donziger*, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013) (insufficiency of log particularly problematic "given the applicability of the crime-fraud exception"). Entries with insufficient descriptions are listed in Appendix 1. Merely including the name of litigation or potential litigation is insufficient for Plaintiff to confirm that the crime-fraud exception does not apply, especially here where Epstein used his lawyers to intimidate and harass potential plaintiffs and witnesses in connection with litigation. Consider, for example, the 19 entries where Defendant and Epstein ███████████████████████████████
███████████████

    Other communications appear to plainly reveal Indyke enabling Epstein's criminal conduct. These entries are listed in Appendix 1. For example, Log Number 6 on Indyke's First Amended Privilege Log relates to a December 22, 2014 email chain between Jeffrey Epstein and Indyke with the subject ███████████████████████████████ It is ███████████████████████████████████████████████████████████████████ Additionally ███████████████████████████████████. Log Numbers 122 through 124 from the first amended privilege log relate to the ███████████████████████████████ ███████████ Log Numbers 295 and 296 relate to ███████████████████████████████ ███████████████████████████████. Several of the entries also refer to ███████████████

    To the extent he claims ignorance, Defendant's assertions that he did not know that his actions were in furtherance of a crime are not credible and fall flat because it is *Epstein*'s intent that is relevant. *Amusement Indus.*, 293 F.R.D. at 426. Given Indyke's role in arranging marriages between victims and concealing Epstein's payments to his victims, there is reasonable basis to assume that Epstein "used" Indyke "as a tool" to commit his crimes. *Spinosa*, 2021 WL 2644936, at *7. Indyke should be compelled to disclose the at-issue documents.

    This Court should accordingly order Defendants to produce the at-issue documents. In the alternative, the Court should conduct an *in camera* review of the evidence to determine whether or not the specific communications at issue fall within the scope of the crime-fraud exception. *See DRC Ventures*, 2024 WL 2137828, at *1.



Respectfully Submitted,

 /s/ Sigrid S. McCawley

Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff*

Doe should pick twenty documents for the Court to review in camera and inform defendants by tomorrow, October 30, 2024, which documents they have chosen. By November 1, 2024, defendants should furnish those documents to the Court by email for in-camera review. Defendant may also provide an *ex parte* submission to the Court explaining why the documents are validly privileged.

SO ORDERED.

*[signature]*

Arun Subramanian, U.S.D.J.
Date: October 29, 2024