

www.pbwt.com

November 1, 2024

Daniel Ruzumna
Partner
(212) 336-2034
druzumna@pbwt.com

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:   *Doe 3 v. Indyke et al.*, Case No. 24-cv-1204 (AS)

Dear Judge Subramanian:

On behalf of Defendants, we write in response to Plaintiff's request (ECF No. 229) that the Court reconsider its October 28, 2024 Order permitting Defendants to take the deposition of Plaintiff's husband (ECF No. 225). Plaintiff's sole argument for reconsideration is that, in lieu of taking crucial testimony from Plaintiff's husband, Defendants should accept a stipulation that she and her husband have a "good relationship" and a stipulated jury instruction that "the jury should not consider any impact on Plaintiff's marriage when assessing damages." *Id.* at 1. Plaintiff's proposal is a hollow one: it seeks to trade very little (*i.e.*, one basis for damages that is not supported by the testimony of Plaintiff or her parents, and the loss of which will not reduce at all Plaintiff's claimed damages for mental health treatment) in exchange for Defendants relinquishing their ability to test Plaintiff's assertions of "daily" and sustained emotional distress through the testimony of a key witness with unique knowledge of Plaintiff's daily life and emotional state. Plaintiff's proposal is not a fair exchange, and accepting it would cause unfair prejudice to Defendants.[1]

*First*, the testimony of Plaintiff's husband is crucial to assessing Plaintiff's emotional distress damages, which are alleged to include but go far beyond harm associated with her marriage. According to Plaintiff's expert, Dr. Chitra Raghavan, ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬," ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" and her ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" Ex. A at 6, 23. Dr. Raghavan further notes in her report that Plaintiff has "▬▬▬▬▬▬▬▬▬▬," that "▬▬▬▬▬▬▬▬▬▬," and that "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" *Id.* at 23.

---

[1] Though Defendants prefer to depose Plaintiff's husband in person, they are willing to do so remotely, provided that ▬▬▬▬▬ authorities would allow it.

Hon. Arun Subramanian
November 1, 2024
Page 2

The *only person* in a position to testify regarding his observations of Plaintiff's daily life and the existence of the allegedly severe mental health issues with which she struggles on a daily basis is her intimate partner, with whom she has lived for the last several years. Plaintiff's husband observes her every day and is present for her interactions with him, their children, other family members, and friends. He is therefore better positioned to provide testimony on her emotional state than her parents, her friend, or Plaintiff's expert witness, who spent eight-and-a-half hours evaluating her for purposes of this litigation. Testimony from Plaintiff's husband has the potential to discredit many of the alleged emotional and psychological manifestations of Plaintiff's mental distress on which Dr. Raghavan premises her diagnosis and treatment plan, which she opines will "███████████████████████████████████████████████████████████████████████████ ███." *Id*. at 6.

Even if Plaintiff were to stipulate to a "good relationship" with her husband and not testify regarding her purported nightmares, as she proposes as a "reasonable alternative" (ECF No. 229 at 1), her husband's testimony remains unique and critical because no other witness can testify as to his or her observation (or lack of observation) of Plaintiff's other alleged symptoms of her distress. These symptoms would only be observed—if they exist—by the person who lives with her and knows her intimately. When Defendants deposed Plaintiff's father and friend, they both flatly disagreed with Dr. Raghavan's characterization of Plaintiff's emotional state and symptoms. Ex. B 41:7-42:1; Ex. C at 103:23-25. However, confronted with that contrary testimony in her deposition, Dr. Raghavan testified that the observations of Plaintiff's father and friend should be discounted because Plaintiff hides her true feelings from them. Ex. D at 147:5-151:8; 160:4-162:10; 164:18-166:4. Plaintiff's husband's testimony is therefore critical to test Dr. Raghavan's testimony, and not duplicative of any prior testimony.

*Second*, Plaintiff's proposed jury instruction would unfairly allow her to seek precisely the same emotional distress damages and treatment costs even if the Court were to instruct the jury that it should not consider damages to Plaintiff's marriage. Dr. Raghavan bases her diagnosis and proposed treatment plan on the *totality* of Plaintiff's reported symptoms; her assessment of Plaintiff does not segregate the various alleged manifestations of her emotional distress or assign an emotional distress value and treatment cost to each manifestation. Nor does Plaintiff's economic expert do so when calculating the costs of the treatment plan Dr. Raghavan prescribes. At trial, Dr. Raghavan presumably would still testify as to her diagnosis and treatment plan, even if she were not permitted to reference the impact of Epstein's alleged abuse on Plaintiff's relationship with her husband or her purported nightmares, and Plaintiff's damages expert would still testify about the costs of the treatment plan prescribed. Plaintiff now claims that she never "sought or intended to imply that there were 'damages for injury' to 'her relationship with her husband' as Defendants assert" (ECF No. 229 at 1), but those damages are already baked into Dr. Raghavan's treatment plan since Plaintiff would be seeking the exact same emotional distress damages and out-of-pocket costs for medical treatment. Accordingly, Plaintiff's proposed jury instruction is a meaningless gesture: she is offering to give up nothing in return for depriving Defendants of the most important witness to test her allegations and challenge the purported symptoms on which Dr. Raghavan relies.

Hon. Arun Subramanian
November 1, 2024
Page 3

*Third*, Plaintiff's husband's testimony is valuable for the additional reason that he was in a relationship with her both before and after Epstein's alleged abuse and engaged in contemporaneous communications with her about her work with Epstein. Plaintiff's proposal does nothing to cure Defendants' inability to ask Plaintiff's now-husband about their pre-marital, contemporaneous communications regarding Epstein—of which Plaintiff's parents and friend were wholly unaware. Plaintiff's husband is one of the very few people with whom she discussed her travel with Epstein back in 2014 and possibly in the years following 2014 (before they were married in 2017). In describing Plaintiff's emotional state just before meeting Epstein in 2014, Dr. Raghavan writes: [redacted] Ex. A at 12. Defendants should be permitted to question Plaintiff's husband about this assessment, which was part of Dr. Raghavan's explanation as to why Plaintiff fell within Epstein's "[redacted]" within a few days of meeting him. *Id.* at 11-12.

Finally, there is no basis for Plaintiff's request that the Court stay the Order until after ruling on Plaintiff's motion to amend her complaint. Despite Plaintiff's eleventh-hour request to amend, the parties continued to diligently complete discovery by the October 28, 2024 deadline. These efforts included Defendants' timely filing their request for Plaintiff's husband's deposition at the earliest possible opportunity (and within the discovery period). No other depositions or deadlines have been stayed due to Plaintiff's motion to amend, nor should they be. Plaintiff's request for a stay is just one illustration of the type of prejudice Defendants will suffer if the Court grants Plaintiff's motion to amend.

Your Honor's Order stated that "the parties should see if they can reach an agreement," but "[i]f not, defendants should submit a letter rogatory to the Court by October 31, 2024." ECF No. 225 at 4. Because the parties did not reach agreement, Defendants timely submitted a letter rogatory to the Court. Defendants respectfully request that Plaintiff's motion for reconsideration be denied, and that the Court issue the Letter of Request so that Defendants can depose Plaintiff's husband by the November 30, 2024 deadline ordered by the Court.

Respectfully submitted,

Daniel S. Ruzumna

cc: All counsel of record (via ECF)