# EXHIBIT 111
# Part 2

the majority of the Sexual Abuse Claims thus far have been filed, in order to alleviate the burden of requiring claimants to travel to the Virgin Islands. Proceeding in that forum would also provide claimants and their counsel with easier access to the Program Administrator, who is highly qualified and experienced with this type of claims process, and is therefore likely to reduce the overall costs of Program administration. The Program would be open to claimants wherever they are located, and would use an electronic filing system to make the process available regardless of the claimant's location.

### A. PROPOSED MECHANICS AND ADMINISTRATION OF THE PROGRAM

If this Court authorizes the Co-Executors to proceed with development of the proposed Program, a detailed Program protocol (the "Protocol") would be designed by the claims administration experts, with input from the Co-Executors and those with an interest in resolution of the Sexual Abuse Claims (including claimants and their representatives), and submitted to the Court for its approval.

A ten-point summary of the contemplated Program follows:

1. Participation in the Program would be entirely voluntary.

2. The Program would be available to all claimants with sexual abuse claims against Mr. Epstein who satisfy certain eligibility criteria, as defined in the Protocol.

3. While strict confidentiality will be required of the Program Administrator and the Estate, each claimant would be free to disclose any and all information concerning her participation in the Program, at claimant's sole discretion, including information concerning the mechanics of the Program and the resolution of her claim.

4. Claimants who elect to file a claim with the Program would be invited to provide documentation identified in a claim form to be developed by the claims administration experts, and any additional corroborating or supporting information to help substantiate their claim.

*Estate of Jeffrey Epstein*  
Motion for Establishment of Compensation Program

*Probate No. ST-19-PB-80*  
Page **5**

5. All claimants would be afforded a voluntary, confidential opportunity to meet with the Program Administrator to provide additional information that may bear upon evaluation of their claims.

6. Claims would be processed promptly and efficiently. Claimants would be notified of any deficiency that prevents processing of their claim and provided an opportunity to cure that deficiency.

7. Once a completed claim has been submitted, the Program Administrator would evaluate that claim based on all available information and would determine whether the claimant is eligible to receive compensation and the amount of compensation to be paid. This independent, individual determination will be based on factors and criteria identified in the Protocol. The Estate will have no authority to reject or modify the independent determination of the Program Administrator.

8. Upon issuance of a compensation determination by the Program Administrator, the claimant would have complete freedom to accept or reject that determination. If the claimant elects to accept the determination, the claimant would execute a release waiving her right to litigate any claims she may have against any person or entity arising from or related to Mr. Epstein's conduct, as set forth in the Protocol. Upon the Program Administrator's receipt of the claimant's acceptance of the compensation determination and an executed release, the Program Administrator would approve payment. The approval of any claim by the Program Administrator will be deemed to have the effect of a claim "examined and approved" within the meaning of 15 V.I.C. § 394, and, as already indicated, the Co-Executors would have no authority to reject or modify the Program Administrator's determination of any compensatory award made in accordance with the Protocol.

9. The Program Administrator will submit status reports to the Court on a quarterly basis to provide updated information regarding the progress of the Program, including the number of claims received, the number of claims reviewed, the number of claims approved for payment, the aggregate value of determinations issued, the aggregate value of determinations accepted, and the aggregate value of determinations issued.

10. Following conclusion of the Program, the Program Administrator would issue a Final Report to the Court and the Co-Executors summarizing the Program.

*Estate of Jeffrey Epstein*  *Probate No. ST-19-PB-80*
Motion for Establishment of Compensation Program  Page **6**

### B.   PROPOSED CLAIMS PROCESS FOR PROGRAM PARTICIPATION

With respect to the timing and notice of claims, the Program would, if approved by the Court, establish an effective commencement date and deadline for submission of all claims. A claim form would be developed by the Program Administrator and disseminated to all known claimants identified in a confidential database. Instructions for completing the form would be included along with the form. The Program would operate and maintain a website that provides general information about the Program, including the Protocol, Frequently Asked Questions, and information about filing deadlines. Contact information for the Program would also be available on the Program website. That website would also allow claimants, directly or through their representatives, to register a new claim and/or upload their claim form or supporting documents to facilitate submission and processing of individual claims.

### C.   PROPOSED DESIGN, IMPLEMENTATION AND ADMINISTRATION OF THE PROGRAM

To establish the Program and design and implement the Protocol, the Co-Executors propose engaging the services of independent, nationally recognized experts in this field: Jordana H. Feldman, Kenneth R. Feinberg and Camille S. Biros, whose credentials are discussed in Section D below. The Protocol developed by these experts, with input from the Co-Executors and those with an interest in resolution of the Sexual Abuse Claims (including claimants and their representatives), would include eligibility criteria, the methodology for determining compensatory damages, proof requirements and claims procedures, and timing, as follows:

- *Eligibility.* Identifying the criteria to determine whether a claimant is eligible to receive compensation under the Program.

- *Determination Methodology.* Defining the factors and considerations to be used to determine the amount of compensation to be offered to any eligible claimant.

- ***Proof Requirements and Claims Procedures.*** Determining what types of supporting documentation or other evidence each individual may be required to submit to substantiate the claim, satisfy Protocol requirements, and allow the Program Administrator to review, process and evaluate the claim.

- ***Timing.*** Expressly stating the timeframe of the Program, including an effective commencement date and deadline for submission of all claims.

In addition to leading the design and implementation of the Program, Ms. Feldman would serve as the Program Administrator and would administer the Program and process all claims. The Program Administrator would have final decision-making authority relating to the administration, evaluation and valuation of claims. As noted above, the approval of any claim by the Program Administrator will be deemed to have the effect of a claim "examined and approved" within the meaning of 15 V.I.C. § 394.

### D.   CREDENTIALS OF PROGRAM ADMINISTRATOR AND DESIGNERS

The Program Administrator and Program Designers' qualifications for participation in the Program are set forth below.

1. Jordana H. Feldman (Program Administrator & Designer)

    - Ms. Feldman has spent her career engaged in the design, implementation and administration of mass tort claims programs and complex settlements as effective and creative alternatives to litigation.

    - Until recently, Ms. Feldman served as the Deputy Special Master and Director of the New York Office of the September 11th Victim Compensation Fund ("VCF"), the litigation-alternative program established in 2001 and reopened in 2011 to compensate individuals who have become sick or died as a result of their September 11th-related exposure, and administered by the United States Department of Justice. She has worked on the VCF for over ten years, playing a key role in developing guidelines for eligibility and the valuation of losses, and adjudicating thousands of claims, valued in the aggregate over $12 billion. In that position, she has extensive experience interviewing victims of the September 11 tragedy.

- Before joining the Justice Department to work on the VCF, Ms. Feldman worked in the complex dispute resolution practice at the law firm Dickstein Shapiro, LLP, where she represented clients in the design, implementation and administration of complex settlements and mass claims resolution programs arising out of class actions, legislation and Chapter 11 bankruptcy reorganizations. Before working at Dickstein Shapiro, LLP, Feldman worked as a litigation associate at Fried, Frank, Harris, Shriver & Jacobson.

- Ms. Feldman is the co-author of the *Master Guide to Mass Claims Resolution Facilities* (2011) and graduated in 2000 from the University of Pennsylvania Law School. She received her undergraduate degree *magna cum laude* in 1997 from the University of Pennsylvania.

2. Kenneth R. Feinberg (Program Designer)

- Mr. Feinberg is the nation's leading expert in mediation and alternative dispute resolution, and the founder of the Law Offices of Kenneth R. Feinberg, PC. He has been appointed to administer numerous high-profile compensation programs, having served as special master of the September 11th Victim Compensation Fund, the Troubled Asset Relief Program ("TARP") Executive Compensation Program, and the Agent Orange Victim Compensation Program.

- Mr. Feinberg and his colleague Camille Biros have designed and implemented the New York Archdiocese Independent Reconciliation and Compensation Program for resolution of claims of sexual abuse of minors by members of the clergy, as well as similar compensation funds for the Dioceses of Brooklyn and Rockville Centre, New York and for Dioceses in the states of California, Colorado, New Jersey and Pennsylvania.

- Mr. Feinberg has served as adjunct professor of law at Harvard Law School, Columbia Law School, University of Pennsylvania School of Law, Georgetown University Law Center, New York University School of Law, University of Virginia School of Law, and Benjamin N. Cardozo School of Law. Before his academic career, he served as an Assistant U.S. Attorney for the Southern District of New York, special counsel for the U.S. Senate Committee on the Judiciary, and founding partner of the Washington office of the law firm Kaye Scholer LLP, among other positions.