UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe 3, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>Darren K. Indyke and Richard D. Kahn,<br><br>    Defendants. | Case No. 1:24-cv-01204-AS<br>[rel. 1:24-cv-02182-AS] |

PLAINTIFF JANE DOE 3'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE MARIANNE DEMARIO'S
OPINIONS REGARDING CLASS-WIDE DAMAGES

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ..............................................................................................................................3

I.    MS. DEMARIO'S OPINIONS ARE RELIABLE .............................................................. 3

    A.    Ms. DeMario's Opinions Are Sufficiently Detailed and Not Speculative. ............ 4

    B.    Ms. DeMario's Opinions on Out-of-Pocket Damages and Lost Earnings Are
            Reliable and Therefore Admissible.......................................................................... 6

    C.    Ms. DeMario's Opinions on Non-Economic Damages Are Reliable and
            Therefore Admissible............................................................................................. 12

II.    MS. DEMARIO'S OPINIONS WILL ASSIST THE JURY ............................................ 12

CONCLUSION..........................................................................................................................14

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
  2023 WL 8280139 (S.D.N.Y. Nov. 30, 2023) (Subramanian, J.)............................................. 16

*Adrea, LLC v. Barnes & Noble, Inc.*,
  2014 WL 8850434 (S.D.N.Y. Oct. 14, 2014) ........................................................................... 5

*Caruso v. Bon Secours Charity Health Sys. Inc.*,
  2016 WL 8711396 (S.D.N.Y. Aug. 5, 2016), *aff'd,* 703 F. App'x 31 (2d Cir. 2017) ................ 7

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................................................10, 11, 12

*CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*,
  2006 WL 2054646 (W.D. Okla. July 24, 2006)........................................................................ 10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................... 1, 3, 4

*Feliciano v. CoreLogic Saferent, LLC*,
  2020 WL 6205689 (S.D.N.Y. June 11, 2020) .......................................................................... 3

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020).......................................................................... 15

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..................................................................................................... 7

*Hart v. Rick's Cabaret Intern., Inc.*,
  2014 WL 7183956 (S.D.N.Y. Dec. 17, 2014) .......................................................................... 9

*Hickory Securities Ltd. v. Republic of Argentina*,
  493 F. App'x 156 (2d Cir 2012) .................................................................................. 8

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
  2019 WL 1569294 (D. Kan. Apr. 11, 2019) ............................................................................. 4

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
  2008 WL 1971538 (S.D.N.Y. May 7, 2008) ............................................................................. 4

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..................................................................................11

*In re Processed Egg Products Antitrust Litig.*,
  81 F. Supp. 3d 412 (E.D. Pa. 2015) .......................................................................................11

*JP Morgan Doe I v. JP Morgan Chase Bank, N.A.*,
2023 WL 3945773 (S.D.N.Y. June 12, 2023) ....................................................11

*L. Debenture Tr. Co. of New York v. WMC Mortg., LLC*,
2017 WL 3401254 (D. Conn. Aug. 8, 2017) ...................................................... 13

*Lidle ex rel. Lidle v. Cirrus Design Corp.*,
2010 WL 2674584 (S.D.N.Y. July 6, 2010) ................................................. 5, 6, 13

*Moussouris v. Microsoft Corp.*,
311 F. Supp. 3d 1223 (W.D. Wash. 2018) .......................................................11

*Orthofix, Inc. v. Gordon*,
2016 WL 1273160 (C.D. Ill. Mar. 31, 2016) .................................................... 10

*Passman v. Peloton Interactive, Inc.*,
671 F. Supp. 3d 417 (S.D.N.Y. 2023) ............................................................... 3

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ............................................................................. 12

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .................................................................................. 9, 12

*U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*,
2013 WL 1792463 (D.N.J. Apr. 26, 2013) ...................................................... 10

*United States v. Guo*,
2024 WL 2262706 (S.D.N.Y. May 17, 2024) ..................................................... 6

*United States v. Napout*,
963 F.3d 163 (2d Cir. 2020) ................................................................... 1, 3, 13

*United States v. Raniere*,
2019 WL 2212639 (E.D.N.Y. May 22, 2019) ............................................. 5, 6, 14

*Valelly v. Lynch*,
2023 WL 2918982 (S.D.N.Y. Apr. 12, 2023) ................................................... 15

*Veleron Holding, B.V. v. Morgan Stanley*,
117 F. Supp. 3d 404 (S.D.N.Y. 2015) ........................................................ 12, 14

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ................................................................... 9, 11, 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................................... 10, 11, 12

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).............................................................................. 6

*Zapata v. Crown Equip. Corp.*,
    2006 WL 8461377 (S.D.N.Y. Apr. 7, 2006).............................................................................. 4

**<u>Rules</u>**

Fed. R. Evid. 702 ......................................................................................................................... 3

Plaintiff Jane Doe 3 ("Doe"), by and through undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants' *Daubert* Motion to Exclude Marianne DeMario's Opinions Regarding Class-Wide Damages (Dkt. 246), and states as follows:

## PRELIMINARY STATEMENT

The Court should deny Defendants' motion because Ms. DeMario's expert opinions regarding class-wide damages readily meet the Second Circuit's "liberal standard of admissibility" under Rule 702. *United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020).

For decades, notorious sex trafficker Jeffrey Epstein abused hundreds of women, enabled by his long-time attorney, Darren Indyke and accountant, Richard Kahn. They ensured Epstein had "reliable access" to a lot of cash, which was the "lifeblood" of his operation. Dkt. 80 at 2 (quoting Compl. ¶¶ 126, 133). They made countless cash withdrawals while "ke[eping] the flow of funds under the radar." *Id.* at 2 (citing Compl. ¶¶ 135–39). They arranged sham marriages to obtain immigration status for foreign victims. Compl. ¶¶ 160–62. They also controlled his financial and business affairs. Dkt. 80 at 2–3 (citing Compl. ¶¶ 145–49, 150–56, 165–84, 208). "And they were, of course, being paid every step of the way." *Id.* at 3 (citing Compl. ¶¶ 185–88). As a result of Defendants' conduct, Doe and hundreds of other women suffered and continue to suffer substantial injuries, including damages from physical and psychological injuries, medical costs, lost wages, pain and suffering, and punitive damages. Compl. ¶¶ 206, 211, 221, 233, 254, 272, 302; *see also* Dkt. 251-1 at 15. To right that wrong, Doe moved to certify a class of Epstein survivors seeking justice from their abuser's most trusted right-hand men. *See* Dkt. 118.

To assist the jury in awarding damages, Doe offers testimony from Marianne DeMario as an expert witness qualified to opine on: ███████████████████████████████

████████████████████████████████████████████████████████

1

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

      As part of their efforts to avoid facing a class of Epstein survivors, Defendants have moved to exclude Ms. DeMario's opinions on class-wide damages. Defendants do not challenge Ms. DeMario's opinions regarding Doe's economic damages, nor do Defendants challenge Ms. DeMario's qualifications to serve as an expert witness in this case. Instead, Defendants disagree with Ms. DeMario's opinions regarding class-wide damages, insisting her opinions are "unreliable" and "not . . . helpful to [the] jury." Dkt. 247 at 6. Far from it, Ms. DeMario's opinions reflect a reasoned and flexible approach to calculating damages—one that can be applied if the class is certified. Accordingly, the Court should deny Defendants' Motion.

## ARGUMENT

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions," *Napout* 963 F.3d at 187, beginning with "a presumption that expert evidence is admissible," *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 431 (S.D.N.Y. 2023). Exclusion remains "the exception rather than the rule." *Feliciano v. CoreLogic Saferent, LLC*, 2020 WL 6205689, at *1 (S.D.N.Y. June 11, 2020). "[T]he traditional and appropriate means of attacking shaky but admissible evidence" is not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Under Federal Rule of Evidence 702 and *Daubert*, the proponent of a witness "qualified as an expert by knowledge, skill, experience, training, or education" must show:

> [I]t is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Defendants attack both the reliability and helpfulness of Ms. DeMario's opinions regarding class-wide damages. Neither argument is persuasive.

## I.    MS. DEMARIO'S OPINIONS ARE RELIABLE

Ms. DeMario meets the reliability prong under Rule 702 and *Daubert*. The test for reliability is "flexible," and the list of factors identified in *Daubert* "neither necessarily nor exclusively applies to all experts or in every case." *Zapata v. Crown Equip. Corp.*, 2006 WL 8461377, at *3 (S.D.N.Y. Apr. 7, 2006). In cases where experts "draw a conclusion from a set of observations based on extensive and specialized experience," "the method is the application of

experience to facts." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2008 WL 1971538, at *6 (S.D.N.Y. May 7, 2008).

Here, Ms. DeMario meets the low threshold for reliability under Rule 702 and *Daubert* because she applies her experience to the facts before her to propose valid methods for calculating class-wide damages. Defendants' complaints to the contrary are little more than a thinly veiled attempt to reargue their opposition to class certification.

A.    **Ms. DeMario's Opinions Are Sufficiently Detailed and Not Speculative.**

Defendants' claims that Ms. DeMario's opinions are too speculative and lack sufficient detail are wrong. *See* Dkt. 247 at 11–12. It is well-settled that "as the parties remain engaged in merits discovery at the class certification stage, the information available to experts is limited." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2019 WL 1569294, at *4 (D. Kan. Apr. 11, 2019); *cf. Adrea, LLC v. Barnes & Noble, Inc.*, 2014 WL 8850434, at *1 (S.D.N.Y. Oct. 14, 2014) (degree of speculation in expert's testimony was "a function of the limited nature of the underlying evidence available in this case"). Indeed, a focused *Daubert* analysis "scrutinize[s] the reliability of the expert testimony in light of the . . . current state of the evidence." *In re EpiPen*, 2019 WL 1569294, at *4 ("[T]he forthcoming class certification determination is but a preliminary determination subject to reevaluation and amendment in light of developments in the case."). Here, Ms. DeMario submitted her initial report on September 30, 2024—approximately one month before the close of discovery and while class certification was still being briefed. Dkt. 74. As such, Ms. DeMario's report is sufficiently detailed given the state of the evidence in the case.

Even without a ruling on class certification, Ms. DeMario's opinions are sufficiently detailed to clear the hurdles of both Rule 702 and *Daubert.* "Quibbles with the level of detail" in

an expert's report "are too minor" to render an expert opinion unreliable. *See United States v. Raniere*, 2019 WL 2212639, at *7 (E.D.N.Y. May 22, 2019). An expert's opinion is only unreliable "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Lidle ex rel. Lidle v. Cirrus Design Corp.*, 2010 WL 2674584, at *4 (S.D.N.Y. July 6, 2010). Any other arguments that the expert's opinions and assumptions are unsupported "go to the weight, not the admissibility, of the testimony." *Id.*

Here, Ms. DeMario's opinions are not speculative or based on unrealistic assumptions. Rather, she applies her specialized experience in damages calculations to provide a flexible and reliable methodology for calculating damages on a class-wide basis. ███████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████ While Defendants claim Ms. DeMario's frameworks lack sufficient detail, those arguments "go to the weight, not the admissibility" of her opinions. *Lidle*, 2010 WL 2674584, at *4; *Raniere*, 2019 WL 2212639, at *7.

Defendants' reliance on *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6–7 (S.D.N.Y. Aug. 5, 2010) and *United States v. Guo*, 2024 WL 2262706, at *9 (S.D.N.Y. May 17, 2024) is misplaced. In *Weiner*, the expert attempted to determine the price premium attributable to a beverage company's misleading labeling but was excluded when he failed to provide a clear methodology for developing an empirical algorithm necessary to make that determination. 2010 WL 3119452, at *6–7. In *Guo*, the expert attempted to opine on a company's valuation but was excluded when he failed to sufficiently describe two of his valuation methods. 2024 WL 2262706,

at \*9.  Here, Ms. DeMario is not attempting to calculate a price premium or engage in a complex business valuation ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  That is precisely what she has done.

The remaining cases Defendants cite are distinguishable, as those cases involved experts who offered speculative, unsupported claims beyond the expert's knowledge. *See, e.g.*, *Caruso v. Bon Secours Charity Health Sys. Inc.*, 2016 WL 8711396, at \*6 (S.D.N.Y. Aug. 5, 2016), *aff'd*, 703 F. App'x 31 (2d Cir. 2017) (excluding clinical psychologist's opinions who concluded the plaintiff's termination "was motivated by race and sex discrimination" without knowing who made the decision to terminate her, demonstrating a failure to "conduct an independent review of the record"); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (upholding exclusion of experts' opinions linking cancer to PCB exposure where studies upon which experts relied did not establish such connection). By contrast, Ms. DeMario offers frameworks for calculating class-wide damages, which are grounded in her expertise in damages calculations and review of the evidence that exists.

> **B.     Ms. DeMario's Opinions on Out-of-Pocket Damages and Lost Earnings Are Reliable and Therefore Admissible.**

Ms. DeMario's expert opinions on out-of-pocket damages and lost earnings are reliable. Ms. DeMario sets out a reasonable framework for both topics. ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Defendants claim that Ms. DeMario's proposed sampling methodology cannot be reliably projected to class members with individualized claims. Dkt. 247 at 11. Not true. "Aggregate computation of class monetary relief"—including by means of sampling— "is both lawful and

proper."[1] *See Hart v. Rick's Cabaret Intern., Inc.*, 2014 WL 7183956, at *6 (S.D.N.Y. Dec. 17, 2014); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (noting that the use of sampling "evidence cannot be deemed improper merely because the claim is brought on behalf of a class"). Courts have found sampling permissible for class-wide relief where the class members are similarly situated. *Tyson*, 577 U.S. at 459 (finding "the experiences of a subset of [plaintiffs] . . . probative as to the experiences of all of them" where each plaintiff "worked in the same facility, did similar work, and was paid under the same policy"). Additionally, a method for calculating class-wide damages is sufficient even if it does not account for certain variations. *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) (finding failure to account for variations in inflation acceptable since calculations need not be exact); *see also Hart*, 2014 WL 7183956, at *6 ("Courts have not required absolute precision as to damages."). Here, Doe and other class members were victimized by Epstein's sex-trafficking venture, which was carried out pursuant to a well-oiled *modus operandi* Epstein used with all class members during Epstein's employment of Defendants. Because the proposed class members suffered in a similar fashion from Defendants' wrongful conduct, Ms. DeMario's sampling methodology is proper even if there may be "variations" in each victim's claims. *Tyson*, 577 U.S. at 459; *Waggoner*, 875 F.3d at 106.

Defendants' argument that Ms. DeMario's sampling methodology would impermissibly permit a jury to find liability and causation for all non-sampled class members is misplaced. Dkt. 247 at 14; *see also id.* at 16–17. It is entirely permissible for Ms. DeMario to assume liability and causation for the purpose of presenting her opinions on damages. *See, e.g.*, *U.S. Accu-*

---

[1] Defendants' own cited authority recognizes this principle. *See Hickory Securities Ltd. v. Republic of Argentina*, 493 F. App'x 156, 159 (2d Cir 2012) (explaining that "[a]ggregate class[-]wide damages are not *per se* unlawful" so long as "the damages awards roughly reflect the aggregate amount owed to class members").

*Measurements, LLC v. Ruby Tuesday, Inc.*, 2013 WL 1792463, at *8 (D.N.J. Apr. 26, 2013) ("Expert opinions on damages commonly assume liability, which must be established independently."); *CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*, 2006 WL 2054646, at *4 (W.D. Okla. July 24, 2006) ("For the purpose of presenting his damage calculation methods, [a damages expert] is entitled to presume causation (a prerequisite to recovery which will have to be established by evidence other than [his] testimony)."); *Orthofix, Inc. v. Gordon*, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 31, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purpose of his or her opinion. To hold otherwise would be illogical."). ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Defendants' reliance on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) to challenge Ms. DeMario's methodology is improper. These cases address class certification issues under Rule 23, not the admissibility of expert testimony under *Daubert*. *See Comcast*, 569 U.S. at 38 (reversing class certification); *Dukes*, 564 U.S. at 367 (same); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1074 (C.D. Cal. 2015) (*Comcast* "does not affect . . . admissibility[, which] turns on whether [the expert]'s methodology is sufficiently reliable."); *In re Processed Egg Products Antitrust Litig.,* 81 F. Supp. 3d 412, 436 (E.D. Pa. 2015) (same); *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1236 (W.D. Wash. 2018) (denying *Daubert* motion and observing that "*Dukes* did not

concern a motion to exclude at all"). Indeed, neither *Comcast* nor *Dukes* concerned a *Daubert* challenge to exclude an expert.[2]

In any event, Ms. DeMario's damages model complies with *Comcast* and *Dukes*. *Comcast* stands for the simple proposition "that a model for determining class[-]wide damages . . . must actually measure damages that result from the class's asserted theory of injury." *Waggoner*, 875 F.3d at 106 (internal quotation marks and citations omitted). The common theory of liability across all claims in this case is that Defendants supported "Epstein's sex-trafficking venture while [they] knew or should have known that that venture was in operation." Dkt. 119 at 19 (quoting *JP Morgan Doe I v. JP Morgan Chase Bank, N.A.*, 2023 WL 3945773, at *10 (S.D.N.Y. June 12, 2023)). Ms. DeMario's damages model, which measures ████████████████████████████████████ ██████████████████████████████████████ is directly tied to this theory of liability—which is all that *Comcast* requires.[3]

Ms. DeMario's methodology also complies with *Dukes*. "[*Dukes*] does not stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability." *Tyson*, 577 U.S. at 457. Rather, *Dukes* held that a "Trial by Formula" approach was inappropriate where the plaintiffs failed to demonstrate a common, overarching practice that tied "all . . . 1.5 million [class members'] claims together." *See Dukes*, 564 U.S. at 357, 367. Once again, Doe and other class members were similarly victimized by Epstein's sex-trafficking venture, which followed a consistent *modus operandi* Epstein used with all class members during

---

[2] *Dukes* briefly references *Daubert*, but it does so in dicta. *See Dukes*, 564 U.S. at 354 (noting in dicta that the Court "doubt[s] that" "*Daubert* did not apply to expert testimony at the certification stage of class-action proceedings" but not settling the question).

[3] The fact that Doe brings both tort and TVPA claims does not alter this conclusion. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015) (finding *Comcast* satisfied where damages model reflected the harm caused by defendant's common course of wrongful conduct, even though plaintiffs brought claims under "multiple federal and state statutes").

Epstein's employment of Defendants. Given the uniformity of Defendants' wrongful conduct toward the class, Ms. DeMario's methodology is consistent with *Dukes*. *Tyson*, 577 U.S. at 459.

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Experts are not required to conduct a survey or review sample data before forming their conclusions. *See Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 445 (S.D.N.Y. 2015) ('[T]he fact that [the expert] did not conduct a 'survey' before reaching his conclusion" was not a sufficient basis to question reliability.); *Napout*, 963 F.3d at 188 (finding expert testimony properly admitted over objections that expert's opinion was "not based on any actual data or empirical analysis"). Such alleged deficiencies are "at best an avenue for cross-examination, rather than a disqualification from testifying." *Veleron*, 117 F. Supp. 3d at 445; *Napout*, 963 F.3d at 188 (same); *see also L. Debenture Tr. Co. of New York v. WMC Mortg., LLC*, 2017 WL 3401254, at *22 (D. Conn. Aug. 8, 2017) (allowing plaintiff to develop and present sampling evidence at trial over defendant's motion in limine to exclude it). Here, the fact that Ms. DeMario ████████████████████████████████████ ████████████████ at a posture in the case when she when she was not even able to determine who comprised the class, does not render her opinion unreliable. No class has been certified.

████████████████████████████████████████████████████████████████████

████████████████████████ a portion of her opinions that Defendants have not challenged. Dkt. 248-2 at ¶¶ 11–22. Defendants' objections go to the credibility of her testimony, which is a matter for cross-examination, not exclusion. *See Lidle*, 2010 WL 2674584, at *4; *WMC Mortg.*, 2017 WL 3401254, at *22; *Veleron*, 117 F. Supp. 3d at 445.

### C.    Ms. DeMario's Opinions on Non-Economic Damages Are Reliable and Therefore Admissible.

Defendants' arguments that Ms. DeMario does not offer a reliable methodology to calculate non-economic damages for the class are equally unpersuasive. █████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

                    ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ But that level of detail is not required. *See Raniere*, 2019 WL 2212639, at *7. Defendants' complaints are "at best an avenue for cross-examination, rather than a disqualification from testifying." *See Veleron*, 117 F. Supp. 3d at 445.

## II.    MS. DEMARIO'S OPINIONS WILL ASSIST THE JURY

Ms. DeMario's opinions on class-wide damages will also assist the jury under Rule 702 and *Daubert*. The requirement that expert testimony "assist the trier of fact" goes primarily to relevance. *Daubert,* 509 U.S. at 591 (referring to this prong as the "helpfulness" standard). Relevance can be expressed as a question of "fit"—"whether expert testimony proffered in the

case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.*

Here, Ms. DeMario's opinions are relevant and sufficiently tied to the facts of the case because they aid the jury in calculating damages stemming from Defendants' wrongs. As discussed above, the central allegations in this case are that Defendants supported "Epstein's sex-trafficking venture while [they] knew or should have known that that venture was in operation." Dkt. 119 at 19. If proven, Ms. DeMario's opinions, which propose frameworks for calculating ███████████

████████████████████████████████████████████████████████████

███ are both relevant and helpful to the jury in making that determination. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 4251229, at *4 (S.D.N.Y. Feb. 19, 2020) (denying in part *Daubert* motion where the expert's testimony "provid[ed] the trier of fact with the necessary tool[s] to make [the] ultimate determination").

Defendants complain that Ms. DeMario did not tailor her methodologies to the individual circumstances of each class member, but she was not required do so. A method for calculating class-wide damages is sufficient even if it does not calculate with precision each individual class member's damages. *Waggoner*, 875 F.3d at 106. Here, Ms. DeMario provided a class-wide damages model that can be applied across the entire class, even if she did not consider the "unique circumstances" of each putative class member. Defendants' argument on this issue essentially rehashes their objections to class certification. *See* Dkt. 183 at 20–22 (attacking Ms. DeMario's expert report for purportedly failing to account for each individual plaintiff's damages). A *Daubert* motion is not the appropriate forum for rearguing Rule 23 issues.

Defendants' reliance on *Valelly v. Lynch*, 2023 WL 2918982, at *7 (S.D.N.Y. Apr. 12, 2023) and *Santiago v. Fischer*, 2020 WL 9816014, at *7 (E.D.N.Y. Sept. 4, 2020) are inapposite.

*Valelly* involved an expert who did not "provid[e] an analytical framework for determining . . . a reasonable interest rate." 2023 WL 2918982, at *7. Here, Ms. DeMario provides frameworks for assessing out-of-pocket, lost earnings, and non-economic damages. In *Santiago*, "numerous other district courts across the country" had rejected similar opinions from the same expert. 2020 WL 9816014, at *7. Ms. DeMario's opinions have not been subject to such widespread rejection.

Even if the Court is uncertain as to how useful Ms. DeMario's opinion on class-wide damages will ultimately be, "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 8280139, at *2 (S.D.N.Y. Nov. 30, 2023) (Subramanian, J.).

## CONCLUSION

For the foregoing reasons, Doe respectfully requests that the Court deny Defendants' motion to exclude Ms. DeMario's opinions on class-wide damages.

Dated: November 18, 2024

Respectfully submitted,

/s/ *Sigrid McCawley*
David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

Sigrid McCawley
Daniel Crispino
Megan Nyman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011

Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com