**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jane Doe 3, | Case No. 1:24-cv-02192-AS |
|    Plaintiff, | |
|    v. | |
| Darren K. Indyke and Richard D. Kahn, in their capacities as co-executors of the Estate of Jeffrey Edward Epstein, | |
|    Defendants. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    A.   Epstein's Sex-Trafficking Scheme ........................................................... 2

    B.   Epstein's Abuse of Jane Doe 3 ................................................................. 2

    C.   Doe Has Suffered From the Abuse ........................................................... 4

ARGUMENT ................................................................................................................. 4

    I.    DOE'S COMMON LAW STATE CLAIMS ARE TIMELY UNDER EQUITABLE DOCTRINES ................................................................................ 4

    II.   DOE'S TVPA CLAIMS WITHSTAND SUMMARY JUDGMENT ............................ 9

    III.   DOE IS ENTITLED TO DAMAGES FOR HER TVPA CLAIMS ............................ 12

    A.   Doe's TVPA Claims Are Not Time-Barred .............................................. 12

    B.   Doe Is Entitled to Equitable Tolling ........................................................ 13

    IV.   DOE'S GMVPL CLAIM WITHSTANDS SUMMARY JUDGMENT ...................... 14

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ardolf v. Weber*,
  332 F.R.D. 467 (S.D.N.Y. 2019) ........................................................................ 10

*Baldayaque v. United States*,
  338 F.3d 145 (2d Cir. 2003) .............................................................................. 8

*Bulgartabac Holding AD v. Republic of Iraq*,
  2009 WL 3113252 (S.D.N.Y. Sept. 30, 2009) .................................................... 8

*Buntzman v. Buntzman*,
  1991 WL 120470 (S.D.N.Y. June 24, 1991) ...................................................... 5

*Buttry v. Gen. Signal Corp.*,
  68 F.3d 1488 (2d Cir. 1995) .............................................................................. 5

*Cabrera v. City of New York*,
  436 F. Supp. 2d 635 (S.D.N.Y. 2006) ............................................................... 12

Cerbone v. Int'l Ladies' Garment Workers' Union,
  768 F.2d (2d Cir. 1985) ..................................................................................... 14

*Cooksey v. Digital*,
  2016 WL 5108199 (S.D.N.Y. Sept. 20, 2016) .................................................... 8

*David v. Weinstein*,
  431 F.Supp.3d 290 (S.D.N.Y. 2019) .................................................................. 11

*Dist. Attorney of N.Y. Cty. v. Republic of the Phil*,
  2016 WL 9022580 (S.D.N.Y. Jan. 20, 2016) ..................................................... 9

*Doe v. City of New York*,
  2019 WL 1768966 (S.D.N.Y. Apr. 11, 2019) ..................................................... 12

*Doe v. Telemundo Network Grp. LLC*,
  2023 WL 6259390 (S.D.N.Y. Sept. 26, 2023) .................................................... 15

*Doe v. United States*,
  76 F.4th 64 (2d Cir. 2023) ........................................................................ 5, 8, 9, 13

*Doe v. Warren & Baram Mgmt. LLC*,
   2024 WL 2941222 (S.D.N.Y. May 3, 2024) ........................................................ 13, 14

*Eckhart v. Fox News Network, LLC*,
   2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ........................................................ 9, 10

*Flight Scis., Inc. v. Cathay Pac. Airways Ltd.*,
   647 F. Supp. 2d 285 (S.D.N.Y. 2009) ........................................................ 9

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ........................................................ passim

*Harper v. Ercole*,
   648 F.3d 132 (2d Cir. 2011) ........................................................ 13

*Hongxia Wang v. Enlander*,
   2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) ........................................................ 13

*Jane W. v. Thomas*,
   354 F. Supp. 3d 630 (E.D. Pa. 2018) ........................................................ 5

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
   2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ........................................................ 11

*Mottahedeh v. United States*,
   794 F.3d 347 (2d Cir. 2015) ........................................................ 13

*Multibank, Inc. v. Access Glob. Cap. LLC*,
   2017 WL 162282 (N.Y. Sup. 2017) ........................................................ 5

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002) ........................................................ 14

*Powell v. United States*,
   2024 WL 4329842 (E.D.N.Y. Aug. 20, 2024) ........................................................ 12

*Putter v. N. Shore Univ. Hosp.*,
   7 N.Y.3d 548 (N.Y. 2006) ........................................................ 8

*Roberts v. eXp Realty, LLC*,
   2024 WL 3005892 (C.D. Cal. May 23, 2024) ........................................................ 11

*Roches-Bowman v. The City of Mount Vernon*,
   2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022) ........................................................ 12

*Schneider v. OSG, LLC*,
    2024 WL 1308690 (E.D.N.Y. Mar. 27, 2024) ........................................................................ 12

*Simcuski v. Saeli*,
    44 N.Y.2d 442 (1978) ............................................................................................................. 5

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................................................................... 9

*Treminio v. Crowley Mar. Corp.*,
    707 F. Supp. 3d 1234 (M.D. Fla. 2023) ............................................................................... 11

*United States v. Marcus*,
    487 F. Supp. 2d 289 (E.D.N.Y. 2007) .................................................................................. 11

*Wall v. Constr. & Gen. Laborers' Union, Local 230*,
    224 F.3d 168 (2d Cir. 2000) ................................................................................................... 5

*Watson v. United States*,
    865 F.3d 123 (2d Cir. 2017) ................................................................................................. 13

## **<u>Statutes</u>**

18 U.S.C. § 1591(a)(1) .............................................................................................................10, 11

18 U.S.C. § 1591(e)(3) ................................................................................................................... 9

## PRELIMINARY STATEMENT

Jeffrey Epstein violently assaulted and trafficked Jane Doe 3. In 2014, Epstein, following a pattern he used over and over again, lured Doe into his trap by promising her career opportunities and introductions to wealthy and powerful individuals. With hopes that Epstein would help Doe establish herself as an international businesswoman, and ███████████████████████████ ██████████, Doe gave into Epstein's insistence that Doe visit him. In reality, it was all a ruse, and Epstein wound up sexually abusing Doe on at least seven occasions as she traveled with him across the world. As a result of the abuse Doe experienced, she is still experiencing symptoms of ████████████████████████████████████████████.

Doe's claims should survive summary judgment. Defendants do not dispute that Jeffrey Epstein, the world's most notorious sex offender, sexually abused Doe. Doe's state law claims for battery and intentional infliction of emotional distress are timely under New York's equitable tolling doctrine. Doe's testimony that she was abused by Epstein on at least seven different occasions, and the evidence of the trauma she has experienced as a result, raises fact issues that render these claims appropriate for the jury. Doe's TVPA claims are timely under both the continuing tort doctrine and the equitable tolling doctrine. Given the record evidence showing Epstein's manipulation, enticement, and abuse of Doe, her TVPA claim should survive summary judgment. Finally, Doe's testimony that she was abused in New York is sufficient evidence to establish that her GMVPL claim should survive summary judgment.

## STATEMENT OF FACTS

### A. Epstein's Sex-Trafficking Scheme

Epstein was one of the world's most notorious sex offenders. Resp. ¶ 210.[1] Epstein was a master manipulator and lured his victims in with promises of job opportunities in business, modeling, or massage therapy. *Id.* ¶¶ 174, 223. These turned out to be empty promises, as in reality, Epstein sought to sexually abuse them, which left hundreds of them to suffer from the trauma and painful memories for a lifetime. Epstein had five properties in New York City, Palm Beach, the U.S. Virgin Islands, New Mexico, and Paris, where he brought his victims to abuse them. *Id.* ¶¶ 3, 36, 147–48, 225, 249–50. Epstein flew from place to place with his victims on his private planes, where he would also abuse them. *Id.* ¶ 7. Cash was the lifeblood of Epstein's sex-trafficking operation, as he would pay his victims to ensure they were complicit and cooperative with his abuse. *Id.* ¶¶ 9–10, 13–14, 91, 172. Additionally, many of Epstein's victims feared that they would face physical violence if they refused to go along with his demands. *Id.* ¶¶ 227, 323; Ex. 190 at ¶ 5. Through his tactics of manipulation, and with the help of his enablers and co-conspirators, Epstein was able to keep his scheme going for decades.

### B. Epstein's Abuse of Jane Doe 3

In 2014, Epstein recruited Doe ███████████████████████████████ ███████████████████████████. *Id.* ¶¶ 129, 131. Epstein lured Doe in under the false pretense that he would introduce her to wealthy and powerful individuals and would provide her with job opportunities in business. *Id.* ¶ 174; Ex. 113 ████████████████████████████

---

[1] Citations to "Resp." refer to Plaintiff's Response to Defendant's Rule 56.1 statement, as well as Plaintiff's Additional Facts.

███████████████████████████████████████████████. [2] Epstein
paid for Doe to fly from Europe to New York, where he instructed her to stay in one of his
apartments and provided her with a cell phone for communications. Resp. ¶ 302. Over the next
three months, Doe spent a large amount of her time traveling to see Epstein and serving as his
"assistant" in the United States and Paris. *Id.* ¶¶ 137, 147–49, 151–166.

During that time, Epstein sexually abused Doe at least seven times. ████████████
███████████████████████████████████████████████████.
*Id.* ¶ 303. Epstein tricked Doe into returning and lured her into traveling with him with the promise
of an opportunity for a job that turned out to be a ruse. *Id.* ¶¶ 145, 171 (citing Dkt. 255-51 at
186:18–187:20). She complied at the ████████████████. Ex. 190 at ¶ 3.

Doe traveled to Paris where she met Epstein and stayed in one of his guest rooms and he
sexually abused her again ███████████████████████████████████. *Id.* ¶¶
147–48, 304. Doe then returned to the United States and traveled with Epstein. While on Epstein's
Island in the U.S. Virgin Islands, Epstein sexually abused Doe twice—████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████. *Id.* ¶¶ 305–06. Doe then returned to New York, ████████████
████████████████████████████. *Id.* ¶ 307. Then, while in Epstein's New York townhouse,
█████████████████████████████████████████████ *Id.* at ¶ 308. Finally,
███████████████████████████████████████████████. *Id.*
¶ 309.

---

[2] Citations to "Ex." are to exhibits of the Declaration of Sigrid S. McCawley, filed concurrently
hereto.

Epstein did not just sexually abuse Doe; he also verbally abused her and taunted her. When

Doe was with Epstein, ███████████████████████████████████████████████

███. *Id.* ¶¶ 313, 318. Additionally, ████████████████████████████████████

██████████████████████████████████████. *Id.* ¶ 314. Doe was extremely

fearful of Epstein because of ████████████████████████████████████████

███████████████████████████████████████. *Id.* at ¶¶ 322–23; Dkt. 255-

51 at 227:3-232:23. Even after Doe escaped Epstein physically, ████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████. *Id.* at ¶¶ 294, 296, 299.

### C. Doe Has Suffered From the Abuse

A sexual abuse victim's suffering does not end with the sexual contact. Epstein's captive

abuse of Doe ████████████████████████████████████████████████████

██████████. Still to this day, ████████████████████████████████████

████████████████████. *Id.* at ¶ 319 (citing Ex. 112, Raghavan Report at 6). Dr. Raghavan,

a Yale-educated licensed clinical psychologist with more than twenty years of experience in the

field, conducted a clinical evaluation of Doe and ██████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████ *Id.* at ¶¶ 319, 321 (citing Ex. 112 at 6, 23). Doe has never received

compensation from Epstein or his Estate for the abuse she endured.

## ARGUMENT

### I. DOE'S COMMON LAW STATE CLAIMS ARE TIMELY UNDER EQUITABLE DOCTRINES

Doe's claims for battery and IIED are timely under equitable doctrines. As an initial matter,

Defendants' insistence that equitable estoppel, not equitable tolling, is the applicable doctrine for

equitable relief under New York state law, *see* Dkt. 264 at 6, is largely a matter of semantics. *See, e.g.*, *Multibank, Inc. v. Access Glob. Cap. LLC*, 2017 WL 162282, at *8 (N.Y. Sup. 2017), *aff'd*, 72 N.Y.S.3d 39 (2018) (referring to equitable estoppel as "New York's equitable tolling doctrine"). Nevertheless, whether referred to as "equitable estoppel" or "equitable tolling," a plaintiff must show that she was "induced by fraud, misrepresentations or deception to refrain from filing a timely action," *Buntzman v. Buntzman*, 1991 WL 120470, at *7 (S.D.N.Y. June 24, 1991) (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 448–49 (1978)), and she "reasonably relied on that misrepresentation to [her] detriment," *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 176 (2d Cir. 2000) (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)). Doe has adduced evidence sufficient to demonstrate both.

Courts have found tolling appropriate where there is "justifiable fear of violent reprisal by potential defendants" or their "allies," *see Jane W. v. Thomas*, 354 F. Supp. 3d 630, 635 (E.D. Pa. 2018), and Defendants' own authority acknowledges that "fear of retaliation has been recognized as a basis for equitable estoppel." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 173 (S.D.N.Y. 2019). Relatedly, "the psychological impact of long-term or extreme sexual abuse can constitute an extraordinary circumstance that prevents a victim from coming forward even for some time after the abuse has ceased." *See, e.g.*, *Doe v. United States*, 76 F.4th 64, 72 (2d Cir. 2023). As demonstrated below, Doe has adduced evidence demonstrating that Epstein employed threats and manipulation tactics that, combined with the psychological impact of Epstein's emotional, physical, and sexual abuse, prevented Doe from bringing this action within the limitations period. Doe and other victims of Epstein feared that they would face physical violence if they were not compliant with Epstein's demands.

Defendants attempt to downplay the severity of Epstein's threats and manipulation, cherry-picking citations from Doe's deposition to suggest that ███████████████████████. Dkt. 264 at 7 (citing *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 173 (S.D.N.Y. 2019)). Contrary to Defendants' suggestion, Epstein did not merely █████████████████████ ██████████████████████████████████████████████████████ *see* Dkt. 246 at 3██████████████████████████████████████████████████████

██████████████████████ *see* Resp. ¶¶ 310, 321; *see also* Ex. 112 at 18 ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████ Ex. 190 at ¶ 5.

███████████████████████████████████████████████████████████

████████████████████████████████████████ Resp. ¶ 310. ████████████

████████████████████████████████████████████████████████████

██████████ *Id.* ¶ 311. ███████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 313. ████████████████

████████████████████████████████████████████████████████████

█████████████████████████ Resp. ¶ 317; Ex. 112 at 11 ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ Resp. ¶ 318. ████████████████████████████████████

---

3 ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████ x. 112 at 15 n.35.

██████████████████████████████████████████████ *Id.* ¶ 316. ████████

████████████████████████████████████████████████████████

████████████████ *Id.* ¶ 323. Therefore, Defendants' reliance on *Geiss* is misplaced, as Epstein's

conduct went well beyond threats "to make or break . . . careers." 383 F. Supp. at 162.

Even after Epstein and Doe ceased communication, Doe remained firmly under Epstein's

control. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 319, 321 ██████

██████████████████████████████████████████████ *Id.* ¶ 320.

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ *Id.* ¶¶ 129, 293–94. ████████

██████████████████████████████████████████████ *Id.* ¶¶ 294, 296, 299.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 112 at 12. ████████████

████████████████████████ Resp. at ¶ 301. ██████

████████████████████████████████████████████████████████

████████████████████ " *Id.* at ¶ 324. Thus, the psychological impact of Epstein's extreme sexual abuse

and manipulation did not end when Epstein and Doe's communications ended and continued even

after his death. *See Doe*, 76 F.4th at 72 (finding plaintiff's delay in bringing her claims could be

reasonable even though she was not in communication with her sexual abuser for years). Because such evidence "allows for a finding that [the plaintiff] faced extraordinary circumstances and acted with reasonable diligence," summary judgment is inappropriate. *See id.* at 73 (reversing summary judgment on time-barred sexual abuse claims because the Second Circuit "[could not] say that no . . . factfinder could reasonably find that Doe acted 'as diligently as reasonably could have been expected *under the circumstances*'") (quoting *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (emphasis in original)).

None of the numerous cases Defendants cite where plaintiffs failed to take timely action involved similar evidence of threats, manipulation, and abuse—let alone those as egregious as Epstein's. *See, e.g.*, *Cooksey v. Digital*, 2016 WL 5108199, at *6–7 (S.D.N.Y. Sept. 20, 2016) (declining to apply equitable estoppel in libel action where plaintiff did not bring claims based on his "general expectation that the matter would be settled") (citing *Bulgartabac Holding AD v. Republic of Iraq*, 2009 WL 3113252, at *10 (S.D.N.Y. Sept. 30, 2009); *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 553 (N.Y. 2006) (declining to apply equitable estoppel in medical malpractice case where plaintiff "was aware of his condition within a few months of the surgery and was advised by four medical professionals . . . that he most likely contracted" the condition at defendant hospital); *Geiss*, 383 F. Supp. 3d at 175 ( declining to apply equitable estoppel where "[p]laintiffs allege little or no threatening behavior by defendants").

Nor does the fact other women filed lawsuits in the years after Epstein's death weigh against Doe. The "eventual willingness" of other victims to come forward "does not necessarily preclude a showing that the fear of retaliation constituted an extraordinary circumstance." *Doe*, 76 F.4th at 73.

This Court has already recognized that "equitable doctrines are inherently fact-bound." Dkt. 80 at 14. At bottom, the Court should allow the factfinder to assess the factual circumstances surrounding Doe's delay in bringing her claims. *See Dist. Attorney of N.Y. Cty. v. Republic of the Phil*, 2016 WL 9022580, at *5 (S.D.N.Y. Jan. 20, 2016) (equitable estoppel is typically treated as "'a question of fact, which should be fully developed and determined upon the trial of the action'") (citing *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 187 (E.D.N.Y. 2010)); *Doe*, 76 F.4th at 73; *Flight Scis., Inc. v. Cathay Pac. Airways Ltd*., 647 F. Supp. 2d 285, 288–89 (S.D.N.Y. 2009) (denying motion for summary judgment when "there are multiple issues of disputed fact as to whether the statute of limitations should be equitably tolled").

## II.    DOE'S TVPA CLAIMS WITHSTAND SUMMARY JUDGMENT

Doe received value from Epstein, and that value was causally related to Epstein's sexual abuse. ██████████████ Dkt. 255-171. █████████████████ █████████████████ ████████████ Further, the TVPA does not require victims to have been paid cash in exchange for sex. 18 U.S.C. § 1591(e)(3) ("The term 'commercial sex act' means any sex act, on account of which *anything of value* is given to or received by any person." (emphasis added)). As Defendants' own authority recognizes, "the TVPA extends to enticement of victims by means of fraudulent promises of career advancement." *Geiss*, 383 F. Supp. 3d at 168. And "such pledges of career support qualify as 'thing[s] of value' for the purposes of [the TVPA], even if the promisor does not actually deliver on the promise." *Eckhart v. Fox News Network, LLC*, 2021 WL 4124616, at *9 (S.D.N.Y. Sept. 9, 2021); *Ardolf v. Weber*, 332 F.R.D. 467, 478–79 (S.D.N.Y. 2019) (sexual assault was commercial in nature when the plaintiff received "valuable career advancement").

The record reflects that Doe received value in the form of ████████████████████

█████████████████████████████. Resp. ¶¶ 135, 141, 148–49, 154–55, 158, 164–

65, 302; Dkt. 255-51 at 110:9-24, 153:13–154:24, 186:3-25, 260:23–261:25, 282:4-21; 286:23–

287:8. Indeed, Epstein lured Doe to New York with promises of valuable career opportunities, such

as meetings with high-profile individuals like █████████████████████████████

██████████████████. Resp. ¶¶ 163, 174. Given the record evidence that Epstein promised Doe

that he would "help advance her career by 'get[ting] her in a room with some really powerful

people,'" and otherwise offered to introduce Doe to "powerful agents in [her] industry," *Eckhart*,

2021 WL 4124616, at *8–9, Doe clearly received "things of value" from Epstein.

Moreover, the "value" Doe received was on account of the sexual acts that Epstein

subjected her to and intended to keep her complicit in his sex-trafficking operation. Defendants

cherry-pick excerpts from Doe's deposition, arguing that ██████████████████████████

█████████████████████ Putting aside Defendants' repugnant blame-the-victim tactics, there is

no requirement in the TVPA that a victim subjectively believe ███████████████████████.

In the context of TVPA claims, the focus is on the *defendant's* knowledge, not the plaintiff's. *See*

18 U.S.C. § 1591(a)(1) (directed at "[w]hoever knowingly . . . recruits, entices, harbors, transports,

provides, obtains, advertises,  maintains, patronizes, or solicits by any means a person . . . to cause

the person to engage in a commercial sex act"); *id.* at § 1591(a)(2) (directed at "[w]hoever

knowingly . . . benefits financially or by receiving anything of value, from participation on a

venture which has engaged in an act described in violation of paragraph (1)"). This makes sense.

The TVPA broadly covers sexual abuse where the defendant uses fraud or coercion to cause

commercial sex acts with victims, *see id.* § 1591(a), and does not require that "enticement" be

payment in the form of money. *See David v. Weinstein*, 431 F.Supp.3d 290, 301 (S.D.N.Y. 2019)

(defendant's "empty promises of a film role" were "more than enough to arouse hope and desire in [plaintiff], an aspiring actress, thereby sufficiently 'enticing' her").

      Doe understands now that ███████████████████████████████████

████████████████████████████████████. Resp. ¶ 171; Dkt. 255-51 186:18–187:20. It is

irrelevant that ███████████████████████████████████████████████████████████

█████████████. Defendants place much weight on *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, but there the plaintiff "offer[ed] no evidence of a causal relationship between the sex acts and the payment of expenses." 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013). More specifically, "that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds [was] simply not sufficient to establish a violation." *Id.* But here, there is significant evidence that Defendants' payments were in fact "*quid pro quo* for the sex acts," even if Doe did not understand that at the time. *Id.*

      While Defendants omit the full text, their own authority acknowledges that "the use of the phrase 'on account of which' suggests that there *merely* needs to be a causal relationship between the sex act and an exchange of an item of value." *United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007) (emphasis added). And that causal connection does not require a "bargained for exchange." *Roberts v. eXp Realty, LLC*, 2024 WL 3005892, at *4 (C.D. Cal. May 23, 2024). Doe has set forth sufficient evidence that demonstrates a causal connection to withstand summary judgment, especially because "the questions of causation and the 'thing of value' both [parties] received for the alleged sex act are factual issues that must be determined by a jury." *Treminio v. Crowley Mar. Corp.*, 707 F. Supp. 3d 1234, 1251 (M.D. Fla. 2023).

III.    **DOE IS ENTITLED TO DAMAGES FOR HER TVPA CLAIMS**

**A. Doe's TVPA Claims Are Not Time-Barred**

Defendants concede that Doe has timely TVPA claims and is entitled to damages for instances of abuse that occurred on or after March 12, 2024.[4] Dkt. 264 at 6. Their argument that she is not entitled to damages for abuse occurring before that date, however, is meritless because the entirety of Doe's TVPA claim is timely under the continuing tort doctrine. *See Schneider v. OSG, LLC*, 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024) ("Courts have held that the [TVPA] involves a continuing tort, and that a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern."). Epstein's trafficking and abuse of Doe continued through at least March 12, 2014, ten years prior to the filing of her complaint.

Defendants string together several citations finding that typical assault and battery claims are not covered by the continuing tort doctrine, but none of those are TVPA cases. *Roches-Bowman v. The City of Mount Vernon*, 2022 WL 3648394 (S.D.N.Y. Aug. 24, 2022) (single instance of sexual assault in the workplace; no TVPA claim); *Cabrera v. City of New York*, 436 F. Supp. 2d 635, 643 (S.D.N.Y. 2006) (continuing wrong doctrine did not apply when there is "no evidence to establish that the alleged acts . . . were part of a discriminatory policy or mechanism"); *Powell v. United States*, 2024 WL 4329842 (E.D.N.Y. Aug. 20, 2024) (sexual assaults; no TVPA claim), *on appeal*, *Powell v. United States,* No. 24-2469; *Doe v. City of New York*, 2019 WL 1768966, at *7 (S.D.N.Y. Apr. 11, 2019) (same).

In contrast, courts have consistently held that TVPA claims involve a continuing tort. *Schneider*, 2024 WL 1308690, at *5. Unlike a typical assault or battery claim, which may be a

---

[4] Defendants' mistakenly state the date of filing as March 13, 2024, but Doe filed her complaint on March 12, 2024.

one-off wrong, the persistent and pervasive nature of a sex-trafficking enterprise is not divisible into discrete unlawful acts, but rather is a part of a continuous pattern of abuse.

### B. Doe is Entitled to Equitable Tolling

Even if the continuous tort doctrine does not render the TVPA claim timely, equitable tolling does. Tolling is of the TVPA claim is warranted because Doe can show "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (citing *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)). "[T]he legislative history for the TVPRA makes clear that Congress intended for the statute of limitations to be subject to equitable tolling." *Doe v. Warren & Baram Mgmt. LLC*, 2024 WL 2941222, at *4 (S.D.N.Y. May 3, 2024), *report and recommendation adopted sub nom. Doe v. Baram*, 2024 WL 3342602 (S.D.N.Y. July 9, 2024).

To satisfy the diligence requirement, Doe must "demonstrate that [she] did not discover [her human trafficking] cause of action—and could not have discovered it with due diligence—until less than ten years before bringing suit." *Hongxia Wang v. Enlander*, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018). The "extraordinary circumstance" in the second element refers "to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

To start, Doe pursued her claims as diligently as she could. As described above, Epstein manipulated and threatened Doe to the point ████████████████████████████████████ ███████████████████. Ex. 190 at ¶ 5. There are also extraordinary circumstances here. As explained above, courts have held that "extreme sexual abuse" "can constitute an extraordinary circumstance that prevents a victim from coming forward." *Doe*, 76 F.4th at 72. Additionally, Epstein's manipulation tactics and threats of physical violence constitute extraordinary

13

circumstances that give rise to equitable tolling. In *Doe v. Baram*, the Court found that tolling of the plaintiff's TVPA claim was warranted because of the trafficker's "history of retaliation, threats, and manipulation towards his victims," *Warren & Baram Mgmt. LLC*, 2024 WL 2941222, at *5, which were incredibly similar to the tactics Epstein and his co-conspirators engaged in. Like Epstein, the trafficker there was alleged to have had a "history of using his financial resources, political power, influences, and threats of force to intimidate victims—including Plaintiff—and prevent them from coming forward." *Id.* So too here, the Court should find that the evidence, at the very least, raises a question of fact as to whether Epstein engaged in tactics sufficient to justify tolling.

Defendants' cases are inapposite. In *Cerbone v. Int'l Ladies' Garment Workers' Union*, the plaintiff testified at deposition that he was fully aware that he had an age discrimination claim against the employer well within the statute of limitations. 768 F.2d at 45, 49 (2d Cir. 1985). There were not credible fears of manipulation nor threats of violence as there are in this case. *Pearl v. City of Long Beach* involved a claim for police brutality that had occurred thirty-five years prior to when the plaintiff brought suit. 296 F.3d 76, 82 (2d Cir. 2002). Additionally, plaintiff had brought suit and settled with the police officers years prior. *Id.* Because plaintiff had brought a claim against the officers previously, the court found that he was clearly aware of his cause of action. *Id.* There are no similar circumstances here. Thus, even if Doe's TVPA claim is not timely under the continuing tort doctrine, there is at least a fact question as to whether the TVPA claim is subject to tolling.

## IV.    DOE'S GMVPL CLAIM WITHSTANDS SUMMARY JUDGMENT

Defendants concede that Doe has a viable claim for abuse occurring in New York City. Dkt. 264 at 8. Their contention that Doe's claims are nonetheless not cognizable because some

abuse occurred outside New York City is unavailing. Doe alleges specific conduct that occurred in New York City that gave rise to her GMVPL claim. Resp. ¶¶ 303, 307–08. Given the abuse that Doe experienced in Manhattan, it is difficult to see the significance of Defendants' argument that cites only a case where the court held that dismissal of the GMVPL claim was warranted because there were no allegations connecting the claims to the city of New York. *See Doe v. Telemundo Network Grp. LLC*, 2023 WL 6259390, at *12 (S.D.N.Y. Sept. 26, 2023). To the contrary, New York City is central to the claims here. Epstein flew Doe from Europe to New York City, where he lived and worked, and Doe stayed at Epstein's Manhattan apartment. Resp. ¶ 302. Moreover, Epstein abused Doe in New York City multiple times. *Id.* ¶¶ 303, 307–08.

## CONCLUSION

The Court should deny Defendants' motion for partial summary judgment.

15

Respectfully submitted,

*/s/ Sigrid McCawley*

David Boies

Andrew Villacastin

Alexander Law

Boies Schiller Flexner LLP

55 Hudson Yards

New York, NY

Telephone: (212) 446-2300

Fax: (212) 446-2350

Email: dboies@bsfllp.com

Email: avillacastin@bsfllp.com

Email: alaw@bsfllp.com

Sigrid McCawley

Daniel Crispino

Megan Nyman

Boies Schiller Flexner LLP

401 E. Las Olas Blvd. Suite 1200

Fort Lauderdale, FL 33316

Telephone: (954) 356-0011

Fax: (954) 356-0022

Email: smccawley@bsfllp.com

Email: dcrispino@bsfllp.com

Email: mnyman@bsfllp.com