**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jane Doe 3, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-01204-AS |
| Plaintiff, | |
| v. | |
| Darren K. Indyke and Richard D. Kahn, | |
| Defendants. | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF FACTS ......................................................................................................... 2

    A.   Epstein's Sex-Trafficking Scheme .......................................................................... 2

    B.   Indyke's Knowledge and Facilitation of Epstein's Sex-Trafficking Scheme ............... 3

    C.   Kahn's Knowledge and Facilitation of Epstein's Sex-Trafficking Scheme .................. 4

    D.   Kahn and Indyke Benefitted Financially From Their Service to Epstein. ..................... 7

    E.   Epstein's Abuse of Jane Doe 3 ............................................................................... 7

ARGUMENT ........................................................................................................................ 8

  I.   DOE'S STATE LAW CLAIMS WITHSTAND SUMMARY JUDGMENT. ..................... 8

    A.   There Are Material Issues of Fact as to Doe's IIED Claim. .......................................... 8

    B.   Doe's Aiding and Abetting Battery Claim Survives Summary Judgment. ..................... 11

    C.   Doe's Claim for Negligence Survives Summary Judgment. ......................................... 13

    D.   Doe's State Law Claims Are Not Time-Barred. ........................................................... 15

  II.   DOE'S TVPA CLAIMS SURVIVE SUMMARY JUDGMENT. ................................... 17

    A.   Defendants Knew of Epstein's Use of Force, Fraud, or Coercion. ............................... 17

    B.   Defendants Obstructed Enforcement of the TVPA. ...................................................... 22

    C.   Doe Can Assert a Claim for Conspiracy to Violate the TVPA. .................................... 23

  III.   DOE IS ENTITLED TO PUNITIVE DAMAGES. ....................................................... 23

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abafita v. Aldukhan*,
   2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019)................................................................ 24

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
   699 F. Supp. 3d 246 (S.D.N.Y. 2023) ....................................................................... 8

*Ardolf v. Weber*,
   332 F.R.D. 467 (S.D.N.Y. 2019) ............................................................................... 18

*B.L. v. Schuhmann*,
   380 F. Supp. 3d 614 (W.D. Ky. 2019)....................................................................... 16

*Baccaro & Baccaro v. Coloplast Corp. & Coloplast Manuf. US, LLC*,
   2021 WL 3089202 (N.D.N.Y. July 22, 2021) ........................................................... 25

*BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*,
   2020 WL 6825679 (S.D.N.Y. Nov. 20, 2020)............................................................ 14

*Carroll v. Bayeriche Landesbank*,
   125 F. Supp. 2d 58 (S.D.N.Y. 2000) ......................................................................... 11

*Cavallaro v. Pozzi*,
   814 N.Y.S.2d 462 (4th Dep't 2006) ........................................................................... 11

*Coggins v. Cnty. of Nassau*,
   254 F. Supp. 3d 500 (E.D.N.Y. 2017) ....................................................................... 11

*David v. Weinstein Co. LLC*,
   431 F. Supp. 3d 290 (S.D.N.Y. 2019) ....................................................................... 21

*Diamond Jewels v. Lewis*,
   2019 WL 5896224 (E.D.N.Y. Nov. 12, 2019)............................................................ 25

*Doe (G.N.C.) v. Uniquest Hosp., LLC*,
   2024 WL 4149251 (S.D.N.Y. Sept. 11, 2024)...................................................... 20, 21

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
   671 F. Supp. 3d 387 (S.D.N.Y. 2023) .................................................................. 13, 14

*Doe 7015 v. Elektra Ent. Grp. Inc.*,
   2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) ........................................................... 12

*Doe v. Bd. of Educ. Hononegah Cmty. High Sch. Dist. No. 207*,
    833 F. Supp. 1366 (N.D. Ill. 1993) ........................................................ 16

*Doe v. Yeshiva University*,
    703 F. Supp. 3d 473 (S.D.N.Y. 2023) ....................................................11

*Eskridge v. Diocese of Brooklyn*,
    180 N.Y.S.3d 179 (2d Dep't 2022) ........................................................11

*Gagnon v. Ball*,
    696 F.2d 17 (2d Cir. 1982) ................................................................... 24

*Hidalgo v. Winding Rd. Leasing Corp.*,
    2013 WL 1934073 (E.D.N.Y. May 9, 2013) ......................................... 15

*Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998) ................................................................. 17

*Jane W. v. Thomas*,
    354 F. Supp. 3d 630 (E.D. Pa. 2018) .................................................... 16

*JP Morgan Chase Bank v. Winnick*,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005) .................................................. 12

*Kahuna Grp., Inc. v. Scarano Boat Bldg., Inc.*,
    984 F. Supp. 109 (N.D.N.Y. 1997) ................................................ 24, 25

*Linde v. Arab Bank, PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) .................................................. 10

*Macolor v. Libiran*,
    2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016) ...................................... 24

*McKiernan v. Vaccaro*,
    91 N.Y.S.3d 478 (2d Dep't 2019) ................................................... 12, 13

*Morales v. Kavulich & Assocs., P.C.*,
    294 F. Supp. 3d 193 (S.D.N.Y. 2018) .................................................. 25

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................. 19

*Packer v. Skid Roe, Inc.*,
    938 F. Supp. 193 (S.D.N.Y. 1996) ....................................................... 10

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) .................................................. 23

*Persaud v. S. Axelrod Co.*,
   1996 WL 11197 (S.D.N.Y. Jan. 10, 1996) ................................................... 9

*Romero v. City of New York*,
   839 F. Supp. 2d 588 (E.D.N.Y. 2012) ...................................................... 10

*S.C. v. Hilton Franchise Holdings, LLC*,
   2024 WL 4773981 (D. Nev. Nov. 12, 2024) ............................................. 8, 9

*Scollo v. Nunez*,
   874 N.Y.S.2d 380 (2d Dep't 2009) .......................................................... 13

*Sharp v. Ally Fin., Inc.*,
   328 F. Supp. 3d 81 (W.D.N.Y. 2018) ......................................................... 8

*Shkreli v. JPMorgan Chase Bank, N.A.*,
   2015 WL 1408840 (S.D.N.Y. Mar. 27, 2015) ............................................. 11

*Tesoriero v. Syosset Central School District*,
   382 F. Supp. 2d 387 (E.D.N.Y. 2005) ...................................................... 10

*Tillery v. Lynn*,
   607 F. Supp. 399 (S.D.N.Y. 1985) ........................................................... 25

*Turley v. ISG Lackawanna, Inc.*,
   803 F. Supp. 2d 217 (W.D.N.Y. 2011) ........................................................ 9

*United States v. Farah*,
   766 F.3d 599 (6th Cir. 2014) .................................................................... 22

*United States v. Giovanelli*,
   464 F.3d 346 (2d Cir. 2006) ..................................................................... 22

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) .................................................................... 19

*Wei Su v. Sotheby's, Inc.*,
   490 F. Supp. 3d 725 (S.D.N.Y. 2020) ................................................... 16, 17

*Whitney v. Citibank, N.A.*,
   782 F.2d 1106 (2d Cir. 1986) ................................................................... 24

**Statutes**

18 U.S.C. § 1591(e) .................................................................................. 18, 21

**Rules**

Fed. R. Civ. P. 56 ......................................................................................... 8

**Other Authorities**

Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (2010) .................................................. 13

## PRELIMINARY STATEMENT

The Court should deny Defendants' motion for summary judgment because the evidence overwhelmingly establishes that Darren Indyke and Richard Kahn always knew that their services enabled Jeffrey Epstein's sexual abuse of females, including Jane Doe 3. Defendants do not deny that Epstein conducted a decades-long sex-trafficking scheme. *See* Dkt. 262 at 1. They cannot credibly deny that because in the past five years they have settled nearly two hundred claims for sexual abuse, including with several women who they interacted with on a near daily basis as co-workers in Epstein's Enterprise.[1]

Defendants' remaining theory appears to be that because Epstein had "to pay operational expenses such as food, cleaning, maintenance, repairs, and tips" and because he "sent thousands of wire payments that had nothing to do with any sex-trafficking venture," *id*. at 4, it was somehow impossible for them to have detected that something was wrong with the thousands of other payments they made on his behalf to young women for things such as sexual ███████ and ███████████████. The evidence uncovered during discovery, however, (which Defendants somehow did not produce in the years of criminal and civil litigation preceding this case) renders their claims of ignorance utterly unbelievable. At trial, Defendants will be free to feign ignorance (as they do in their motion) and pretend that they were shocked to learn only after Epstein's death that he abused and sexually trafficked countless women. It is clear, however, that Epstein's sex-trafficking scheme was obvious to them not just now in "hindsight," but throughout their employment.

---

[1] Defendants' brief and Rule 56.1 statement euphemistically refer to several women as Epstein's "assistants" or "longstanding assistants," but fail to disclose that Defendants have settled claims of sexual abuse with nearly all these women in their capacities as co-executors of Epstein's Estate. Plaintiff's Response to the Rule 56.1 statement ("Resp.") provides the necessary context for Defendants' many mischaracterized "facts."

## <u>SUMMARY OF FACTS</u>

Defendants facilitated Epstein's sex-trafficking scheme by, among other things, ensuring Epstein had access to cash, the lifeblood of his sex-trafficking operation; ██████████ ████████████████████████████████████████████; helping Epstein structure and operate sham organizations that were used to further his sex-trafficking operation; ████ ████████████████████████████████; helping Epstein's ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ *See, e.g.*, Ex. 15[2] ████ ████████████████████████████████████████████████████ Ex. 55 ██████████████████████████████ For their loyal service to Epstein, Defendants each earned millions of dollars.

### A. Epstein's Sex-Trafficking Scheme

Epstein was a calculated predator who preyed on hundreds of females using wealth, deceit, and manipulation. *See e.g.*, Dkt. 255-41 (██████████████████████████████ ██████████). Like most con artists, Epstein cheated vulnerable people by gaining and betraying their trust. Dkt. 255-51 at 187 ██████████████████████████████ ██████████████████████████ Epstein threatened his victims, leaving them in fear of physical violence. Ex. 16 at ¶¶ 2, 6; Ex. 190 at ¶ 4. He had two primary ways of gaining access to young females to abuse: first, through hiring young female massage therapists, *see* Resp. ¶¶ 21, 223; Dkt. 255-41, or second, through false promises to hire young females as assistants, pay their school tuition, or promise them modeling jobs, *see* Resp. ¶¶ 28, 174, 223, 252.

---

[2] Citations to "Ex." are to exhibits of the Declaration of Sigrid S. McCawley, filed concurrently hereto.

Through either method, Epstein would sexually abuse his victims.

**B. Indyke's Knowledge and Facilitation of Epstein's Sex-Trafficking Scheme**

Indyke first worked at Epstein's company New York Strategy Group, beginning in 1996, and served as Epstein's personal attorney until his death in prison. Resp. ¶ 231. ████████

███████████████████████████████████████

█████████████████████████████. Dkt. 255-2 at 36–37, 305; Resp. ¶ 215. █

███████████████████████████████████████

████████ Resp. ¶¶ 232–33. When Epstein went to jail, █████████████

███████████████████████████████████████

███████████████. Resp. ¶¶ 216–18, 220. ██████████████

███████████████████████████████████████

████████████████████████

While Indyke declares that he is a "corporate transactional attorney," Dkt. 256 ¶ 1, the "services" he provided were as Epstein's fixer, which was often non-legal in nature. Indyke handled whatever was necessary for Epstein to continue to operate his sex-trafficking venture including ██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████. *See, e.g.*, Resp. ¶¶ 12, 24, 39, 257–58, 263, 271–72, 278–79.

████████████████████████████████████

███████████████████████████████████████

██████████████████. Dkt. 260 ¶¶ 40–44; *see also* Resp. ¶ 12; Ex. 44 ████████

███████████████████████████████████; Ex. 11 ¶ 48. ██████████████

███████████████████████████████████████████████. *See, e.g.*, Ex. 47 ████████

████████████████████████████████████████

█████████████████████████████ Resp. ¶ 236. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ *See id.* ¶¶ 259–66, 271; *see also* Ex. 16 at ¶ 6.

**C. Kahn's Knowledge and Facilitation of Epstein's Sex-Trafficking Scheme**

Kahn was Epstein's accountant for over fourteen years before Epstein died in prison.████

████████████████████████████████████████████████████████████

Resp. ¶ 238. Initially, Kahn worked for Epstein through Epstein's company, New York Strategy

Group, and then ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Resp. ¶ 55.[3]

Kahn claims that his "relationship with Epstein was strictly professional" and that he

merely "performed accounting work for Jeffrey Epstein from October 2005 until August 2019."

Dkt. 258 ¶¶ 2, 20. Kahn also claims Epstein was his ██████████ who ██████████████████

████████████████████████████ and that he ██████████████████████████████████

██████████████ Dkt. 255-5 at 42, 54. The record is replete, however, with Kahn performing

work unlike what any normal accountant would do for a normal client. Indeed, since the beginning

of his employment, Kahn had knowledge that Epstein brought females to the United States for his

---

[3] HBRK's co-founder (Beller) and its only other bookkeeper (Bella Klein) both invoked the Fifth
Amendment instead of responding to document subpoenas or substantively answering questions
at their depositions.

own sexual gratification. On August 18, 2006, for example, ██████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████. Resp. ¶ 252 (citing Ex. 100). For years, Kahn oversaw

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *See, e.g.*, Ex. 166 ██████████████████

██████████████████████████████████████████████████████.

    While Kahn maintains he "never discussed his sex life with [Epstein] or heard him discuss

it with others" after 2008, Dkt. 258 ¶ 20, this self-serving statement is unconvincing. Kahn

████████████████████████████████████████████████████████████████████

██████████████████████████████████. *See e.g.*, Ex. 174 (██████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████).

    Kahn's work for Epstein makes apparent Kahn's knowledge of Epstein's sex trafficking

venture. ██████████████████████████████████████████████████████████████

████, Resp. ¶¶ 12, 256, ██████████████████████████████████████████████

██████████████████ *id.* ¶¶ 59, 243; Ex. 28 ██████████████████████████████

██████████████████████████████████ Kahn monitored (and was responsible for tracking)

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Resp. ¶¶ 10, 239; Ex. 34 ██████████

██████████████████████. Kahn acknowledged ██████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ Dkt. 255-5 at

265. Kahn's explanation is plainly non-credible.

Kahn also helped Epstein ████████████████████████████

██████████████████████████████████████████████████

█████████████████████. Resp. ¶¶ 84–85, 245–46. ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████. *Id.* ¶ 82; Dkt. 255-5 at 43–47, 72–76.

Kahn also assisted Epstein by facilitating ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████ Resp. ¶ 268 (citing Ex. 180), █████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ Ex. 176 ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ Resp. ¶ 267. █████████████

██████████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 269. ████████████████████████

███████████████████████████████████████ *Id.* ¶ 270. █████████

██████████████████████████████████████████████████████████████

██████████████████████ Dkt. 255-2 at 138, ██████████████████████

████████████

**D.  Kahn and Indyke Benefitted Financially From Their Service to Epstein.**

Indyke and Kahn were both compensated handsomely by Epstein, ████████████████

████████████████████ Resp. ¶¶ 280–291. ████████████████

███████ *Id.* ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████ Resp. ¶¶ 282–85. ████████████████████

████████████████████████████████ Resp. ¶¶ 289–90. ████████████

██████████████████████████████████████████████████████████████

██ Resp. ¶¶ 285, 291. ████████████████████████████████

██████████████████████████████████████████████████████

**E.  Epstein's Abuse of Jane Doe 3**

Epstein groomed, trafficked, and violently raped Doe on multiple occasions. ██████████

████████████████████████████████████████████████ Resp. ¶

129. Epstein lured Doe in under the false pretense that he would introduce her to wealthy and

powerful individuals and would provide her with job opportunities in business. Ex. 113 █████

████████████████████████████████████████████████████

████████ Epstein paid for Doe to fly from Europe to New York, where he instructed her to stay

in one of his apartments and provided her with a cell phone for communications. Resp. ¶ 302. Like

many of his victims, Doe was lured by Epstein into traveling with him by ████████████████

████████████████████. *Id.* ¶ 171. Ultimately, Epstein sexually abused Doe at least

seven times in New York, Paris, the U.S. Virgin Islands, and New Mexico. *Id.* ¶¶ 303–09.

## ARGUMENT

Summary judgment is appropriate only when "there is no genuine dispute as to any material

fact." Fed. R. Civ. P. 56. A dispute is "genuine" if "a reasonable jury could find for either side."

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc*., 699 F. Supp. 3d 246, 249 (S.D.N.Y.

2023) (Subramanian, J.). The Court views the record "in the light most favorable to the non-

movant." *Id.*

## I.    DOE'S STATE LAW CLAIMS WITHSTAND SUMMARY JUDGMENT.

### A.  There Are Material Issues of Fact as to Doe's IIED Claim.

Material issues of fact exist as to whether Defendants engaged in "(i) extreme and

outrageous conduct;" had "(ii) intent to cause, or disregard of a substantial probability of causing,

severe emotional distress;" there is (iii) a causal connection between the conduct and injury;" and

there is "(iv) severe emotional distress." *Sharp v. Ally Fin., Inc*., 328 F. Supp. 3d 81, 98 (W.D.N.Y.

2018). Indyke and Kahn are no ordinary defendants—they were the chief operators of Epstein's

sex-trafficking organization. That Defendants did not commit physical abuse themselves does not

preclude an IIED claim against them. *See S.C. v. Hilton Franchise Holdings, LLC*, 2024 WL

4773981, at *11 (D. Nev. Nov. 12, 2024) (declining to dismiss IIED claim where defendants

plausibly "engaged in extreme and outrageous conduct by repeatedly renting a room to" sex

trafficker "despite knowing or recklessly disregarding the fact that he would use that room to sexually abuse" her). Defendants' facilitation of Epstein's sex-trafficking venture caused Doe and hundreds of other females severe emotional distress and harm.

Defendants' first argument—that there is no evidence that Defendants intended to cause emotional distress—is meritless. When the non-movant "raises a disputed issue of material fact," a court "cannot conclude that Plaintiff's claim is precluded as a matter of law." *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 255 (W.D.N.Y. 2011). And generally, "whether [a defendant] in fact intended to cause plaintiff severe emotional distress" is a question of fact for the jury. *Persaud v. S. Axelrod Co.*, 1996 WL 11197, at *6 n.8 (S.D.N.Y. Jan. 10, 1996). Here, Doe has raised a disputed issue of material fact regarding Defendants' knowledge and intent. Further, at the very least, the record clearly demonstrates Defendants disregarded a substantial probability that their actions would result in the trafficking and abuse of Doe and others.

Defendants knew that Epstein was trafficking hundreds of young females, including Doe.



Resp. ¶¶ 208–09 (citing Dkt. 255-186, Ex. 142).

*Id.* (citing Ex. 114). Defendants also

. *Id.* ¶¶ 129, 295, 297. Defendants claim that

But considering they knew that

, there is at least a material issue of fact as to whether they intended to facilitate her abuse or disregarded a substantial risk of harm to her.

9

The cases Defendants rely on are factually distinct. In *Tesoriero v. Syosset Central School District*, the court granted summary judgment when the plaintiff failed to "offer[] admissible evidence indicating an actual factual issue as to [the defendant]'s intent." 382 F. Supp. 2d 387, 403 (E.D.N.Y. 2005). But *Tesoriero* acknowledges that "the issue of whether [the defendant] in fact intended to cause plaintiffs severe emotional distress is a question of fact for the jury" when there is a factual disagreement (which there most certainly is here). *Id*. Unlike *Tesoriero*, Doe offers significantly more than "unsupported allegations in her pleadings, her conclusory statements, or the mere incantation of intent or state of mind." *Id*. (cleaned up). ███████████████ ██████████████████████████████████ establish a material issue of fact as to whether Defendants intended to facilitate the trafficking of Doe here. *See* Summary of Facts at B–C, *supra*. Similarly, in *Romero v. City of New York*, the court explained that there was no evidence the defendants intended to cause the plaintiff distress, pointing to their "immediate, affirmative steps to commence an investigation" into the sexual assault allegations. 839 F. Supp. 2d 588, 629 (E.D.N.Y. 2012). No similar record exists before this Court. To the contrary, Defendants turned a blind eye to Epstein's abuse, which stopped only with his arrest.

There is also a material issue of fact as to whether Defendants' conduct was a proximate cause of Doe's distress. "Issues of proximate cause are normally questions of fact for the jury to decide." *Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996). Unlike *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 591 (E.D.N.Y. 2005), where the defendant's conduct was "too removed" to support an IIED claim, Defendants' actions—████████████████████ ███████—caused her abuse. Defendants' facilitation of Epstein's enterprise was integral; without their actions, Epstein would not have had access to Doe, who would not have been abused.

Defendants' conduct was extreme and outrageous. *See, e.g.*, *Franchise Holdings, LLC*,

2024 WL 4773981, at *11 (finding viable IIED claim where defendants "repeatedly rent[ed] a room to" sex trafficker "despite knowing or recklessly disregarding the fact that he would use that room to sexually abuse" her). Defendants try to distinguish *Eskridge v. Diocese of Brooklyn*, 180 N.Y.S.3d 179, 181 (2d Dep't 2022), by claiming there is "no evidence that Indyke or Kahn knew of Epstein's alleged abuse of Doe," Dkt. 262 at 13, but the Court cannot accept Defendants' bare denials of the truth when faced with evidence that shows otherwise. Courts regularly "decline to dispose of" IIED claims at the summary-judgment stage "due to genuine issues of material fact concerning defendants' alleged conduct." *Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 64 (S.D.N.Y. 2000); *Coggins v. Cnty. of Nassau*, 254 F. Supp. 3d 500, 524 (E.D.N.Y. 2017) (denying summary judgment to IIED claim because plaintiff's actions "could support IIED liability" "[i]f all of plaintiff's evidence is credited"); *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 465 (4th Dep't 2006). "The success of Plaintiff's IIED claim" should "ultimately turn on whether the jury believes Plaintiff, Defendant, or some combination of their narratives" as to Defendants' roles in Epstein's sex-trafficking venture. *Shkreli v. JPMorgan Chase Bank, N.A.*, 2015 WL 1408840, at *6 (S.D.N.Y. Mar. 27, 2015). Defendants make much of *Doe v. Yeshiva University*, which was at the motion-to-dismiss stage and is factually dissimilar. 703 F. Supp. 3d 473, 498 (S.D.N.Y. 2023). Indyke and Kahn were not merely "plac[ing] their concern for the reputation of [Epstein] over their concern for the rights and needs of Doe" or "conduct[ing] a severely flawed investigation of the incident." *Id.* Rather, the evidence shows Defendants played an active and knowing role in facilitating abhorrent and astonishingly widespread sexual abuse of minors and young females, including Doe.

### B. Doe's Aiding and Abetting Battery Claim Survives Summary Judgment.

Defendants' arguments concerning the aiding and abetting battery claim fail because they

committed several "overt act[s], either by words or conduct, in furtherance of the assault." *McKiernan v. Vaccaro*, 91 N.Y.S.3d 478, 481 (2d Dep't 2019). *First*, Defendants had actual knowledge concerning Epstein's sex-trafficking scheme, of which Doe was a victim. Resp. ¶¶ 28–29. In *JP Morgan Chase Bank v. Winnick*, the plaintiff alleged that the defendant aided and abetted the facilitation of fraud, and the defendants (much like Indyke and Kahn here) claimed they had no actual knowledge of the fraud. 406 F. Supp. 2d 247, 254 (S.D.N.Y. 2005). The court explained that "allegations about what was known within [a] company," even if not sufficient on their *own* to demonstrate actual knowledge, "shade in the contours" of the defendant's knowledge. *Id.* And the general landscape of the company, in conjunction with an email that the defendant was on "which could reasonably be understood to demonstrate [defendant's] actual knowledge" of the fraud, amounted to actual knowledge. *Id.* So too here. The facts of this case, "taken together" plausibly "show not just what [Defendants] should or might have known, but what [they] actually knew." *Id.* at 255.

*Second*, Defendants helped Epstein cause Doe harm and facilitated Epstein's sex-trafficking scheme. Resp. at ¶¶ 28, 208–09, 295, 297. Defendants' broader support for Epstein's operation, ███████████████████████████████████████, constitute overt acts in furtherance of the brutal assaults Doe endured at Epstein's hands. Defendants overstate the application of *Elektra* to the present set of facts. There, the plaintiff attempted to argue that a defendant could "'substantially assist' in a primary tort merely by providing encouragement to the primary violator." *Doe 7015 v. Elektra Ent. Grp. Inc.*, 2023 WL 2744102, at *4 (S.D.N.Y. Mar. 31, 2023). But Indyke and Kahn did more than "encourage" Epstein; they substantially *assisted* Epstein in his commission of tortious (and criminal) conduct, making their actions "directed at the tort itself." *Id.* at *4. At minimum, Doe presents "a triable issue of fact as

12

to whether [Defendant's] actions preceding the assault constituted an overt act in furtherance of the assault." *McKiernan*, 91 N.Y.S.3d at 481; *Scollo v. Nunez*, 874 N.Y.S.2d 380 (2d Dep't 2009).

### C.  Doe's Claim for Negligence Survives Summary Judgment.

Defendants argue that they did not owe a duty to Doe because they did not have a "special relationship" with her. But Defendants, "like everyone else," owed a "duty of reasonable care" to avoid injury to others by "forces [they] set in motion." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 414 (S.D.N.Y. 2023); *see also* Restatement (Third) of Torts: Phys. & Emot. Harm § 19 (2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.").

Doe has adduced evidence showing that Defendants set the forces in motion that injured Doe. *First*, ███████████████████████████████████████████ ███████████████████████████████████████. Resp. ¶¶ 296, 298. ████ ██████████████████████████████████████████ *Id.* ¶ 295. ████████ ███████████████████████████████████████████ *Id.* ¶ 297. ██████████████████████████████████████████████████ ███████████████ *Id.* ¶ 298. *Second*, their participation and complicity was critical to Epstein's sex-trafficking venture. ████████████████████████ ████████████████████████████. *See* Dkt. 255-171 ██████ ███████████ Resp. ¶¶ 10, 15–16, 21, 44, 54, 238, 243. Defendants also █████████ ███████████████████, which allowed him to continue his abuse. *See* Resp. ¶¶ 11–12, 40, 255, 256. ███████████████████████████████████████████████████ ██████████. *See id.* ¶¶ 41, 43, 58, 276–79. ████████████████████

████████. *See id.* ¶ 295, 297. Defendants engaged in this conduct while they knew or should have known that Doe and other victims were being abused or trafficked by Epstein. Resp. ¶¶ 28, 44, 52, 85, 89, 208–09, 275 ████████████████████████████████████████████ ██████████████████. Because Defendants set these events into motion, they had a duty to not cause harm to victims, including Doe. *See Deutsche Bank*, 671 F. Supp. 3d at 414.

That ███████████████████████████ to Epstein does not change that without Defendants' enabling and concealment of Epstein's crimes across three decades, ████████████ (and the subsequent abuse and trafficking of Doe) would never have been "set in motion."

Defendants were also both but-for and proximate causes of Doe's injuries. "[A] defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*, 2020 WL 6825679, at *4 (S.D.N.Y. Nov. 20, 2020) (cleaned up). Indyke's and Kahn's conduct can still be proximate causes of Doe's injuries because Epstein's abuse (an intervening criminal act) was a "natural and foreseeable consequence of a circumstance created by [the] defendant." *Deutsche Bank*, 671 F. Supp. 3d at 414–15. As discussed above, Epstein's sex-trafficking venture was not possible without Defendants' participation, and Defendants knew or at least recklessly disregarded that their conduct sustained Epstein's venture, which led to Doe (and many others) being trafficked and abused. Such evidence is sufficient to demonstrate both but-for and proximate cause. *Id.* at 415 (allegations that banks knew or recklessly disregarded that their banking services sustained Epstein's sex-trafficking venture sufficient to establish proximate causation).

Defendants' argument that neither Indyke's nor Kahn's conduct were substantial factors in causing Doe's abuse understates the critical role they played in Epstein's operation. Defendants were not mere bystanders; they were active participants whose services were integral to creating

the appearance of legitimacy that enabled Epstein's trafficking operation to entice and control

victims. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

Resp. ¶¶ 5, 257, 258. ███████████████████████████████████

████████████████████████████████████████ *see* Dkt. 255-71; Ex. 36

████████████████████████████████ Resp. ¶¶ 10, 58, 208–09, 243.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ *see id.*

¶¶ 41, 43, 58, 277, 278–79. Given the central role of Defendants' conduct in the grooming and

manipulation that kept Epstein's victims under his control, and the fact that "[p]roximate cause is

typically a question for the trier of fact," summary judgment is inappropriate. *Hidalgo v. Winding

Rd. Leasing Corp.*, 2013 WL 1934073, at *3 (E.D.N.Y. May 9, 2013) (denying summary judgment

because "the factfinder, not the Court, should determine whether Defendants' actions caused or

contributed to" the plaintiff's injuries).

### D.  Doe's State Law Claims Are Not Time-Barred.

Defendants' insistence that Doe's state law claims should be dismissed as time-barred if

the Court denies class certification is based on a fundamental misreading of the tolling agreements.

Those agreements unambiguously toll the applicable limitations period through February 19, 2024,

for "certain purported legal claims against Indyke and Kahn" held not only by Danielle Bensky,

but also those of "a class of women alleging abuse by Jeffrey Epstein," which Defendants do not

dispute includes Doe. Dkt. 255-188. Nothing in these agreements requires that claims be asserted

on a class-wide basis or that the benefit of tolling is contingent on class certification.

In any event, equitable estoppel applies here because Defendants' deliberate concealment of their involvement in Epstein's sex-trafficking venture prevented Doe from timely bringing suit. Equitable estoppel may be appropriate where defendants take "strategic steps to conceal their identities," "making it impossible to bring a lawsuit against them." *Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 734 (S.D.N.Y. 2020); *see also Jane W. v. Thomas*, 354 F. Supp. 3d 630, 635 (E.D. Pa. 2018) ("Defendant's alleged concealment of his identity and concealment of his involvement" in the actionable offenses "also supports equitable tolling."). Indeed, courts have tolled claims where, as here, the plaintiff is aware that she was sexually abused but unaware of the defendant's role in that sexual abuse because the defendant actively conceals his role. *See Doe v. Bd. of Educ. Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1376 (N.D. Ill. 1993) ("While she may have known she was abused, there is nothing in the complaint to remotely suggest that she knew or should have known of the alleged acts or omissions on the part of defendants."); *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 644 (W.D. Ky. 2019) (tolling appropriate where defendant concealed its involvement in sexual abuse).

Here, Defendants took strategic steps to make sure Epstein's enterprise—and their involvement in it—was not known to the public, and those efforts succeeded. *See supra* I.C.i. Even when Epstein's conduct became public knowledge, Kahn and Indyke used their positions as executors of Epstein's Estate to attempt to insulate themselves from personal liability knowing that they had actively participated in Epstein's sex-trafficking operation. Resp. ¶ 122. As a result of Defendants' conduct, Doe and others "remained unaware of who they were, making it impossible to bring a lawsuit against them." *Wei Su*, 490 F. Supp. 3d at 734.

It was not until the DFS Consent Order was made public in July 2020 that some of the extent of Defendants' intimate role in Epstein's Enterprise could even begin to be unraveled. Ex.

11 at ¶¶ 44, 46, 48–52. However, even then, Defendants were anonymized in the Consent Order, making it exceedingly difficult to trace their involvement. Dkt. 255-2 at 218–19; 220–21 ███

████████████████████; Dkt. 255-5 at 39 ███████████████████████ Because Defendants should not be permitted to benefit from the very conduct that concealed their involvement and ensured that Doe and other victims remained unaware of their role in the abuse, equitable relief is appropriate and Doe's state law claims are tolled.

This Court has already recognized that "equitable doctrines are inherently fact-bound." Dkt. 80 at 14. At bottom, the Court should allow the factfinder to assess the circumstances surrounding Doe's delay in bringing her claims. *See Wei Su*, 490 F. Supp. 3d at 735 (when defendants' identities were not known, but a plaintiff later "became aware of the identities of various parties and their roles in the alleged" wrongdoing, "[w]ho became aware of what when is in clear dispute, further demonstrating that summary judgment is improper"); *Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 942–43 (2d Cir. 1998) (equitable estoppel applied when defendants took steps to deliberately conceal the facts necessary to support the claim).

## II.    DOE'S TVPA CLAIMS SURVIVE SUMMARY JUDGMENT.

### A.  Defendants Knew of Epstein's Use of Force, Fraud, or Coercion.

Defendants' motion does not challenge the existence of Epstein's sex-trafficking venture or that they benefited from their involvement with Epstein. It contests only whether they "knew, or recklessly disregarded, that Epstein was engaging in commercial sex acts by 'force, fraud, or coercion,'" suggesting that Epstein at most "engaged in paid-for sex with some of the women who received cash or gifts from him." Dkt. 262 at 18–20. But the characterization of Epstein's abuse as merely "overt acts of prostitution" is insulting and flatly contradicted by the evidence. Defendants

have already acknowledged  which they

assert they

. Dkt. 255-5 at 80; *see also* Dkt. 255-2 at 45

). Whether or not Defendants were

aware of Epstein's abuse and how he was able to commit that abuse is a classic jury question that

is unsuitable for resolution at summary judgment for several reasons.

*First*, Epstein used force, fraud, or coercion in the sex-trafficking enterprise. Regarding

fraud, the question is whether the abuser made "material misstatements that he knew a reasonable

plaintiff would rely on." *Ardolf v. Weber*, 332 F.R.D. 467, 476 (S.D.N.Y. 2019) (promises of career

advancement were undoubtedly material due to abuser's power and status, making it reasonable

the abuse victims would rely on the sex-trafficking enterprise's misrepresentations). A key part of

Epstein's sex-trafficking venture was making material misrepresentations to victims that resulted

in their abuse. For example,

Dkt. 255-51 at 89, 96. Epstein dangled career advancement in front of Doe by introducing her to

other powerful men, manipulating her into silence about her abuse. Resp. ¶ 164.

As to coercion, the TVPA's definition includes three parts: "(A) threats of serious harm to

or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person

to believe that failure to perform an act would result in serious harm to or physical restraint against

any person; or (C) the abuse or threatened abuse of law or the legal process." § 1591(e). Notably,

Defendants failed to include the clearly applicable part, section (B), in their definition of coercion.

Dkt. 262 at 18. Here, Doe was whisked thousands of miles from her home and only paid after

Epstein sexually abused her. *See, e.g.*, Resp. ¶¶ 172–73.

*Second*, Defendants knew about Epstein's use of force, fraud, and coercion in the sex-

trafficking enterprise. The TVPA "requires the pleader allege awareness, at the initial recruitment or enticement stage, that certain prohibited means will be employed to achieve a perverse end goal: a commercial sex act." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–18 (S.D.N.Y. 2018). Knowledge can be demonstrated by showing that the defendant had a *modus operandi* or pattern of using such means to achieve the commercial sex act. *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("[w]hat the statute means to describe . . . awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct."). Here, at the time of Epstein's victims' recruitment, Defendants were aware that the victims were being recruited for commercial sex. ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Dkt. 255-2 at 36:20–22 ▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See, e.g.*, Dkt. 255-162.▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

*See, e.g.*, Dkt. 255-171 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Ex. 36 ▉

▉▉▉▉▉▉▉▉▉▉ Resp. ¶¶ 10, 58, 243. ▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉ Resp. ¶ 6. ▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Resp. ¶ 273. ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉ *See e.g.*, Dkt. 255-16, 255-17, 255-18, 255-19, 255-20, 255-36, 255-37, 255-38, 255-39, 255-40 ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Resp. at ¶¶ 24, 28, 259–71. ▉▉▉▉▉▉▉▉▉

████████████████████████████████████████ *Id.* ¶ 24. ███████████

████████████████████████████████████████████████ *Id.* ¶¶ 41,

43, 58, 276, 278–79; Ex. 11 at ¶¶ 48–52.

Defendants' contention that Doe cannot show that Defendants have requisite knowledge is

unavailing. Defendants would have the Court believe it is more likely than not that even though

Epstein pled guilty to soliciting commercial sex from a minor and then proceeded to arrange



██████████████████████████ that they had no knowledge that Epstein was defrauding or coercing

these women. That is an absurd conclusion. Further, █████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██. Indeed, ████████████████████████████████████████

████████████████████████████████████████████████.

Resp. ¶ 38. It is not credible for Defendants to suggest they were unaware that Epstein was coercing

and defrauding women into sex trafficking.

Defendants cite *Weinstein* where TVPA allegations against Weinstein's brother were

dismissed. There, "[t]he Amended Complaint [did] not contain any specific factual allegations that

plausibly allege [Weinstein's brother] knew of, or participated in, Harvey's alleged violation of

[the TVPA]." 335 F. Supp. 3d at 524. Here, the record is replete with evidence showing Defendants'

knowledge of Epstein's conduct. *See* Resp. ¶ 28; Summary of Facts at B–C, *supra*.

Defendants' reliance on *Uniquest* fails for the same reasons. In *Uniquest*, the court

dismissed claims on a 12(b)(6) motion due to a conclusory complaint that lacked specific

allegations. *Doe (G.N.C.) v. Uniquest Hosp., LLC*, 2024 WL 4149251, at *1 (S.D.N.Y. Sept. 11, 2024). Here, the Court has already found "Jane Doe 3 plausibly pleads that Indyke and Kahn knowingly benefited from participation in a sex-trafficking venture." Dkt. 80, at 11. Despite this, Defendants argue that Doe's claims here are weaker than those in *Uniquest*. Not so. There, the hotel being accused of TVPA liability at most had an hourly employee that may have observed indicia of prostitution with guests. Here, Defendants were sophisticated professionals who

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████ What Defendants style as an "extraordinary chain of unsupportable inferences," Dkt. 262 at 21, are plainly connected facts supported by evidence. It defies reason (and the record) that Defendants were ignorant of Epstein's rampant abuse of women because "[d]efendants never witnessed Epstein sexually assault anyone," *id.* at 18, or because Epstein paid some people for legitimate purposes.

*Third*, Defendants' reliance on ███████████████████████████████████

███████████████████████████ is inapposite. There is no requirement in the TVPA that a victim

subjectively believe that ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████. Dkt. 255-171. Further, the TVPA does not require victims to have been paid cash in exchange for sex. 18 U.S.C. § 1591(e)(3) ("The term 'commercial sex act' means any sex act, on account of which *anything of value* is given to or received by any person." (emphasis added)); *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 304 n.5 (S.D.N.Y. 2019).

███████████████████████████████████████████████████████████████



Resp. ¶ 174.

. Resp. ¶¶ 135, 141, 148–49, 154–55, 158, 164–65; Dkt. 255-51 at 110:9–24, 153:13–25, 154:1–24, 186:3–25, 260:23–25, 261:1–25, 282:4–25; 287:1–8. The TVPA's low bar is met, regardless of whether Doe understood that the cash she received was

.

**B. Defendants Obstructed Enforcement of the TVPA.**

For a defendant to be liable for obstructing the enforcement of the TVPA, he must (1) know of an effort to enforce the TVPA and (2) intentionally obstruct or attempt to obstruct that enforcement effort. *See United States v. Farah*, 766 F.3d 599, 612 (6th Cir. 2014). Here, Defendants' knowledge and conduct easily meet that standard.

Defendants were aware of



. Resp. ¶ 118. In obstruction-of-justice cases, a defendant has the requisite intent to obstruct when his conduct has "the natural and probable effect of interfering with the due administration of justice." *United States v. Giovanelli*, 464 F.3d 346, 351 (2d Cir. 2006). Defendants operated a sophisticated criminal enterprise that at every step took extreme action to shield the enterprise from government enforcement. For example,                                    . Resp. ¶ 38.                                            . Further,

See id. at ¶¶ 24, 28, 259–71.

Additionally, Defendants misled Epstein's banks, which delayed government investigators

22

from getting key information sooner. For example, ███████████████████████
███████████████████████ *Id.* ¶¶ 41, 43, 58, 276, 278–79; Ex. 11 at ¶¶ 48–52. ███████████████████████████

███████████████████████████

███████ *See, e.g.*, Dkt. 255-16, 255-17, 255-18, 255-19, 255-20, 255-36, 255-37, 255-38, 255-39, 255-40 ███████████████

███████████ When Deutsche Bank ████████████████████

███████████████████████████

███████████████████████. Dkt. 255-93; Resp. ¶ 82.



The natural and probable effect of Defendants' work for Epstein was interfering with the due administration of justice—justice that but for their conduct shielding Epstein would have come to protect Epstein's victims materially sooner.

### C. Doe Can Assert a Claim for Conspiracy to Violate the TVPA.

Epstein was engaged in a sex-trafficking enterprise, Resp. ¶ 1, and Defendants knowingly and willingly agreed to enable that scheme, *id.* ¶ 28. Defendants conspired with Epstein to "threaten to abuse law or legal process" ██████████████████

█████████████████████. *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017); *see* Resp. at ¶¶ 24, 28. Defendants ██████

███████████████████████████

███████████. Doe has established a material issue on her conspiracy claim for trial.



## III.    DOE IS ENTITLED TO PUNITIVE DAMAGES.

Punitive damages are available to Doe based on Defendants' conduct as the consiglieres of Epstein's criminal enterprise. As defined, "punitive damages are recoverable in actions based on

tortious conduct that involves malice, oppression, wanton or reckless disregard of the plaintiff's rights or other circumstances of aggravation." *Kahuna Grp., Inc. v. Scarano Boat Bldg., Inc.*, 984 F. Supp. 109, 118 (N.D.N.Y. 1997). Moreover, punitive damages are appropriate to "deter the defendants from engaging in similar conduct in the future or to induce the victim to take action against the wrongdoer." *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118 (2d Cir. 1986); *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982).

Defendants' assert that their conduct was not extraordinarily egregious enough to satisfy the "level of wrongdoing required for punitive damages." Dkt. 264 at 24. As discussed at length above, the significant record evidence demonstrating Defendants' egregious conduct belies their assertion. "Punitive damages are not restricted to intentional injury and can be awarded where negligence is shown to be gross or wanton." *Kahuna*, 984 F. Supp. at 118.  Defendants' conduct was gross and wanton.  Dkt. 264 at 24.[4] Allowing Doe to recover punitive damages furthers the very purpose that they serve: "to punish and deter" white collar professionals, like Defendants, who facilitate the egregious acts of sexual predators. *Gagnon*, 696 F.2d at 21.

"[C]ourts do not grant summary judgment 'where there is enough evidence to permit the

---

[4] Defendants' argument, that their conduct was not sufficient to warrant punitive damages because they were not the "primary malefactors" of Doe's abuse, should be rejected. Dkt. 262 at 24-25. Defendants misstate the reasoning of *Abafita v. Aldukhan*. 2019 WL 6735148, at *6 (S.D.N.Y. Apr. 4, 2019), *report and recommendation adopted*, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019). While Defendants claim the *Abafita* court declined to award punitive damages in *Abafita* because those defendants were secondary abusers, what the court actually reasoned was that because the defendants' "conduct occurred over a shorter period of time, and their conduct was not singled out by Plaintiff's expert," punitive damages were not warranted. *Id.* Not so here: Indyke and Kahn were involved in Epstein's trafficking enterprise since its' earliest years, and their conduct has been specifically identified by Doe's experts. And the circumstances here are more egregious than those in *Macolor v. Libiran,* 2016 WL 1488121, at *6 (S.D.N.Y. Mar. 25, 2016), *report and recommendation adopted*, 2016 WL 1453039 (S.D.N.Y. Apr. 13, 2016). While the *Macolor* court determined that the defendant's actions were "more analogous to ordinary fraud and deceit," those allegations were not sexual or particularly coercive in nature, as they are here. *Id.* (cleaned up).

jury to find that defendants acted with wanton and reckless or malicious intent.'" *Diamond Jewels v. Lewis*, 2019 WL 5896224, at *27 (E.D.N.Y. Nov. 12, 2019) (quoting *Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 199 (S.D.N.Y. 2018)). At the very least, "the character of Defendants' conduct is an issue material to the resolution of Plaintiff's punitive damages claim," and "Plaintiff and Defendants advance diametrically opposite assertions regarding the character of Defendants' conduct." *Kahuna*, 984 F. Supp. at 118. For that reason, summary judgment is inappropriate, as "a genuine dispute exists concerning facts that are material to Plaintiff's claim for punitive damages, thus "requir[ing] a judge or jury to resolve the parties' differing versions of the truth at trial." *Id.* As courts have in similar situations, the Court should leave the determination of punitive damages in the hands of the jurors. *Tillery v. Lynn*, 607 F. Supp. 399, 402 (S.D.N.Y. 1985); *Morales*, 294 F. Supp. 3d at 199; *Baccaro & Baccaro v. Coloplast Corp. & Coloplast Manuf. US, LLC*, 2021 WL 3089202, at *19–20 (N.D.N.Y. July 22, 2021).

## <u>CONCLUSION</u>

Summary judgment is not warranted in this case. Substantial evidence pointing to Defendants' indispensable roles in Epstein's sex-trafficking operation demonstrates myriad disputes of material fact. The Court should deny Defendants' motion and allow this case to proceed to trial.

Respectfully submitted,

*/s/ Sigrid McCawley*

David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

Sigrid McCawley
Daniel Crispino
Megan Nyman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com