UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe 3, individually and on behalf of all others similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>Darren K. Indyke and Richard D. Kahn,<br><br>    Defendants. | Case No. 1:24-cv-01204-AS<br><br>[rel. 1:24-cv-02182-AS] |

**PLAINTIFF JANE DOE 3'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS'** ***DAUBERT*** **MOTION TO EXCLUDE
THE REBUTTAL EXPERT REPORT OF JANE KHODARKOVSKY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................4

I.     MS. KHODARKOVSKY'S REBUTTAL OPINIONS DO NOT USURP THE ROLE OF THE COURT OR THE JURY. ........................................................................................ 5

II.    MS. KHODARKOVSKY'S REBUTTAL OPINIONS ARE RELIABLE AND NOT UNDULY PREJUDICIAL............................................................................................... 9

        A.     Ms. Khodarkovsky's Rebuttal Opinions Are Sufficiently Detailed and Not Speculative............................................................................................... 10

        B.     Ms. Khodarkovsky's Rebuttal Opinions Regarding the Cohen Report Are Reliable and Therefore Admissible.......................................................... 12

III.   MS. KHODARKOVSKY'S OPINIONS WILL ASSIST THE JURY. .............................. 13

IV.   MS. KHODARKOVSKY'S REBUTTAL OPINIONS ARE NOT MORE PREJUDICIAL THAN PROBATIVE. ................................................................................................. 14

CONCLUSION..............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
   2023 WL 8280139 (S.D.N.Y. Nov. 30, 2023) ............................................................................ 16

*Allen v. City of New York*,
   466 F. Supp. 2d 545 (S.D.N.Y. 2006) ......................................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 4, 14

*Feliciano v. CoreLogic Saferent, LLC*,
   2020 WL 6205689 (S.D.N.Y. June 11, 2020) ............................................................................ 4

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020) .......................................................................... 15

*Highland Cap. Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................. 7, 8, 12

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992) ....................................................................................................... 6

*In re Blech Sec. Litig.*,
   2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) .......................................................................... 11

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
   2008 WL 1971538 (S.D.N.Y. May 7, 2008) ............................................................................ 11

*In re Terrorist Attacks on Sept. 11, 2001*,
   2023 WL 3116763 (S.D.N.Y. Apr. 27, 2023) ............................................................................ 8

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ....................................................................................................... 8

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ........................................................................................ 4

*S.E.C. v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................................................................ 7

*S.E.C. v. U.S. Env't, Inc.*,
   2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ........................................................................ 11

*Seward v. Antonini*,
   2023 WL 6387180 (S.D.N.Y. Sept. 29, 2023) .............................................................................. 6

*United States v. Napout*,
   963 F.3d 163 (2d Cir. 2020) ............................................................................................. 1, 4, 10

*Zapata v. Crown Equip. Corp.*,
   2006 WL 8461377 (S.D.N.Y. Apr. 7, 2006) .............................................................................. 10

**Other Authorities**

*McCormick on Evidence* § 16 (8th ed. 2022) ................................................................................... 5

**Rules**

Fed. R. Evid. 702 .............................................................................................................................. 4

Plaintiff Jane Doe 3 ("Plaintiff"), by and through undersigned counsel, respectfully submits this memorandum of law in opposition to Defendants' *Daubert* Motion to exclude Jane Khodarkovsky's rebuttal expert opinion (Dkt. 293), and states as follows:

**<u>PRELIMINARY STATEMENT</u>**

The Court should deny Defendants' motion because Ms. Khodarkovsky's rebuttal opinions readily meet the Second Circuit's "liberal standard of admissibility" under Rule 702. *United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020).

For decades, Jeffrey Epstein abused hundreds of women, enabled by his long-time consiglieres, Darren Indyke and Richard Kahn. They ensured Epstein had "reliable access" to cash, which was the "lifeblood" of his operation. Compl. ¶¶ 126, 133. They made cash withdrawals for Epstein while "ke[eping] the flow of funds under the radar." *Id.* ¶¶ 135–39. They arranged sham marriages to obtain immigration status for foreign victims. *Id.* ¶¶ 160–62. They also controlled his finances. *Id.* ¶¶ 145–49, 150–56, 165–84, 208. Defendants were well compensated for their roles in Epstein's sex trafficking venture. *Id.* ¶¶ 185–88. As a result of their conduct, Plaintiff and hundreds of other women suffered significant damages. *Id.* ¶¶ 206, 211, 221, 233, 254, 272, 302. Plaintiff moved to certify a class of Epstein survivors seeking justice from their abuser's most trusted right-hand men. *See* Dkt. 118.

At the core of Plaintiff's assertions is Defendants' knowledge that the vast web of shell companies, trusts, and other corporate forms that they helped set up, maintain, and monitor, were instrumentalities of Epstein's sex trafficking venture. Juries may be unable to fully understand the nature, purpose, and red flags associated with complex and uncommon (at least to a layperson) corporate forms. Recognizing this, Defendants offered Gail Cohen as an expert to offer opinions concerning the nature, purpose, and red flags associated with Epstein's shell companies.

1

Defendants will use Ms. Cohen's opinions to support the non-credible implication that they were unaware that they and Epstein used Epstein's web of corporate forms to enable sex trafficking. To that end, Cohen espouses that the "[f]irst and foremost" purpose of single-purpose entities is to limit liability. Dkt. 297-1 at ¶ 11. Indeed, Cohen's opinion purports to have reviewed Epstein's companies and concludes:

> It is incorrect to allege that, by their very existence, single-purpose corporate entities "have no legitimate purpose" or are 'shams' – rather, they can serve the very real purposes of limited their owner's financial liability, reducing the substantial costs of household administration, saving estate probate fees, limiting local estate taxes and keeping track of expenses and income. Nor can one fairly or legitimately conclude that the creation and operation of multiple corporate entities, all ultimately owned by a single high-net-worth individual, is in itself evidence of any wrongdoing.

*Id*. at ¶¶ 16–17.

By offering that opinion, Defendants opened the door to Plaintiff retaining an expert to vigorously rebut the Cohen Report and any obvious implications of it. Plaintiff offers Jane Khodarkovsky, an experienced former prosecutor with deep knowledge of how operators of sex-trafficking ventures use single-purpose entities to further the enterprises' abuse of women. The Khodarkovsky report provides opinions about the quality of Ms. Cohen's analysis and the nature, purpose, and red flags associated with shell companies. To complete her holistic analysis, she reviewed evidence from Defendants beyond the limited subset that Ms. Cohen reviewed, which is necessary to understand these entities and their what their "purposes" were.

In direct rebuttal to the Cohen Report, the Khodarkovsky Report states, "Ms. Cohen fails to acknowledge in her report that criminal networks use shell companies, funnel accounts, straw men and other techniques to disguise and conceal source of funds, purpose of transactions, ownership of funds and comingle dirty and legitimate funds to facilitate and conceal criminal

behavior." Dkt. 297-3 at ¶ 41. Further, the Khodarkovsky Report offers five conclusions about the nature, purpose, and red flags associated with shell companies, rebutting Cohen's assertion about what the "first and foremost" purpose of shell companies are or that any credible analysis of the facts of this case could result in the conclusion Epstein used his shell companies for the several legitimate purposes proposed by Cohen:



*Id.* at ¶ 30. The Khodarkovsky Report's conclusions are in direct rebuttal to the Cohen Report.

Contrary to Defendants' strawmen arguments, Ms. Khodarkovsky does not issue any opinions on whether either Defendant should be held liable for their conduct, what their motivations were, or whether they "knew or recklessly disregarded that Epstein was causing

victims to engage in commercial sex acts." Dkt. 296 at 2. She did (and was entitled to), however, refer to evidence of what they actually did as background for her opinions.

Defendants attempt to prevent Plaintiff from offering a qualified and reliable witness with a scattering of ineffectual arguments that cherry-pick pieces of evidence. As shown below, Defendants' arguments fail. Ms. Khodarkovsky's opinions reflect appropriate and probative rebuttal. Accordingly, the Court should deny Defendants' Motion.

## **ARGUMENT**

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions," *Napout*, 963 F.3d at 187, beginning with "a presumption that expert evidence is admissible," *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 431 (S.D.N.Y. 2023). Exclusion remains "the exception rather than the rule." *Feliciano v. CoreLogic Saferent, LLC*, 2020 WL 6205689, at *1 (S.D.N.Y. June 11, 2020). "[T]he traditional and appropriate means of attacking shaky but admissible evidence" is not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Under Federal Rule of Evidence 702 and *Daubert*, the proponent of a witness "qualified as an expert by knowledge, skill, experience, training, or education" must show:

> [I]t is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Ms. Khodarkovsky meets the liberal standard of admissibility. Defendants' misleading attacks on Ms. Khodarkovsky's appropriate, reliable, and helpful rebuttal opinions are not persuasive.

I.  **MS. KHODARKOVSKY'S REBUTTAL OPINIONS DO NOT USURP THE ROLE OF THE COURT OR THE JURY.**

Ms. Khodarkovsky's rebuttal opinions do not usurp the role of the Court or the jury. The Khodarkovsky Report provides some brief, prefatory background on the TVPA. Dkt. 297-3 at ¶¶ 32–50. But "[a]n expert opinion is not automatically inadmissible because it refers to the law." Robert P. Mosteller et al., 1 *McCormick on Evidence* § 16 (8th ed. 2022). "This is not a case . . . where 'the witness repeatedly tracked the exact language of the statutes and regulations which the defendant had allegedly violated and used judicially defined terms.'" *Allen v. City of New York*, 466 F. Supp. 2d 545, 549 (S.D.N.Y. 2006). Ms. Khodarkovsky's does not opine on whether Defendants have violated any statute or rules. Rather, Ms. Khodarkovsky's references to the TVPA (to provide one example) concern the background facts relevant to the opinions that follow. Thereafter, against that backdrop, Ms. Khodarkovsky offers well-founded expert opinions to assist the jury in evaluating the weight to give the Cohen Report.

The cases Defendants rely upon to assert otherwise are inapposite.

In *Seward,* which Defendants use for the proposition that the entirety of Ms. Khodarkovsky's rebuttal opinions should be excluded, the Court merely excluded three sentences from the plaintiff (non-rebuttal) expert's entire report. The Court excluded these three sentences because they were either outside the expert's experience, failed to provide explanation as to how the materials the expert reviewed led to his conclusion, or offered "conclusory, ultimate issue

5

opinions." *Seward v. Antonini*, 2023 WL 6387180, at *22 (S.D.N.Y. Sept. 29, 2023). None of these issues are present here.

*Hygh*, *Tourre*, and *Highland*, all offered by Defendants to support the proposition that an expert ought not instruct the jury on the law, are not applicable.

In *Hygh*, which concerned the propriety of an expert's testimony at trial as opposed to an attempt to exclude a report ex ante, the Second Circuit held that any error in allowing the challenged expert testimony "was harmless" and did not justify a reversal. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). Further, in *Hygh*, the court was primarily concerned with the expert's statements regarding whether defendants violated the law in question, which concerned "the ultimate legal conclusion entrusted to the jury." *Id*. Here, Defendants do not and cannot point to any similar statements by Ms. Khodarkovsky in her report or her deposition testimony. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, understandings that would assist a jury to reach the ultimate decisions of liability under the TVPA or other statutes.

Defendants cite the opinion's legal standard section in *Tourre*, failing to explain how the rule they propose was applied to the facts in that case and how those facts are sufficiently similar to the present matter, likely because such a comparison would render the case irrelevant. *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). In *Tourre*, the expert offered by the defendant "simply [had] no specialized knowledge, expertise, or training" and attempted to instruct the court as to what facts in the record were "material." *Id*. at 676–79. Here, Ms. Khodarkovsky has specialized knowledge, expertise, and training and does not attempt instruct the Court as to what facts in the record are material.

Defendants cite to the portion of the opinion in *Highland* dealing with the "facts" section of the expert's opinion, which is irrelevant because the Khodarkovsky Report has no "facts" section. *Compare Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005), *with* Dkt. 297-3. The Khodarkovsky Report analyzes evidence and robustly produces citations to evidence to help the Court and jury follow her reasoning in providing rebuttal testimony. Ms. Khodarkovsky does not present any portion as "factual narratives and interpretations of conduct or views as to the motivation of parties," so *Highland* is irrelevant. *Id.*

*Nimely* and *In re Terrorist Attacks* are similarly inapplicable. In *Nimely*, a chief medical examiner's testimony was excluded because it went well beyond his expertise in pathology and adopted one party's testimony regarding the underlying events, preemptively ruling out other possible explanations. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (the court expressing it was "highly dubious" the opinion fell within the witness' field of expertise). Further, the Court took issue with the expert's direct commentary "under the guise of expert opinion[] on the credibility of trial testimony from crucial fact witnesses." *Id.* at 398. Here, the facts are substantially dissimilar, where Defendants offered their own expert and Plaintiff offered a qualified rebuttal expert, creating a classic battle of the experts for the jury to weigh and consider as to whether the shell corporations were indicia of sex trafficking.

In *In re Terrorist Attacks*, the affirmative expert that was excluded offered unambiguous legal conclusions. *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 3116763, at *10 (S.D.N.Y. Apr. 27, 2023) (excluding an expert's testimony where he proffered an opinion that a defendant offered "material support" to terrorists, which was ultimately at issue in the underlying statute). Here, the Khodarkovsky Report does not use the word "material" or otherwise reach legal conclusions. The examination of evidence in the Khodarkovsky Report that Defendants take issue

7

with by cherry picking isolated sections or sentences is in fact Ms. Khodarkovsky's appropriate holistic analysis methodology. Ex. A at 388 (unsurprisingly, Defendants only provided the court with excerpts of the Khodarkovsky Deposition, selectively cutting around the numerous sections that disprove their arguments, so Plaintiff provides the transcript in its entirety).

Finally, the line of cases Defendants cite for the proposition that Ms. Khodarkovsky's use of the DFS Consent Order in her analysis was inappropriate are also inapposite. As Defendants concede, an expert may rely on hearsay evidence while reliably applying expertise to that hearsay evidence. Dkt. 296 at 11. Ms. Khodarkovsky has extensive experience as an investigator and prosecutor of financial and sex trafficking crime, and in recognizing what a significantly relevant document the DFS Consent Order is, she questions how the Cohen Report failed to consider it. Dkt. 297-3 at ¶ 53. Further, there is not a real dispute as to the truth of the DFS Consent Order, ███ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████ Nonetheless, Ms. Khodarkovsky does not offer the DFS Consent Order for its truth, as Defendants claim, but rather offers it as something that the Cohen Report should have considered. As such, the Khodarkovsky Report walks through some of the significant allegations in the DFS Consent Order for the purpose of rebutting the accuracy of the Cohen Report. Ms. Khodarkovsky's methodology considers all available evidence holistically whereas the Cohen Report presents a methodology that rejects the necessity of such an analysis. The persuasiveness of one approach versus the other is exactly the kind of battle of the experts that is appropriate for a jury to consider.

In the cases upon which Defendants rely, either the expert testimony at question was only excluded in (small) part or was based on wholly different facts such as unqualified experts or experts proffering reports structurally different from the present matter. Defendants have not found examples of courts excluding expert testimony in cases similar to this matter. Indeed, in none of the cases Defendants cite as part of their argument was rebuttal expert's testimony excluded, as it is extremely uncommon for courts to find a party is unable to provide rebuttal when the other party opens the door with an affirmative expert, especially considering the "liberal standard of admissibility" applied. *Napout*, 963 F.3d at 187. The Court should reject Defendant's unsubstantiated arguments that Ms. Khodarkovsky's rebuttal expert opinions usurp the role of the Court or the jury.

## II.    MS. KHODARKOVSKY'S REBUTTAL OPINIONS ARE RELIABLE AND NOT UNDULY PREJUDICIAL.

Ms. Khodarkovsky meets the reliability prong under Rule 702 and *Daubert*. The test for reliability is "flexible," and the list of factors identified in *Daubert* "neither necessarily nor exclusively applies to all experts or in every case." *Zapata v. Crown Equip. Corp.*, 2006 WL 8461377, at *3 (S.D.N.Y. Apr. 7, 2006). In cases where experts "draw a conclusion from a set of observations based on extensive and specialized experience," "the method is the application of experience to facts." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 2008 WL 1971538, at *6 (S.D.N.Y. May 7, 2008).

Here, Ms. Khodarkovsky meets the low threshold for reliability under Rule 702 and *Daubert* because she applies her experience to the facts before her to provide reliable opinions regarding Ms. Cohen's report.

9

### A. Ms. Khodarkovsky's Rebuttal Opinions Are Sufficiently Detailed and Not Speculative.

Ms. Khodarkovsky's rebuttal opinions are sufficiently detailed and not speculative. An expert's opinion is sufficiently detailed when it testifies "as to the customs and practices of the industry." *In re Blech Sec. Litig.*, 2003 WL 1610775, *21 (S.D.N.Y. Mar. 26, 2003); *S.E.C. v. U.S. Env't, Inc.*, 2002 WL 31323832, *3 (S.D.N.Y. Oct. 16, 2002) (permitting testimony of expert witness regarding the "practices and usages" of the relevant industry based upon his "knowledge of the standard practices of the [] industry" and his "knowledge of [behavior] that an experienced [person in the industry] would recognize as irregular"). Here, Ms. Khodarkovsky's testimony speaks directly to the customs and practices surrounding the creation of shell companies, which she offers in direct rebuttal to Cohen.

Defendants' claim that Ms. Khodarkovsky's opinions are too speculative due to her experience fails. *See* Dkt. 296 at 14–16. Defendants' further reliance on *Highland* is misplaced. Indeed, Defendants' assertion that the *Highland* court excluded "expert testimony based on expert's 'experience as an Assistant United States Attorney' on the ground that 'this fact alone does not make his opinion reliable'" is wrong. Dkt. 296 at 14.

In *Highland*, the expert testimony was excluded on the grounds that it was wholly inappropriate as it offered lengthy testimony regarding what the relevant law was, how certain parties violated it, and that the government would likely bring criminal charges against them. *See Highland Cap.*, 379 F. Supp. 2d at 468–73. That the expert was a former Assistant United States Attorney was insufficient to overcome the other failings in the testimony. *Id*. at 473 n.2. Nonetheless, Ms. Khodarkovsky does not merely "aver conclusorily" that her experience led to her opinion. In both the Khodarkovsky Report and her deposition, Ms. Khodarkovsky clearly

10

explains why her experience as a prosecutor qualify her to provide rebuttal testimony to the Cohen Report regarding the nature, purpose, and red flags associated with shell companies, including how her investigative experience qualifies her to opine as to what individuals working as part of a sex trafficking venture should have recognized. Dkt. 297-3 at ¶¶ 6 (a renowned speaker on "combating illicit finance, human trafficking and child exploitation"), 7 (a decade of experience as a state and federal prosecutor in sex trafficking and financial crimes, including three years as <u>the</u> "sole Human Trafficking Finance Specialist for the entire DOJ"), 8 (<u>the</u> "subject matter expert supporting U.S. Attorney's Offices on best practices to investigate financial crimes"), 9–16 (significant experiences with relevant cases involving investigations into shell companies and the white collar individuals supporting them), 17–20 (experience as a thought leader and trainer regarding investigating sex trafficking and financial crimes); *see also* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ms. Khodarkovsky makes it abundantly clear why her experience qualifies her to offer her expert rebuttal opinions.

Defendants also list a number of statements from Ms. Khodarkovsky's report to argue that she cannot "reach conclusions regarding what Mr. Indyke and Mr. Kahn—in their roles as one of Epstein's lawyers and one of his accountants, respectively—knew or should have known, or what would have been 'reasonable' questions for Defendants to ask." Dkt. 296 at 15. But this criticism ignores her explanation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 297-3 at ¶ 43. While Defendants' arguments focus entirely on their claim that Ms. Khodarkovsky opines on ethical and fiduciary obligations of lawyers, they ignore completely the relevance of her opinions concerning ▮▮▮▮▮▮▮▮▮▮

11

███████████████████████████ Where, as here, Defendants have put forward an expert from the Fiduciary Trust Company International who touts her expertise concerning the roles of fiduciaries and the importance of "accounting for each single-purpose entity's expenses and income in its own books and records," "ensure appropriate tax reporting," and "[c]arefully itemizing expenses" that would "help[] wealthy individuals avoid waste by identifying excessive, duplicative or unnecessary expenses," Dkt. 297-1 at ¶ 15, Ms. Khodarkovsky's reference to evidence showing how none of this occurred as to the sham corporations Ms. Cohen opined on is entirely fair rebuttal.

Defendants' argument that Ms. Khodarkovsky's opinions are unreliable because "they are not derived from any discernable principle" fails as well. *See* Dkt. 296 at 16. As Ms. Khodarkovsky makes clear in her report and in her deposition testimony, her analysis requires a holistic analysis of available evidence, which she reviewed using the benefit of her experience. Ex. A at 388. Because of that, as Ms. Khodarkovsky explains, ███████████████████████
████████████████████████████████████████████████████████████████
███

### B.   Ms. Khodarkovsky's Rebuttal Opinions Regarding the Cohen Report Are Reliable and Therefore Admissible.

Ms. Khodarkovsky's rebuttal opinions regarding the Cohen Report are based on a thorough review of relevant materials, making them reliable. Defendants base their argument on a sloppy reading of Ms. Khodarkovsky's materials considered, asserting that Ms. Khodarkovsky ████
████████████████████████████████ Dkt. 296 at 17. Not so. A careful reading of the Khodarkovsky Report at Exhibit 2 shows she also reviewed exhibits from multiple depositions. Dkt. 297-3 at 35. These exhibits included hundreds of pages of transactions across

multiple spreadsheets, including the most relevant QuickBook files. As an example, the Klein Deposition included dozens of QuickBook records that Ms. Khodarkovsky reviewed. *See* Exs. B, C (collection of some relevant exhibits from the Klein Deposition that Ms. Khodarkovsky reviewed). As such, Defendants' argument fails.

### III. MS. KHODARKOVSKY'S OPINIONS WILL ASSIST THE JURY.

Ms. Khodarkovsky's rebuttal opinions will also assist the jury under Rule 702 and *Daubert*. The requirement that expert testimony "assist the trier of fact" goes primarily to relevance. *Daubert*, 509 U.S. at 591 (referring to this prong as the "helpfulness" standard). Relevance can be expressed as a question of "fit"—"whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.*

Here, Ms. Khodarkovsky's opinions are relevant and sufficiently tied to the facts of the case because they aid the jury in having proper context to weigh the Cohen Report. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 4251229, at *4 (S.D.N.Y. Feb. 19, 2020) (denying in part *Daubert* motion where the expert's testimony "provid[ed] the trier of fact with the necessary tool[s] to make [the] ultimate determination"). Indeed, it cannot be that Defendants can offer an expert to say a wealthy registered sex-offender with dozens of shell companies does not present any evidence of sex trafficking, but Plaintiff is prevented from offering a rebuttal expert to contest the conclusions of the highly misleading Cohen Report.

Defendants complain that Ms. Khodarkovsky offers opinions about the Bank Secrecy Act of 1970 ("BSA"), the Anti-Money Laundering Act ("AML Act") and other regulations governing financial institutions, which should be excluded because the AML Act was not enacted until 2021 and ███████████████████████████████████████████████████

13

███████████████. *See* Dkt. 296 at 8. This criticism is meritless for several reasons. First, the Khodarkovsky Report does not allege Defendants had liability under any of these statutes. Rather, Ms. Khodarkovsky discusses relevant statutes as useful background of base principles that the Cohen Report should have been aware of. The Khodarkovsky Report presents a holistic analysis of red flags to build the opinion that the mere existence of Epstein's vast web of shell companies was an indicia of sex trafficking. That holistic analysis requires sufficient discussion of relevant laws. Second, the Khodarkovsky Report discusses these statutes in the context of Ms. Khodarkovsky's experience. Defendants complain Ms. Khodarkovsky does not sufficiently demonstrate how her experience is applicable to her rebuttal opinions, but also complains that when she does discuss her experience and show her deep knowledge of investigation into financial crimes and sex trafficking, that it should be excluded. Defendants cannot have it both ways and are wrong each time.

Even if the Court is uncertain as to how useful certain of Ms. Khodarkovsky's rebuttal opinions will ultimately be, "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 8280139, at *2 (S.D.N.Y. Nov. 30, 2023) (Subramanian, J.).

## IV. MS. KHODARKOVSKY'S REBUTTAL OPINIONS ARE NOT MORE PREJUDICIAL THAN PROBATIVE.

Ms. Khodarkovsky's rebuttal opinions are not more prejudicial than probative. Defendants made the decision to offer a generic expert opinion regarding the propriety of using shell companies, trusts, and other corporate forms. The validity of Defendants' expert's opinion is centrally probative to this case. Therefore, Plaintiff must be allowed to provide rebuttal testimony disputing Defendants' expert. Any limited prejudice stemming from Ms. Khodarkovsky's rebuttal

opinions certainly do not outweigh her opinion's steep probative value. Indeed, Defendants' two points suggesting prejudice are unavailing. First, Defendants suggest that the very experience that makes Ms. Khodarkovsky a reliable and qualified expert witness – ███████████ ███████████ ███████████ – also makes her opinions somehow improper. Second, Defendants suggest that Ms. Khodarkovsky referencing or analogizing to cases from her reliable and relevant experience also make her opinion improper. Both arguments fail. Defendants offered an expert opinion that suggests that the use of shell companies, trusts, and other corporate forms is normal and not indicative of sex trafficking. Plaintiff offered an expert to dispute that point, relying on her relevant experience investigating the use of shell companies, trusts, and other corporate forms to effectuate sex trafficking enterprises. At bottom, Ms. Khodarkovsky's opinions are routine, probative rebuttal. Defendants' suggestion that Ms. Khodarkovsky's reference to her relevant previous experience would prejudice Defendants to a jury rather than their own undisputed work for decades for the world's most infamous sex trafficker, including arranging sham marriages, facilitating thousands of cash payments to women, and overseeing Epstein's vast web of entities that were undeniably crucial to his ability to source and abuse hundreds of women, is a preposterous proposition.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to exclude Ms. Khodarkovsky's rebuttal opinions.

Dated: December 3, 2024                                          Respectfully submitted,

/s/ *Sigrid McCawley*
David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

Sigrid McCawley
Daniel Crispino
Megan Nyman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200 Fort Lauderdale, FL 33316 Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com