## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JANE Doe 3, individually and on behalf of all
others similarly situated,

|                    |                                        |
|--------------------|----------------------------------------|
| *Plaintiff*,       | Civil Action No. 1:24-cv-01204 (AS)    |
| v.                 |                                        |
| DARREN K. INDYKE and RICHARD D. KAHN, | ORAL ARGUMENT REQUESTED |
| *Defendants*.      |                                        |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

HUGHES HUBBARD & REED LLP

Daniel H. Weiner, Esq.
Marc A. Weinstein, Esq.
Fara Tabatabai, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
daniel.weiner@hugheshubbard.com
marc.weinstein@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Attorneys for Defendant Darren K. Indyke*

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel S. Ruzumna, Esq.
Amy N. Vegari, Esq.
Tara J. Norris, Esq.
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
druzumna@pbwt.com
tnorris@pbwt.com
avegari@pbwt.com

*Attorneys for Defendant Richard D. Kahn*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................1

    I.     DOE'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW........................1

          A.     There Is No Evidence to Support Doe's IIED Claim...................................1

          B.     There Is No Evidence to Support Doe's Aiding and
                Abetting Battery Claim ..............................................................................3

          C.     Doe's Negligence Claim Fails as a Matter of Law .....................................4

          D.     Unless There Is a Certified Class, Doe's State-Law Claims
                Are Time-Barred ......................................................................................5

    II.     DOE'S TVPA CLAIMS FAIL AS A MATTER OF LAW...................................6

          A.     No Evidence Permits an Inference that Defendants Knew of
                Epstein's Alleged Use of Force, Fraud, or Coercion to
                Cause Doe to Engage in Commercial Sex ...................................................6

          B.     There is No Evidence that Indyke or Kahn Obstructed
                TVPA Enforcement....................................................................................8

          C.     JD3 Cannot Assert a Claim for Conspiracy to Violate the
                TVPA ......................................................................................................9

    III.    DOE IS NOT ENTITLED TO PUNITIVE DAMAGES........................................9

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abafita v. Aldukhan*, No. 16-cv-06072, 2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019) ................................................................................................9, 10

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166 (2d Cir. 2013) ...........................5

*Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429 (E.D.N.Y. 2011)................................................10

*Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239 (S.D.N.Y. 2023)........................9

*Dent v. U.S. Tennis Ass'n, Inc.*, No. CV-08-1533, 2008 WL 2483288 (E.D.N.Y. June 17, 2008) .............................................................................................7

*Diamond Jewels v. Lewis,* No. 15-CV-5760, 2019 WL 5896224 (E.D.N.Y. Nov. 12, 2019) ...........................................................................................10

*Doe 7015 v. Elektra Ent. Grp. Inc.*, No. 21 Civ. 6868, 2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) .......................................................................4

*Doe (G.N.C.) v. Uniquest Hosp., LLC,* No. 23-cv-7980, 2024 WL 4149251 (S.D.N.Y. Sept. 11, 2024)......................................................................7

*Doe I v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023)............2, 4, 8, 9

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464 (E.D.N.C. 2024) ...............................7

*Kahuna Grp., Inc. v. Scarano Boat Bldg., Inc.,* 984 F. Supp. 109 (N.D.N.Y. 1997) ...................10

*Lawson v. Rubin*, No. 17 Civ. 6404, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018).....................6

*Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir. 1976) ...........................................1

*Macolor v. Libiran*, No. 14-cv-4555, 2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016) ...........................................................................................10

*Morris v. City of New York*, No. 12-CV-3959, 2013 WL 5781672 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015).......................7

*Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612 (S.D.N.Y. 2009) .............................................................................................1

*Seltzer v. Bayer*, 709 N.Y.S.2d 21 (App. Div. 2000)......................................................................3

*Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, 21-CV-2684, 2024 WL
    3637997 (S.D.N.Y. Aug. 1, 2024) .......................................................................1

*Tillery v. Lynn,* 607 F. Supp. 399 (S.D.N.Y. 1985) ......................................................10

*United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007), *rev'd on other
    grounds*, 538 F.3d 97 (2d Cir. 2008) ..............................................................8

*United States v. Raniere*, 55 F.4th 354 (2d Cir. 2022) ..................................................8

*Williams v. State*, 969 N.E.2d 197 (N.Y. 2012) ..........................................................3

*Wilson v. Jones*, 04-CV-2566, 2007 WL 9752927 (E.D.N.Y. Feb. 22, 2007), *aff'd*,
    308 F. App'x 519 (2d Cir. 2009) .....................................................................7

**Statutes and Rules**

18 U.S.C. § 1591(a)(2)...................................................................................................6

Fed. R. Evid. 408(a) .....................................................................................................6

**Periodical Material**

Matthew Goldstein, *Prosecutor Says Executors of Jeffrey Epstein's Estate
    Enabled His Abuse*, New York Times (Feb. 11, 2021) ............................................6

## PRELIMINARY STATEMENT

Notwithstanding broad proclamations that Defendants knew of and participated in Jeffrey Epstein's sex trafficking scheme, Plaintiff Jane Doe 3's arguments opposing summary judgment fall apart upon a review of her cited evidence. Doe improperly relies on newspaper articles, witness statements described in a police report, and a non-party consent order with Deutsche Bank, despite those documents being inadmissible hearsay.[1] She glosses over evidentiary gaps by asserting, without evidence, that women with or about whom Defendants communicated or who received a benefit from Epstein were victims of sex trafficking, despite the fact that many such "victims" have never claimed abuse. Doe offers no admissible evidence to prove that any payments that purportedly facilitated a sex-trafficking venture were, in fact, part of a sex-trafficking venture. And she relies on documents from well after her alleged sexual assaults—documents that *cannot possibly* prove that Defendants Darren Indyke and Richard Kahn knew or should have known that Epstein would abuse her. That evidentiary record is not enough for any jury to conclude that Defendants are liable to Doe.

## ARGUMENT

**I.     DOE'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW.**

**A.     There Is No Evidence to Support Doe's IIED Claim.**

Doe fails to point to any evidence to support key elements of her IIED claim. First, there is no evidence that Defendants intended to cause Doe to suffer severe emotional distress. Doe's only purported evidence of "intent" consists of: (i) █████████████████████████████

---

[1] *See Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, 21-CV-2684, 2024 WL 3637997, at *7 (S.D.N.Y. Aug. 1, 2024) (refusing to consider "hearsay" news articles offered in summary judgment opposition); *Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 622-23 (S.D.N.Y. 2009) (statements of nonparties contained within police report are inadmissible hearsay); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976) (consent orders that are "not the result of an actual adjudication of any of the issues" are inadmissible).

██████████████████████████████████████████████████████████

██████████████████████████; (ii) an email ████████████████████████

███████████████████████████████████████████████████████;

(iii) an email from ████████████████████████████████████████

███████████████████████████████████████████████████; and

(iv) evidence allegedly indicating that Defendants ██████████████████

██████████████      *See* Opp. at 9; Doe Resp. to SUMF ¶¶ 208-09.[2]

None of this purported evidence creates a triable issue of fact as to intent.  That Defendants

were included ██████████████████████████████████████████████

████████ is not evidence that they *intended* for Epstein to cause her severe emotional distress.  Nor

can such intent be inferred from the fact that Kahn was privy to a ledger that ██████████████

█████████████████████████████—especially in light of Doe's own testimony that ████

██████████████████████████████████████. SUMF ¶ 173.  And Defendants'

purported awareness of ████████████████████████████████████████████

████ does not begin to establish intent to cause Doe severe emotional distress.

Second, Doe cannot point to extreme and outrageous conduct by Defendants "intentionally

directed" at Doe.  *See Doe I v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 416

(S.D.N.Y. 2023).  Doe argues that Defendants ████████████████████████████

qualifies (Opp. at 10), but ████████████████████████████████████

---

[2] "Opp." refers to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF No. 306); "SUMF" refers to Defendants' Rule 56.1 Statement of Undisputed Material Facts (ECF No. 260); "Doe Resp. to SUMF" refers to Plaintiff's Responses to Defendants' Rule 56.1 Statement of Undisputed Material Facts (ECF No. 315); "Def. Mem." refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (ECF No. 262); and "Weiner Reply Decl." refers to the Declaration of Daniel H. Weiner in Further Support of Defendants' Motions for Summary Judgment, filed concurrently herewith.

████████████████████████ is not "extreme or outrageous" conduct—particularly given

the lack of evidence that Defendants knew anything about Doe's ████ or her relationship with

Epstein. Similarly, Epstein's █████████████████████ (which Doe does not

allege Indyke was even aware of) is not extreme or outrageous conduct by Defendants. None of

the alleged conduct comes close to the type of "longstanding campaign of deliberate, systematic

and malicious harassment of the plaintiff" that courts generally require for IIED claims. *Seltzer v.

Bayer*, 709 N.Y.S.2d 21, 23 (App. Div. 2000).

    <u>Third</u>, Doe does not explain how Defendants' conduct could have proximately caused her

alleged abuse. According to Doe and her expert, it was *Epstein's* alleged abuse—not conduct by

Defendants—that caused Doe's alleged emotional distress. Compl. ¶ 125; ECF No. 98 at 1-2.

Even the cited █████████████████████████████████ (Opp. at

9), were either ████████████████████████████████. *See*

Doe Resp. to SUMF ¶¶ 129, 295, 297. Those ████████ cannot possibly establish that Defendants

proximately caused Doe's purported injury. *See, e.g.*, *Williams v. State*, 969 N.E.2d 197, 199

(N.Y. 2012) (no proximate cause because "any number of circumstances arising during the two-

year period" following the defendant's actions could have caused the injury alleged).

    **B.**    **There Is No Evidence to Support Doe's Aiding and Abetting Battery Claim.**

    Doe's claim for aiding and abetting battery requires evidence that Defendants had actual

knowledge of Epstein's alleged sexual battery of Doe and that each Defendant took an overt act to

further that battery. Def. Mem. at 13-14. Doe has shown neither.

    Doe points to no evidence that Defendants had actual knowledge of her alleged sexual

abuse by Epstein. Doe relies on the ████████████████ (Opp. at 12), but all they

show is that ████████████████████████████████████████

████████████████████████████████████████████████

███████. The mere fact that ████████████████████████████████████████████ was not sufficient to put them on notice that Doe would be sexually abused. *See* SUMF ¶¶ 175, 208-09.

Doe also fails to identify any overt act by Defendants in furtherance of Epstein's alleged sexual battery of her. Doe references Defendants' "broader support of Epstein's operation" (Opp. at 12), but the law requires an overt act in furtherance of the alleged battery *of Doe specifically*. *Doe 7015 v. Elektra Ent. Grp. Inc.*, No. 21 Civ. 6868, 2023 WL 2744102, at *4 (S.D.N.Y. Mar. 31, 2023); *Doe I*, 671 F. Supp. 3d at 416. Contrary to Doe's characterization of *Elektra* (Opp. at 12), the Court there acknowledged that the defendants had "substantially assisted" the career of a known pedophile and even facilitated his access to his minor victim, but nonetheless found such conduct did not constitute overt acts in furtherance of the plaintiff's sexual abuse because they were not "directed at the tort itself." *Elektra*, 2023 WL 2744102, at *3-4. Here, Defendants did not in any way facilitate Epstein's access to Doe, let alone take any act intentionally directed at furthering her alleged abuse.

### C.    Doe's Negligence Claim Fails as a Matter of Law.

Doe's opposition fails to address the failures of her negligence claim: Defendants owed her no duty, and no conduct of Defendants was the but-for or proximate cause of her alleged abuse.

First, Doe's argument that Defendants owed her an "ordinary" duty owed to "everyone" to avoid injury resulting from forces they "set in motion" (Opp. at 13) flies in the face of black-letter law that such "ordinary" duty of care does *not* extend to the conduct of others unless a defendant can "effectively exercise[]" control over the other person's conduct—as in an employer controlling an employee. Def. Mem. at 15-16. Here, Defendants worked for Epstein, not the other way around; they had no "ability or authority" to control him, and no duty to do so.[3]

---

[3] Doe's argument that ████████████████████████████████████████████████ "set in motion" Doe's alleged abuse (Opp. at 13-14) is meritless. Doe has

Second, Doe fails to identify evidence that any conduct by Defendants caused her alleged harm. Doe points again to Defendants' "support" of Epstein's operation, referencing the ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████. *See* Opp. at 15. But none of that alleged conduct caused Doe's injury; Epstein's abuse did. In the absence of evidence that Doe's alleged harm would not have occurred but for and as a proximate result of Defendants' conduct, her negligence claim must be dismissed. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 179 (2d Cir. 2013).

### D.  Unless There Is a Certified Class, Doe's State-Law Claims Are Time-Barred.

Doe's argument that the November 21, 2023 and January 17, 2024 tolling agreements somehow tolled claims for any and all individual plaintiffs is contrary to the plain language of those agreements. The agreements tolled claims for Danielle Bensky and "a *class* of women alleging abuse by Jeffrey Epstein," defined as the "Putative Class." ECF No. 255-188 at 1 (emphasis added). Nothing in either agreement indicates that the statute of limitations is tolled for individual claims other than Bensky's or for any other individual who makes up the class.

Equitable estoppel does not apply. Doe cites no evidence—and there is none—in support of her argument that Defendants took steps to "conceal" the nature of their work with Epstein. As Doe admits, the New York Department of Financial Services report on which she heavily relied in her Complaint was public in July 2020 (Opp. at 16)—nearly four years before Doe filed suit—and

---

not explained how ███████████████ could have set in motion her own alleged abuse, and the ███████████ *after her alleged abuse* did not "set in motion" any earlier event. Finally, ███████████████████████████████████████████ and there is no evidence that Defendants set in motion that relationship.

public reporting regarding Defendants was widespread within the limitations period.[4]  She simply chose not to file suit until the Adult Survivors Act expired.  Absent a certified class, her claims are time-barred.

## II.    DOE'S TVPA CLAIMS FAIL AS A MATTER OF LAW.

### A.    No Evidence Permits an Inference that Defendants Knew of Epstein's Alleged Use of Force, Fraud, or Coercion to Cause Doe to Engage in Commercial Sex.

Doe offers no evidence that Indyke or Kahn "knew or acted in reckless disregard of the fact that 'force, threats of force, fraud, or coercion' would be used to cause [her] to engage in a commercial sex act."  *Lawson v. Rubin*, No. 17 Civ. 6404, 2018 WL 2012869, at *11 (E.D.N.Y. Apr. 29, 2018).  That failure is fatal to her TVPA claim.  *See* Def. Mem. at 18-21.

First, Doe argues that a reasonable jury could infer that "Defendants were aware that [Epstein's] victims were being recruited for commercial sex" because Defendants ███████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████.  Opp. at 19-20.  Doe has not adduced *any* admissible evidence that those women were trafficked by Epstein or did not do "legitimate" work for Epstein.[5]  Moreover, knowledge of █████████████████████████████████████████ ██████████████████████████ does not establish a viable TVPA claim.  Doe has failed to raise a triable issue that Indyke and Kahn knew or recklessly disregarded that Epstein would use ***force, fraud, or coercion*** to cause her to engage in commercial sex.  18 U.S.C. § 1591(a)(2).

There is a "critical distinction" between "knowledge of prostitution" and "knowledge of

---

[4] *See, e.g.*, Matthew Goldstein, *Prosecutor Says Executors of Jeffrey Epstein's Estate Enabled His Abuse*, New York Times (Feb. 11, 2021), https://www.nytimes.com/2021/02/11/business/jeffrey-epstein-virgin-islands-victims.html.

[5] For those women who made (and settled) claims against Epstein, Doe cannot rely on those settlement agreements to establish the validity of their claims.  Fed. R. Evid. 408(a).

sex trafficking by force or fraud"; accordingly, "courts have generally rejected arguments that such facts . . . consistent with prostitution" are alone sufficient to meet the knowledge element of a TVPA claim. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 470, 472 (E.D.N.C. 2024); *see also Doe (G.N.C.) v. Uniquest Hosp., LLC,* No. 23-cv-7980C, 2024 WL 4149251, at *3 (S.D.N.Y. Sept. 11, 2024) ("[P]rostitution and sex trafficking by force or fraud are not coterminous."). Absent evidence that Defendants recklessly disregarded that Epstein would use force, fraud, or coercion to cause Doe to engage in a commercial sex act, her TVPA claim fails. *See Wilson v. Jones*, 04-CV-2566, 2007 WL 9752927, at *5 (E.D.N.Y. Feb. 22, 2007), *aff'd*, 308 F. App'x 519 (2d Cir. 2009).

Second, Doe claims that Indyke had "knowledge of Epstein's conduct" based on his awareness of civil lawsuits that Epstein later settled. Opp. at 20. But she cites no authority for the extraordinary proposition that the lawful settlement of a civil dispute constitutes knowledge of a pattern or practice of wrongdoing—nor could she, as settlements are not evidence of wrongdoing. *See, e.g.*, *Morris v. City of New York*, No. 12-CV-3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015) ("The fact that [these individuals] have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the [defendant] has a custom or policy that fosters or results in wrongdoing."); *Dent v. U.S. Tennis Ass'n, Inc.*, No. CV-08-1533, 2008 WL 2483288, at *3 (E.D.N.Y. June 17, 2008) ("In addition to being inadmissible as hearsay, unproved allegations of misconduct are not proof of anything."). No civil suits resulted in any finding that Epstein had engaged in sexual abuse, much less that he had done so by force, fraud, or coercion.

Third, Doe disavows her ***own sworn denial*** at deposition that ██████████████████ ██ because "[t]here is no requirement in the TVPA that a victim subjectively believe" she received

something of value in exchange for a sex act. Opp. at 21. She is wrong. The Second Circuit has expressly held that "value" under the TVPA is "a ***subjective***, rather than objective, concept." *United States v. Raniere*, 55 F.4th 354, 361-62 (2d Cir. 2022) (emphasis added). The inquiry "focus[es] . . . on the value which the [recipient] subjectively attaches to what is sought to be received." *Id.* A subjective standard makes sense: if the alleged victim does not believe she received "an item of value" in exchange for sex, there can be no "causal relationship between the sex act" and the item given to her. *See United States v. Marcus*, 487 F. Supp. 2d 289, 306–07 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008). Here, Doe testified that

████████████████████████████████████████. SUMF ¶¶ 173-74.

### B.    There Is No Evidence that Indyke or Kahn Obstructed TVPA Enforcement.

Doe cites no evidence that Indyke or Kahn "(1) kn[e]w of an effort to enforce the TVPA and (2) intentionally obstruct[ed] or attempt[ed] to obstruct that enforcement effort." *Doe 1*, 671 F. Supp. 3d at 409; *see also* Def. Mem. at 21-22. Doe declares in conclusory fashion that "Defendants were aware of pending government investigations into Epstein's sex-trafficking venture and intentionally took steps to obstruct government enforcement," citing evidence that

████████████████████████████████████████████████

████████. Opp. at 22. But she offers no evidence that Kahn was aware of that investigation, or that Indyke or Kahn obstructed it. *See* SUMF ¶ 111. Further, Defendants' unspecified obstruction could not have caused Doe ***herself*** any harm, given that the investigation concluded years before she even met Epstein. *See Doe 1*, 671 F. Supp. 3d at 409.

The only evidence Doe offers for conduct constituting "obstruction" is from well after the Palm Beach investigation. *See* Opp. at 22-23. Defendants' actions in 2009 or after could not have "obstructed" that investigation, and Doe offers no evidence that Indyke or Kahn were aware of any subsequent investigation of Epstein until his arrest in 2019. A TVPA obstruction claim

requires proof that defendants intentionally obstructed a ***pending*** investigation of which they were aware. *See Doe 1*, 671 F. Supp. 3d at 409. There is no such evidence here.

      **C.     JD3 Cannot Assert a Claim for Conspiracy to Violate the TVPA.**

As explained in Defendants' opening brief, the TVPA did not create a civil cause of action for conspiracy until 2023. Def. Mem. at 22-23. Because the 2023 amendment does not apply retroactively (*see id.*), Doe's conspiracy claim—which concerns conduct nearly a decade before the amendment and a purported "conspiracy" with an individual (Epstein) who died in 2019— cannot survive. Doe entirely fails to address the retroactivity issue; thus, she has waived any defense. *Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239, 264 (S.D.N.Y. 2023). Regardless, there is no evidence that Indyke or Kahn knowingly entered "an actual agreement to participate in a sex-trafficking venture." *Doe I*, 671 F. Supp. 3d at 412; *see also* Def. Mem. at 23.

**III.     DOE IS NOT ENTITLED TO PUNITIVE DAMAGES.**

The record does not reflect conduct by Defendants that meets the exceptionally high bar for punitive damages. As discussed *supra*, there is no evidence that Defendants had actual knowledge that Epstein sexually abused Doe or anyone else. Defendants provided professional legal and accounting services to Epstein; assisted him in withdrawing and managing cash as necessary to meet his various operational expenses; and made payments as instructed by Epstein to cover salaries for his staff and gifts for both men and women—none of whom ever told Defendants that they were being sexually abused. Def. Mem. at 3-6.

Courts have rejected claims for punitive damages in cases involving conduct far more egregious than what Doe alleges here. In *Abafita v. Aldukhan*, No. 16-cv-06072, 2019 WL 6735148 (S.D.N.Y. Apr. 4, 2019), the court did not award punitive damages against defendants even though they were "secondary abusers" in a human trafficking scheme. Unlike any allegation against Defendants here, the *Abafita* defendants were actively involved in keeping plaintiff in

involuntary servitude; nonetheless, the Court found that only the "primary malefactor" engaged in sufficiently "egregious" conduct to justify punitive damages. *Abafita*, 2019 WL 6735148, at *6. And in *Macolor v. Libiran*, No. 14-cv-4555, 2016 WL 1488121 (S.D.N.Y. Mar. 25, 2016), the Court declined to award punitive damages against the perpetrators of a human trafficking scheme, finding they engaged in "ordinary fraud and deceit," not in the extraordinary conduct required for punitive damages. While Doe argues that *Macolor* is distinguishable because it did not involve "sexual" or "coercive" conduct (Opp. at 24 n.4), neither did Defendants' conduct here—Doe alleges that Epstein alone engaged in such conduct.

Although Doe insists that "the Court should leave the determination of punitive damages in the hands of the jurors" (Opp. at 25), the cases she cites involve extraordinarily malicious conduct that bears no resemblance to the allegations here. In *Diamond Jewels v. Lewis,* the defendant ignored direct reports of sexual abuse of foster children. No. 15-CV-5760, 2019 WL 5896224, at *27 (E.D.N.Y. Nov. 12, 2019). In *Kahuna Grp., Inc. v. Scarano Boat Bldg., Inc.*, the defendants intentionally defrauded the plaintiff by lying about their educational and professional backgrounds. 984 F. Supp. 109, 112 (N.D.N.Y. 1997). And in *Tillery v. Lynn*, the defendant doctor "abused his professional status by making repeated misrepresentations" about the need for extensive medical procedures "with full knowledge that such representation[s] [were] false" and "knowingly used inappropriate" medical devices during those procedures. 607 F. Supp. 399, 402 (S.D.N.Y. 1985). By contrast, the record here does not approach the sort of "fraudulent or evil motive" necessary to raise a triable issue as to punitive damages. *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448 (E.D.N.Y. 2011). The claim for punitive damages should be stricken.

## CONCLUSION

For the foregoing reasons and the reasons set forth in their opening brief, Defendants Indyke and Kahn respectfully request that the Court grant their motion for summary judgment.

Dated:  December 9, 2024
       New York, New York

 _/s/ Daniel H. Weiner_ _____      _/s/ Daniel S. Ruzumna_ _____

Daniel H. Weiner                              Daniel S. Ruzumna
Marc A. Weinstein                             Amy N. Vegari
Fara Tabatabai                                Tara J. Norris
HUGHES HUBBARD & REED LLP                     PATTERSON BELKNAP WEBB & TYLER LLP
One Battery Park Plaza                        1133 Avenue of the Americas
New York, New York 10004                      New York, New York 10036
Telephone: (212) 837-6000                     Telephone: (212) 336-2000
daniel.weiner@hugheshubbard.com               druzumna@pbwt.com
marc.weinstein@hugheshubbard.com              avegari@pbwt.com
fara.tabatabai@hugheshubbard.com              tnorris@pbwt.com

*Attorneys for Defendant Darren K. Indyke*    *Attorneys for Defendant Richard D. Kahn*

11