

BOIES
SCHILLER
FLEXNER

**VIA ECF**                                                                December 9, 2024

The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, New York 10007

      **Re:**    *Jane Doe 3 v. Indyke, et al*, Case No. 24-cv-1204 (AS)

Dear Judge Subramanian:

      Pursuant to Your Honor's Individual Rule 5 and November 13 Order, Dkt. 278, we write
to request that the Court order (1) Defendants to produce all documents relating to "green cards,
payments, or marriage or divorce arrangements" for *any* purported victim, which includes *at least*
the 191 victims Defendants have settled claims of abuse with or otherwise are aware have alleged
to have suffered abuse (as opposed to just four women), examples of which are identified in
"Category 1" of Supplemental Appendix 1; (2) Indyke to produce documents that appear to be
non-privileged based on their privilege log description and/or the  documents' participants,
examples of which are identified in "Category 2"; (3) Indyke to review and produce responsive
documents from the "Maxwell" privilege log, which Plaintiff previously attached to her motion at
Dkt. 224-8; and (4) Kahn and HBRK to produce their documents relating to "green cards,
payments, or marriage or divorce arrangements," identified in "Category 3."

      In response to Plaintiff's original motion (Dkt. 224), the Court noted that a number of the
20 entries reviewed in camera were "███████████████" and ordered Defendants to ███████████
███████████████████████████████████████████████████████████████████ Nov. 6 Tr. at
22. The Court also discussed documents that ████████████████████████
███████████████████████████████████ and held that Defendants were taking an unduly narrow view
of what may be subjected to crime fraud because ████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ *Id.* at 26. On November 13,
the Court ordered "the production of documents regarding green cards, payments, or marriage or
divorce arrangements in connection with a purported victim identified in Doe 3's motion to
compel." The Court's Order clearly required Indyke to "produce any document that meets the
above parameters, even if it wasn't provided to the Court for in camera review." Dkt. 278.[1] While
the limited documents Indyke produced revealed his involvement in obstructing enforcement
efforts, paying victims, and ensuring that Epstein could keep his victims in the country to abuse
by deceiving immigration authorities (as opposed to serving as merely a "corporate transactional
attorney"), the production was incomplete and based on overly narrow readings of the Court's

---

[1] Indyke's fourth log, which was not produced until October 27 (the day before Plaintiff filed her first letter motion
and on the eve of the discovery deadline), included over 4,000 entries.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



orders. Plaintiff raised the deficiencies in the log on December 4 and promptly scheduled a Lead Trial Counsel meet and confer on December 6. It is now clear that further Court relief is necessary.[2]

   ***First***, Defendants should produce all documents relating to "green cards,[3] payments, or marriage or divorce arrangements" concerning any woman known to have alleged abuse at the hands of Epstein. Remarkably, Defendants have taken the position that the Court's Order did not apply to communications with or concerning even the 191 females who the Estate has settled claims of abuse with, such as, for example, the females in Entries 4102 and 4103. Their production included only documents concerning the four victims *explicitly* mentioned in Plaintiff's motion to compel: ███████████████████████████████████████████. But the females mentioned in the original motion are just examples of the hundreds Epstein abused and the many whom Defendants communicated with and about.

   Even as to those four women, Defendants' production was unduly narrow. Plaintiff requests the Court order Indyke to produce the entries identified in "Category 1" of Supplemental Appendix 1 and any others that Indyke is still wrongfully withholding as these entries clearly relate to the categories in the November 13 Order. Entry 1943, for example, is a ████████████████████████ ███████████████████████████████████████ Indyke states he conducted a re-review and this document was "not responsive." But it defies credibility that this would not be responsive to at least one of the categories in the Order████████████████████████████████ ██████████████████████, Ex. B, and two weeks prior, on February 25, 2016, ███████████████████████████████████████. Ex. C at 19; Dkt. 307-20.[4]

   Indyke also wrongfully narrowed his review burden as to the Court-ordered production. At meet and confer, Indyke's counsel revealed for the first time that they unilaterally applied search terms to identify what they would review to respond to the Court's November 13 Order. But Indyke had ample time to comply with the Court's order and, given the Court's order to re-review their logs there is no justification for only reviewing a subset based on search terms. *See* Nov. 6 Tr. at 22 ████████████████████████████████████████████████████████████████ ████████████████████████████."). Indyke's unilateral application of search

---

[2] On November 22, Indyke produced 937 documents that had previously been wrongfully withheld, including dozens that on their face had no plausible basis for falling within either the attorney-client privilege or work product doctrine.
[3] The Court should also specify that *all* immigration-related efforts are responsive, and not only those that narrowly mention the phrase "green card." Epstein and Defendants engaged and paid various immigration attorneys such as ████████ and ███████████ to assist with various applications to the USCIS that did not specifically relate to "green cards" (such as for visas or concerning deportation) but enabled Epstein to continue abusing those applicants. Ex. D (October 10, 2012, communication payment to ██████ in July re "████████████████████████ [sic]"); Ex. E. Any prior applications (and Defendants' awareness of them) are relevant to their claimed lack of knowledge that the subsequent same-sex marriages they facilitated were shams.
[4] Plaintiff also raised with Indyke Entries 299, 4102, and 4103 from Indyke's Fourth Privilege Log, Dkt. 224-7. Entry 299 is an email between Kahn and Indyke regarding "████████████████████████████████████████ ███████ was a sham entity that was created by Indyke for ████████ for immigration purposes." Ex. F. Entry 4102 and 4103 were related to "compensation of certain women employed by Epstein-related entities and Jeffrey Epstein's payment of women's credit card bills." Defendants are known to have facilitated payments to witnesses to prevent them from testifying against Epstein. Ex. G; Ex. H. Indyke wrongfully withheld these documents as well, agreeing to produce them only today when confronted with their in camera review.



terms was inconsistent with the ESI Protocol requiring agreement as to any terms, Dkt. 72 at 2–3, and the parties' dealings as evidenced by the numerous hearings the Court presided over concerning search term disputes. And when Indyke provided the search terms, they were clearly inadequate, consisting of merely the express terms in the Court's order and further limiting that to the names in Plaintiff's letter motion, which was nonsensical. *See* Ex. A. Thus, Indyke should again be ordered to review and produce relevant documents subject to the crime-fraud exception without artificially limiting his review.

**Second**, Indyke's production remains deficient because he failed to produce a large number of documents that Kahn and others were copied on, even though the presence of a third party clearly destroys privilege. Jeanne Brennan, Kahn, Klein, Beller appear on several entries, identified in "Category 2" of Supplemental Appendix 1, that were not produced. Communications with third-party employees such as accountants are not protected under Second Circuit law unless the purpose of the communications are "to translate or interpret information given to [the attorney] by his client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). From Defendants' descriptions and explanations, none of the communications in Category 2 appear to fall in this category.

Indeed, certain relevant entries on Kahn and HBRK's privilege logs, "Category 4" in Supplemental Appendix 1, do not even appear on Indyke's privilege log. Indyke agreed to produce the specific documents that Plaintiff flagged, which included correspondence related to immigration and matters and invoices from Arda Beskardes but offered no explanation for the omission of these entries from his log. Ex. A. Indyke should immediately produce all documents Kahn is copied on for the reasons described above as not privileged or within the Court's November 13 Order, or at the very least revise his log to include them.

**Third**, Indyke should be ordered to review and produce documents from his October 19 metadata log, which he inexplicably excluded from his review and production. Plaintiff attached this to her original motion as one of the logs being challenged, Dkt. 224-8, and explained at the October 2 hearing, that her request for such a log was to preserve the ability to challenge documents within that set in a crime fraud motion. *See* Oct. 2 Tr. at 42–43 (noting that "we're monitoring the potential for a crime fraud motion" and "We just want to preserve our ability to challenge" the documents in the metadata log). Thus, Plaintiff requests that the Court order Indyke to review and produce documents from the unreviewed metadata log that are covered by the categories in the Court's November 13 Order.

**Fourth**, Plaintiff identified five entries in "Category 3" of Supplemental Appendix 1 on Kahn and HBRK's logs that fall within the Court's Order, including the four that Indyke was copied on. Kahn took the position that he was not under any Court Order to produce anything and that any request for a Court order would be untimely. Plaintiff did not receive Kahn and HBRK's privilege logs until October 25, however, and moved diligently to identify entries from those logs that fell within the Court's Order after Indyke's November 22 production did not include them.

Respectfully Submitted,

*/s/ Sigrid S. McCawley*



Sigrid McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff*

Before engaging in further briefing on this issue, the parties should meet and confer—for real this time—to see if they can work this issue out. As the Court mentioned, the disclosure of any of the requested documents will not result in a waiver of privilege over other documents, nor does it necessarily mean that any of the documents are admissible in this case. However, the plaintiff's letter suggests that the parties have not even meaningfully considered the prior discussion on this issue or the parameters of the Court's order. If the talks don't work out, the Court will hold a telephonic hearing on Friday, December 20, 2024, at 11:00 AM, and in advance Indyke can submit a response to plaintiff's letter outlining any remaining issues in dispute.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: December 11, 2024