

www.pbwt.com

August 12, 2025

Daniel Ruzumna
(212) 336-2034
druzumna@pbwt.com

**VIA ECF**

The Honorable Arun Subramanian
United States District Judge
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:   *Doe 3 v. Indyke et al.*, **Case No. 24-cv-1204 (AS)**

Dear Judge Subramanian:

On behalf of Defendants Richard Kahn and Darren Indyke, we respectfully write in response to Plaintiff's request that the Court "take judicial notice" of a July 6, 2025 memorandum (the "July 6 Memo") published by the U.S. Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI"). Dkt. No. 349 (Aug. 11, 2025 Letter from S. McCawley). For the reasons set forth below, Plaintiff's request should be rejected.

The July 6 Memo's unsourced and vague representation that "[Jeffrey] Epstein harmed over one thousand victims," Dkt. No. 349-1, is not a "fact" derived "from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The case law is clear that the law does not require or even permit blind acceptance of representations simply because they were made by the Government. *See, e.g.*, *CITGO Petroleum Corp. v. Starstone Insurance SE*, 2023 WL 2525651, at *7-8 (S.D.N.Y. Mar. 15, 2023) (taking judicial notice of statements by President and Secretary of State as "evidence of 'the official positions articulated in these statements,'" but refusing to judicially notice "the truth of 'the predicate facts underlying those official positions'" absent "evidence definitively proving the indisputability of the given assertions"); *Anderson v. Cty. of Nassau*, 297 F. Supp. 2d 540, 545 (E.D.N.Y. 2004) (refusing to take judicial notice of plaintiff's indictment and criminal conviction based on affidavit from government attorney "because [the Court] has no documentation to verify the accuracy of these statements"). If the Government's statements were treated as fact, then there would be no need to adjudicate or try any federal criminal defendant or civil case brought by the Government; the courts and juries would simply rubber-stamp the Government's allegations and claims without regard to evidence or burdens of proof.

While certain Government reports may be entitled to judicial notice, the contents of the July 6 Memo do not meet the Rule 201(b)(2) standard. The page-and-a-half-long July 6 Memo contains no citations, identifies no documentary evidence or percipient witness as a source, names no author of its content, provides no factual basis for its representations, and does not

explain what is meant by "harmed." As a result, the July 6 Memo is most comparable to a Government press release (or a complaint or indictment, which are self-evidently not subject to judicial notice), and not to Government publications reporting exhaustively researched facts that courts have considered beyond dispute. *See, e.g.*, *Rahman v. Schriro*, 22 F. Supp. 3d 305, 311 (S.D.NY. 2014) (taking judicial notice of facts about radiation published by the Environmental Protection Agency). And Plaintiff does not ask the Court merely to take judicial notice of the fact that the July 6 Memo exists, *see, e.g.*, *Robinson v. Foster*, 2019 WL 6608842, at *3-4 (W.D.N.Y. Dec. 5, 2019) (taking judicial notice of publicly filed complaint filed by plaintiff 12 years prior, in connection with motion to dismiss opinion concluding that subsequent complaint was barred by 3-year statute of limitations); rather, she asks the Court to accept as indisputably true the unsourced and unproven substance of the July 6 Memo, *see McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 339-40 (S.D.N.Y. 2022) (granting Rule 11 sanctions based on "frivolous" motion for judicial notice where plaintiff asked the Court to take judicial notice of the content of documents that were subject to reasonable dispute).

"Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Thompson v. Ameriflex*, 2013 WL 866863, at *1 (S.D.N.Y Mar. 7, 2013). That caution is particularly appropriate in this context, given Judge Engelmayer's recent conclusions that the DOJ's submissions to the Court relating to Epstein were not reliable and its statements to the public were disingenuous. *See United States v. Maxwell*, 20 Cr. 330 (PAE), Dkt. 809 at 16, 20. Even if the Court were inclined to afford any deference to the Government's representations, the particular circumstances of the July 6 Memo—including the heightened political tensions involved in its release and the Government's failure to identify any individuals involved in its preparation or any sources of its substance—warrant greater caution here. *Cf. id.* at 23 (finding weight of Government position in seeking release of grand jury minutes relating to Ghislaine Maxwell weakened by "host of irregularities" that were "suggestive of haste rather than reflective deliberation").

Moreover, the July 6 Memo's factual assertion that "Epstein harmed over one thousand victims" is completely inconsistent with the record before the Court. Plaintiff's counsel represented classes of Epstein victims in *Jane Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*, 22-cv-10018 (S.D.N.Y.), and *Jane Doe 1, et al. v. JPMorgan Chase*, 22-cv-10019-JSR (S.D.N.Y.) (together, the "Bank Litigations"). In seeking approval of the class settlements in the Bank Litigations, Plaintiff's counsel touted their "highly effective" efforts to identify, locate, and notify potential class members about the settlements and the procedure for submitting claims to the Settlement Administrator. *See* Dkt. No. 153-3 (memorandum of law in support of final approval of class action settlement in *Deutsche Bank* case); Dkt. No. 153-4 (memorandum of law in support of final approval of class action settlement in *JP Morgan Chase* case). As a result of that "highly effective" procedure, [redacted]

Hon. Arun Subramanian
August 12, 2025
Page 3

[REDACTED] Given the vigor with which Plaintiff's counsel promoted their efforts to locate class members in the Bank Litigations when seeking approval of their negotiated settlement, Plaintiff and her lawyers cannot reasonably claim to have established the requirement of numerosity, let alone that the Court can or should take judicial notice that there are over one thousand Epstein victims.

Finally, class discovery in this case ran for months, concurrently with plenary discovery at Plaintiff's particular request. *Compare* Dkt. No. 66-1 (Plaintiff's proposed case management plan) *with* Dkt. No. 66-2 (Defendants' proposed case management plan providing for bifurcated class and plenary discovery); *see also* June 26, 2024 Hearing Tr. at 64:25-65:6. (granting Plaintiff's schedule and denying Defendants' bifurcated discovery proposal). During that time, Plaintiff wholly failed to adduce any evidence of a sufficiently numerous class to warrant certification. *See Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) (adopting report and recommendation concluding that plaintiffs, who submitted multiple infirm affidavits from purported class members, failed to establish numerosity and that, given that plaintiffs failed to adduce additional evidence during discovery, "they will never be in a better position to establish numerosity"). She cannot now remedy this failure by asking the Court to rely on a vague, unsupported statement in a memorandum by a nonparty, especially where that nonparty's statements on Epstein-related issues have been called into question by another Judge of this Court. The content of the July 6 Memo is not only inadmissible hearsay; it contains mere assertions with no apparent factual support and provides no reliable evidence on which this Court could rely to reach a "reasonable estimate" as to the size of Plaintiff's proposed class. *Id.* at *17-18 (rejecting argument that numerosity could be established by list of "'potential' members of the putative class, rather than persons whose eligibility for membership has been established"); *see also Percere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 70 (E.D.N.Y. 2000) (affidavits from doctors providing estimates of the number of class members without "information … as to the methodology used to reach this conclusion" are not sufficient evidence to establish a "reasonable estimate of the number of persons who fit within the proposed class").

[REDACTED]

Hon. Arun Subramanian
August 12, 2025
Page 4

      Thank you for your careful consideration of this matter. As always, we are available to discuss any issues related to this matter at Your Honor's convenience.

Respectfully submitted,

Daniel S. Ruzumna

cc: All counsel of record (via ECF)