UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 3, individually on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  -against-<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>        Defendants. | 24-cv-1204 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Jane Doe 3 is the sole named plaintiff in this putative class action against Darren Indyke and Richard Kahn, whom Doe seeks to hold liable for Jeffrey Epstein's sexual abuse. Doe moves to amend the complaint to add Allyson Ward as an additional named plaintiff. For the following reasons, the motion is GRANTED.

## BACKGROUND

Plaintiff Jane Doe 3 seeks leave to amend the complaint in this case to add Allyson Ward as a named plaintiff and proposed class representative. *See* Dkt. 193. When Doe filed this case, she and Danielle Bensky were the named plaintiffs. *See* Dkt. 1. Doe moved *ex parte* for leave to proceed anonymously; the Court granted that relief while reserving the right to modify it as the case progressed. Dkt. 12. The Court also granted defendants the right to oppose Doe's proceeding anonymously after the Court resolved defendants' motions to dismiss. Dkt. 81.

On those motions, the Court dismissed Bensky's claims as barred by a release she signed in exchange for payment from the Epstein Victims' Compensation Program (EVCP). *See Bensky v. Indyke*, 743 F. Supp. 3d 586, 591–96 (S.D.N.Y. 2024). Defendants then moved for public disclosure of Doe's identity. Dkt. 81. The Court denied the motion, but explained that it agreed with defendants that Doe "can[not] anonymously represent a certified class." *Doe 3 v. Indyke*, 2024 WL 4299757, at *4 (S.D.N.Y. Sept. 26, 2024). The Court cautioned that Doe "should anticipate that if she succeeds on her motion for class certification, she may very well have to reveal her identity so that others can make informed decisions about whether she can represent their interests," and "[t]he same is true if Doe's case proceeds past summary judgment, where the rights of the class, the defendants, and the public in disclosure of her identity may tip the scales." *Id.* at *5.

According to Doe's counsel, Allyson Ward informed them on October 8, 2024, that she would be willing to serve publicly as a class representative, thirteen days after the Court issued its September pseudonym order. Dkt. 283 ¶ 3. That same day, Doe raised the issue of amendment at a

telephonic discovery conference. Dkt. 270-1 at 22. The Court suggested extending the close of discovery and summary-judgment briefing deadline to deal with the amendment issue, but defendants objected. *Id.* at 27–28. Doe filed her motion for leave to amend ten days later. Dkt. 193. On October 28, 2024, discovery closed, *see* Dkt. 266 at 4, and on November 4, 2024, defendants moved for summary judgment. *See* Dkt. 252.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"Where, as here, a scheduling order governs amendments to the complaint, . . . 'the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause."'" *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003)). "Whether good cause exists turns on the 'diligence of the moving party.'" *Id.* (quoting *Grochowski*, 318 F.3d at 86).

## DISCUSSION

### I. Doe has shown good cause to amend.

Defendants argue that Rule 16(b) bars the proposed amendment because Doe lacks good cause for missing the amendment deadline, which was May 20, 2024. *See* Dkt. 74. "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *DeCastro v. City of New York*, 2020 WL 4932778, at *9 (S.D.N.Y. Aug. 24, 2020) (citation omitted). Defendants say that Doe's counsel knew or should have known when this suit was filed in February 2024 (three months before the amendment deadline) that "neither of their named plaintiffs could viably proceed as class representatives"—Doe, because she was unwilling to publicly disclose her identity, and Bensky, because she had signed a release. Dkt. 266 at 8. Doe responds that she moved for amendment as soon as Ward expressed her willingness to serve publicly as class representative and shortly after the Court indicated that Doe could not anonymously represent a certified class. Dkt. 281 at 1.

The Court agrees that Doe has demonstrated good cause to amend under the unique circumstances of this case. Although the Court ultimately agreed with defendants that Doe cannot anonymously represent a certified class in this case, that was not clear until September 26, 2024. When Doe initiated this lawsuit, it was on the heels of two class actions against JPMorgan and Deutsche Bank in which an anonymous Epstein victim served as class representative. *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *11 (S.D.N.Y. June 12, 2023); Amended Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class at 1, *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 22cv10018 (S.D.N.Y. June 27, 2023), Dkt. 95. Doe may reasonably have expected that she would be permitted to represent the class without

2

revealing her identity based on this precedent—even though, unlike in the bank litigations, defendants opposed her anonymity. So it wasn't until the Court's order on September 26, 2024, that Doe and her lawyers knew that Doe's anonymity would be a problem. Less than two weeks later, Doe raised the issue of amendment after Ward came forward and was willing to serve as a class representative.

Defendants cite *Morgan v. Rohr, Inc.*, 2021 WL 5632743 (S.D. Cal. Dec. 1, 2021), for the proposition that a plaintiff is not diligent where they "kn[o]w they *might* need to amend the complaint in order to satisfy the requirements for class certification" but fail to do so "within a reasonable period of time." *Id.* at *4 (emphasis added). They also cite *DeCastro* for the proposition that a plaintiff is not diligent where defendants "specifically raised" an issue with a class representative's claims earlier in the litigation, such that the plaintiffs were "indisputably aware of th[e] potential flaw" long before seeking to amend the complaint. 2020 WL 4932778, at *9. The implication is that Doe should have known, once defendants indicated that they opposed her anonymity, that the Court might rule against her, and waiting to amend until the Court ruled on the motion opposing her anonymity demonstrates a lack of diligence.

But this case is unlike both *Morgan* and *DeCastro*. In *Morgan*, the plaintiffs moved for leave to amend the complaint to add a named plaintiff to respond to issues raised by the defendants six weeks earlier. 2021 WL 5632743, at *4. The court held that the plaintiffs were not diligent because they had signaled over three months prior to their bid to amend that they anticipated adding the new named plaintiff precisely because of issues they expected the defendants to raise. *Id.* But they waited until six weeks after the defendants raised these issues in opposition to class certification to do so. "At bottom," the court explained, "[p]laintiffs knew they might need to amend the complaint in order to satisfy the requirements for class certification, and stated as much in their motion, but they did not act accordingly, or within a reasonable period of time." *Id.*

In *DeCastro*, the court denied leave to amend the complaint to add a named representative three years after the deadline because it was "unpersuaded by [plaintiffs'] argument that, prior to the Court's decision [on class certification], they were unaware that they needed an individual with a Section 19-506(b)(2) violation in order to assert claims on behalf of a class of Section 19-506(b)(2) violators." 2020 WL 4932778, at *7. Three years before the plaintiffs moved to amend the complaint, the class representatives with Section 19-506(b)(2) violations had accepted offers of judgment under Federal Rule of Civil Procedure 68, and plaintiffs knew that "such judgments, if entered, would and did moot the claims of those plaintiffs." *Id.* at *9. The court denied leave to amend because "[p]laintiffs d[id] not explain how, if at all, they acted diligently to identify potential class representatives for a class or subclass of Section 19-506(b)(2) violators over the past three years—from October 2016, when [the Rule 68 judgments were entered], to October 2019," nor "what, if anything, they did to look for a potential class representative . . . during that time." *Id.*

Here, Doe has explained that she believed based on the bank litigations that she could proceed anonymously, and it wasn't until September 26, 2024, that she understood her anonymity would be a hurdle to certification. At that point, she promptly moved to amend. So this isn't a case like

3

*Morgan*, where plaintiffs explicitly stated that they planned to amend to cure issues but nonetheless waited four months to do so, or a case like *DeCastro*, where the defect was obvious, yet plaintiffs waited years to amend without explanation.

Defendants further argue that Doe hasn't provided sufficient information to prove that she acted diligently in trying to find a class representative who would be willing to proceed publicly. *See* Dkt. 266 at 9–10. They point to case law suggesting that "[a]ttorneys cannot sit idly by and wait until class representatives 'step forward' or otherwise manifest themselves." *Oliver v. Am. Express Co.*, 2023 WL 4471937, at *5 (E.D.N.Y. July 11, 2023). But this is not a case where Doe's counsel "fil[ed] [a] placeholder class action[] without class representatives or with infirm class representatives, let[] discovery close, and permit[ted] a case to progress for years, while awaiting the appearance of an adequate substitute." *Id.* Instead, Doe's counsel had a good faith belief that Doe's desire to remain anonymous would not impact this case, and, as soon as it was clear that it would, promptly moved to amend. Although Doe does not detail her efforts to find a class representative who would be willing to proceed publicly, Doe explains that most members of the class want to remain anonymous, given the "sensitive nature of the sexual assault claims in this case and the high media interest surrounding Epstein's crimes." Dkt. 194 at 3. Doe further explains that Ward "only . . . agreed to proceed publicly . . . after the Court's September 26 Order" after previously being "unwilling to do so." *Id.* The obvious implication is that no member of the class was willing to come forward until it became clear that Doe's anonymity might threaten the viability of the suit. Given the unique circumstances of this case—including the sensitive nature of the allegations and lack of binding precedent holding that anonymous plaintiffs can't represent certified classes—the Court holds that Doe was diligent in seeking to amend.

## II.   Amendment will not cause undue prejudice.

Defendants argue that amendment is improper even under the more lenient Rule 15(a) standard. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "In gauging prejudice, [courts] consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block*, 988 F.2d at 350). "In 'seeking to add new . . . class representatives, courts are more likely to find prejudice when the case has already progressed to or beyond the class certification phase, at which time class-related discovery and class-certification motion practice should be finished.'" *Oliver*, 2023 WL 4471937, at *9 (citation omitted).

Defendants reasonably complain that permitting Doe to amend the complaint at this late juncture would prejudice them. Additional discovery would have to be taken, and at the very least, supplemental briefing is needed to address Ward's participation in this case.

But the Court disagrees that this suffices to deny leave to amend. As the Second Circuit has explained, "the adverse party's burden of undertaking discovery, standing alone, does not suffice

4

to warrant denial of a motion to amend a pleading." *U.S. ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989). Moreover, Doe says that any prejudice here is mitigated by the fact that if amendment is denied, Ward will file a new class suit. Although "defendants argue that amendment would be 'highly prejudicial' because it would require them to restart discovery and motions practice with [Ward]," "[t]hey fail to explain . . . how denying leave to amend would be any *more* prejudicial than their having to engage in precisely the same course of action if [Ward] filed a new lawsuit, as [she] surely would if the Court denied leave to amend." *Disability Rts. N.Y. v. New York State*, 2024 WL 4189223, at *6 (E.D.N.Y. Sept. 13, 2024); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 2002 WL 31014833, at *2 (S.D.N.Y. Sept. 10, 2002) ("The problem with this [prejudice] argument is that [defendant] does not contest that this same discovery would be required anyway if the Court were to deny the motion to amend and instead require [plaintiff] to file a new action against [defendant and the new party] with respect to these allegations.").

Defendants counter that if Doe's motion to amend is denied and the Court declines to certify the class, then Ward's class claims would be time barred. Defendants cite to the Supreme Court's decision in *China Agritech v. Resh*, 584 U.S. 732 (2018), which clarified the scope of the tolling rule stated in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). In *American Pipe*, the Court held "that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech*, 584 U.S. at 735. The Court held in *China Agritech* that *American Pipe* tolling did not permit a putative class member to commence a class action outside the limitations period upon denial of class certification. *Id.* at 735–36. So defendants' argument here is that if amendment is denied and class certification is denied, then Ward's class claims would be dismissed as time barred.

Doe responds that this case is unlike *China Agritech* because Ward has "independent tolling arguments." Dkt. 281 at 4. Doe's argument appears to be that Ward could file an individual case no matter what, because her claims are subject to equitable (non-*American-Pipe*) tolling.[1]

The Court agrees that Ward's individual claims are not clearly time barred. Defendants say that Ward has not pled facts sufficient to support equitable tolling. But Doe says "she [has] the same arguments for tolling of the statute of limitations as Jane Doe 3 has in this case" and explains that "[i]f Ward files a new case, she will present these same facts in support of equitable tolling." Dkt. 281 at 4. And as the Court explained when defendants moved to dismiss Doe's claims on statute-of-limitations grounds, "[t]hese equitable doctrines are inherently fact-bound and are rarely fit for a motion to dismiss." *Bensky*, 743 F. Supp. 3d at 602.

---

[1] It's not clear whether Doe asserts that these independent-tolling arguments would permit Ward to bring a class action, but the Court observes that *China Agritech* "was a 'clarification of *American Pipe*'s reach,' not a broad holding announcing a limit on other traditional forms of equitable tolling." *William v. Tech Mahindra (Americas) Inc.*, 70 F.4th 646, 650 (3d Cir. 2023) (quoting *China Agritech*, 584 U.S. at 745).

5

And if anything, the potential untimeliness of Ward's class claims is further reason to permit amendment. If Ward's presence in this case would cure any defects with the pending class-certification motion, then denying amendment and inviting the forfeiture of the class's claims, when weighed against the prejudice caused by the need for additional discovery and briefing, cashes out in Doe's favor.

### III.     Amendment is not futile.

Finally, defendants argue that the Court should deny leave to amend because amendment is futile. First, defendants say that Ward's claims could not survive a motion to dismiss. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."). Second, defendants argue that class certification is improper regardless of who represents the class. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 104 (S.D.N.Y. 2010) ("When a plaintiff seeks to amend her complaint in order to cure deficiencies in her motion for class certification, the futility inquiry focuses on whether the amendments will enhance the likelihood of class certification, rather than on whether they state a claim.").

The Court disagrees. First, as Doe points out, "[t]he Court already found that the allegations in the Complaint were sufficient to establish [Doe's] state tort and TVPA claims." Dkt. 281 at 5. Ward joins in those same allegations and further explains that she met Ghislaine Maxwell in "late 1994 or early 1995," was "recruited [by Maxwell] to work as a massage therapist for Epstein," "required to provide Epstein with massages on a repeated basis," and "[d]uring many of the massages Epstein sexually abused or assaulted [her]." Dkt. 194-1 ¶¶ 73–75. Ward alleges that her "contact with Epstein ended in approximately 2015." *Id.* ¶ 78. Defendants argue that these factual allegations are insufficient to allege plausibly that Ward was abused "after 2003, when the TVPA created a non-retroactive private right of action; or 2008, when the statute was amended to create non-retroactive claims against those who knowingly benefit from sex trafficking," "or within the ten-year statute of limitations for the TVPA." Dkt. 266 at 18. However, the allegations in the proposed amended complaint plausibly suggest that Ward was abused for approximately twenty years by Epstein, between 1995 and 2015.

Second, while the Court isn't prejudging the issue, plaintiffs' bid for class certification is not so baseless that it warrants denial of amendment.

Defendants argue that regardless of who is representing the class, the putative class can't meet the numerosity requirement of Rule 23(a) of the Federal Rules of Civil Procedure, or the predominance and superiority requirements of Rule 23(b). Additionally, defendants argue that the class is not ascertainable. *See In re. Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (explaining that the Second Circuit has "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member'" (*quoting Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015))).

On ascertainability, defendants argue that the class is not sufficiently ascertainable because Doe "fails to show that class members can be reliably identified." Dkt. 183 at 12. Determining whether each member was sexually abused or trafficked, say defendants, would "require a mini-hearing on the merits of each case," which means that the class is not ascertainable. *See In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, 2015 WL 5730022, at *5 (S.D.N.Y. Sept. 30, 2015) (citation omitted).

Ascertainability is "not [a] demanding" standard and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *JPMorgan*, 2023 WL 3945773, at *5. As the Second Circuit clarified two years after *In re Avon*, the only requirement for ascertainability is that a class be defined by "objective criteria that establish a membership with definite boundaries." *In re Petrobas Sec.*, 862 F.3d at 264. It also clarified that language from an ascertainability case about "mini-hearings" "was not strictly part of the holding, and was not intended to create an independent element of the ascertainability test; rather, that language conveyed the *purpose* underlying the operative requirements of definiteness and objectivity." *Id.* at 266; *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 3971006, at *3 (S.D.N.Y. Aug. 31, 2022) ("[T]he need for individual inquiries to determine class membership is irrelevant to ascertainability."). The record in this case, courts' experiences in prior Epstein class cases, the operation of the victims' fund, and other indicia indicate that members of the class can be ascertained using definite and objective criteria.

As for numerosity, this requirement is presumptively met when the class contains at least forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Doe says numerosity is met here because "Epstein trafficked or abused hundreds of girls and women during the class period." Dkt. 119 at 7. Doe's counsel claims to have "ascertained a class of over 40 women who have not signed releases with the Estate through discovery, conversations with victims, and counsel's preexisting relationships with Epstein's victims." Dkt. 119 at 7. For purposes of the futility analysis, this suffices, but plaintiffs should bolster this showing with further evidence; along these lines, Doe's counsel has already offered to provide the list to the Court for *in camera* review.[2]

As for predominance, this requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). "An analysis of predominance must begin with the elements of the plaintiff's claims." *JPMorgan*, 2023 WL 3945773, at *8. At this

---

[2] In a supplemental letter to the Court, defendants argue that the class cannot possibly have forty members, based on its review of the claimants in the bank litigation. *See* Dkt. 191. Doe responds that "[d]efendants' analysis ignores that a number of Epstein's victims did not seek compensation in the Banks cases for various reasons." Dkt. 198 at 2.

juncture, suffice it to say that plaintiffs' predominance arguments are not so baseless as to deny amendment.

Among the claims asserted by Doe are the same TVPA and negligence claims asserted in *JPMorgan.* In that case, Judge Rakoff observed:

> These claims rest on a core of questions that are common to the class. If each class member pursued an individual action against [defendants], she would have to prove that Jeffrey Epstein conducted a sex-trafficking venture; that [defendants] participated in it . . .; that [defendants] benefited from their participation; and that [defendants] either knew, recklessly disregarded, or (in the case of negligence) should have known that Epstein conducted as sex-trafficking venture. On the TVPA obstruction claim, each class member would also have to prove that [defendants] knew of a particular attempt to enforce the TVPA with respect to Epstein and that [defendants] intentionally obstructed that enforcement effort. And on the negligence claims, each class member would have to establish that [defendants] owed a duty as an ordinary person who might have "set in motion" Epstein's wrongs . . ., as well as proving that [defendants'] support for Epstein's sex-trafficking operation was a proximate cause of injury to Epstein's victims.

*Id.*

Finally, on superiority, for those women who have chosen not to settle their claims, "while the intensely personal nature of the claims at stake might give class members an interest in individually controlling their prosecution, it might also—to an equal or even greater extent—give them an interest in class-wide adjudication," given that Doe "has borne the burdens of turning over highly sensitive documents and communications in discovery, as well as sitting for depositions." *Id.* at *11. Although there has already been litigation by these class members against other entities, like the banks involved in Epstein's venture, the Court is not aware of any pending case against these particular defendants by one of Epstein's victims. Concentrating these claims in one forum is desirable, given that doing so "would achieve manifest efficiencies" based on the extensive discovery that has already been taken. *Id.*

For these reasons, and without prejudice to any argument unique to this case and Ward's circumstances that defendants may raise, the Court declines to find the amendment futile on class-certification grounds.

8

## CONCLUSION

Doe's motion to amend the complaint is GRANTED. Given that defendants will need to conduct additional discovery, and both parties will need to revise their briefs accordingly, Doe's motion to certify the class and defendants' motion for summary judgment on the class claims are DENIED without prejudice, as is defendants' motion to exclude expert testimony on class-wide damages. A separate opinion will issue addressing defendants' motion for summary judgment as it relates to Doe's claims against the estate.

By August 29, 2025, the parties should propose a joint schedule for additional discovery and briefing. The Court does not anticipate that plaintiffs will be taking any further discovery. In terms of the pending motions, they need not be rebriefed; a consolidated opening brief from defendants, response by plaintiffs, and reply by plaintiffs addressing arguments unique to Ward will suffice.

The Clerk of Court is directed to terminate the motions at Dkts. 118, 193, 246, and 249.

SO ORDERED.

Dated: August 19, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge