UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE 3 and ALLYSON WARD, individually and on behalf of all others similarly situated,

                    Plaintiffs,

          -against-

DARREN K. INDYKE and RICHARD D. KAHN,

                    Defendant.

---

24-cv-1204 (AS)


OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Defendants Darren Indyke and Richard Kahn move to exclude the proposed testimony of Jane Doe 3's expert, Jane Khodarkovsky. Dkt. 293. Doe offers Khodarkovsky's testimony as a rebuttal to defendants' expert, Gail Cohen. For the following reasons, defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Cohen is the Chair Emeritus of the Board of Directors of Fiduciary Trust Company International. Dkt. 297-1 ¶ 1. Defendants asked Cohen to "opine on whether the creation and operation of . . . multiple corporate entities—described by [Doe] in her Complaint as 'corporate entities with no legitimate business purpose' or 'sham' entities—is in itself evidence of wrongdoing, including as a vehicle to accomplish sex-trafficking or sexual abuse." *Id.* ¶ 8. Cohen reviewed the complaint and "corporate formation documents for the individual companies identified in [Doe's] complaint." *Id.* ¶ 9. Cohen opined that "it is quite common for extremely wealthy individuals such as Mr. Epstein . . . to form and own multiple corporate entities . . . with each one holding and administering individual properties or assets." *Id.* ¶ 11. In Cohen's opinion, "such a structure protects the wealthy individual's other unrelated assets from being called on to cover the liabilities of the particular corporate entity at issue." *Id.* She opined that these entities are also used for "ease of administration," "estate purposes," and "avoidance of local estate taxes at death." *Id.* ¶¶ 12–14. The bottom line of Cohen's testimony is that

> [i]t is incorrect to allege that, by their very existence, single-purpose corporate entities 'have no legitimate purpose' or are 'shams'—rather, they can serve the very real purposes of limiting their owner's potential financial liability, reducing the substantial costs of household administration, saving estate probate fees, limiting local estate taxes and keeping track of expenses and income.

*Id.* ¶ 16. She also says that one cannot "fairly or legitimately conclude that the creation and operation of multiple corporate entities . . . is in itself evidence of any wrongdoing." *Id.* ¶ 17.

Doe's rebuttal expert, Khodarkovsky, is a former state and federal prosecutor who served in various roles as a human-trafficking specialist. Dkt. 297-3 ¶ 7. Doe engaged Khodarkovsky to "offer[] [her] expert testimony regarding sex trafficking and how shell companies, funnel accounts, and other tools can be used by gatekeepers, such as lawyers, bankers and accountants, to support and promote sex trafficking networks. *Id.* ¶ 26. Khodarkovsky opines that "[t]he use of shell companies is one way in which criminal networks, including in sex trafficking, conceal the source and nature of their criminal activity," and "Defendants had knowledge of red flag indicators that they reasonably should have known were part of an illicit sex trafficking network." *Id.* ¶ 30. The bottom line of Khodarkovsky's testimony is that

> it would be reasonable and plausible for Mr. Indyke and Mr. Kahn, as an experienced lawyer and accountant to recognize that the companies they incorporated, including alleged nonprofits and charities, or served on the Board or Officer roles of, including companies that had the same purpose, may be used by Mr. Epstein to establish bank accounts, gain additional access to capital, including through the use of funnel accounts at those banks, and ultimately support Epstein's sex trafficking network.

*Id.* ¶ 31.

Defendants move to exclude Khodarkovsky's testimony in full.[1]

## LEGAL STANDARDS

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the proponent of expert testimony must show that the "witness . . . is qualified as an expert by knowledge, skill, experience, training, or education," and that it is more likely than not that the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004) ("[Rule 702] incorporates principles established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Supreme Court charged trial courts with a gatekeeping role to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" (quoting *Daubert*, 509 U.S. at 589)).

## DISCUSSION

Doe argues that Khodarkovsky's opinions should be excluded because they usurp the roles of the court and the jury, will not be helpful to the jury, and are unreliable. The Court agrees that some portions of Khodarkovsky's testimony are inadmissible. Specifically, the Court holds that

---

[1] To the extent this opinion quotes portions of the report that the parties have filed under seal, the Court has determined that these quoted portions do not justify sealing.

Khodarkovsky may offer testimony supporting her opinions in paragraph 30(A)–(D) of her report but may not testify regarding the opinions outlined in paragraph 30(E) or 31.

Those latter opinions constitute impermissible testimony on the ultimate issue of whether defendants are liable. Whether defendants knew or recklessly disregarded that Epstein was engaged in sex trafficking is "[a] central issue in this case." Dkt. 324 at 2. Khodarkovsky's proposed testimony does not merely rebut Cohen's testimony by explaining other, illegitimate uses of single-purpose corporate entities based on her experience as a human-trafficking prosecutor. Instead, Khodarkovsky "crosses th[e] line," *In re Terrorist Attacks on Sept. 11, 2001*, 2023 WL 3116763, at *10 (S.D.N.Y. Apr. 27, 2023), by concluding that "[d]efendants had knowledge of red flag indicators that they reasonably should have known were part of an illicit sex trafficking network." Dkt. 297-3 ¶ 30(E). Whether defendants knew or should have known that Epstein was engaged in sex trafficking is a question for the jury, not the experts. *See In re Terrorist Attacks*, 2023 WL 3116763, at *10 (rejecting expert's testimony where he offered "conclusions [that] speak to Defendants' liability, rather than adding helpful context or analysis").

Additionally, as all parties seem to agree, Khodarkovsky may not testify about the scope of the TVPA. *See Seward v. Antonini*, 2023 WL 6387180, at *21 (S.D.N.Y. Sept. 29, 2023) ("[T]he general rule is that an expert may not testify as to what the law is, because such testimony would impinge on the trial court's function." (quoting *In re Air Disaster at Lockerbie Scot. on Dec. 21, 1988*, 37 F.3d 804, 826–27 (2d Cir. 1994))).

The Court disagrees with defendants that the rest of Khodarkovsky's testimony is inadmissible under Rule 702 or 403. Khodarkovsky is experienced in investigating human trafficking, and her opinions regarding how shell companies are used by sex traffickers to enable their operations, as well as how Epstein used *his* shell companies, will assist the jury in determining whether Epstein was engaged in a sex-trafficking enterprise and, without opining directly on the issue, whether defendants knew or recklessly disregarded that fact. To the extent that certain financial or bank regulations are relevant to her testimony, she may describe those, given that they inform her opinions on corporate-structuring and transactions. *See Tang Cap. Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 391 (S.D.N.Y. 2024) ("Courts . . . permit experts to testify about regulatory frameworks, rules, purposes, and background."). But it's the final step that's not permitted: Khodarkovsky can't offer testimony on what defendants knew or should have known, which is for the jury to figure out.

**CONCLUSION**

For these reasons, defendants' motion to exclude Khodarkovsky's rebuttal report is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is directed to terminate Dkt. 293.

SO ORDERED.

Dated: September 15, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge