

September 17, 2025

**VIA ECF**

The Hon. Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:    *Jane Doe 3, et al. v. Indyke et al.*, Case No. 24-cv-1204(AS)

Dear Judge Subramanian,

Pursuant to Rule 37 and Individual Rule 5, Plaintiffs write to renew the motion to compel initially filed on December 9, 2024. *See* Dkt. 334. After two separate hearings and a Court order on their privilege logs, Defendants, HBRK, and the Epstein Estate have belatedly produced over 6,000 documents that were wrongfully withheld during the discovery period and instead logged as privileged in the final days of fact discovery. Yet they still withhold under privilege an unspecified number of documents that should have been produced in accordance with the Court's November 13 Order because they involve documents relating to "green cards,[1] payments, or marriage or divorce arrangements." *See* Dkt. 278. Defendants have wrongfully interpreted the Court's Order to limit their production to only four specific victims rather than producing those documents for *all* of the Epstein victims.

The Court previously addressed Plaintiffs' motion to compel at a hearing on December 20 and dismissed the motion without prejudice "to reinstatement after the Court acts on the pending motions." Dkt. 347 at 11:1–3. At the time, several motions were pending before the Court and, the Court said, since the motions were "potentially dispositive," it was "the best use of everyone's resources for the Court to decide the motions. And then if there's any further basis for production of further documents from the defendants' logs for purposes of trial, then the Court can take up the application at that time, understanding that the Court will take into at that time as it would now the timing and circumstances of the motion." *Id.* 10:10–19. The Court also said, from its review of Indyke's documents *in camera* "that certain of the documents were not privileged. They just didn't involve any privileged matter." *Id.* 15:24–16:1.

Plaintiffs tried to confer with Defendants, including at a meet and confer with Lead Trial Counsel on September 9, but Defendants have been unwilling to make subsequent productions or revise their logs. Accordingly, Plaintiffs now move to renew their December 9 motion to compel.

*First*, Defendants should produce documents relating to the categories in the Court's November 13 order concerning *any* of Epstein's victims. Defendants have limited their production to four specific victims thereby preventing the Plaintiffs access to critical evidence of the sex-trafficking operation. The documents that Defendants have produced as to the four specific victims

---

[1] Indyke has agreed to produce all immigration documents concerning the four victims explicitly mentioned in Plaintiffs' first motion to compel.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com

**BSF**

in these categories are some of the most important documents in the case demonstrating Defendants' culpability in Epstein's sex-trafficking operation.

In one document, Defendants discuss ██████████████████, a sham company created by ██████ for Epstein's victim, █████████████████████████████. Ex. A. In another document, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Ex. B. Another document is an invoice from ████████ for a █████████████ for ████████. Ex. C.[2]

Defendants are still refusing, however, to produce similar documents because they do not relate to █████████████████████████████, the four victims who were specifically mentioned in Plaintiffs' motion to compel.[3] *See* Dkt. 224. For example, from Indyke's fourth log, Plaintiffs have identified Entry 767 which is a █████████████████████████████████"[4] and Entry 2498, an email between Indyke and ██████████, which is a '█████████████████████████████."[5] Indyke has taken the position that he will not produce these, which relate to ██████████, a known Epstein victim, because Plaintiffs did not specifically identify her in their motion to compel.[6] For the same reason, counsel for HBRK has refused to produce HBRK_00161, which is described as an ████████████████████████████████████████████████████████."[7]

The production of these documents and any similar documents is warranted under the crime-fraud exception. There is no serious question that communications concerning immigration and tax advice for any of Epstein's victims were made in furtherance of Epstein's criminal conduct.

***Second***, Indyke should produce documents that are not privileged because of the presence of third parties. Defendants are also continuing to wrongly assert privilege over documents that third parties are copied on, even though the presence of a third party destroys privilege. "[A] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 87 (S.D.N.Y. 2019)

---

[2] ████████████████████████████████████████████████████████ Women were forced into same-sex marriages at Epstein's direction to allow the foreign partners to remain in country and available for Epstein to abuse. *See* Dkt. 307-20 ¶ 6.
[3] Due to the vagueness of Defendants' logs, Plaintiffs cannot specifically identify each document that Defendants are continuing to improperly claim privilege over. Vague descriptions are "particularly problematic" in cases where the crime-fraud exception applies. *Chevron Corp. v. Donziger*, 2013 WL 4045326, at * (S.D.N.Y. Aug. 9, 2013) (concluding that vague descriptions such as "Email concerning litigation status and strategy" were insufficient "given the applicability of crime fraud exception").
[4] Dkt. 224-7 at 46.
[5] *Id.* at 130.
[6] At the same time, Indyke produced for the first time on January 10, 2025, communications with ██████████ concerning ██████████████████████████████" *See* Exs. D & E. Leaving aside that it is clear on its face that these documents neither seek nor provide legal advice (and never should have been construed as such), the inconsistencies in Defendants' position lay bare that there is no articulable basis to continue to withhold documents concerning other victims' payments, marriages, and immigration statuses.
[7] Dkt. 335-1 at 10.



(citation omitted). "Rather, the third party's involvement must be 'to improve the comprehension of the communications between attorney and client.'" *Id.*

Indyke's logs include entries with Kahn, Jeanne Brennan, Bella Klein, and Harry Beller. Indyke claims that these third parties are accountants and that "the presence of an accountant" does not destroy privilege. Dkt. 344 at 3. But Indyke has made no showing that the presence of the accountants on any of the communications he continues to claim privilege over was necessary to improve the comprehension of the communications between attorney and client. *See United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Entry 1630 on Indyke's fourth log is an email copying Kahn that concerns a "███████████."[8] It is not credible that Kahn, an accountant, was needed to improve Indyke's comprehension of issues relating to a ███████████.[9]

***Third***, Defendants are also still refusing to produce numerous communications with Ghislaine Maxwell, Epstein's co-conspirator who was convicted of sex-trafficking, based on an assertion of common interest privilege. These communications include, for example, Entries 887 and 888 from Indyke's third log, a communication between Indyke and Maxwell about "███████████████████████"[10] and Entry 2444 from Indyke's fourth log, a communication between Indyke and Maxwell "██████████████████████████ ██████"[11] The weakness of Defendants' claimed common interest privilege is underscored by recently released communications between Epstein and Maxwell.[12]

"[T]he common interest rule requires a showing that 'the communication in question was given in confidence and that the client reasonably understood it to be so given.'" *United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999). "The burden of establishing the existence of a specific agreement to pursue a joint defense is upon the defendants." *United States v. Gotti*, 771 F. Supp. 535, 545 (E.D.N.Y. 1991). During the parties' conferral, Defendants' counsel could not identify any formal written agreements including Maxwell, and instead speculated that any agreement would have been oral. The common interest doctrine requires, however, "some evidence of a coordinated legal strategy." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995). Given the Defendants' failure to substantiate their privilege assertions over this category of documents, the Court should conduct an *in camera* review of a sample of documents withheld under a "common interest" with Maxwell and order a complete production if it determines that Defendants have wrongly invoked privilege. *See* Dkt. 347 at 16:4–10.

---

[8] Dkt. 224-7 at 89. Defendants have produced an associated employment letter that was submitted in support of ███████████ but have suspiciously maintained redactions to their conversation about the letter. Ex. F.

[9] These communications also are not protected by the rarely applied "functional equivalent" doctrine because it is not apparent that the third parties were acting "at the direction of corporate superiors in order to secure legal advice." *Universal Standard Inc.*, 331 F.R.D. at 88; *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213 (E.D.N.Y. 2019) (skeptical "that the Second Circuit would adopt the exception.").

[10] Dkt. 224-6 at 37.

[11] Dkt. 224-7 at 127. Defendants, in their capacities as executors, also assert privilege over numerous communications between Epstein and Maxwell on the Estate's privilege log based on the common interest privilege. Ex. G.

[12] Bloomberg reported it is in possession of a cache of "more than 18,000" emails. Jason Leopold, *Inside Our Investigation of Jeffrey Epstein's Personal Yahoo Account*, Bloomberg (Sept. 12, 2025), https://tinyurl.com/bdcrztxx. The emails include one "subject to mutual interest privilege" that describes Maxwell's concerns about investigators "fishing" for allegations against her.



Respectfully submitted,

*/s/* Sigrid McCawley
Sigrid S. McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Plaintiff*