

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Daniel H. Weiner
Partner
Direct Dial: +1 (212) 837-6874
Direct Fax: +1 (212) 299-6874
daniel.weiner@hugheshubbard.com

September 19, 2025

**VIA ECF**
The Honorable Arun Subramanian
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 15A
New York, New York 10007

      Re:    <u>*Doe 3, et al. v. Indyke, et al.*, Case No. 24-cv-1204 (AS)</u>

Dear Judge Subramanian:

      Defendants Darren Indyke and Richard Kahn submit this letter pursuant to Rule 5 of Your Honor's Individual Practices in Civil Cases in opposition to Plaintiffs Allyson Ward's and Jane Doe 3's letter motion dated September 17, 2025 (ECF No. 364).

**I.    Plaintiffs' Motion Is Untimely.**

      Plaintiffs' motion to compel is an untimely rehash of a motion the Court already resolved in its November 13, 2024 Order. *See* ECF Nos. 224, 278. Plaintiffs misrepresent that Order, which was unambiguous: it directed Mr. Indyke to produce privileged documents concerning "green cards, payments, or marriage or divorce arrangements *in connection with a purported victim identified in Doe 3's motion to compel*." ECF No. 278 (emphasis added). "Doe 3's motion" identified four purported victims: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ECF No. 224. Mr. Indyke promptly complied with the November 2024 Order, and—though neither the Order nor the motion to compel was directed at them—Mr. Kahn, HBRK, and the Epstein Estate re-reviewed their privilege logs and produced all documents within the scope of that Order.

      On December 9, 2024—*six weeks* after the close of discovery—Ms. Doe filed a new motion to compel, asking the Court to order not only Mr. Indyke, but also Mr. Kahn and HBRK to produce privileged documents relating to green cards, payments, or marriage or divorce arrangements involving a much broader set of women than the purported victims identified in Ms. Doe's motion to compel, including at least roughly 200 women with whom the Estate had settled. ECF No. 335 at 2. For the first time, Ms. Doe also sought the production of privileged documents copying Mr. Kahn or other accountants. *Id.* at 3. On December 20, 2024, the Court denied that motion without prejudice to Ms. Doe's ability to renew it if she identified "any *further* basis for production of further documents from the defendants' logs for purposes of trial

. . . understanding that *the Court will take into [account] at that time as it would now the timing and circumstances of the motion*." ECF No. 347 at 10:15-19 (emphasis added).

Plaintiffs now purport to "reinstate" their December 2024 motion against Mr. Indyke, Mr. Kahn, HBRK, and (for the first time) the Epstein Estate. The December 2024 motion was untimely when it was filed, and it is untimely now.[1] As the Court stated in denying a motion to compel by Defendants solely on the basis of untimeliness, "[a] party ordinarily must file a motion to compel before the close of discovery and if it fails to do so, the motion will be deemed untimely." ECF No. 279 at 4; *see also Doe v. Gooding*, 2023 WL 3047037, at *4 (S.D.N.Y. Apr. 24, 2023) ("it reflects a complete lack of diligence to seek to file a motion to compel not merely after the close of discovery but *after the expiration of the deadline to file summary judgment motions*") (emphasis in original).

In addition, Plaintiffs now make an entirely *new* request: that the Court order the production of common interest privileged documents with Ghislaine Maxwell. ECF No. 364 at 3. Defendants asserted common interest privilege over those documents in October 2024, before the close of discovery. Plaintiffs' new request for their production comes nearly a year too late. For reasons of untimeliness alone, the Court should deny Plaintiffs' motion.

## II.     Plaintiffs Present No Basis for the Court to Expand Its November 2024 Order.

Plaintiffs' motion repeats the same arguments that Ms. Doe made in December 2024 in support of her request that the Court order, under the crime-fraud exception, the production of privileged documents related to all purported Epstein victims and not only the four individuals referenced in the November 2024 Order. ECF No. 335 at 2. The Court considered Ms. Doe's motion in December 2024 and denied it. ECF No. 347 at 11:1-2. Plaintiffs fail to offer any convincing "further basis" for the Court to expand the scope of its November 2024 Order. Plaintiffs cite privilege log entries concerning legal advice on immigration and tax matters, but do not provide any basis to conclude that provision of that legal advice was in furtherance of a crime. *See* ECF No. 364 at 2. Instead, they cite to non-privileged documents that *have* been produced, such as a document showing ▆▆▆▆▆▆▆▆▆ seeking Defendants' assistance in connection with obtaining a visa. *Id*. Those documents do not show that (1) her visa was fraudulently obtained; (2) she was forced to obtain the visa in connection with a sex-trafficking venture; or (3) Defendants, *whom she affirmatively approached for assistance*, provided that assistance as part of their participation in an alleged criminal scheme. There is no evidentiary basis on which the Court could rely to apply the crime-fraud exception.

---

[1] Plaintiffs had ample opportunity to raise the issues in their present motion prior to the close of discovery. Before discovery closed, Defendants produced documents concerning visas for women other than the four identified in Ms. Doe's October 2024 motion. *See* Ex. 1 (produced Oct. 9, 2024) (email with Mr. Kahn discussing ▆▆▆▆▆▆▆▆▆ visa). And Ms. Doe chose to move to compel documents *only* from Mr. Indyke, despite having privilege logs from Mr. Kahn and HBRK reflecting documents related to legal advice on immigration matters. Ms. Doe also had privilege logs reflecting the assertion of privilege over documents copying accountants or Ghislaine Maxwell and her lawyers—but Ms. Doe elected not to challenge Defendants' assertions of privilege over those documents until long after discovery closed.

**III.     The Presence of Epstein's Accountants Does Not Destroy Privilege.**

In her December 2024 motion, Ms. Doe requested that the Court order Mr. Indyke to produce all privileged documents copying Mr. Kahn or other accountants, arguing that the inclusion of those individuals "destroys privilege." ECF No. 335 at 3. The Court denied that motion. ECF No. 347 at 11:1-2. Plaintiffs now repeat the same argument, which fails under the law. It is well-established that "the presence of an accountant" does not destroy privilege where the accountant "improve[s] the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). In addition, a third party's presence does not destroy privilege where the third party assisted a lawyer in "the provision of legal services," *see In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 326, 332 (S.D.N.Y. 2003), or where the third party satisfies the functional equivalent doctrine. *Ross v. UKI Ltd.*, 2004 WL 67221, at *2-3 (S.D.N.Y. Jan. 15, 2004). The communications on Mr. Indyke's log with or involving Epstein's accountants remain privileged on those bases.[2]

**IV.     Communications with Maxwell Are Protected by Common Interest Privilege.**

Finally, Plaintiffs request *for the first time* the production of communications with Maxwell that Defendants withheld or redacted on the basis of common interest privilege. Plaintiffs argue that Defendants "fail[ed] to substantiate their privilege assertions" because they did not "identify any formal written agreements." ECF No. 364 at 3. But "a formal written common interest agreement is not necessary" to invoke that privilege. *United States v. Zhu*, 77 F. Supp. 3d 327, 330 (S.D.N.Y. 2014). Rather, common interest privilege applies where "the parties have a common legal interest—as opposed to a commercial interest" and "the disclosures are made in the course of formulating a common legal strategy." *Id.*

Here, Epstein and Maxwell had a common legal interest in defending lawsuits making allegations against them, including *Giuffre v. Maxwell*, No. 15-cv-07433-RWS (S.D.N.Y.), *Ransome v. Epstein et al.*, No. 17-cv-616-JGK (S.D.N.Y.), and *Doe v. United States*, No. 08-cv-80736-KAM (S.D. Fla.), and they pursued a common legal strategy in their defense. Several of the entries in Mr. Indyke's privilege logs, including emails between Mr. Indyke and Maxwell's lawyer, have subject lines expressly referencing a "Common Interest Agreement." *See e.g.*, Entries 428, 895, and 899 from Indyke Third Log (ECF No. 224-6); Entries 929 and 2945 from Indyke Fourth Log (ECF No. 224-7). Those documents are privileged, and the Court should deny Plaintiffs' untimely and unsubstantiated request that Defendants produce them.

*     *     *     *     *

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

---

[2] Plaintiffs point to a single log entry for an email between Defendants regarding a "visa application" and argue that "[i]t is not credible that Kahn, an accountant, was needed to improve Indyke's comprehension of issues relating to a visa application." ECF No. 364 at 3. Not so. That email concerned financial information in support of a visa application; Mr. Kahn assisted Mr. Indyke in identifying that information and therefore in "the provision of legal services."

>Respectfully submitted,
>
>*/s/ Daniel H. Weiner*
>
>Daniel H. Weiner

cc:   Counsel of Record (via ECF)