**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLYSON WARD, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>      v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>   Defendants. | Case No. 1:24-cv-01204-AS |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
PRELIMINARY CERTIFICATION OF A SETTLEMENT CLASS, AND APPROVAL
OF NOTICE PLAN**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Telephone: (212) 446-2300
Fax: (212) 446-2350

*Counsel for Allyson Ward*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT .............................................................................. 1

HISTORY OF THE LITIGATION .......................................................................... 4

NEGOTIATION OF SETTLEMENT ....................................................................... 6

SETTLEMENT TERMS .......................................................................................... 7

ARGUMENT ........................................................................................................... 8

I.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
      PLAINTIFF TO NOTIFY THE CLASS ....................................................... 8

      A.   Rule 23(e)(2) factors are satisfied................................................... 11

           1.   Lead Plaintiff and Class Counsel Have Adequately Represented the Class............. 11

           2.   The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations 12

           3.   The Relief Provided by the Settlement Is Adequate when Weighed Against the Risks
                of Litigation ................................................................. 14

           4.   The Proposed Method for Distributing Relief Is Effective........................ 15

           5.   Class Counsel's Fee and Expense Request Is Fair and Reasonable ................. 16

           6.   All Class Members are Treated Equitably Relative to One Another................. 24

      B.   The Proposed Settlement Meets the *Grinnell* Factors .................................. 24

II.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR THE
      PURPOSE OF THE PROPOSED SETTLEMENT....................................... 28

      A.   Rule 23(a) is satisfied..................................................................... 28

           1.   Numerosity................................................................. 28

           2.   Commonality............................................................... 29

           3.   Typicality.................................................................. 31

           4.   Adequacy of representation ............................................... 33

      B.   Rule 23(b) is satisfied ..................................................................... 34

i

     1.    Common Questions of Law and Fact Predominate ...................................... 34

     2.    A Class Action is Superior ........................................................................ 35

III.   THE COURT SHOULD APPOINT BOIES SCHILLER FLEXNER LLP AS CLASS COUNSEL AND PLAINTIFF ALLYSON WARD AS SETTLEMENT CLASS REPRESENTATIVE ......................................................................................... 36

IV.   NOTICE TO THE CLASS SHOULD BE APPROVED .................................... 38

PROPOSED SCHEDULE OF SETTLEMENT EVENTS .......................................... 40

CONCLUSION ........................................................................................................... 40

# TABLE OF AUTHORITIES

## Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .......................................................................... 24

*Amchem Prods., Inc v. Windsor*,
  521 U.S. 591 (1997)................................................................................................................. 45

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................................. 21

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................................................. 20

*Casilao v. Hotelmacher LLC*,
  2021 WL 4487984 (W.D. Okla. Sept. 30, 2021) ...................................................................... 42

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)................................................................................................. 28, 37

*Chalmers v. City of N.Y.*,
  2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022)......................................................................... 43

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................... 26

*City of Birimingham Ret. & Relife Sys. v. Davis*,
  806 F. App'x 14 (2d Cir. Mar. 12, 2020) ................................................................................ 23

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................................................................... 16, 20

*Clark v. Ecolab, Inc.*,
  2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)......................................................................... 12

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)...................................................................................... 49

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)....................................................................................................... 36

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................................................................. 11, 15, 33

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)................................................................................................ 13, 42

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................... 24

*Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023)..................................................... 38

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
    2023 WL 3945773 (S.D.N.Y. June 12, 2023) ....................................... 36, 39, 41, 45

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F.4th 704 (2d Cir. 2023) .................................................................. 27

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019)..................................................................... 27

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................................. passim

*Gordon v. Vanda Pharms. Inc.*,
    2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ...................................... 19

*Hicks v. Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................... 29

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................... 13

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................... 34

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012).................................................................. 35

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ...................................... 25

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
    2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) ....................................... 21

*In re Austrian and German Bank Holocaust Litigation*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................... 31

*In re Beacon Assocs. Litig.*,
    2012 WL 1569827 (S.D.N.Y. May 3, 2012) ......................................... 36

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................... 32

*In re BHP Billiton Ltd. Sec. Litig.*,
   2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) .................................................................... 23

*In re CRM Holdings*,
   2016 WL 4990290 (S.D.N.Y. Sept. 7, 2016) ................................................................... 20

*In re Deutsche Telekom AG Sec. Litig.*,
   2005 WL 7984326 (S.D.N.Y. June 14, 2005) .................................................................. 23

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) .......................................................................................... 43

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................................. 14

*In re Flag Telecom Holdings*,
   2010 WL 4537550 .......................................................................................................... 27

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................................................................. 25

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. 11, 34

*In re GSE Bonds Antitrust Litig.*,
   2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ................................................................ 15

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................................ 30

*In re GSE Bonds Antitrust Litigation*,
   2020 WL 3250593  (S.D.N.Y. June 16, 2020) ............................................................... 24

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................................................. 34

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................. 10, 12

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ..................................................................................... 50

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   2018 WL 3475465 (S.D.N.Y. July 19, 2018) ................................................................... 9

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................................................. 21

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
  2021 WL 3159810 (S.D.N.Y. June 15, 2021) ........................................................ 24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 25

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................ 16, 30

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  241 F.R.D. 185 (S.D.N.Y. 2007) ........................................................ 39

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................ 42, 46

*In re Nasdaq Market–Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................ 12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................ 33

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ........................................................ 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................ 31

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018) ........................................................ 44

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ........................................................ 43

*In re Petrobras Secs. Litig.*,
  2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ........................................................ 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................ 9

*In re Smith Barney Transfer Agent Litig.*,
  290 F.R.D. 42 (S.D.N.Y. 2013) ........................................................ 41

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................ 16, 31

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................ 20

*In re Top Tankers, Inc. Sec. Litig.,*
2008 WL 2944620 (S.D.N.Y. July 31, 2008) .................................................. 20

*In re Union Carbide Corp. Consumer Products Business Securities Litg.,*
724 F. Supp 160 (S.D.N.Y. 1989) ................................................................ 22

*In re Warner Chilcott Ltd. Sec. Litig.,*
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................................ 30

*Katz v. United Synagogue of Conservative Judaism,*
135 A.D.3d 458 (N.Y. App. Div. 2016) ........................................................ 38

*Landmen Partners, Inc. v. Blackstone Grp., L.P.,*
2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) .............................................. 23

*Lopez v. Setauket Car Wash & Detail Ctr.,*
314 F.R.D. 26 (E.D.N.Y. 2016) ................................................................... 37

*Marisol A. v. Giuliani,*
126 F.3d 372 (2d Cir. 1997) ........................................................................ 41

*Menocal v. GEO Group, Inc.,*
882 F.3d 905 (10th Cir. 2018) .................................................................... 46

*Meredith Corp. v. SESAC, LLC,*
87 F.Supp. 3d 650 (S.D.N.Y. 2015) ............................................................. 24

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ................................................................. 17, 34

*Nichols v. Noom, Inc.,*
2022 WL 2705354 (S.D.N.Y. July 12, 2022) ................................................ 34

*Onate v. AHRC Health Care, Inc.,*
2023 WL 8648167 (S.D.N.Y. Dec. 14, 2023) ................................................ 35

*Pantelyat v. Bank of Am., N.A.,*
2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ................................................... 17

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.,*
277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................... 37, 40, 42

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,*
2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ................................................ 32

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993) ................................................................. 36, 40

*Rodriguez v. CPI Aerostructures, Inc.*,
  2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021).................................................................. 49

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ......................................................................... 39

*Scott v. Aetna Servs., Inc.*,
  210 F.R.D. 261 (D. Conn. 2002).................................................................................. 45

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)............................................................... 31

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................................. 49

*Soler v. Fresh Direct, LLC*,
  2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ....................................................... 30, 31

*Sykes v. Harris*,
  2016 WL 3030156 (S.D.N.Y. May 24, 2016)............................................................... 33

*Sykes v. Mel Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)........................................................................................... 37

*Thompson v. Metropolitan Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................................. 11

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) .................................................................................. 48

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................................ 8, 13, 21, 50

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982).................................................................................... 14, 50

## Statutes

18 U.S.C. § 1591......................................................................................................... 4, 31

18 U.S.C. § 1594............................................................................................................. 4

18 U.S.C. § 1595............................................................................................................. 4

28 U.S.C. § 1715........................................................................................................... 38

## Other Authorities

2 Newberg on Class Actions § 4.63 (5th ed. 2018) ........................................................ 34

Newberg on Class Actions § 11.25 (4th ed. 2002) ........................................................ 11

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

Lead Plaintiff Allyson Ward ("Lead Plaintiff"), individually and on behalf of a proposed class of similarly situated victims (the "Class"), respectfully submits this memorandum of law in support of her unopposed motion for: (i) preliminary approval of the proposed settlement (the "Settlement") of *Allyson Ward v. Darren K. Indyke, et al.*, No. 24-CV-1204-AS (S.D.N.Y.) (the "Litigation"), between Lead Plaintiff, on behalf of herself and the members of the Class, and the Estate of Jeffrey E. Epstein (the "Estate"), and Darren K. Indyke and Richard D. Kahn, as the Co-Executors of the Estate and in their individual and all other capacities (collectively, the "Co-Executors" and together with Lead Plaintiff and the Estate, the "Parties"), on behalf of the Estate and themselves, in an amount of $35 million if there are 40 or more Eligible Class Members,[1] or $25 million if there are less than 40 Eligible Class Members; (ii) conditional certification of the proposed class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure; (iii) appointment of Boies Schiller Flexner LLP ("BSF") as Class Counsel and of Lead Plaintiff as the Class Representative; (iv) approval of the form and manner of the notice to be provided to the Class; and (v) the scheduling of a hearing (the "Settlement Hearing") for the final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and litigation costs and expenses, and deadlines related thereto.  The Parties' agreed-upon, proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## PRELIMINARY STATEMENT

In the interest of finally resolving all claims that the Class may have against the Estate and/or the Co-Executors, the Parties have negotiated, at arm's length and with the assistance of an

---

[1] Capitalized terms that are not defined in this motion shall have the same definitions given to them in the proposed Settlement Agreement attached hereto.

1

experienced and neutral mediator, a proposed settlement of all claims and potential claims in this Litigation for a monetary amount of $35 million, if there are 40 or more Eligible Class Members, or $25 million, if there are less than 40 Eligible Class Members.[2]  This resolution represents a substantial recovery that falls well within the range of reasonable resolutions.  The matter involved years of case investigation even before filing suit, including numerous pre-suit witness interviews and other fact investigation to analyze potential claims.  Following the filing of the suit, this matter involved hard-fought litigation, including a motion to dismiss; the dismissal of one of the initial proposed class representative's claims, production and review of hundreds of thousands of documents from the Estate, the Co-Executors and numerous nonparties; exchange of reports and rebuttal reports of four expert witnesses; 15 depositions of fact and expert witnesses; a motion for class certification; a motion for summary judgment; and formal mediation with an experienced mediator.  The terms of the Settlement are set forth in the Settlement Agreement, filed simultaneously herewith.

Lead Plaintiff and Class Counsel approve of the Settlement.  Lead Plaintiff is a victim of Jeffrey Epstein's sex trafficking and actively oversaw the Litigation and authorized the Settlement. Class Counsel has deep litigation experience, including in class action litigation and litigation on behalf of survivors of sex trafficking and abuse, and are recognized leaders in those fields.  Based upon their experience and evaluation of the facts and the applicable law, Class Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class.  This is especially so considering the risk that the Class might recover substantially

---

[2] Prior to this settlement, the Co-Executors set up the independent Epstein Victims Compensation Program, which resulted in 136 claimants receiving $121 million from the Estate. Additionally, on behalf of the Estate, the Co-Executors resolved claims raised by 59 other victims of Jeffrey Epstein's abuse and trafficking for a combined value of over $48 million.

less (or nothing) if the action were litigated through trial and the likely post-trial motions and appeals that would follow (a process that could last several years). Given these and other risks inherent in this complex class action, and the Settlement's significant value, the Settlement represents an excellent and fair result for the Class. The proposed settlement resolves the Class's filed and potential claims against the Estate and the Co-Executors and satisfies all the criteria for preliminary settlement approval under federal law.

At this stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. Considering the substantial recovery obtained, and the risks and burdens entailed in summary judgment and trial, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order. Among other things, the Preliminary Approval Order: (i) preliminarily approves the Settlement of claims and potential claims on the terms set forth in the Settlement Agreement; (ii) approves the form and content of the Notice of Proposed Settlement of Class Action (the "Notice") and the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), attached to the Settlement Agreement as Exhibits A-1, A-2 respectively; (iii) holds that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure; and (iv) sets a schedule and procedures for disseminating the Notice and publication of the Summary Notice, objecting to the Settlement or Class Counsel's application for an award of attorneys' fees and litigation costs and expenses, submitting papers in support of final approval of the Settlement, and the Settlement Hearing.

## HISTORY OF THE LITIGATION

Class Counsel began investigating this matter in 2023 and ultimately commenced the action in February 2024 by filing an individual and class complaint with the previous named representatives, Danielle Bensky and Jane Doe 3.  In its August 5, 2024 order, the Court dismissed Bensky from this action because she had previously signed a release that barred her claims.  *See* ECF No. 80.  The initial complaint was then amended on September 3, 2025 to include Lead Plaintiff as the named representative.  *See* ECF No. 359 (Corrected Amended Complaint).  Lead Plaintiff's Corrected Amended Complaint (the "Operative Complaint") alleged that the Co-Executors violated the TVPA, 18 U.S.C. §§ 1591, 1594, 1595, and are liable under state law for aiding, abetting, and facilitating battery; intentional infliction of emotional distress; and negligence.  *See id.*  The Complaint alleged that, throughout the Class Period (January 1, 1995, through August 10, 2019, inclusive), the Co-Executors knowingly and intentionally participated in, assisted, supported, and facilitated Jeffrey Epstein's sex trafficking venture.  Lead Plaintiff alleged Class Members — the victims of Jeffrey Epstein's sex trafficking venture — were harmed by the alleged conduct.

In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents they have accumulated over the past fifteen years of litigation against Jeffrey Epstein, his Estate, financial institutions that provided services to Jeffrey Epstein, and others.  Class Counsel have confidentially interviewed over 50 individuals, including dozens of survivors.  Additionally, Class Counsel reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-trafficking operation inclusive of civil complaints, police reports, investigative reports, other information obtained through criminal investigations, court transcripts, news articles, audio

recordings of survivors, and a multitude of other publicly available sources.  Finally, Class Counsel conducted significant research into the Co-Executors.

The Co-Executors deny all of Lead Plaintiff's allegations.  The Co-Executors are not accused of abusing any women or being present when any abuse occurred, and they deny that they participated in the Epstein sex trafficking venture in any way and deny that any Class Member has suffered any harm, injury, or damages as a result of their conduct.  Co-Executors contest Lead Plaintiff's allegations that Co-Executors have liability under the TVPA or under New York law.  Thus, on April 8, 2024, the Co-Executors moved to dismiss the initial complaint.  *See* ECF No. 29.  The Court granted in part and denied in part the motion on August 5, 2024, dismissing Bensky's claims.  *See* ECF No. 80.  The Co-Executors answered the Complaint on August 19, 2024.  *See* ECF Nos. 92, 93, 94.  Because the Co-Executors are adamant that they did not participate in or facilitate Epstein's sex-trafficking venture, at mediation, the Co-Executors expressed that they would not settle the existing claims against them absent an agreement to settle any remaining potential claims against the Estate stemming from Epstein's conduct and would continue to defend against the claims brought against them individually.

The Parties engaged in years-long extensive discovery efforts.  The Parties conducted extensive fact, class certification, and expert discovery, taking 15 depositions, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for four expert witnesses.  Numerous discovery disputes were litigated.  And discovery of the Lead Plaintiff was continuing at the time the Settlement was reached.

On September 13, 2024, Jane Doe 3, as Plaintiff, moved for class certification.  *See* ECF No. 118.  On October 18, 2024, Jane Doe 3 moved to amend the initial Complaint to add Lead Plaintiff as a plaintiff and named class representative.  *See* ECF No. 193.  On November 4, 2024,

the Co-Executors moved for summary judgment. *See* ECF No. 252. On August 19, 2025, the Court granted Jane Doe 3's motion to amend the initial Complaint and denied the motions to certify the class and for summary judgment on the class claims without prejudice to allow for additional discovery. *See* ECF No. 353. The Court reasoned that due to the amendment adding Ward, further discovery was needed as it pertained to her. The Corrected Amended Complaint was filed on September 3, 2025, *see* ECF No. 359, and the Co-Executors answered the Operative Complaint on September 22, 2025, *see* ECF Nos. 370, 371. On December 3, 2025, Jane Doe 3 settled and voluntarily dismissed her separately filed individual claims against the Estate as well as the Co-Executors, leaving Ward the sole named representative. *See* ECF No. 397.

## NEGOTIATION OF SETTLEMENT

On October 28, 2025, the Parties participated in a confidential mediation with Simone Lelchuk, Resolution Services LLC, an experienced mediator. The mediation was preceded by the submission and exchange of mediation statements by the Parties. The Parties engaged in good faith negotiations during the mediation and over the following months. On December 18, 2025, the Mediator proposed terms for a settlement in principle ("Mediator's Proposal"), and the Parties agreed to those terms on December 19, 2025. The Settlement in principle included, among other things, the Parties' agreement to settle and dismiss with prejudice the Litigation and grant full mutual releases to the Estate and the Co-Executors in return for a cash payment by the Estate of $35 million U.S. Dollars, if there are 40 or more Eligible Class Members, or $25 million U.S. Dollars, if there are less than 40 Eligible Class Members, subject to the negotiation of the terms of a Settlement Agreement and approval by the Court, which the Parties now seek. The proposed Settlement releases any claims and potential claims against the Estate and the Co-Executors, including any claims that have been or may be revived at a subsequent date.

Considering the substantial benefit to the Class of obtaining a settlement, and the significant costs and risks of further litigation—and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator—Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.

## SETTLEMENT TERMS

The Settlement provides that upon preliminary approval, the Estate will pay $12.5 million into an escrow account (the "Qualified Settlement Account"), and that upon final approval, the Estate will pay the remainder of the Global Settlement Amount based on the number of Class Members. Settlement Agreement, ¶ 2.2. That amount plus accrued interest will be held in the Qualified Settlement Account. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be paid from the Qualified Settlement Account. *Id.* at ¶ 4.9. The Parties propose that Simone Lelchuk ("Lelchuk") will be retained to administer the settlement. *Id.* at ¶ 1.12.

As set forth in the proposed notice (the "Notice"), Class Counsel will submit an application in support of final approval of the Settlement and an application for an award of (i) attorneys' fees on behalf of itself to be paid from the Qualified Settlement Account in an amount not to exceed thirty percent (30%) of the Global Settlement Amount, and (ii) litigation costs, charges, and expenses in an amount not to exceed $1 million, plus interest accrued on both amounts at the same rate as earned by the Qualified Settlement Account.

After payments to Class Members, payment of Notice and Administration Expenses, taxes, tax expenses, and Court-approved attorneys' fees, costs, charges, and expenses from the Qualified Settlement Account, the remaining amount – if any – shall be distributed to a charitable

organization to be determined in a mutually agreeable fashion by the Parties as a *cy pres* recipient. *See In re Petrobras Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.) (recognizing *cy pres* recipients may be identified after settlement approval and a determination that there are funds remaining for *cy pres* recipients). The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other class actions, including the class actions brought on behalf of Epstein victims against JPMorgan Chase and Deutsche Bank.

The proposed Settlement is an excellent recovery on the claims and potential claims in this Litigation and is in all respects fair, adequate, reasonable, and in the best interests of the Class.

## ARGUMENT

### I.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). Courts have approved class settlements in sex abuse cases with similar allegations and alleged injuries. *See A.B., et al. v. The Regents of the University of California, et al.*, Case No. 2:20-CV-09555 (C.D. Cal. Oct. 19, 2020); *In re: USC Student Health Center Litigation*, Case No. 2:18-CV-04258-SVW (C.D. Cal. May 21, 2018). Courts have also approved class settlements in TVPA cases. *See, e.g., Paguirigan v. Prompt Nursing Employment Agency LLC*, No. 1:17-CV-01302 (E.D.N.Y. Mar. 7, 2017). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The

8

claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018). In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class. *See id.* ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."). That is what Lead Plaintiff seeks in this motion. In the second stage, which will come only if the Court grants this motion, the Court will hold a fairness hearing and "make[] a final determination as to whether the proposed settlement is fair, reasonable and adequate." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Pursuant to Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties[] . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

> a) the class representatives and class counsel have adequately represented the class;

> b) the proposal was negotiated at arm's length;

> c) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of

payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

d) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors

which the Second Circuit has counseled district courts to consider in determining whether to grant

final approval to a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of establishing
> damages; (6) the risks of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of reasonableness of
> the Global Settlement Fund in light of the best possible recovery; [and] (9) the range
> of reasonableness of the Global Settlement Fund to a possible recovery in light of all
> the attendant risks of litigation.

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (internal citation omitted).

The Rule 23(e) factors are not intended to "displace" any previously adopted factors but

"rather to focus the court and the lawyers on the core concerns of procedure and substance that

should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory

committee's note to 2018 amendment. Likewise, "[i]n finding that a settlement is fair, not every

factor must weigh in favor of settlement, 'rather the court should consider the totality of these

factors in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225

F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55,

61 (S.D.N.Y. 2003)).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed

settlement on the bases of written submissions and an informal presentation by the settling parties.

*Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Newberg on Class Actions § 11.25 (4th ed. 2002)).  "If, after preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement."  *Id.*

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  As stated above, the proposed Settlement provides for a Global Settlement Amount of $35 million in cash if there are 40 or more Eligible Class Members, or $25 million in cash if there are less than 40 Eligible Class Members—a substantial recovery that is unquestionably beneficial to the Class and plainly "within the range of possible approval."  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." (quoting *In re Nasdaq Market–Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

## A.  Rule 23(e)(2) factors are satisfied

### 1.  Lead Plaintiff and Class Counsel Have Adequately Represented the Class

Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members, *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir. 2005) ("[A]dequate representation of a particular claim is determined by the alignment of interests of class members[.]").  Lead Plaintiff sought to hold the Co-Executors accountable for services that she alleges facilitated Epstein's sex-trafficking venture that harmed her and countless others, so her interests align with those of the other Class Members, and she has no interests antagonistic to the Class Members.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("Adequacy

is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.").

Lead Plaintiff has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by searching for and producing documents, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 184 (S.D.N.Y. 2014) (finding that class representative had adequately represented the class where, similar to here, class representative spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the [s]ettlement."). Lead Plaintiff and Class Counsel zealously advocated for the interests of victims of Jeffrey Epstein and have obtained an excellent result on the Class's claims. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on discovery issues; and participation in extensive settlement negotiations, which included mediation. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein. Accordingly, this factor weighs in favor of approval.

### 2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("A proposed class action settlement

enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate."). This is particularly true when, as here, a mediator assisted the Parties in reaching a settlement. *See D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'"). As described above, the Settlement was reached only after extensive, arm's-length negotiations before Simone Lelchuk, a nationally recognized mediator experienced in class actions. In advance of that mediation, the Parties submitted detailed mediation statements. The Parties then participated in a mediation, which included providing evidentiary submissions, and reached the Settlement. Importantly, Simone Lelchuk has mediated a number of similar, large settlements involving sexual abuse victims, including the 2022 settlement between Epstein victims and Deutsche Bank. *See Jane Doe v. Deutsche Bank*, Case Number 1:22-cv-10019 (S.D.N.Y.)

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Plaintiff agreed to settle after extensive pre- and post-pleading factual investigation, and after the close of Plaintiff's discovery when only limited discovery regarding Lead Plaintiff remained. Lead Plaintiff and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and the Co-Executors'

defenses when they agreed to the Settlement. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999) (granting preliminary approval of settlement where, as here, plaintiffs "were well informed of the strengths and weaknesses of their claims" after a large number of "documents had been inspected, depositions and private sworn interviews had occurred, plaintiffs had briefed numerous motions, and plaintiffs had consulted extensively with numerous experts"). These circumstances confirm the fairness of the proposed Settlement.

### 3. The Relief Provided by the Settlement Is Adequate when Weighed Against the Risks of Litigation

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

If approved, the Settlement will provide Class Members with $35 million in cash, if there are 40 or more Eligible Class Members, or $25 million in cash, if there are less than 40 Eligible

Class Members, less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, taxes and tax expenses. The recovery obtained represents a favorable result for the Class. Additionally, although Lead Plaintiff and Class Counsel believe their case against the Co-Executors is strong, they acknowledge that the Co-Executors have presented substantial arguments in defense of the matter. Finally, Lead Plaintiff and Class Counsel considered the risks that are presented by the uncertainty of any jury trial, the inevitable post-trial motions and appeal even if successful, and the difficulty of post-judgment enforcement. Moreover, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further any potential recovery by Class Members for damages they suffered many years ago.

The proposed Settlement therefore balances the risks, costs, and delays inherent in complex class action cases such as this one. When viewed in the context of these risks and the uncertainty of any future recovery, the Settlement is extremely beneficial to the Class.

### 4.  The Proposed Method for Distributing Relief Is Effective

The method of the proposed notice and claims administration process is effective. This includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Net Settlement Amount.

The Parties recommend that Simone Lelchuk be appointed as the Fund Administrator. Ms. Lelchuk was appointed as the Fund Administrator in the *Jane Doe v. JPMorgan Chase Bank, N.A.*, Case Number 1-22-cv-10018 (S.D.N.Y.) and *Jane Doe v. Deutsche Bank*, Case Number 1:22-cv-10019 (S.D.N.Y.) cases and as such, she has extensive experience in handling claims of this nature and will not only be proficient in identifying non-viable claims, but also well-situated to deliver fair compensation determinations to claimants.

The notice plan includes direct mailing of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza*. Additionally, a dedicated website will be created for the Settlement and will be updated regularly with information and key documents concerning the Settlement, including the Settlement Agreement, Notice, settlement forms, Questionnaire and Release, Preliminary Approval Order and all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses.

The proposed claims process also includes a Questionnaire and Release that requests the information necessary to allow the Fund Administrator to evaluate each claim individually. The Settlement Agreement will govern how Class Members' claims will be calculated and how money will be distributed to Eligible Class Members. At the outset, a Questionnaire and Release will be provided to the Fund Administrator with built-in protections to avoid the possibility of fraudulent claims, and the Fund Administrator will determine based upon a review of a Class Member's Questionnaire and Release whether the Class Member is eligible to receive an Allocated Amount from the Qualified Settlement Account.

In evaluating each claim, the Fund Administrator shall consider documentary and non-documentary support for the alleged abuse or trafficking; the circumstances, severity, type, and extent of the alleged abuse or trafficking; the nature and duration of the relationship with Epstein; the impact, harm, and consequences of the alleged conduct on an Eligible Class Member; time spent assisting the preparation or prosecution of the Litigation; participation in civil litigation; and any other factors the Fund Administrator deems relevant.

### 5.  Class Counsel's Fee and Expense Request Is Fair and Reasonable

Class Counsel will apply for an award of attorneys' fees on behalf of itself of no more than thirty percent (30%) of the Global Settlement Amount, plus litigation costs and expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $1 million, plus interest earned on both amounts at the same rate as earned in the Qualified Settlement Account. For the reasons set forth below, Class Counsel respectfully submits that this request, which also will be further briefed in Class Counsel's forthcoming motion for attorneys' fees and expenses,[3] is fair and reasonable.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in this District have consistently adhered to this precedent. *See, e.g.*, *In re CRM Holdings*, 2016 WL 4990290, at *2 (S.D.N.Y. Sept. 7, 2016) ("Pursuant to the 'equitable' or 'common fund' doctrine. . . attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584-85 (S.D.N.Y. 2008))); *Aeropostale, Inc.*, 2014 WL 1883494, at *11 ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund." (quoting *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008))).

---

[3] A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing. *See Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (noting that "it is premature to pass judgment on any anticipated fee application" at the preliminary approval stage).

Typically, courts use one of two methods to determine a reasonable fee:  the percentage of recovery method and the lodestar method.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  The percentage of recovery method is the preferred method for calculating the reasonableness of attorneys' fees under precedent from the Supreme Court, Second Circuit, and courts in this District.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class. . . ."); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009) (explaining that while "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases," the "trend in this Circuit is toward the percentage [of the fund] method" (first quoting *Goldberger*, 209 F.3d at 50, and then quoting *Wal-Mart*, 396 F.3d at 121)).

Courts endorse the percentage of recovery method as the preferred means to determine the reasonableness of attorneys' fees because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)).  In contrast, the lodestar method—under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate"—has created "temptation for lawyers to run up the number of hours for which they could be paid," and "an unanticipated disincentive to early settlements." *Goldberger*, 209 F.3d at 47–49.  The lodestar method also requires courts to "engage in a gimlet-eyed review of line-item fee audits," which is "an inevitable waste of judicial resources." *Id.* at 49.

For these reasons, courts in the Second Circuit and this District typically utilize the percentage of recovery method.  Courts are further guided by the criteria set out in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) for determining a reasonable fee in a common fund case:  (1) quality of the representation; (2) the requested fee in relation to the settlement; (3) the time and labor expended by counsel; (4) the risk of the litigation; (5) the magnitude and complexities of the litigation; and (6) public policy considerations.  *Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Products Business Securities Litg.*, 724 F. Supp 160, 163 (S.D.N.Y. 1989) (summarizing the *Grinnell* opinions)).  Considering these factors, as are further discussed below, Class Counsel's forthcoming fee request is reasonable.

*The quality of representation.*  Class Counsel's fee request will be substantially premised on the successful outcome obtained for the Class.  When placed in context of similar settlements and analyzed in light of the specific risks faced in this case, Class Counsel respectfully submits that the $35 million outcome, assuming 40 or more Eligible Class Members, is an excellent result. Indeed, Class Counsel vigorously pursued TVPA claims against sophisticated defense counsel, litigating the case past a challenging motion to dismiss and through a robust fact and expert discovery period, and advancing the case forward despite the dismissal of the original named plaintiff's claims.  This supports the reasonableness of Class Counsel's forthcoming fee request.

*The relationship of the requested fee to the settlement.*  Class Counsel's forthcoming request for no more than 30% of the Global Settlement Amount is reasonable and is on par with what courts in this District have awarded counsel in comparable class actions over the last ten years.  *See, e.g., In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 40% of $50 million settlement plus expenses), *aff'd sub nom. City of Birimingham Ret. & Relife Sys. v. Davis*, 806 F. App'x 14 (2d Cir. Mar. 12, 2020); *Landmen Partners, Inc. v. Blackstone Grp., L.P.,*

2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33-1/3% of $85 million recovery plus expenses); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement); *In re GSE Bonds Antitrust Litigation*, 2020 WL 3250593, at *6  (S.D.N.Y. June 16, 2020) (Rakoff, J.) (awarding 20% of $386.5 million antitrust class action settlement); *In re London Silver Fixing, Ltd. Antitrust Litig.*, 2021 WL 3159810, at *1  (S.D.N.Y. June 15, 2021) (awarding 30% of $38 million in antitrust class action settlement); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *1  (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $126 million in antitrust class action settlement); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015) (awarding 20.2% of $58.5 million in antitrust class action settlement); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (awarding 20% of $244 million in antitrust class action settlement).   Given that fee requests for 30% of a global settlement fund have been approved as reasonable in this Circuit, Class Counsel's forthcoming request for no more than 30% is appropriate.

It is also appropriate for the Court to use the fee applicant's lodestar as a cross-check on reasonableness.  *Goldberger*, 209 F.3d at 50; *see also In re AOL Time Warner*, *Inc. Sec. & ERISA Litig.*, 2006 WL 3057232, at *28 (S.D.N.Y. Oct. 25, 2006) ("It bears emphasis that the lodestar computation here is a cross-check, calculated with less precision than would be required if lodestar were the primary methodology.").  Class Counsel's forthcoming fee request is appropriate under that metric, too.  Here, Class Counsel anticipates that, at the time it submits its fee petition, its lodestar will surpass $9.6 million.

In this contingency fee case, Class Counsel bore substantial risk that it would be paid nothing for its work on behalf of the Class.  Fees in excess of the lodestar are routinely awarded to account for this contingency-fee risk and other factors.    *See*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009))).

*Counsel's time and labor*.  Class Counsel expended substantial time and effort pursuing the litigation on behalf of the Class.  Unlike many firms that regularly participate in class action matters, BSF routinely serves as counsel for both plaintiffs and defendants.  BSF is primarily a trial firm and prepares its case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice.

Throughout its time prosecuting the litigation, Class Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Moreover, additional hours and resources will necessarily be expended seeking the Court's final approval of the Settlement, assisting Class Members with the completion and submission of Questionnaires and Releases, overseeing the claims process, responding to Class Member inquiries, and presenting the final proposed allocation of settlement proceeds among the Class Members.  Given the significant amount of time and effort devoted by Class Counsel to obtain a $25-35 million recovery, a request for attorneys' fees not to exceed 30% of the Settlement Amount is appropriate.

*The litigation risks*.  As set forth above, while Lead Plaintiff remains confident in her claims, trying her case to a jury as a class action would present risk.  *See* §I.A.3., *supra*.  The Co-Executors successfully moved to dismiss the original named plaintiff's claims, and raised numerous challenges to Lead Plaintiff's allegations of liability under the TVPA and state causes of action.  Also, class certification was not certain, and even if it was granted, maintaining class

certification through trial has substantial risk. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (the risk of maintaining a class action through trial weighed in favor of final approval because "a class certification order may be altered or amended at any time before a decision on the merits"). Securing a guaranteed, substantial payout for the Class counsels in favor of awarding Class Counsel its forthcoming fee request.

The fee award also should take into account the risk that Class Counsel would walk away from this case with nothing. Class Counsel undertook this litigation on a wholly contingent-fee basis, has not yet been compensated for any time or expenses since it began to represent the Class, and would have received no compensation or payment of its expenses had this case not been resolved successfully. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the litigation and that funds were available to pay the substantial out-of-pocket expenses. Under such circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. With the specter of an exceedingly costly loss always looming, Class Counsel's assumption of the contingent-fee risk strongly supports the reasonableness of a fee request. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023) ("The district court reasonably concluded that the significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated."); *In re Flag Telecom Holdings*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("[A]n unenhanced

lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case.").

**The litigation's complexities and magnitude.** The Court may make "specific and detailed findings from the record, as well as from its own familiarity with the case" to determine whether Class Counsel has met an element of the *Goldberger* test. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Here, such findings support Class Counsel's contention that the complexity and magnitude of the Litigation support a fee award for Class Counsel's diligent efforts to secure an excellent settlement for the Class.

The Litigation involved significant briefing, motions practice, fact discovery, and expert discovery, requiring sophisticated law firms with significant experience both litigating class action lawsuits and negotiating settlements to deploy significant resources in order to litigate effectively on behalf of their clients. Discovery and motions practice would continue to be hard fought were litigation to continue. Given the complexity and high stakes of the Litigation and the significant public interest it attracted, and the resources required to litigate the matter, Class Counsel's ability to secure a favorable outcome counsels in favor of Class Counsel's proposed fee award.

**Considerations of public policy.** Public policy considerations support awarding the requested fee, particularly because pursuing sex trafficking victims' rights is a necessary and important goal for the legal community. The reality is that "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the Global Settlement Fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Appropriately compensating Class Counsel for its successful efforts in this case will

enhance the incentives for competent counsel to shoulder the significant risk of contingent-fee litigation in service of the public's interest in pursuing the rights of sex trafficking victims.

### 6.  All Class Members are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D).  Here, the proposed method of allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  The Settlement Agreement and Notice each explain how the Settlement proceeds will be distributed among Eligible Class Members.

### B.  The Proposed Settlement Meets the *Grinnell* Factors

***The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.***  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above.  Fed. R. Civ. P. 23(e)(2)(C)(i); *see* § I.A.3., *supra*.  This case is reflective of the complexity, expense, and duration of class actions.

***The Reaction of the Class to the Settlement.***  Lead Plaintiff supports the Settlement based on her direct participation in the prosecution of the case, in the mediation, and in the decision to enter into the Settlement.  At this stage, prior to distribution of notice to Class Members, this factor is not further addressed.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y. 2019) (Rakoff, J.) (consideration of *Grinnell* factor #2 "is generally premature at the preliminary approval stage"); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Consideration of [the class reaction] factor is premature" when "no notice has been sent."); *Soler v. Fresh Direct, LLC*, 2023 WL 2492977, at *5 (S.D.N.Y. Mar. 14, 2023) ("The Court does not consider the second *Grinnell* factor, which requires the Court to evaluate the 'reaction of the class to the settlement,' *Grinnell*, 495 F.2d at 463, because consideration of this factor is premature at the preliminary approval stage.").

***The Stage of the Proceedings.***   The extent and substance of Lead Plaintiff's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement.   *See* §I.A.2., *supra*.   The voluminous discovery record of hundreds of thousands of pages of documents and 15 depositions, as well as the extensive expert reports and the evidentiary submissions made during mediation, permitted Lead Plaintiff and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations.   *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 139; *In re Sumitomo Copper Litig.*, 189 F.R.D. at 281–82; *Soler*, 2023 WL 2492977 at *4; *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) ("The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the Settlement.") (quoting *In re Austrian and German Bank Holocaust Litigation,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal citations omitted)).

***The Risk of Establishing Liability and Damages.***   The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").   As explained above, Lead Plaintiff has satisfied the fourth *Grinnell* factor.   *See* §I.A.3., *supra*.

***The Risks of Maintaining the Class Action through Trial.***   Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where it is "likely that defendants would oppose class certification if the case were to be litigated."   *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 39–40 (E.D.N.Y. 2019); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012) ("The risk that Defendants could in fact succeed in their efforts to decertify the class militates in favor of settlement approval.").

Such is the case here. The Parties reached a settlement before a class was certified. This came after a motion for class certification was briefed for the previous named representative, Jane Doe 3, and the Co-Executors opposed that motion. If the case were to proceed, the Co-Executors would oppose certification of any class, as they have previously, and even if preliminarily certified, they could – and likely would – continue to challenge any effort to adjudicate Class Members' individualized claims in a joint proceeding, including whether a jury could determine class-wide damages in light of the underlying allegations. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Settlement Agreement at ¶ 1.3 (Noting that the Co-Executors will not oppose certification of the class for settlement purposes only). Although Class Counsel believes that it has provided enough information for the Court to determine that it will likely be able to certify the class at the final approval stage for settlement purposes, there is no guarantee that the Class could be certified if the Parties proceeded with the Litigation, and the Co-Executors have indicated that they are only consenting to class certification for the purposes of settlement. *See, e.g., Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification." (citation omitted)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all"). Thus, Lead Plaintiff has satisfied the fifth *Grinnell* factor.

***The Co-Executors' Ability to Withstand a Greater Judgment.***  While not generally a determining factor, a court may consider a defendant's ability to withstand a judgment greater than that secured by the proposed settlement.  *See D'Amato*, 236 F.3d at 86 (upholding district court's conclusion that the while "defendants' ability to withstand a higher judgment weighed against the settlement," it did not alone "suggest that the settlement is unfair").  Courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement.  *See Sykes v. Harris*, 2016 WL 3030156, at *14 (S.D.N.Y. May 24, 2016) ("While the Leucadia Defendants may have the ability to withstand a greater judgment, this does not prevent the Court from approving the Leucadia Settlement Agreement").  This is not a case being brought against a large corporation that may be able to withstand a virtually limitless judgment, but a suit brought against two individuals.  For this reason, this Settlement is a significant benefit to the Class in that, by making the Estate a Party to this Settlement, the Estate's resources are funding the Settlement.  Accordingly, this factor supports the Settlement.  *See Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022).

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.***  The adequacy of the amount recovered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693; *see also Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the

27

legal and practical obstacles to obtaining a large recovery."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed.").  Here, given the facts and circumstances of the alleged conduct, the Settlement amount is reasonable.

In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of preliminary approval of the Settlement, except possibly one neutral factor.  Preliminary approval in these circumstances is entirely appropriate and warranted.

## II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR THE PURPOSE OF THE PROPOSED SETTLEMENT

To grant preliminary approval, the Court must also determine that the requirements for class certification under Rules 23(a) and (b) are met.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012); Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice to the class if "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal").  As demonstrated below, the proposed Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

### A.    Rule 23(a) is satisfied

Class certification is warranted when four prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy—and the action qualifies under one of Rule 23(b)'s subdivisions.  *Onate v. AHRC Health Care, Inc.*, 2023 WL 8648167, at *2 (S.D.N.Y. Dec. 14, 2023) (Subramanian, J.).  Here, the Class easily meets Rule 23(a)'s requirements.

#### 1.    Numerosity

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when the proposed class contains 40 or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d

Cir. 1995); *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable."). And "the plaintiff need not establish the precise number of class members so long as they show some evidence of, or reasonably estimate, the number of class members." *Robidoux*, 987 F.2d at 935.

Here, Class Counsel submits that it has identified a class of over 40 women who have not signed releases with the Estate and has already offered to share this list with the Court for *in camera* review. *See* McCawley Decl. at ¶ 17. Epstein trafficked or abused hundreds of girls and women during the class period. *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2 (S.D.N.Y. June 12, 2023) (class of Epstein survivors satisfied numerosity requirement).

Even if the Class contains fewer than 40 members—and it does not—numerosity is still satisfied. Courts have not hesitated to certify classes of smaller sizes. *In re Beacon Assocs. Litig.*, 2012 WL 1569827, at *5 (S.D.N.Y. May 3, 2012) (certifying class of 29 members in consideration of large geographical dispersion and the burden on the court of individual lawsuits). Similarly, even if the Class were marginally less than 40 women, joinder would have been impracticable because of geographic constraints and the sensitive nature of the Litigation. Accordingly, the potential Class satisfies the numerosity requirement.

### 2. Commonality

Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). A question is common to the class if it is "capable of classwide resolution—which means the determination

of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (internal citation omitted). The "one stroke" rule is often satisfied where, as here, there is a uniform policy or practice that affected all class members. *See Sykes v. Mel Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

Lead Plaintiff brings tort claims for aiding, abetting, or facilitating battery; negligence; and intentional infliction of emotional distress ("IIED"). Under New York law, the elements of aiding and abetting battery are: "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023). To plead an IIED claim, the plaintiff must allege "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Id.* at 415. And to state a claim for negligence, "a plaintiff must show that the defendant owed the plaintiff a duty and breached that duty, and that the breach proximately caused the plaintiff harm." *Katz v. United Synagogue of Conservative Judaism*, 135 A.D.3d 458, 459 (N.Y. App. Div. 2016).

These tort claims all involve both legal and factual issues common to the proposed Class, like whether the Co-Executors had knowledge of and provided substantial assistance to Epstein's sex-trafficking venture; whether they owed a duty to Epstein's victims and whether they breached their duty by providing financial and legal services to Epstein; and whether their alleged involvement in Epstein's scheme constitutes extreme and outrageous conduct. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 185, 197 (S.D.N.Y. 2007) (finding

commonality in a class action brought on claims of public and private nuisance, trespass, negligence, and strict liability); *see also JPMorgan*, 2023 WL 3945773, at *4. Further, factual issues relevant to the elements of each tort claim are common to the Class.

Lead Plaintiff also pleads three violations of the TVPA on behalf of the Class: a beneficiary liability claim under 18 U.S.C. § 1591(a) for participation in a sex-trafficking venture, obstruction of the TVPA's enforcement, and conspiracy to violate the TVPA. The elements of a 18 U.S.C. § 1591(a) beneficiary liability claim are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020). An obstruction of TVPA enforcement claim requires proof that the Co-Executors acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking. 18 U.S.C. § 1591(d).

The elements of the TVPA claims are common to the Class—if each Class Member brought an individual action, each would have to prove that the Co-Executors knew about Epstein's sex-trafficking venture through testimony and evidence from the Co-Executors and other Epstein employees; that the Co-Executors benefitted from the trafficking venture through evidence of pay each earned from Epstein's accounts; and that each knowingly participated in the venture by, for example, allegedly structuring cash withdrawals knowing that such would be used to pay class members for sex, and paying funds to co-conspirators. Common questions of law and fact therefore exist.

### 3. Typicality

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the

defendant's liability." *Robidoux*, 987 F.2d at 936. "Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109; *see also Robidoux*, 987 F.2d at 936-37 (the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims"). "Courts in this Circuit have held that the typicality requirement is not demanding." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 107.

Lead Plaintiff's claims are representative of those of the Class Members. Even if there are differences among the specific circumstances of each member of the Class, the central issue is that Lead Plaintiff (like all other Class Members) was victimized by Epstein's sex-trafficking venture at or near the time Epstein employed the Co-Executors. The fact that the circumstances of Epstein's trafficking of Lead Plaintiff may slightly differ from the circumstances by which each Class Member was victimized is irrelevant to the class certification inquiry. *See In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45–46 (S.D.N.Y. 2013) (where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims"); *JPMorgan*, 2023 WL 3945773, at *6.

While the underlying claims in this action are not against the trafficker (Epstein), the abuse each Class Member allegedly suffered came at the hands of Epstein. More specifically, Lead Plaintiff's claims and the Class Members' claims are based on the same "course of events"— Lead Plaintiff alleges that Epstein sexually abused them during periods of time when one or both Co-Executors provided professional services to Epstein, and she claims that the Co-Executors knew about and were negligent in failing to prevent harm to Epstein's victims. *See id.* (finding that when "claims arise out of the same course events as those of other class members, and since similar legal

arguments bear on her and other class members' claims, . . . the typicality requirement is satisfied."); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (finding no abuse of discretion in typicality finding where class members' injuries resulted from a "unitary course of conduct by a single system"); *Casilao v. Hotelmacher LLC*, 2021 WL 4487984, at *7 (W.D. Okla. Sept. 30, 2021) (rejecting argument that "personal experiences unique to certain class members and not experienced by others demonstrate a lack of typicality" in TVPA case where "the class members' claims are based on the same legal theories and the same operative conduct of Defendants as the claims brought by the Named Plaintiffs"). Thus, Lead Plaintiff's claims are typical of the claims of the other Class Members.

### 4. Adequacy of representation

Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). "A finding that a proposed class representative satisfies the typicality inquiry constitutes strong evidence that [its] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109. Even if a conflict exists, it does not "necessarily defeat class certification—the conflict must be fundamental." *Denney*, 443 F.3d at 268.

Here, Lead Plaintiff has "fairly and adequately" represented the Class and will continue to do so during the Settlement proceedings. She seeks to hold the Estate accountable for Epstein's sex-trafficking venture that harmed her and countless others and the Co-Executors accountable for services that she alleges facilitated that venture, so she has actively participated in and monitored the Litigation. Her interests align with the Class Members' interests, and she has prosecuted this matter vigorously. Further, Lead Plaintiff's counsel is "qualified, experienced and generally able

to conduct the litigation." *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Accordingly, the adequacy requirement is met.

**B. Rule 23(b) is satisfied**

Lead Plaintiff seeks class certification for purposes of the Settlement pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

**1. Common Questions of Law and Fact Predominate**

Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues. "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017). The requirement calls "only for predominance, not exclusivity, of common questions." *See Chalmers v. City of N.Y.*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022). Moreover, "[t]he predominance requirement differs between trial and settlement." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018). Because the proposed Settlement contemplates that there will be no trial, issues relating to the proportion of class-wide evidence to individualized evidence at trial are of lesser importance. *See* 2 Newberg on Class Actions § 4.63 (5th ed. 2018) ("[I]n settlement class actions, because manageability need not be a concern, predominance – the main focus of manageability – recedes in importance as well.").

Nonetheless, common, class-wide issues predominate in this case. In this case, Lead Plaintiff brings claims for brings tort claims for aiding, abetting, or facilitating battery; negligence; and IIED and violations of the TVPA. As outlined above, the tort claims will involve similar

34

factual issues subject to common proof, such as whether Epstein abused and trafficked them; whether the Co-Executors facilitated or negligently failed to prevent Epstein's sex-trafficking venture; and whether they owed a duty to Epstein's victims and whether they breached their duty by providing legal and accounting services to Epstein. *See* §II.A.2., *supra*. Lead Plaintiff's TVPA claims will also primarily require the adjudication of issues common to the Class and subject to common proof, including issues of whether Epstein abused her as part of a trafficking venture, whether the Co-Executors should have known about Epstein's sex-trafficking venture, whether they benefitted from the trafficking venture; and whether they in some way facilitated the venture. *See id.*

### 2. A Class Action is Superior

Lead Plaintiff can also demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* The Supreme Court has held that the last factor, manageability, does not apply in the settlement context. *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). A Rule 23(b)(3) class is superior when it allows for the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617.

The TVPA is designed to protect victims of trafficking who are particularly vulnerable, and class treatment is therefore superior in such situations. *See JPMorgan*, 2023 WL 3945773, at *11; *see also Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (finding class action superior in a case alleging violations of state labor law in part because "class members may fear reprisal"). Further, a class action here would avoid a "multiplicity and scattering of suits" that would follow from numerous victims of one single trafficking venture having to independently vindicate their rights in courts across the country. *See In re MF Global Holdings*, 310 F.R.D. at 239; *see also Menocal v. GEO Group, Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (Rule 23(b)(3) class superior where "the putative class members reside in countries around the world"). Litigating this case has required taking substantial discovery, including many depositions and obtaining hundreds of thousands of documents, that would be relevant to each Class Member's claims but would be difficult for each Class Member to obtain on her own in an individual lawsuit. *See* McCawley Decl. ¶ 7. Further, Epstein's sex-trafficking scheme operated on an international scale, with victims spanning multiple different countries and multiple states within the U.S. A class action would efficiently curtail the possibility of the "scattering" of suits across the country and is the superior method of adjudicating this dispute.

### III. THE COURT SHOULD APPOINT BOIES SCHILLER FLEXNER LLP AS CLASS COUNSEL AND PLAINTIFF ALLYSON WARD AS SETTLEMENT CLASS REPRESENTATIVE

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

> In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(a).

BSF meets Rule 23(a)(4)'s adequacy requirement and should be appointed as Class Counsel under Rule 23(g). BSF has already invested substantial time and resources in investigating Lead Plaintiff's claims, prosecuting this case, and gathering discovery from the Co-Executors and third parties. Since the filing of the initial complaint, BSF has been involved in identifying and investigating Plaintiff's claims and facilitating the discovery process, including by engaging experts, deposing the Co-Executors and other witnesses, responding to Co-Executors' motion to dismiss, producing documents to the Co-Executors, collecting documents from third parties by subpoena, reviewing the many documents produced by the Co-Executors, briefing class certification, and responding to the Co-Executors' motion for summary judgment. McCawley Decl. ¶ 7. BSF has committed, and continue to commit, substantial time and resources to representing the Class, and has worked vigorously and zealously to competently represent the interests of the members of the Class.

BSF is eminently qualified to represent the proposed Class and its interests. BSF has substantial experience handling class actions, complex litigation, matters involving trafficking and abuse, and cases related to Epstein's sex-trafficking venture. McCawley Decl. ¶¶ 4–6, 12–14. BSF has worked on behalf of Epstein victims for over ten years, and in their recent class actions against the banks, Judge Rakoff commended them for their "extraordinarily laudable" work, and the "excellent" results. Rule 23(g) is satisfied, and the Court should appoint BSF as Class Counsel.

The Court should also appoint Allyson Ward as Settlement Class Representative. Allyson Ward has actively participated in this case, including in substantial discovery and the production of tens of thousands of pages of documents. She has provided Class Counsel with information

crucial to helping prepare and advance the case and represented the Class in settlement discussions. Accordingly, the Court should appoint Allyson Ward as Settlement Class Representative.

## IV.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of the proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Class Members by mailing the Notice and settlement forms to all Class Members who can be identified with reasonable effort.

The Notice will advise the Class Members of the essential terms of the Settlement and provide information regarding Class Counsel's application for an award of attorneys' fees and expenses.  The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting valid and timely settlement forms and objecting to the Settlement, and/or the application for attorneys' fees and expenses.  Further, the Notice will provide contact information for the Fund Administrator and Class Counsel and advise Class Members on how to obtain further information regarding the Settlement.

In addition to mailing the Notice and settlement forms, the Fund Administrator will cause publication of a Summary Notice in *USA Today* and *Gazeta Wyborcza*.  The Co-Executors will serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*

The form and manner of providing notice to the Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23.  Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).  In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the

opportunity to opt out of or object to the settlement. *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The requirements of Due Process impose similar requirements. *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

Here, the manner of providing notice, which includes (i) individual notice by mail or email to all Class Members who can be reasonably identified, (ii) the creation of a dedicated website, and (iii) notices published in *USA Today* and *Gazeta Wyborcza* represents the best notice practicable under the circumstances. The Notice and Summary Notice will also include (i) the rights of the Class Members, including the manner in which objections can be lodged, (ii) the nature, history and progress of the litigation, (iii) how to file settlement forms, (iv) a description of the Plan of Allocation (also described in the Settlement Agreement), and (v) the fees and litigation expenses to be sought by Class Counsel. *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding that notice plan was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice, including publishing the summary notice in [news publications] . . . are practical and likely to be effective in reaching the affected individuals"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 119–20 (S.D.N.Y. 2009) (same). In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).

**PROPOSED SCHEDULE OF SETTLEMENT EVENTS**

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing and emailing of the Notice and Proof of Claim to the Class (the "Notice Date") | 10 calendar days after entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 9) |
| Deadline for publishing the Summary Notice | 25 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 10) |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation and Class Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing. (Preliminary Approval Order ¶ 23) |
| Deadline for Class Members to submit Requests for Exclusion to Fund Administrator | Received no later than 30 calendar days from Notice Date. (Preliminary Approval Order ¶ 17) |
| Deadline for receipt of objections to final approval of Settlement, Plan of Allocation and Class Counsel's application for attorneys' fees and expenses | No later than 21 calendar days prior to Settlement Hearing. (Preliminary Approval Order ¶ 19) |
| Deadline for Class Counsel to serve on the Co-Executors' Counsel and file with the Court proof, by affidavit or declaration, of mailing and publishing of the Summary Notice | At least 45 calendar days prior to Settlement Hearing. (Preliminary Approval Order ¶ 11) |
| Deadline for filing reply papers regarding final approval of Settlement, Plan of Allocation and Class Counsel's application for attorneys' fees and expenses | 7 calendar days prior to Settlement Hearing. (Preliminary Approval Order ¶ 23) |
| Settlement Hearing | At the Court's convenience; Parties request 135 calendar days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 5) |
| Deadline for Questionnaires and Releases to be Filed | Submitted online no later than 60 calendar days from the Notice Date. (Preliminary Approval Order ¶ 15) |

**CONCLUSION**

Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement;

(ii) approve the proposed form and manner of notice to be given to the Class; and (iii) schedule a

hearing on Lead Plaintiff's motion for final approval of the Settlement and Class Counsel's

application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed Preliminary Approval Order and exhibits thereto (Notice of Proposed Settlement of Class Action, Summary Notice of Proposed Settlement of Class Action, Proof of Claim, and Proposed Order and Final Judgment) are filed herewith.

Dated: February 19, 2026                    Respectfully Submitted,

_Sigrid S. McCawley_

Sigrid S. McCawley
Daniel Crispino (*pro hac vice*)
Megan Nyman (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas
Boulevard, Suite 1200
Fort Lauderdale, FL
33301
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com


David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

*Counsel for Allyson Ward*