**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALLYSON WARD, individually and on behalf of all others similarly situated,

    Plaintiff,

        v.

DARREN K. INDYKE and RICHARD D. KAHN,

    Defendants.

Case No. 1:24-cv-01204-AS

---

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND <u>APPROVAL OF THE PLAN OF ALLOCATION</u>**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350

*Counsel for Allyson Ward*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

HISTORY OF THE LITIGATION ......................................................................................... 2

ARGUMENT ............................................................................................................................ 3

    I.   FINAL APPROVAL IS WARRANTED........................................................................... 3

        A.  The Rule 23(e)(2) Factors Are Satisfied. ..................................................................... 5

            1.  Lead Plaintiff and Class Counsel Have Adequately Represented the Class. ........... 5

            2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations. 6

            3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation. ...................................................................................................... 7

                i.  The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals........................................................................................... 8

                ii.  The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective. ..................................................................................... 9

                iii. Class Counsel's Fee and Expense Request Is Fair and Reasonable. ............. 12

            4. All Class Members Are Treated Equitably Relative to One Another. .................... 12

        B.  The Proposed Settlement Satisfies the *Grinnell* Factors........................................... 13

    II.  FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE........................................................................................................... 17

        A.  Rule 23(a)'s Requirements Are Satisfied. ................................................................. 17

        B.  Rule 23(b)(3)'s Requirements Are Satisfied.............................................................. 20

    III. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE. .................................... 22

    IV. NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23. ....................................................................... 23

CONCLUSION...................................................................................................................... 26

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Rose*,
    2003 WL 21982207 (2d Cir. Aug. 20, 2003).......................................................... 13

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) .......................................................................... 8

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)........................................................... 13

*Bitzko v. Weltman, Weinberg & Reis Co., LPA*,
    2021 WL 3514663 (N.D.N.Y. Aug. 10, 2021) ........................................................ 14

*Chalmers v. City of New York*,
    2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022)........................................................ 20

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................ 25

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................... passim

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................... 8, 13, 1

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)................................................................... 25

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)............................................................................... 17

*Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*,
    671 F. Supp. 3d 387 (S.D.N.Y. 202 ........................................................... 7, 14, 18

*Doe 1 v. JPMorgan Chase Bank*,
    *N.A.*, 2023 WL 3945773 (S.D.N.Y. June 12, 2023) ........................................... passim

*Farruggio et al. v. 918 James Receiver, LLC et al.*,
    No. 003831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017)...................................... 22

*Grant v. Bethlehem Steel Corp.*,
     823 F.2d 20 (2d Cir. 1987).............................................................................. 14

*In re Adv. Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................... 4, 6

i

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................................. 16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................................................. 15

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) .................................................................................................. 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................ 6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............................................................................. 14, 22

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 5, 16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................................. 5, 17

*In re GSE Bonds Antitrust Litig.*,
  2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ....................................................................... 6

*In re Lloyd's Am. Tr. Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................................................................... 13

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................. 7, 15, 22

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................... 23

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ..................................................................................... 20, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................... 5, 15

*In re Petrobras Securities*,
  862 F.3d 250 (2d Cir. 2017) .................................................................................................. 20

*In re USA Gymnastics*,
  No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018) .................................................................... 22

ii

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................. 23

*Katz v. United Synagogue of Conservative Judaism*,
  135 A.D.3d 458 (N.Y. App. Div. 2016) .................................................................... 18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ..................................................................................... 20

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................................... 4

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..................................................................................... 17

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) .............................................................. 5

*Pantelyat v. Bank of Am., N.A.*,
  2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ................................................................ 8

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................... 18

*Rapuano v. Trs. of Dartmouth Coll.*,
  2020 WL 3965784 (D.N.H. July 14, 2020) ............................................................... 14

*Reade-Alvarez v. Eltman, Eltman, & Cooper,*
  *P.C.*, 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ................................................. 16

*Rodriguez v. CPI Aerostructures, Inc.*,
  2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ........................................................... 25

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..................................................................... 19

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................................................... 15

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................... 24

*St. Louis v. Perlitz*,
  No. 3:13-CV-01332 (D. Conn. Aug. 27, 2019) ......................................................... 14

*Stinson v. City of New York*,
  256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................. 13, 14

*TBK Partners, Ltd. v. Western Union Corp.*,
   675 F.2d 456 (2d Cir. 1982)........................................................................................... 14

*TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*,
   No. 18-10601 (Bankr. D. Del. Mar. 19, 2018)............................................................. 22

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) .................................................................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................... passim

**Statutes**

18 U.S.C. § 1591............................................................................................................ 2, 18, 19

18 U.S.C. § 1594...................................................................................................................... 2

18 U.S.C. § 1595...................................................................................................................... 3

28 U.S.C. § 1715.................................................................................................................... 24

**Rules**

Fed. R. Civ. P. 23............................................................................................................ passim

**Treatises**

Newberg and Rubenstein on Class Actions § 4.63 (6th ed. June 2026 update) ........................... 20

Lead Plaintiff Allyson Ward ("Lead Plaintiff"), individually and on behalf of a class of similarly situated victims (the "Class"), respectfully submits this memorandum of law in support of her unopposed motion for: (i) final approval of the Settlement[1] of *Allyson Ward v. Darren K. Indyke, et al.*, No. 24-cv-01204-AS (S.D.N.Y.) (the "Litigation"), between Lead Plaintiff, on behalf of herself and the members of the Class, and the Estate of Jeffrey E. Epstein (the "Estate"), and Darren K. Indyke and Richard D. Kahn, as the Co-Executors of the Estate and in their individual and all other capacities (collectively, the "Co-Executors" and together with Lead Plaintiff and the Estate, the "Parties"), on behalf of the Estate and themselves, in an amount of $35 million;[2] and (ii) approval of the Plan of Allocation. The terms of the Settlement are set forth in the Settlement Agreement dated February 19, 2026 (ECF No. 416-1) (the "Settlement"). The Court preliminarily approved the Settlement on March 3, 2026 (ECF No. 419) (the "Preliminary Approval Order").

## PRELIMINARY STATEMENT

After years of hard-fought litigation—including a motion to dismiss, extensive document discovery, expert discovery, fifteen depositions, a motion for class certification, a motion for summary judgment, and formal mediation—the Parties have reached a Settlement for the survivors of Jeffrey Epstein. The Settlement is the product of arm's-length negotiations between experienced and knowledgeable counsel, with the assistance of an experienced and neutral mediator, and will

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Settlement (ECF No. 416-1), or the accompanying Declaration of Sigrid S. McCawley in Support of Motions for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses ("McCawley Decl."), and in the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, submitted concurrently herewith. All emphasis is added and all citations are omitted unless otherwise noted.

[2]    Pursuant to § 4.2 of the Settlement Agreement, the Fund Administrator informed the Parties that there are more than 40 Eligible Class Members, making the Global Settlement Amount $35 million. *See* ECF No. 416-1 § 1.14.

provide life-changing relief to dozens of sex-trafficking survivors whose lives were destroyed by Epstein and his associates. The Settlement is a strong result for the Class given the likely amount of recovery, the defenses that the Co-Executors advanced, the sensitive nature of the class being comprised of victims of sex trafficking and sexual abuse, and the design of a confidential claim process with an experienced Fund Administrator. For these reasons, the Settlement satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Lead Plaintiff respectfully submits that the Settlement for $35 million, and the Plan of Allocation are fair and reasonable. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and the Plan of Allocation under Rule 23(e) of the Federal Rules of Civil Procedure.

## HISTORY OF THE LITIGATION

Drawing on their extensive experience investigating the inner workings of Jeffrey Epstein's multi-decade sex-trafficking enterprise, Class Counsel began investigating this matter in 2023. Class Counsel commenced the action on February 16, 2024 by filing an individual and class action complaint on behalf of the previously named representatives, Danielle Bensky and Jane Doe 3, which was later amended on September 3, 2025 to add Lead Plaintiff as a named representative.[3] Lead Plaintiff's Corrected Amended Complaint (the "Operative Complaint") alleged that the Co-Executors violated the Trafficking Victims Protection Act ("TVPA") , 18 U.S.C. §§ 1591, 1594,

---

[3] As explained in the Preliminary Approval Motion, the Court dismissed Bensky from this Litigation because she had previously signed a release that barred her claims. *See* ECF No. 415 at 4; ECF No. 80 at 3–7. On December 3, 2025, Jane Doe 3 settled and voluntarily dismissed her separately filed individual claims against the Estate and the Co-Executors, leaving Lead Plaintiff as the sole named representative. *See* ECF No. 415 at 6; ECF No. 397.

1595, and are liable under state law for aiding, abetting, and facilitating battery; intentional infliction of emotional distress ("IIED"); and negligence. *See* ECF No. 359. The Operative Complaint alleged that, throughout the Class Period (January 1, 1995, through August 10, 2019, inclusive), the Co-Executors knowingly and intentionally participated in, assisted, supported, facilitated, and concealed Epstein's sex-trafficking venture. *See id.* Lead Plaintiff further alleges that she and other Class Members, as victims of Epstein's sex-trafficking venture, were harmed by the alleged conduct. *See id.*

The Litigation proceeded for years, with robust fact and expert discovery, and intense motion practice including a motion to dismiss, to certify the class, for summary judgment, and numerous discovery motions. For a full recitation of the case history, Lead Plaintiff respectfully refers the Court to her Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of a Settlement Class, and Approval of Notice Plan for a discussion of the factual background and procedural history of the Litigation, the significant efforts undertaken by Lead Plaintiff and Class Counsel during the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement. *See* ECF No. 415 at 4–8.

## ARGUMENT

### I.   FINAL APPROVAL IS WARRANTED.

The Court should grant final approval of the settlement pursuant to Rule 23(e). To become final and binding, the Settlement requires this Court's approval. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). Courts should approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.,*

3

*Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In evaluating proposed settlements, courts consider "both the settlement's terms and the negotiating process leading to settlement." *Id*. This assessment is conducted "in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010); *see also In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, although proposed settlements should not be "rubber stamp[ed]," courts should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

To determine whether final approval is warranted, the Court first conducts an inquiry pursuant to Rule 23(e)(2), which identifies factors that must be considered in determining whether a class settlement is "fair, reasonable, and adequate," including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23 (e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court then considers the nine so-called *Grinnell* factors, which overlap with the Rule 23(e)(2) factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

4

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. "[T]he new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Not every factor need be satisfied for a settlement to be deemed fair, reasonable, and adequate. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7 (S.D.N.Y. July 12, 2022).

As set forth below, the Parties' Settlement for $35 million in cash is fair, reasonable, and adequate under the relevant 23(e)(2) factors, and the *Grinnell* factors strongly support final approval.

### A. The Rule 23(e)(2) Factors Are Satisfied.

#### 1. Lead Plaintiff and Class Counsel Have Adequately Represented the Class.

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). Both factors favor approval here.

As set forth in support of her motion for preliminary approval of the Settlement, *see* ECF No. 415 at 11–12, Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members. *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a particular claim

5

is established mainly by showing an alignment of interests between class members."). Lead Plaintiff has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by responding to written discovery, searching for and producing documents, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See In re Adv. Battery Techs., Inc.*, 298 F.R.D. at 184 (finding that class representative had adequately represented the class where, similar to here, class representative spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; . . . and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about [s]ettlement"). Lead Plaintiff and Class Counsel zealously advocated for the interests of survivors of Epstein, and Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on discovery issues; and participation in extensive settlement negotiations, which included mediation. Since preliminary approval, Class Counsel have worked diligently with dozens of Class Members and the Fund Administrator to facilitate the claims process. The Settlement is the product of well-informed negotiations and vigorous advocacy on behalf of survivors of Epstein.  Accordingly, this factor weighs in favor of approval of the Settlement.

### 2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations.

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel, particularly where, as here, a mediator assisted the parties in reaching a settlement. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) ("[T]he parties engaged in mediation and the mediator's declaration

6

confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'"). The Settlement was reached after extensive, arm's-length negotiations before Simone K. Lelchuk, a nationally recognized mediator experienced in class actions. ECF No. 416-2 ¶¶ 4, 6–8. Ms. Lelchuk has mediated similar, large settlements on behalf of sexual abuse victims, including *Doe 1 v. Deutsche Bank Aktiengesellschaft* (22-cv-10018-JSR) (S.D.N.Y.). ECF No. 421-1 ¶ 4. Before reaching a Settlement, the Parties submitted extensive mediation briefs and supporting evidence. ECF No. 416-2 ¶ 7.

The Parties and their counsel understood the strengths and weaknesses of the case before reaching a settlement. Lead Plaintiff agreed to settle only after extensive pre- and post-pleading factual investigation, and after the close of Plaintiff's discovery when only limited discovery regarding Lead Plaintiff remained. Lead Plaintiff and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and the Co-Executors' defenses when they agreed to the Settlement. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). This factor weighs in favor of granting final approval.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation.

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided for the class is "adequate" in light of "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23 (e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). These factors support approving the Settlement.

i. *The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals.*

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019). And, because the Co-Executors are adamant that they did not participate in or facilitate Epstein's sex-trafficking venture, at mediation, the Co-Executors expressed that they would not settle the existing claims against them absent an agreement to settle any remaining potential claims against the Estate stemming from Epstein's conduct and would continue to defend against the claims brought against them individually.

If approved, the Settlement will provide Class Members with $35 million in cash, less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, taxes, and tax expenses—a strong recovery given that each Class Member will receive an uncapped Allocated Amount. Additionally, although Lead Plaintiff and Class Counsel believe their case against the Co-Executors is strong, they acknowledge Co-Executors' substantial arguments in defense of this matter, the risks inherent in any jury trial, and the likelihood of post-trial motions or appeal. Even if ultimately successful, the trial and appeal would likely take years, further delaying the recovery by Class Members of compensation for damages they suffered beginning, in some cases, more than a decade ago. When viewed in this context, the Settlement is extremely beneficial to the Class.

ii. *The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective.*

The method for providing notice and processing Class Member claims has been highly effective. It includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Net Settlement Amount ("NSA"). This factor supports final approval as well.

As preliminarily approved by the Court, the notice plan included direct or electronic mailing of the Notice and the Questionnaire and Release to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza* (a prominent Eastern European publication). After reviewing hundreds of thousands of documents—including records produced by the Co-Executors, the Estate, flight logs, message pads, police reports from multiple states and jurisdictions, news articles, and multiple third-party productions—Class Counsel hired international multilingual investigators to locate and obtain contact information for potential Class Members. Class Counsel also contacted attorneys known to have represented survivors in previous Epstein-related litigation to obtain contact information and ensure that all known or suspected Class Members received proper notice. The third-party claims administrator, JND Legal Administration ("JND"), then mailed the Notice to all identified Class Members.

Class Counsel and the investigative team hired by Class Counsel also located and corresponded with dozens of potential Class Members to provide notice of the underlying action and information relating thereto. For Class Members who were not located through the aforementioned efforts, Class Counsel called and emailed potential eligible survivors using known contact information. Class Counsel further asked known Class Members to provide the identity and contact information for any additional potential Class Member that they were familiar with

9

and then underwent the same investigative measures to locate and contact those individuals. In total, Class Counsel caused at least approximately 160 potential Class Members to receive notification of the Settlement by mail, email, or both.

The Fund Administrator, in coordination with Class Counsel and JND, also created a dedicated website for the Settlement, which has been updated regularly with information and key documents concerning the Settlement, including the Settlement, Notice, Questionnaire and Release form, Preliminary Approval Order, all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses, key dates, and an informational video with the Fund Administrator addressing Frequently Asked Questions. *See* SDNY Settlement Fund 2026 Website, https://www.sdnysettlementfund2026.com/.



### SDNY Settlement Fund 2026

| Home | Submit Questionnaire and Release | Upload Supporting Documentation | Submit Consent and Authorization Form | Fund Administrator | Class Counsel | Important Documents | Key Dates | Frequently Asked Questions |

**WELCOME TO THE SDNY SETTLEMENT FUND 2026 WEBSITE**

***PLEASE NOTE THAT THIS WEBSITE DEALS WITH SEXUAL MISCONDUCT AND ABUSE***

This is the website of Simone K. Lelchuk, the Fund Administrator of the SDNY Settlement Fund 2026. This website contains important information about a settlement (the "Settlement") of *Doe 3 v. Indyke, et al.*, currently pending in the United States District Court for the Southern District of New York, Case No. 1:24-CV-01204 (AS). The Court has appointed Simone K. Lelchuk as Fund Administrator for the Settlement.

All capitalized terms not otherwise defined on this website meanings set forth in the Settlement Agreement dated February 19, 2026. To the extent there is any conflict between the definitions of capitalized terms on this website and the Settlement Agreement, the definition in the Settlement Agreement controls. A copy of the Settlement Agreement is available on this website under the **Important Documents page**.

**The Proposed Settlement**

The proposed Settlement of the Litigation, as set forth in the **Settlement Agreement**, provides for (1) $35,000,000 in cash, if there are 40 or more eligible class members, or $25,000,000 in cash, if there are fewer than 40 eligible class members; (2) entry of a Judgment as provided under the Settlement Agreement, dismissing the Litigation with prejudice; (3) awarding Boies Schiller Flexner LLP attorneys' fees, costs, and expenses out of the Global Settlement Account (as defined in the **Notice of Proposed Settlement of Class Action** ("Notice")); and (4) awarding the Named Plaintiffs who, in this Litigation, did not voluntarily dismiss their claims, an incentive award out of the Global Settlement Account. The Court will hold a hearing on **September 16, 2026**, at 2:00 p.m., before the Honorable Arun Subramanian at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY, 10007 to determine whether the proposed settlement is fair, reasonable, and adequate and to approve the Plan of Allocation as fair, reasonable, and adequate.

The proposed claims process is also effective. It includes a Questionnaire and Release that requests the information necessary to allow the Fund Administrator to evaluate each claim individually. The Questionnaire and Release will be provided to the Fund Administrator with built-in protections to avoid the possibility of fraudulent claims, and the Fund Administrator will determine based upon a review of a Class Member's Questionnaire and Release whether the Class

10

Member is eligible to receive an Allocated Amount from the NSA. The Plan of Allocation governs how Class Members' claims will be calculated and how money will be distributed to Eligible Class Members.

In determining an Allocated Amount, the Fund Administrator will consider documentary and non-documentary support for the alleged abuse or trafficking; the circumstances, severity, type, and extent of the alleged abuse or trafficking; the nature and duration of the relationship with Epstein; the impact, harm, and consequences of the alleged conduct on an Eligible Class Member; time spent assisting the preparation or prosecution of the Litigation; participation in civil litigation; and any other factors the Fund Administrator deems relevant.

Class Counsel has gone to great lengths to make the settlement fund as trauma-informed as possible. The Class is comprised of survivors who had never previously received compensation from Epstein or his Estate, in significant part because concerns about confidentiality had deterred many from participating in prior proceedings, even when doing so meant foregoing compensation they were entitled to and desperately needed. Many Class Members have expressed meaningful gratitude to Class Counsel for the approach that has been taken to ensure confidentiality and to treat survivors with dignity and respect. Many survivors were appreciative of the endless hours that Class Counsel spent helping them through the process and ensuring that they fully understood the claims process, even despite significant language barriers. Perhaps more meaningfully, the result of this trauma-informed process has included many Class Members expressing this process as having provided the first step in their emotional and psychological healing.

Finally, Simone K. Lelchuk, the Fund Administrator selected by the Parties and appointed by the Court, has been processing claims diligently, meeting with claimants and providing them an opportunity to cure any procedural deficiencies in their claims as necessary, and will distribute

the Settlement proceeds pursuant to the Court-approved Plan of Allocation. Class Counsel has also joined over a dozen Class Members who wish to speak with the Fund Administrator during their in-person or Zoom meetings.

> iii. *Class Counsel's Fee and Expense Request Is Fair and Reasonable.*

Rule 23(e)(2)(C)(iii)  addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii) . As set forth in the Memorandum of Law in Support of an Award for Attorneys' Fees and Expenses filed concurrently herewith, Class Counsel seeks an award of attorneys' fees in the amount of 30% of the Global Settlement Amount and $841,894.60 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest earned on both amounts at the same rate as earned in the Qualified Settlement Account. As set forth in that motion, this request is reasonable given the strong result in this case, the risks that Class Counsel undertook in litigating this case on a wholly contingent-fee basis and is consistent with fee awards in this District in other types of class action settlements of similar size. Accordingly, this factor supports final approval of the Settlement.

## 4. All Class Members Are Treated Equitably Relative to One Another.

Rule 23(e)(2)(D)  requires courts to evaluate whether the settlement treats class members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Net Settlement Fund will be distributed among Eligible Class Members. This factor supports final approval as well. *See also infra* Section III.

**B. The Proposed Settlement Satisfies the *Grinnell* Factors.**

*The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement.* The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i)  factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i); *see supra* Section I.A.3.i. This case is reflective of the complexity, expense, and duration of class actions. Absent a settlement, further litigation through summary judgment, trial, and appeals is likely to be costly and take several years, with a material risk that there will be no recovery whatsoever.

*The Reaction of the Class to the Settlement.* The Class's reaction to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Aeropostale*, 2014 WL 1883494, at *5. A "low number of objections and requests for exclusion . . . is itself a positive indication of general approval." *Stinson v. City of New York*, 256 F. Supp. 3d 283, 293 (S.D.N.Y. 2017); *see also In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *3–4, *23 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, 2003 WL 21982207 at *1 (2d Cir. Aug. 20, 2003) (granting final approval of settlement where 53 out of 1,350 class members requested exclusion, and 239 filed objections). Here, the Fund Administrator has informed Class Counsel that 16 potential Class Members have submitted valid, timely opt-outs of the Settlement, which represents only a small percent of the overall Class. *See* ECF No. 119 at 7 ("Epstein trafficked or abused hundreds of girls and women during the class period."); ECF No. 349-1 (U.S. Department of Justice and Federal Bureau of Investigation memorandum stating that "Epstein harmed over one thousand victims"). Such "[a] favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).

13

While the deadline to submit objections (August 26, 2026) has not yet passed, not a single Class Member, many of whom have counsel representing them individually, has filed an objection to date.[4] This positive reaction of the Class supports approval of the Settlement. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("The overwhelmingly positive reaction–or absence of a negative reaction–weighs strongly in favor" of final approval.), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 Fed. App'x 40 (2d Cir. 2020); s*ee also Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (affirming approval of class action settlement despite "opposition" from 36% of the class); *TBK Partners, Ltd. v. Western Union*

---

[4]    Class Counsel has received a letter from a lawyer in the U.S. Virgin Islands purporting to be an objection, but it is deficient in many respects. First, the letter is procedurally deficient because, among other things, it does not appear to have been filed with the Clerk of the United States District Court for the Southern District of New York, was not mailed to the Parties' counsel, does not state the address and telephone number of the objector, and does not include documents sufficient to prove membership in the Class. *See* ECF No. 419 ¶¶ 19–20. Second, even if properly filed, the lawyer does not purport to be or represent a Class Member and therefore lacks standing to object to the Settlement. *See, e.g.*, *Stinson*, 256 F. Supp. 3d at 291 ("Only a 'class member may object to the [settlement] proposal,' which implies that '[o]bjectors who are non-Class members lack standing to object to . . . the settlement."); *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, 2021 WL 3514663, at *4 (N.D.N.Y. Aug. 10, 2021) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action," and "[t]he objector . . . has the burden of demonstrating her standing."). Third, even if the lawyer has standing to object to the Settlement, his arguments are without merit. The Estate is properly released by the Settlement because the claims against it are based on the same underlying factual predicate as the claims against the Co-Executors. *See, e.g.*, *Wal-Mart*, 396 F.3d at 109 (collecting cases that hold that class action settlements can release claims against a non-party where they are based on "the same underlying factual predicate as the claims asserted against the parties to the action being settled"). The release of the Estate as part of this Settlement was made abundantly clear in the settlement materials, the Notice, and communications between Class Members and Class Counsel or the Fund Administrator. Further, courts in this Circuit have routinely approved Rule 23(b)(3) opt-out class action settlements for victims of sex abuse and sex trafficking, including victims of Epstein. *See, e.g.*, *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019-JSR (S.D.N.Y. Nov. 13, 2023), ECF No. 284 ¶ 2 (certifying Rule 23(b)(3) class action settlement for victims of Epstein); *Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*, No. 22-cv-10018-JSR (S.D.N.Y. Oct. 20, 2023), ECF No. 122 ¶ 2 (same); *Rapuano v. Trs. of Dartmouth Coll.*, 2020 WL 3965784, at *1–2 (D.N.H. July 10, 2020) (certifying Rule 23(b)(3) sexual abuse class action settlement); *St. Louis v. Perlitz*, No. 3:13-cv-01132 (D. Conn.), ECF Nos. 1080 ¶ 2 (June 6, 2019), 1089 (Aug. 27, 2019) (same).

*Corp.*, 675 F.2d 456, 462, 464 (2d Cir. 1982) (affirming approval of class action settlement over objections of a "majority" of the class). The "absence of objections may itself be taken as evidencing the fairness of a settlement." *Aeropostale*, 2014 WL 1883494, at *5.

**The Stage of the Proceedings.** The extent and substance of Lead Plaintiff's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement. *See supra* Section I.A.2. The voluminous discovery record of hundreds of thousands of pages of documents, attending fifteen depositions, as well as the extensive expert reports and evidentiary submissions made during mediation, permitted Lead Plaintiff and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations. *See, e.g.*, *In re Marsh*, 265 F.R.D. at 139; *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012), at *8 ("[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the [s]ettlement.").

**The Risk of Establishing Liability and Damages.** The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i)  ("costs, risks, and delay of trial and appeal"). As demonstrated above, Lead Plaintiff has satisfied the fourth *Grinnell* factor. *See supra* Section I.A.3.i.

**The Risks of Maintaining the Class Action Through Trial.** Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where, as here, it is "likely that defendants would oppose class certification if the case were to be litigated." *In re Payment Card*, 330 F.R.D. at 40; *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012). The Parties reached a settlement before a class was certified, and after a motion for class certification was fully briefed for the previous named representative, Jane Doe 3, which the Co-

Executors opposed. If the case were to proceed, the Co-Executors would oppose certification as they have previously, and even if preliminarily certified, the Co-Executors could—and likely would—appeal that order, *see* Fed. R. Civ. P. 23(f), continue to challenge any effort to adjudicate Class Members' individualized claims in a joint proceeding, seek to narrow the Class definition at a later point, and/or move for decertification of the class that the Court certified, *see* Fed. R. Civ. P. 23(c)(1)(C); Settlement ¶ 1.3 (noting that the Co-Executors will not oppose certification of the class for settlement purposes only). Although Class Counsel believes it has provided enough information for the Court to certify the Class at the final approval stage for settlement purposes, there is no guarantee that the Class would be certified if the parties proceeded with the litigation, and the Co-Executors have indicated that they are only consenting to class certification for purposes of the Settlement. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998). Thus, Lead Plaintiff has satisfied the fifth *Grinnell* factor.

***Co-Executors' Ability to Withstand a Greater Judgment.*** As explained in the Motion for Preliminary Approval, a defendant's ability to withstand a greater judgment is not dispositive when other factors favor approval. *See* ECF No. 415 at 27. This case is not against a large corporation with virtually limitless resources to withstand judgment; it is against two individuals. The Settlement therefore provides a significant benefit to the Class because, by including the Estate as a Party to the Settlement, the Estate's resources are funding the Settlement.

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.*** The adequacy of the amount recovered in a settlement is assessed

"not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."). Given the alleged facts and circumstances, the Settlement amount is reasonable.

In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of final approval of the Settlement.

## II.    FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE.

The Court should grant final certification of the Class because the Class meets Rule 23(a)'s requirements and this action qualifies for certification under Rule 23(b)(3).

Rule 23(a) requires that every class must satisfy: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2 (S.D.N.Y. June 12, 2023); *see also* Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All requirements are met here.

### A. Rule 23(a)'s Requirements Are Satisfied.

*Numerosity.* Courts presume numerosity when the proposed class contains 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In*

17

*re GSE*, 414 F. Supp. 3d at 700. Following an extensive Court-ordered notice program, over 60 potential Class Members have submitted Questionnaires and Releases. Numerosity is therefore satisfied.[5]

***Commonality.*** Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *See Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011). Lead Plaintiff brings tort claims for aiding, abetting, and facilitating battery, IIED, and negligence. Under New York law, the elements of aiding and abetting battery are: "(1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant's knowing and substantial assistance in the principal violation." *Doe 1 v. Deutsche Bank Aktiengesellschaft et al.*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023). To plead an IIED claim, the plaintiff must allege "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Id.* at 415. And to state a claim for negligence, "a plaintiff must show that the defendant owed the plaintiff a duty and breached that duty, and that the breach proximately caused the plaintiff harm." *Katz v. United Synagogue of Conservative Judaism*, 135 A.D.3d 458, 459 (N.Y. App. Div. 2016). These tort claims all involve both legal and factual issues common to the Class, such as whether the Co-Executors had knowledge of and provided substantial assistance to Epstein's sex-trafficking venture; whether they owed a duty to Epstein's victims and whether they breached their duty by providing financial and legal services

---

[5] The Class is also sufficiently ascertainable for certification. In accordance with the Preliminary Approval Order, potential Class Members were identified through documents produced in discovery and the extensive Court-approved notice plan, including through targeted publications. *See supra* Section I.A.3.ii.

to Epstein; and whether their alleged involvement in Epstein's scheme constitutes extreme and outrageous conduct.

Lead Plaintiff also pleads three violations of the TVPA on behalf of the Class: a beneficiary liability claim under 18 U.S.C. § 1591(a) for participation in a sex-trafficking venture, obstruction of the TVPA's enforcement, and conspiracy to violate the TVPA. The elements of a 18 U.S.C. § 1591(a) beneficiary liability claim are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020). An obstruction of TVPA enforcement claim requires proof that the Co-Executors acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking. 18 U.S.C. § 1591(d). The elements of the TVPA claims are common to the Class—if each Class Member brought an individual action, each would have to prove that the Co-Executors knew about Epstein's sex-trafficking venture through testimony and evidence from the Co-Executors and other Epstein employees; that the Co-Executors benefitted from the trafficking venture through evidence of pay each earned from Epstein's accounts; and that each knowingly participated in the venture by, for example, allegedly structuring cash withdrawals knowing that such would be used to pay class members for sex, and paying funds to co-conspirators. Accordingly, common questions of law and fact exist. *See JPMorgan*, 2023 WL 3945773, at *4 (finding class satisfied commonality because "[t]his case raises not just one but many questions that are capable of classwide resolution").

***Typicality.*** Lead Plaintiff's claims are typical of other Class Members because they arise from the same course of events and each makes similar legal arguments to prove the Co-Executors' liability. *Id.* at *5. Lead Plaintiff alleges that Epstein sexually abused them during periods of time

when one or both Co-Executors provided professional services to Epstein, and she claims that the Co-Executors knew about and were negligent in failing to prevent harm to Epstein's victims. *See id.* at *6 (finding that when "claims arise out of the same course events as those of other class members, and since similar legal arguments bear on her and other class members' claims, . . . the typicality requirement is satisfied"); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376–77 (2d Cir. 1997). Thus, Lead Plaintiff's claims are typical of the claims of other Class Members.

*Adequacy.* Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). Here, Lead Plaintiff has, and will continue to, "fairly and adequately" represent the Class. She seeks to hold the Estate accountable for Epstein's sex-trafficking venture that harmed her and countless others and the Co-Executors accountable for services that she alleges facilitated that venture, and she has actively participated in and monitored the Litigation. Her interests align with the Class Members' interests, and she has prosecuted this matter vigorously. Further, Class Counsel is "qualified, experienced and generally able to conduct the litigation." *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

## B. Rule 23(b)(3)'s Requirements Are Satisfied.

*Predominance.* Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues. *JPMorgan*, 2023 WL 3945773, at *8. "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *In re Petrobras Secs. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017), *aff'd,* 784 F. App'x 10 (2d Cir. 2019). The requirement calls "only for predominance, not exclusivity, of common questions." *See Chalmers v. City of New York*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022). Because the proposed Settlement contemplates that there will be no trial, issues relating to the proportion of class-wide evidence to individualized

20

evidence at trial are of lesser importance. *See* 2 Newberg and Rubenstein on Class Actions § 4.63 (6th ed. June 2026 update) ("[I]n settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well.").

Nonetheless, common, class-wide issues predominate in this case. Lead Plaintiff brings tort claims for aiding, abetting, and facilitating battery, negligence, and IIED and claims for violations of the TVPA. As outlined above, the tort claims will involve similar factual issues subject to common proof, such as whether Epstein abused and trafficked them; whether the Co-Executors facilitated or negligently failed to prevent Epstein's sex-trafficking venture; and whether they owed a duty to Epstein's victims and whether they breached their duty by providing legal and accounting services to Epstein. Lead Plaintiff's TVPA claims will also primarily require the adjudication of issues common to the Class and subject to common proof, including issues of whether Epstein abused her as part of a trafficking venture, whether the Co-Executors should have known about Epstein's sex-trafficking venture, whether they benefitted from the trafficking venture, and whether they in some way facilitated the venture.

***Superiority.*** Here, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* These factors weigh in favor of certifying the proposed Class. The TVPA was designed to protect victims of trafficking who are particularly vulnerable, fear reprisal, and wish to avoid repeatedly revisiting their past traumas. Class treatment is superior in this context. *See, e.g.*, *JPMorgan*, 2023 WL 3945773, at \*10–11. Class treatment would also avoid a "multiplicity and

scattering of suits" that would follow were the victims of Epstein's venture to independently vindicate their rights in courts across the country. *In re MF Glob. Holdings*, 310 F.R.D. at 239. Litigating this case has required taking substantial discovery, including many depositions and obtaining hundreds of thousands of documents, that would be relevant to each Class Member's claims but would be difficult for each Class Member to obtain on her own in an individual lawsuit. *See* ECF No. 416 ¶ 7. Moreover, many Class members are not proficient in English and lack familiarity with the U.S. legal system, such that class treatment is preferable. *JPMorgan*, 2023 WL 3945773, at *11.

## III.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE.

The Plan of Allocation—the method by which the Net Settlement Fund is distributed to the Class—"must be fair and adequate." *In re Facebook*, 343 F. Supp. 3d at 414; *see* Fed. R. Civ. P. 23(e)(2). Where, as in this case, a Plan of Allocation is "formulated by competent and experienced class counsel," it "need have only a 'reasonable, rational basis.'" *In re Marsh*, 265 F.R.D. at 145. The Plan of Allocation easily satisfies that standard.

The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 416-1, Exhibit A-1 at 5. It is based on a similar methodology which the Fund Administrator used in other cases. *See* ECF No. 421-1 ¶ 5; *TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*, No. 18-10601 (Bankr. D. Del. Mar. 19, 2018); *Farruggio et al. v. 918 James Receiver, LLC et al.*, No. 003831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018); *Doe 1 v. JPMorgan Chase Bank, N.A.*, (22-cv-10019) (S.D.N.Y.).

The Plan also treats all Class Members equitably. Any Class Members who submit a valid and timely Questionnaire and Release, does not otherwise exclude themselves from the Class, and

22

is not otherwise deemed ineligible by the Fund Administrator will receive an Allocated Amount. The Plan describes the various factors and criteria the Fund Administrator will take into consideration in determining an Allocated Amount.

As such, the Plan of Allocation equitably distributes the Net Settlement Fund to all Eligible Class Members who follow these procedures as specified in the Notice and the Questionnaire and Release. This process is fair, reasonable, and consistent with the plans of allocation in other class action settlements. There have been no objections to the Plan of Allocation filed by a Class Member to date, which further supports approval. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at \*14 (S.D.N.Y. Nov. 7, 2007) ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation."). The Plan of Allocation is appropriate and warrants approval.

## IV.    NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

The form and manner of notice here satisfied those requirements. In accordance with the Preliminary Approval Order, *see* ECF No. 419, the parties crafted a Notice that advised the Class Members of the essential terms of the Settlement and provided information regarding Class Counsel's application for an award of attorneys' fees and expenses. The Notice also provided specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting a valid and timely Questionnaire and Release pursuant to the proposed Plan of Allocation and objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses. Further, the Notice provided contact information for the Fund Administrator and Class Counsel and advised Class Members on how to obtain further information regarding the Settlement.

Pursuant to the Court's Preliminary Approval Order, the Fund Administrator timely (1) caused a copy of the Notice and the Questionnaire and Release to be mailed by First-Class Mail or electronic mail to all identifiable Class Members; (2) posted those documents on the case-designated website; and (3) caused publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza*. *See* ECF No. 421-1 ¶¶ 9–11. The Co-Executors will also file proof of notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. *See* ECF No. 419 ¶ 31.

Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17

24

(S.D.N.Y. Mar. 24, 2014). The requirements of Due Process impose similar requirements. *See Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options . . . in connection with [the] proceedings.'").

Both the substance and method of distributing the Notice comport with Rule 23, the dictates of Due Process, and are consistent with the notices in other, similar actions. The combination of (i) individual notice by mail or email to all Class Members who can be reasonably identified, and supplemental mailings and email notice for Class Members who could not be reached on the first attempt, (ii) the creation of a dedicated Settlement website, (iii) publication in *USA Today* and *Gazeta Wyborcza*, (iv) notices concerning the rights of the Class Members, including the manner in which objections can be lodged, (v) notices concerning the nature, history and progress of the litigation, (vi) detailed instructions on how to file the Questionnaire and Release, or opt-out of the Settlement, (vii) a detailed description of the Plan of Allocation, and (ix) notice concerning the fees and litigation expenses to be sought by Class Counsel, represent the best notice practicable under the circumstances. *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding that a similar notice plan was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations"); *see Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (concluding that direct First-class mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances").

In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed

settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

## CONCLUSION

The Settlement is a strong recovery for the Class of Epstein survivors, particularly in light of the certain delay and significant risks posed by continuing the Litigation. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley
Daniel Crispino (*pro hac vice*)
Megan Nyman (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com

David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards 10001
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

*Counsel for Allyson Ward*

26

## CERTIFICATE OF COMPLIANCE

I, Sigrid S. McCawley, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 8,315 words, exclusive of the cover page, certificate of compliance, table of contents, tables of authorities, and signature block, and therefore complies with the word-count limitations set forth in Local Rule 7.1(c).

*/s/ Sigrid S. McCawley*