**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ALLYSON WARD, individually and on
behalf of all others similarly situated,

    Plaintiff,

       v.

DARREN K. INDYKE and RICHARD D.
KAHN,

    Defendants.

Case No. 1:24-cv-01204-AS

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN**
**<u>AWARD OF ATTORNEYS' FEES AND EXPENSES</u>**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350

*Counsel for Allyson Ward*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

HISTORY OF THE LITIGATION .................................................................................... 3

ARGUMENT ...................................................................................................................... 7

    I.   CLASS COUNSEL'S FEE REQUEST IS REASONABLE. ............................................. 7

       A.  Class Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund. ................................................................................................... 7

       B.  The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable. .................... 9

          1.  The Quality of Representation Supports the Requested Fee. ................................ 9

          2.  The Relationship of the Requested Fee to the Settlement. .................................. 12

          3.  The Time and Labor Expended by Counsel. ......................................................... 13

          4.  The Risks of the Litigation. ................................................................................. 17

          5.  The Magnitude and Complexity of the Litigation ............................................... 21

          6.  Public Policy Considerations ................................................................................ 22

       C.  The Class's Reaction to the Fee Request to Date Supports the Requested Fee. .......... 23

       D.  The Fee Request Is Reasonable Based on a Lodestar Cross-Check. .......................... 23

    II.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THIS LITIGATION. ...................................................... 25

CONCLUSION.................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ...................................................................................... 22

*Bensky v. Indyke*,
743 F. Supp. 3d 586 (S.D.N.Y. 2024) ...................................................................................... 10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................................... 7

*Bryant v. Potbelly Sandwich Works, LLC*,
2020 WL 563804 (S.D.N.Y. Feb. 4, 2020)................................................................................. 24

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*
*L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ....................................................................................... 21

*Chabak v. Somnia Inc.*,
2025 WL 1275214 (S.D.N.Y. Apr. 28, 2025) .......................................................................... 12

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..................................................................... 20, 21

*City of Birimingham Ret. & Relife Sys. v. Davis*,
806 F. App'x 14 (2d Cir. Mar. 12, 2020).................................................................................. 13

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 7, 22, 23, 24

*deMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).......................................................................... 16

*Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*,
No. 22-cv-10018-JSR (S.D.N.Y. Oct. 20, 2023) ..................................................................... 12

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
No. 22-cv-10019-JSR (S.D.N.Y. Nov. 13, 2023)..................................................................... 12

*Doe 3 v. Indyke*,
2025 WL 2403193 (S.D.N.Y. Aug. 19, 2025).......................................................................... 10

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ................................................................................................. 8

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  62 F.4th 704 (2d Cir. 2023) ...................................................................................... 21

*Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
  925 F.3d 63 (2d Cir. 2019) ........................................................................................ 7

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) .............................................................................. passim

*Grice v. Pepsi Beverages Co.*,
  363 F. Supp. 3d 401 (S.D.N.Y. 2019).................................................................... 12

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................................... 24

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................................................... 22

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006).......................................................... 23

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
  2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) ............................................................ 8

*In re BHP Billiton Ltd. Sec. Litig.*,
  2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019).......................................................... 13

*In re Carlotz, Inc. Sec. Litig.*,
  2025 WL 1873442 (S.D.N.Y. July 7, 2025)............................................................ 12

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................ 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................................... 9, 13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 25

*In re Hub Cyber Security Ltd.*,
  No. 23-cv-05764-AS (S.D.N.Y. July 27, 2026) ..................................................... 12

*In re KeySpan Corp. Sec. Litig.*,
  2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ....................................................... 24

iii

*In re Lloyd's Am. Tr. Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................................................. 8

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
   2021 WL 3159810 (S.D.N.Y. June 15, 2021) ................................................................ 13

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 11, 21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................... 24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ............................................................................. 8

*In re Pfizer Inc. S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011) ........................................................................... 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ................................................................................. 20

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .......................................................................................... 23

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................... 7, 8

*In re Top Tankers, Inc. Sec. Litig.*,
   2008 WL 2944620 (S.D.N.Y. 2008) .............................................................................. 13

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................................. 11

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
   No. 23-cv-00431-AS (S.D.N.Y. Oct. 29, 2024) ........................................................... 12

*Landmen Partners, Inc. v. Blackstone Grp., L.P.,*
   2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ............................................................. 13

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................................... 13

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ....................................................................................................... 24

iv

*New York State Ass'n for Retarded Child., Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) ............................................................................... 24

*Rapuano v. Trs. of Dartmouth Coll.*,
    2020 WL 3965784 (D.N.H. July 14, 2020) ........................................................... 12

*Scheufele v. Tableau Software, Inc.*,
    2021 WL 9681019 (S.D.N.Y. Sept. 17, 2021) ...................................................... 11

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ...................................................... 24

*St. Louis v. Perlitz*,
    No. 3:13-CV-01332 (D. Conn. Aug. 27, 2019) ..................................................... 12

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ................................................................................. 8

*Tiro v. Pub. House Invs., LLC*,
    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ...................................................... 11

**Statutes**

18 U.S.C. § 1591 .......................................................................................................... 3

18 U.S.C. § 1594 .......................................................................................................... 3

18 U.S.C. § 1595 ....................................................................................................... 3, 9

**Other Authorities**

Association of Trial Lawyers of America, *Representing the Victim of Sexual Assault and Abuse:
    Special Considerations and Issues*, Ann. 2006 ATLA-CLE 1889 (2006) .............................. 19

Blanche Bong Cook, *Stop Traffic: Using Expert Witnesses to Disrupt Intersectional
    Vulnerability in Sex Trafficking Prosecutions*, 24 Berkeley J. Crim. L. 147 (2019) .......... 18, 19

Chitra Raghavan & Kendra Doychak, *Trauma-coerced Bonding and Victims of Sex Trafficking:
    Where Do We Go From Here?*, 17(2) International Journal Emergency Mental Health and
    Human Resilience (2015) ............................................................................................. 18

Jane Musgrave, *Prosecutor to Jeffrey Epstein victims: I'm Sorry Deal Labeled You as
    Prostitutes*, Palm Beach Post (Dec. 3, 2020) ................................................................. 19

Kimberly D. Bailey, *Sex in a Masculinities World: Gender, Undesired Sex, and Rape*, 21 J.
    Gender Race & Just. 281 (2018) .................................................................................... 19

Operational Indicators of Trafficking in Human Beings, Int'l L. Org. (2009), ........................... 18

Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017) ............................................................................................................... 12

**INTRODUCTION**

Jeffrey Epstein was one of the world's most notorious sex offenders, yet many of his victims have never been compensated for the harm they suffered. After years of hard-fought litigation, Class Counsel[1] secured a $35 million Settlement for survivors of Epstein's sex-trafficking operation.[2] This Settlement is the result of a decades-long effort by Class Counsel to bring relief to sex-trafficking victims whose lives were ruined by Epstein.

While many individual lawsuits have been brought against Epstein or Epstein's estate and several class actions have been brought against financial institutions that facilitated his illegal activities, this case involves class claims against Epstein's personal lawyer and accountant—Darren K. Indyke and Richard D. Kahn (the "Co-Executors")—for providing legal and accounting services that allegedly supported Epstein's illegal activities in violation of federal and state law. In pursuit of those claims, Class Counsel painstakingly investigated the Co-Executors' relationships with Epstein and how their work on behalf of Epstein and his companies may have facilitated Epstein's sex-trafficking venture. Relying on decades of experience representing Epstein's victims, Class Counsel were prepared to argue and present evidence at trial that the Co-Executors knew or should have

---

[1]    As used herein, "Class Counsel" means Boies Schiller Flexner LLP ("BSF"). *See* Declaration of Sigrid S. McCawley filed on behalf of Boies Schiller Flexner LLP in Support of Motion for an Award of Attorneys' Fees and Expenses ("BSF Decl."). Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Settlement (ECF No. 416-1), or the accompanying Declaration of Sigrid S. McCawley in Support of Motions for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses ("McCawley Decl."), and in the Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Approval of the Plan of Allocation ("Final Approval Mem."), submitted concurrently herewith. All emphasis is added and all citations are omitted unless otherwise noted.

[2]    Pursuant to § 4.2 of the Settlement Agreement, the Fund Administrator informed the Parties that there are more than 40 Eligible Class Members, making the Global Settlement Amount $35 million. *See* ECF No. 416-1 § 1.14.

known about Epstein's sex-trafficking venture and that their services facilitated Epstein's trafficking in violation of the Trafficking Victims Protection Act ("TVPA") and New York state law.

Class Counsel's performance in this litigation resulted in a settlement of $35 million to be provided to the Class, a result that will provide life-changing relief to dozens of sex-trafficking survivors whose lives were destroyed by Epstein and his associates. The recovery is especially meaningful given the nature of the claims and the barriers survivors face in coming forward. Indeed, plaintiffs in sex trafficking and abuse cases often face difficult and oppressive discovery into their personal lives and public shaming that can ruin their lives, and such experiences serve as a warning to other survivors contemplating filing suit on their own.

Class Counsel's application for a 30% fee award is for less than what Class Counsel's lodestar is for working on the matter and reflects an 18% reduction, rendering the 30% request more than justified. The Settlement is a strong result for the Class given the likely amount of recovery, the defenses to liability and damages that the Co-Executors advanced, the sensitive nature of the Class being comprised of victims of sex trafficking and sexual abuse, and the design of a claim process that accounted for the potential for re-traumatization. Class Counsel now respectfully moves the Court for an award of attorneys' fees of 30% of the Global Settlement Amount and $841,894.60 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation.

As set forth below, the relevant factors articulated in *Goldberger* strongly support the requested award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Following an extensive Court-ordered notice program, over 60 proposed Class Members submitted Questionnaires and Releases—despite the geographic distance of many of Epstein's survivors (many of whom are presently living in war-torn countries), and the likelihood that many survivors may have chosen not to participate due to fear of retaliation, cultural differences in those countries, or

2

traumatization. Not one Class Member has filed an objection to the Settlement. The $35 million Settlement that Class Counsel obtained provides the Class with an immediate and certain recovery in a case that faced significant risks at summary judgment, trial, and on appeal. In achieving this result, Class Counsel worked 13,634.60 hours on this complex litigation, all on a contingency basis and with no guarantee of ever being paid for their work on behalf of the Class.

Class Counsel believes that an attorneys' fee award of 30% of the Global Settlement Amount, together with payment of litigation expenses, properly reflects the significant risks shouldered by Class Counsel in prosecuting the Litigation, as well as the result achieved. Under this Circuit's preferred method for assessing fees in class action litigation, a 30% fee award is reasonable and well within the range of attorneys' fees awarded in similar complex contingency cases. For the reasons set forth below, Class Counsel respectfully submits that this request is fair and reasonable.

## HISTORY OF THE LITIGATION

Class Counsel commenced this action on February 16, 2024 by filing an initial individual and class action complaint on behalf of previously named representatives, Danielle Bensky and Jane Doe 3, which was later amended on September 3, 2025 to add Lead Plaintiff Allyson Ward ("Lead Plaintiff" or "Ward") as a named representative.[3] *See* ECF Nos. 1, 359. Lead Plaintiff's Corrected Amended Complaint (the "Operative Complaint") alleges that, throughout the Class Period (January 1, 1995, through August 10, 2019, inclusive), the Co-Executors knowingly and intentionally participated in, assisted, supported, and concealed Epstein's sex-trafficking venture.

---

[3]     The Corrected Amended Complaint alleges that the Co-Executors violated the TVPA, 18 U.S.C. §§ 1591, 1594, 1595, and are liable under state law for aiding, abetting, and facilitating battery; intentional infliction of emotional distress ("IIED"); and negligence. *See* ECF No. 359. As explained in the Preliminary Approval Motion, the Court dismissed Bensky from this Litigation because she had previously signed a release that barred her claims. *See* ECF No. 415 at 4; ECF No. 80 at 3–7.

*See* ECF No. 359. The Operative Complaint further alleges that the Co-Executors' assistance to Epstein's sex-trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale of Epstein's access to and control of victims, causing damage to members of the Class. *See id.*

In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents they have accumulated over the past ten plus years representing Epstein survivors. ECF No. 416 ¶¶ 7, 13–14; McCawley Decl. ¶¶ 4–7. Class Counsel have confidentially interviewed over 50 individuals, including dozens of survivors. ECF No. 416 ¶ 7; McCawley Decl. ¶ 7. Additionally, Class Counsel conducted significant research into the Co-Executors and reviewed an enormous volume of publicly available documents regarding Epstein and his sex-trafficking operation, including civil complaints, police reports, investigative reports, other information obtained through criminal investigations, court transcripts, news articles, audio recordings of survivors, and a multitude of other publicly available sources. McCawley Decl. ¶ 18.

On April 8, 2024, the Co-Executors moved to dismiss or strike the complaint. *See* ECF Nos. 29, 30. Bensky and Jane Doe 3 filed a response on May 23, 2024, *see* ECF No. 60, and the Co-Executors filed a reply on June 12, 2024, *see* ECF No. 65. The Court granted in part and denied in part the motion on August 5, 2024, dismissing Bensky's claims. *See* ECF No. 80. The Co-Executors answered the initial complaint on August 19, 2024. *See* ECF Nos. 92, 93, 94.

The Co-Executors also separately challenged Jane Doe 3's anonymity, which Class Counsel vigorously opposed. *See* ECF Nos. 81, 82, 98, 100. The Court denied the motion on September 26, 2024. *See* ECF No. 134 at 4.

Class Counsel engaged in years-long extensive discovery efforts, including fact, class

certification, and expert discovery, participating in fifteen depositions, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for four expert witnesses. ECF No. 416 ¶ 7; McCawley Decl. ¶ 7. Numerous discovery disputes were litigated and heard by the Court, including a crime-fraud motion that resulted in the production of thousands of additional documents ECF Nos. 223, 278. Discovery of the Lead Plaintiff was continuing at the time the Settlement was reached.

On September 13, 2024, Jane Doe 3, as Plaintiff, moved for class certification. *See* ECF Nos. 118, 119. On October 18, 2024, Jane Doe 3 moved to amend the complaint to add Ward as a plaintiff and named class representative, which the Co-Executors opposed. *See* ECF Nos. 193, 194, 266. On November 4, 2024, the Co-Executors moved for summary judgment. *See* ECF Nos. 252, 261. On August 19, 2025, the Court granted Jane Doe 3's motion to amend the initial complaint and denied the motions to certify the class and for summary judgment on the class claims without prejudice to allow for additional discovery. *See* ECF No. 353. The Court reasoned that due to the amendment adding Ward, further discovery was needed as to her. *Id.* The Corrected Amended Complaint was filed on September 3, 2025, *see* ECF No. 359, and the Co-Executors answered the Operative Complaint on September 22, 2025, *see* ECF Nos. 370, 371. On December 3, 2025, Jane Doe 3 settled and voluntarily dismissed her separately filed individual claims against the Estate as well as the Co-Executors, leaving Ward the sole named representative. *See* ECF No. 397.

On October 28, 2025, the Parties participated in a confidential mediation before Simone K. Lelchuk, an experienced mediator in sexual misconduct and abuse cases. ECF No. 416-2 ¶¶ 3, 6. The mediation was preceded by the submission and exchange of mediation statements by the Parties. *Id.* ¶ 7. The Parties engaged in good faith negotiations during the mediation and over the following months. *Id.* ¶¶ 8–9. On December 18, 2025, the Mediator proposed terms for a settlement

5

in principle ("Mediator's Proposal"), and the Parties agreed to those terms on December 19, 2025. *Id.* ¶ 9. The Parties subsequently negotiated, drafted, finalized and signed the formal settlement agreement detailing the terms of the proposed Settlement, which was filed with the Court on February 19, 2026. McCawley Decl. ¶ 42.

On March 3, 2026, the Court granted preliminary approval of the Settlement, including the form and manner of notice of the Settlement to the Class. *See* ECF No. 419. Since that time, Class Counsel has remained actively involved in consulting with survivors and assisting with claims administration. For example, Class Counsel provided the Fund Administrator with an extensive confidential list of potential class members and their current contact information based on Class Counsel's own research, past representations, interviews, and meetings with survivors. ECF No. 421-1 ¶ 7. Class Counsel also hired international multilingual investigators to locate and correspond with dozens of potential Class Members in their native language to provide notice of the underlying action and information relating thereto. In addition, Class Counsel identified a number of other potential Class Members by conducting an extensive review of documents relating to Epstein, including flight records, wire transfer records, police records, and documents produced in discovery. Class Counsel expended significant resources ensuring that all potential Class Members were aware of the Settlement. Class Counsel also spent substantial time speaking with potential Class Members who had questions about the Settlement and claims administration process and assisting dozens of Class Members with preparing and submitting their claims as well as attending meetings with Class Members and the Fund Administrator. *See* McCawley Decl. ¶¶ 48–49.

## ARGUMENT

### I.    CLASS COUNSEL'S FEE REQUEST IS REASONABLE.

In light of the $35 million Settlement, Class Counsel's fee request is reasonable under both the percentage method and the lodestar cross-check method. The $35 million Settlement provides substantial relief to the Class, the requested 30% fee is consistent with awards in comparable common fund cases, and the request satisfies each factor of the *Goldberger* test this Court applies to assess the reasonableness of fee requests. *See Goldberger*, 209 F.3d at 50. As a backstop check on reasonableness, Class Counsel's negative lodestar multiplier is well below the range of reasonable ratios accepted by courts in this Circuit.

### A. Class Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in this District have consistently adhered to this precedent. *See, e.g.*, *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584–85 (S.D.N.Y. 2008).

Fees awarded pursuant to the common fund doctrine fairly and adequately compensate class counsel for services rendered to the class and ensure that all class members contribute equally toward the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47. Awards of attorneys' fees from a common fund "also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014)

The Court has discretion to determine a reasonable fee. *Goldberger*, 209 F.3d at 47. Typically, courts use one of two methods to determine a reasonable fee: (1) the percentage of recovery method and (2) the lodestar method. *Id*. The percentage of recovery method is the preferred method for calculating the reasonableness of attorneys' fees in the Second Circuit. *See In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009) (explaining that the "trend in this Circuit is toward the percentage [of the fund] method"); *In re Telik*, 576 F. Supp. at 585 (describing the percentage of recovery method as "the preferred method"). The percentage of recovery method also "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

In contrast, the lodestar method—under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate"—has created "temptation for lawyers to run up the number of hours for which they could be paid," and "an unanticipated disincentive to early settlements." *Goldberger*, 209 F.3d at 47–48; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) (same). The lodestar method also requires courts to "engage in a gimlet-eyed review of line-item fee audits," which is "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 49. Courts of Appeals have broadly approved the percentage method, with two circuits requiring its use in common-fund cases. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (requiring use of percentage method); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268–71 (D.C. Cir. 1993) (same).

For these reasons, courts in the Second Circuit and this District typically utilize the percentage of recovery method. Courts are further guided by the criteria set out in *Goldberger* for

8

determining a reasonable fee in a common fund case: (1) the quality of the representation; (2) the requested fee in relation to the settlement; (3) the time and labor expended by counsel; (4) the risk of the litigation; (5) the magnitude and complexities of the litigation; and (6) public policy considerations. 209 F.3d at 50. Considering these factors, Class Counsel's fee request is reasonable.

### B. The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable.

Class Counsel seeks attorneys' fees equal to 30% of the Global Settlement Amount. In light of the strong Settlement achieved in this action, the percentage of recovery method is appropriate for evaluating the fee request, and the 30% fee request is reasonable under that framework.

### 1. The Quality of Representation Supports the Requested Fee.

Class Counsel respectfully submits that the strong result achieved supports the requested fee award. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) ("The quality of the representation and the standing of Lead Counsel are important factors that also support the reasonableness of the requested fee.").

First, the case was factually and legally complex. Class Counsel vigorously pursued claims pursuant to the TVPA and New York state law against sophisticated defense counsel, litigating the case past a challenging motion to dismiss, through a robust fact and expert discovery period, through briefing on class certification, a motion to amend, a motion for summary judgment, and numerous contentious discovery disputes, and advancing the case forward despite the dismissal of the original named plaintiff's claims. The claims against the Co-Executors were brought pursuant to 18 U.S.C. § 1595(a), the provision of the TVPA that permits civil litigants to sue those who knowingly benefit from participating in a sex-trafficking venture. Class Counsel also brought other claims under the TVPA, including aiding and abetting, conspiracy, and obstruction, as well as various state tort claims. Class Counsel vigorously litigated the Co-Executors' motion to dismiss, which raised complex arguments regarding, among other things, the level of knowledge that courts

9

interpret § 1595(a) to require (*see* ECF No. 30 at 22–24); and whether Bensky's Epstein Victims' Compensation Program release barred her and other Class Members' claims against the Co-Executors (*id.* at 8–12). The Court held that the complaint adequately alleged that the Co-Executors knowingly benefited from participation in Epstein's trafficking venture. *Bensky v. Indyke*, 743 F. Supp. 3d 586, 599 (S.D.N.Y. 2024). And although the Court ultimately dismissed Bensky's claims as barred by the release, the Court found that Class Counsel "promptly moved to amend" to add another named class representative. *Doe 3 v. Indyke*, 2025 WL 2403193, at *3 (S.D.N.Y. Aug. 19, 2025). This supports the reasonableness of Class Counsel's fee request.

Second, the $35 million settlement is a strong result for the Class. Class Members who submitted a Questionnaire and Release and were not otherwise determined to be ineligible will receive an Allocated Amount based upon the Fund Administrator's judgment. ECF No. 416-1 §§ 4.1–4.3; ECF No. 421-1 ¶ 5. The Fund Administrator evaluated each eligible Class Member in a trauma-informed manner consistent with best practices.

The Settlement also provides a path to recovery for survivors who otherwise would not have come forward due to aversion to litigation or reluctance to share sensitive or traumatic experiences with attorneys. These Class Members will be entitled to an Allocated Amount, and will not need to engage counsel, file their own lawsuits, be subjected to burdensome discovery requests, testify at deposition or trial about their traumatic experiences, or wait for payment pending appeal.

Further, there remained critical questions of fact to be determined at trial as to whether Lead Plaintiff would be able to prove the Co-Executors' liability under the TVPA and New York law. Each Class Member would also have to prove the amount of damages to which she is entitled based on recounting personal and intimate information, and the Co-Executors would have asserted defenses to those damages to limit the amount of recovery. In light of the material risks that Lead

10

Plaintiff and the Class might recover less, or nothing, without the Settlement, Class Counsel's request for 30% of the Settlement Amount is reasonable. *See Scheufele v. Tableau Software, Inc.*, 2021 WL 9681019, at *2 (S.D.N.Y. Sept. 17, 2021) ("[H]ad Lead Counsel not achieved the Settlement, there would remain a significant risk that the Class[] may have recovered less or nothing from the Defendants[.]").

Third, courts also recognize that the quality of the opposition faced by plaintiff's counsel should be considered in assessing the quality of counsel's performance. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing [p]laintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (finding that among the factors supporting a 30% fee award was that defendants were represented by "one of the country's largest law firms"). Here, Indyke is represented by Hughes Hubbard & Reed LLP and Kahn is represented by Patterson Belknap Webb & Tyler LLP—both well-regarded, sophisticated law firms—who spared no effort in representing their clients. Notwithstanding this formidable opposition, Class Counsel's demonstrated willingness to vigorously prosecute the Litigation through trial and the inevitable appeals enabled Lead Plaintiff to achieve an exceedingly favorable Settlement for the benefit of the Class.

Finally, not a single Class Member has objected to the Settlement, which is a testament to the quality of the representation, and Class Members have proactively reached out to Class Counsel to express their gratitude for the Settlement. *See* Final Approval Mem. at 11, 13–15; *Tiro v. Pub. House Invs., LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (crediting the lack of objections to the attorneys' fee award as a factor demonstrating the quality of representation).

11

### 2.    The Relationship of the Requested Fee to the Settlement.

Class Counsel's efforts have resulted in a $35 million Settlement for the Class. This recovery is an impressive result in a pre-trial settlement in a TVPA case. Accordingly, Class Counsel's request for fees totaling 30% of the Settlement Amount is fair and reasonable in light of the substantial benefit Class Counsel's work has conferred on the Class.

"Courts often look to empirical evidence of attorney's fees awarded in similar cases as a starting point for the baseline reasonable fee inquiry." *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019). Class Counsel's request is justified by the strong recovery it achieved for the Class and is consistent with awards in comparable sexual abuse class actions over the last ten years. *See, e.g.*, *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019-JSR (S.D.N.Y. Nov. 13, 2023), ECF No. 283 ¶ 1 (awarding 30% of TVPA class action settlement fund as fees); *Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*, No. 22-cv-10018-JSR (S.D.N.Y. Oct. 20, 2023), ECF No. 121 ¶ 1 (same); *Rapuano v. Trs. of Dartmouth Coll.*, 2020 WL 3965784, at *2 (D.N.H. July 10, 2020) (awarding 35% of sexual abuse class action settlement fund as fees); *St. Louis v. Perlitz,* No. 3:13-cv-01132 (D. Conn.), ECF Nos. 1080 ¶ 14 (June 6, 2019), 1089 (awarding 31% of sexual abuse class action settlement as fees) (Aug. 27, 2019); *see also* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017). Class Counsel's request is also similar to what courts in this District have awarded in other types of class action settlements of similar sizes. *See, e.g.*, *In re Carlotz, Inc. Sec. Litig.*, 2025 WL 1873442, at *3 (S.D.N.Y. July 7, 2025) (Subramanian, J.) (approving fee request of 33 1/3% of the settlement fund plus expenses); *In re Y-mAbs Therapeutics, Inc. Sec. Litig.*, No. 23-cv-00431-AS (S.D.N.Y. Oct. 29, 2024), ECF No. 69 ¶ 11 (same); *In re Hub Cyber Security Ltd.*, No. 23-cv-05764-AS (S.D.N.Y. July 27, 2026), ECF No. 159 ¶ 4 (same); *Chabak v. Somnia Inc.*, 2025 WL 1275214, at *2 (S.D.N.Y. Apr. 28, 2025) (approving fee request of 31.5% of the settlement fund and collecting

12

cases); *In re London Silver Fixing, Ltd. Antitrust Litig.*, 2021 WL 3159810, at \*1 (S.D.N.Y. June 15, 2021) (awarding 30% of $38 million in antitrust class action settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at \*1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement plus expenses), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 14 (2d Cir. 2020), *as amended* (Mar. 17, 2020).[4] Given that fee requests for 30% of the Global Settlement Amount have been approved as reasonable in this Circuit, Class Counsel's request for 30% is appropriate, and is well within what this and other Courts have found to be reasonable.

### 3.  The Time and Labor Expended by Counsel.

Class Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class. Class Counsel and their paraprofessionals devoted 13,634.60 hours to prosecuting the Class's claims through July 31, 2026, not accounting for additional work performed in August in connection with final approval, claims administration, and this fee application. BSF is primarily a trial firm experienced in class actions and prepares its case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. ECF No. 416 ¶ 4; McCawley Decl. ¶ 17. BSF took precisely that approach here and respectfully submits that doing so led directly to the successful settlement.

---

[4]     *See also In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (approving $22 million in fees from $75 million settlement fund, amounting to approximately 29% of the settlement); *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, 2013 WL 11330936, at \*3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33.33% of the total recovery plus expenses); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*12 (S.D.N.Y. Nov. 30, 2021) (noting that fee requests for 33% of the settlement fund have "been approved as reasonable in this Circuit"); *Flag Telecom*, 2010 WL 4537550, at \*24 (noting that 30% of the "net" settlement fund "is well within the range of fees awarded . . . by courts in this Circuit"); *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at \*13 n.9 (S.D.N.Y. 2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

13

To effectively prepare this exceedingly complex class action case for trial against highly sophisticated defense counsel, Class Counsel organized and analyzed hundreds of thousands of pages of party and third-party discovery. Class Counsel completed this work not just to defeat dispositive motions but, more importantly, to quickly shepherd the matter to trial. As detailed in the Declaration submitted with Class Counsel's Motion for Final Approval, Class Counsel undertook substantial efforts on behalf of the Class. *See* McCawley Decl. ¶¶ 7, 17–49. The work performed and the resources dedicated are summarized below.

***Fact Discovery and Development.*** Before filing, Class Counsel investigated this complex matter by engaging in extensive research, interviewing dozens of witnesses and potential class members, and reviewing tens of thousands of documents. That investigation involved investigating Epstein's worldwide trafficking scheme during the timeframe he was associated with the Co-Executors, interviewing survivors, and investigating the Co-Executors relationship with Epstein. *See id.* ¶¶ 6–7, 18. After the matter was filed, the parties engaged in extensive years-long discovery efforts. Class Counsel served three sets of document requests on the Co-Executors, met and conferred frequently with the Co-Executors about their requests, and analyzed the over 150,000 documents produced by the Co-Executors, the Estate, and numerous third parties. *See id.* ¶ 28. Class Counsel took six depositions of key witnesses during fact discovery, including the Co-Executors, HBRK employees Harry Beller and Bella Klein, Epstein's former house manager, and the former chief of police of the Palm Beach Police Department. *See id.* ¶ 29.

The Co-Executors served three sets of document requests on Jane Doe 3 and one set of document requests on Lead Plaintiff, and Class Counsel collected, searched, and produced thousands of pages of responsive documents from Jane Doe 3's files and hundreds of pages of responsive documents from Lead Plaintiff's files. *See id.* ¶ 30. Class Counsel spent significant time

14

preparing responses and objections, meeting and conferring with the Co-Executors' Counsel about the scope of their requests, and producing responsive documents. *See id.* Class Counsel also conducted substantial third-party discovery.

*Motion Practice.* At the time of Settlement, Class Counsel had devoted substantial time and resources to multiple discovery motions and hearings, as well as three major motions. First, the Co-Executors filed a motion to dismiss or strike on April 8, 2024. *See* ECF Nos. 29, 30. Class Counsel closely analyzed the motion and submitted a response in opposition to the motion. *See* ECF No. 60. The Court held oral argument on the Co-Executors' motion, which required significant preparation by Class Counsel. The Co-Executors' motion involved complex legal theories, as further outlined above (*see supra* I.B.1.), and responding to the Co-Executors' motion required substantial resources. Second, on September 13, 2024, Class Counsel filed a motion to certify the class, which was accompanied by a declaration and over 25 exhibits. *See* ECF Nos. 118, 119, 120. On October 21, 2024, Class Counsel filed a reply, which was accompanied by a declaration and over a dozen additional exhibits. *See* ECF Nos. 196, 197. Third, on November 25, 2024, Class Counsel filed an opposition to the Co-Executors' motion for summary judgment, and the opposition was accompanied by a declaration and nearly 200 exhibits. *See* ECF Nos. 305, 311, 312, 313, 314. In addition, Class Counsel also briefed a motion to amend, and an opposition to a motion to disclose Jane Doe 3's identity. *See* ECF Nos. 98, 193, 194, 281.

*Expert Discovery.* At the time of Settlement, Class Counsel had retained three expert witnesses: Jane Khodarkovsky, a former prosecutor and sex-trafficking expert; Marianne DeMario, a Certified Public Accountant specializing in forensic accounting and damages analyses; and Chitra Raghavan, a licensed clinical psychologist. McCawley Decl. ¶ 34. Ms. Khodarkovsky submitted a 26-page report, Ms. DeMario submitted a 16-page report, and Ms. Raghavan submitted

15

a 30-page report as well as a 3-page declaration. *Id.* ¶ 35. Class Counsel reviewed these reports and declaration, prepared each expert for deposition, and defended each expert's deposition prior to settlement. *Id.* ¶ 35. Class Counsel also briefed oppositions to the Co-Executors' *Daubert* motions regarding Ms. Khodarkovsky and Ms. DeMario. *See* ECF Nos. 290, 319. In addition, Class Counsel reviewed and analyzed the Co-Executors' expert Gail Cohen's expert report and prepared for and took Ms. Cohen's deposition prior to settlement. McCawley Decl. ¶ 36.

*Mediation and Settlement.* On October 28, 2025, Class Counsel engaged in an arms-length, confidential mediation with the Co-Executors and the Estate before Simone K. Lelchuk, an experienced mediator. *Id.* ¶ 37. The mediation was preceded by the submission of confidential mediation statements by the Parties. *Id.* ¶ 38. Over the following months, Parties engaged in arm's length negotiations, and ultimately reached a settlement to resolve the Litigation. *Id.* ¶¶ 39–42. Beyond the work already performed, Class Counsel will continue to expend time and resources overseeing the administration of the Settlement. *See deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward . . . ").

After Settlement, Class Counsel combed through hundreds of thousands of documents including records produced by the Co-Executors and the Estate, flight logs, message pads, police reports from multiple states and jurisdictions, news articles, and multiple third-party productions to identify all potential Class Members within Class Counsel's possession. Class Counsel called and emailed potential survivors using known contact information. Class Counsel also hired international multilingual investigators to locate and correspond with dozens of potential Class Members in their native language to provide notice of the underlying action and information

16

relating thereto. Class Counsel further asked each known Class Member to provide the identity and contact information for any additional potential Class Member that they were familiar with and then underwent the same investigative measures to locate and contact those individuals. Lastly, Class Counsel has devoted hundreds of hours meeting with Class Members in person and over Zoom, and engaging in telephone conversations with Class Members in order to assist in the completion of the Questionnaires and Releases in the most trauma-informed manner possible, and assisting Class Members with the interview process. Many Class Members have expressed gratitude for the way in which Class Counsel handled the fund administration as many women had never come forward as a result of language barriers, cultural differences, and deep-rooted fear.

Throughout this Litigation, Class Counsel staffed the matter efficiently and avoided unnecessary duplication. Moreover, additional hours and resources have and will be expended seeking the Court's final approval of the Settlement, responding to Class Member inquiries, assisting Class Members with completing and submitting Questionnaires and Releases, assisting the Fund Administrator in overseeing the claims process, participating in the final approval hearing, and presenting the final proposed allocation of settlement proceeds among the Class Members. Given the substantial time and effort devoted by Class Counsel to obtain a $35 million recovery, a request for attorneys' fees amounting to 30% of the Settlement Amount is appropriate.

### 4. The Risks of the Litigation.

Class Counsel faced substantial risks throughout the Litigation, and the Court's consideration of a reasonable fee should account for them. Indeed, the risk undertaken in the litigation is often considered the most important *Goldberger* factor. *See Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."); *In re Comverse Tech., Inc. Sec.*

*Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010). Class Counsel respectfully submits that the risks Class Counsel shouldered throughout the Litigation strongly favor the requested fee.

***The Risks of Establishing Liability.*** As set forth in the Final Approval Memorandum and the accompanying Declaration of Sigrid S. McCawley, while Lead Plaintiff remains confident in her claims, her ability to ultimately prove her case at trial and obtain damages was uncertain. *See* McCawley Decl. ¶¶ 52–55; Final Approval Mem. at 8.  The Co-Executors successfully moved to dismiss the original named plaintiff's claims, and raised numerous challenges to Lead Plaintiff's allegations of liability under the TVPA and state law causes of action. *See also supra* at 9–10. The Co-Executors were likely to raise at summary judgment, trial, and on appeal whether (1) Lead Plaintiff could prove that the Co-Executors knowingly participated in and provided substantial assistance to Epstein's sex-trafficking venture; (2) whether the Co-Executors owed a duty to Epstein's victims and whether they breached that duty; and (3) whether their alleged involvement in Epstein's scheme constitutes extreme and outrageous conduct.

The Co-Executors may have also argued that Class Members' relationships with Epstein were consensual and not the stereotypical trafficking relationship that most jurors would expect.[5] The jury would be tasked with determining whether the Class Members' relationships with Epstein were consensual, whether they were victims of force, fraud, or coercion, and whether they were trafficked under the statutory definition in the TVPA. These complex issues create substantial risk in any trafficking case, no matter the strength of the evidence, and would require competing expert

---

[5]     *See, e.g.*, Blanche Bong Cook, *Stop Traffic: Using Expert Witnesses to Disrupt Intersectional Vulnerability in Sex Trafficking Prosecutions*, 24 BERKELEY J. CRIM. L. 147, 166–67 (2019) ("As a general matter, jurors are more inclined to recognize criminality in cases involving child sex trafficking or cases involving aggressive or sensationalized displays of force . . .").

18

testimony about concepts like coercion, force, and trauma bonding.[6] Research shows that jurors' own biases and assumptions about sexual assault and trafficking, their personal perceptions of a victim's character and lifestyle, and their beliefs about how much a victim must resist sexual abuse in order to be entitled to the protections of the justice system could heavily influence the outcome of the trial.[7] Indeed, Epstein's criminal defense attorneys advanced the narrative that those he abused were "prostitutes," rather than victims, for years.[8] Whether Lead Plaintiff ultimately would prove liability was far from assured. As importantly, the range of potential damages—assuming Lead Plaintiff succeeded in establishing liability at trial—was such that the Class faced substantial risk that a trial victory would have led to a recovery of a lesser amount than the Settlement. And even if Lead Plaintiff's claims survived the Co-Executors' motion for summary judgment and were successful at trial, these arguments undoubtedly would have been raised on appeal.

---

[6]    *See, e.g.*, Operational Indicators of Trafficking in Human Beings, Int'l L. Org. (2009), http://www.ilo.org/wcmsp5/groups/public/@ed_norm/@declaration/documents/publication/wcm s_105023.pdf ; Chitra Raghavan & Kendra Doychak, *Trauma-coerced Bonding and Victims of Sex Trafficking: Where Do We Go From Here?*, 17 INT'L J. EMERGENCY MENTAL HEALTH & HUM. RESILIENCE 583, 583-87 (2015) (explaining that victims of abuse can form emotional attachments to their abusers as a result of control dynamics and power imbalances).

[7]    *See, e.g.*, Cook, *supra* note 5, at 168–69 ("Jurors, judges, and the public more readily recognize force and fraud where the victim is subjected to sensationalized forms of violence. Much less obvious and detectible as 'common sense' are the multitudinous forms of vulnerability, psychological manipulations, 'head games,' and grooming processes that sex traffickers use to control their victims."); Elizabeth F. Kuniholm, *Representing the Victim of Sexual Assault and Abuse: Special Considerations and Issues*, Association of Trial Lawyers of America, July 2006 ("Suspicion, personal responsibility, and blaming the plaintiff are the most deadly of the biases, and the issues that arise in sexual assault and abuse cases seem to trigger these biases in a particularly potent way, especially when jurors identify with the plaintiff."); Kimberly D. Bailey, *Sex in a Masculinities World: Gender, Undesired Sex, and Rape*, 21 J. GENDER RACE & JUST. 281, 291 (2018) ("Even with respect to those jurisdictions that no longer formally require force, courts and jurors still intuitively look for either physical resistance or some type of force on the part of the perpetrator as evidence of a lack of consent.").

[8]    *See* Jane Musgrave, *Prosecutor to Jeffrey Epstein victims: I'm Sorry Deal Labeled You as Prostitutes*,    PALM    BEACH    POST,    Dec.    3,    2020, https://www.palmbeachpost.com/story/news/2020/12/03/prosecutor-jeffrey-epsteins-victims-im-sorry-deal-labeled-you-prostitutes/3812499001/.

Further, class certification was not certain, and if it were granted, maintaining class certification through trial carries risk. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (the risk of maintaining a class action through trial weighed in favor of final approval because "a class certification order may be altered or amended at any time before a decision on the merits"). With those risks in mind, securing a guaranteed payout for the Class weighs heavily in favor of awarding Class Counsel its fee request.

**The Contingent Nature of the Fee.** The fee award must also account for the risk that Class Counsel could walk away from this case with nothing. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (same). Class Counsel undertook this litigation on a wholly contingent basis, investing millions of dollars in time and resources to develop the facts and legal theories, complete fact discovery and undertake expert discovery, and oppose critical motions, all with no guarantee of compensation or recovery of expenses. Class Counsel has not yet been compensated for any time or expenses since they began to represent the Class and would have received no compensation or payment of its expenses had this case not been resolved successfully. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the litigation and had to advance its own funds to pay out-of-pocket expenses. McCawley Decl. ¶¶ 13, 65. Under such circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Class Counsel's assumption of the contingent-fee risk strongly supports the reasonableness of a fee request. As the Second Circuit explained, a "district court [may] reasonably conclude[]

20

that the significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023); *see also Marsh*, 265 F.R.D. at 148; *Fresno Cnty. Emps.' Ret. Ass'n*, 925 F.3d at 68 ("[A]n unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case.").

### 5.   The Magnitude and Complexity of the Litigation

The magnitude and complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Christine Asia Co.*, 2019 WL 5257534, at *18–19. The Court may make "specific and detailed findings from the record, as well as from its own familiarity with the case, including the fact that counsel expended substantial time and effort in the litigation" to determine whether Class Counsel has met an element of the *Goldberger* test. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Here, such findings support Class Counsel's contention that the complexity and magnitude of the Litigation support a fee award for Class Counsel's diligent efforts to secure an excellent settlement for the Class.

As noted above, this case raised a number of complex legal arguments requiring substantial research and collaboration. *See supra* I.B.1. These complexities were especially acute given the case's subject matter, involving Epstein's complex decades-long sex-trafficking operation; difficult issues around sexual abuse, coercion and control, and trauma bonding, requiring expert consultation and testimony; and the Co-Executors' roles as Epstein's personal lawyer and accountant in allegedly facilitating Epstein's activities. All legal issues and factual allegations were hotly contested. Litigating such a case prior to and at trial on the many complex, contested issues inherent in this type of litigation requires substantial skill, resources, and experience, all while facing an uncertain outcome and with millions of dollars in damages at stake. Ultimately, because the

21

Litigation revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 30% fee. *Aeropostale*, 2014 WL 1883494, at \*16.

The Litigation involved significant briefing, motion practice, fact discovery, and expert discovery, requiring a sophisticated law firm with significant experience both litigating class action lawsuits and negotiating settlements to deploy significant resources in order to litigate effectively on behalf of its clients. Discovery and motion practice would continue to be hard-fought were litigation to continue. Given the complexity and high stakes of the Litigation and the significant public interest it attracted, and the resources required to litigate the matter, Class Counsel's ability to secure a favorable outcome counsels in favor of the proposed fee award.

### 6. Public Policy Considerations

Public policy considerations support awarding the requested fee. "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest.  A fee that is too low would create poor incentives to bring a class action case such as this . . . " *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270–71 (S.D.N.Y. 2020). The representation of vulnerable sex-trafficking victims is the type of case worthy of judicial encouragement, especially due to the difficulties associated with bringing such actions individually given the sensitive nature of the subject matter and their inherent risks. The reality is that "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the Global Settlement Fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005). Appropriately compensating Class Counsel for its successful efforts in this case will enhance the incentives for competent counsel to shoulder the significant risk of contingent-fee litigation in service of the public's interest in pursuing the rights of sex-trafficking victims.

**C. The Class's Reaction to the Fee Request to Date Supports the Requested Fee.**

The Fund Administrator included in her Notice to potential Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, plus expenses not to exceed $1 million. *See, e.g.*, ECF No. 421-1 at 9. The time to object to the fee request expires on August 26, 2026. *See id*. ¶ 13. To date, no Class Member has filed objections to the fee and expense amounts set forth in the Notice or to any other aspect of the Settlement. Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Further, many Class Members have communicated their appreciation for the Settlement to Class Counsel. *See* Final Approval Mem. at 11. Such a positive reaction by the Class supports the fairness of the fee request.

**D. The Fee Request Is Reasonable Based on a Lodestar Cross-Check.**

The Court has discretion to use the fee applicant's lodestar as a cross-check on reasonableness. *Goldberger*, 209 F.3d at 50 "It bears emphasis that the lodestar computation here is a cross-check, calculated with less precision than would be required if lodestar were the primary methodology." *In re AOL Time Warner*, *Inc. Sec. & ERISA Litig.*, 2006 WL 3057232, at *28 (S.D.N.Y. Oct. 25, 2006). As *Goldberger* explained, when used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Class Counsel's fee request is appropriate under the lodestar metric.

The lodestar analysis has two parts. First is determining the lodestar, which is calculated by "multipl[ying] the number of hours each attorney spent on the case by each attorney's reasonable hourly rate." *Aeropostale*, 2014 WL 1883494, at *13. Here, Class Counsel's combined

23

lodestar totals $12,770,245.50.[9] BSF Decl. ¶¶ 6–7. "[S]econd, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *Aeropostale*, 2014 WL 1883494, at *13. Based upon the fee request of 30% of the Global Settlement Amount, Class Counsel's lodestar yields a ***negative*** multiplier of approximately 0.82, meaning that Class Counsel will be taking an 18% discount and will not be receiving any kind of premium for the risk of taking on the matter.

"Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012). For that reason, courts "have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, 'the percentage fee would represent a negative multiplier of the lodestar.'" *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (collecting cases); *see also Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *7 (S.D.N.Y. Feb. 4, 2020) ("Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'"). The negative multiplier of 0.82 amounts to an 18% discount on Class Counsel's time in this case, which strongly supports the reasonableness of the requested fee. *See Aeropostale*, 2014 WL 1883494, at *13.

---

[9]    In calculating its lodestar, BSF used current, rather than historical, billing rates. The Supreme Court and courts in this Circuit have approved that approach, which compensates counsel for rising inflation (which have been particularly pronounced in the post-pandemic period) and the time-value of money. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989); *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (explaining that if, as here, "the [legal] services were rendered over two or three years, relevant figures for the current year will normally still be appropriate"); *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *15 n.8 (E.D.N.Y. Sept. 30, 2005) ("Given that services for this litigation were rendered over three years, this Court finds that use of current rates may be appropriate for purposes of the [lodestar] cross-check."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

The lodestar multiplier analysis is used as a cross-check on reasonableness. Here, while shouldering the risk of recovering nothing, Class Counsel litigated this case on a contingency basis, investing over 13,000 hours for the benefit of the Class through July 31, 2026, before accounting for additional time incurred in August. The requested fee is reasonable, both calculated as a percentage of the fund and cross-checked using the lodestar method.

## II.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THIS LITIGATION.

Class Counsel also requests an award of $841,894.60 in expenses incurred in prosecuting the Litigation. *See* BSF Decl. ¶ 8. Counsel is entitled to the reimbursement of expenses reasonably incurred on behalf of the Class in litigating the case.  *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Class Counsel's expenses include filing fees, the costs of hiring experts and consultants, travel both national and international due to the location of various witnesses, document management, mediating the Class's claims, and computer research. A breakdown by category of the expenses incurred is set forth in the accompanying BSF declaration. *See* BSF Decl. ¶¶ 8–9. These expenses were critical to counsel's success, and other courts have found that similar expenses were compensable.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. . . . [T]hey are properly chargeable to the [s]ettlement fund.").  No objections to the expense amount set forth in the Notice have been filed. Accordingly, Class Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

25

**CONCLUSION**

Class Counsel's efforts have achieved a strong result for the Class. Based on the foregoing, and the entire record herein, Class Counsel respectfully requests that the Court award attorneys' fees of 30% of the Settlement Amount, plus expenses in the amount of $841,894.60.

Dated: August 12, 2026                         Respectfully submitted,


                                               */s/ Sigrid S. McCawley*
                                               Sigrid S. McCawley
                                               Daniel Crispino (*pro hac vice*)
                                               Megan Nyman (*pro hac vice*)
                                               Boies Schiller Flexner LLP
                                               401 E. Las Olas Blvd., Suite 1200
                                               Fort Lauderdale, FL 33316
                                               Telephone: (954) 356-0011
                                               Fax: (954) 356-0022
                                               Email: smccawley@bsfllp.com
                                               Email: dcrispino@bsfllp.com
                                               Email: mnyman@bsfllp.com

                                               David Boies
                                               Andrew Villacastin
                                               Alexander Law
                                               Boies Schiller Flexner LLP
                                               55 Hudson Yards
                                               New York, NY 10001
                                               Telephone: (212) 446-2300
                                               Fax: (212) 446-2350
                                               Email: dboies@bsfllp.com
                                               Email: avillacastin@bsfllp.com
                                               Email: alaw@bsfllp.com

                                               *Counsel for Allyson Ward*

26

## CERTIFICATE OF COMPLIANCE

I, Sigrid S. McCawley, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 8,503 words, exclusive of the cover page, certificate of compliance, table of contents, tables of authorities, and signature block, and therefore complies with the word-count limitations set forth in Local Rule 7.1(c).

_/s/ Sigrid S. McCawley_