**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLYSON WARD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>    Defendants. | Case No. 1:24-cv-01204-AS |

**DECLARATION OF SIGRID S. MCCAWLEY IN SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND (2) AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, Sigrid S. McCawley, declare as follows:

1.         I, Sigrid S. McCawley, am a member in good standing of the bar of the State of New York and am admitted to practice before this Court. I am a Managing Partner of Boies Schiller Flexner LLP ("BSF"). I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

2.         Boies Schiller Flexner LLP ("Class Counsel") represents Plaintiff Allyson Ward ("Lead Plaintiff" or "Plaintiff") and the Class and has invested significant resources into investigating and litigating this case.

3.         I submit this declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of the motions for: (a) final approval of the Settlement between Lead Plaintiff, on behalf of herself and the Class, and the Estate of Jeffrey E. Epstein (the "Estate"), and Darren K. Indyke and Richard D. Kahn (collectively, the "Co-Executors" and together with Lead Plaintiff

1

and the Estate, the "Parties"), in an amount of $35 million, and approval of the Plan of Allocation, and (b) an award of attorneys' fees and expenses.

## I.     PRELIMINARY STATEMENT

4.      This case grew out of Class Counsel's long representation of the survivors of Jeffrey Epstein's sex-trafficking ring since June 2014.

5.      By 2023, Class Counsel had successfully brought lawsuits against Epstein himself during his life, his estate after his death, collaborators like Ghislaine Maxwell, certain associates like Prince Andrew, and financial institutions that provided services to Epstein like JP Morgan Chase Bank and Deutsche Bank. Although we had recovered substantial amounts for our clients, we believed they had not been fully compensated, and that many who had made the scope, scale, and duration of Epstein's sex trafficking possible had not been held accountable.

6.      For many years, we investigated Epstein's relationship with his associates. In 2023, we decided to make a concerted effort to develop cases against Darren K. Indyke and Richard D. Kahn, Epstein's personal lawyer and accountant, respectively.

7.      Class Counsel has expended substantial time and resources in actively and diligently litigating this action. Class Counsel has spent over 13,000 hours and substantial resources in developing the case, undertaking substantial discovery, and engaging in motion practice. In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents that have accumulated over the past ten plus years representing Epstein survivors. Class Counsel confidentially interviewed over 50 individuals, including dozens of survivors both in the United States and abroad. Additionally, Class Counsel conducted significant research into the Co-Executors and reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-

trafficking operation. Class Counsel expended considerable resources once the suit was filed by engaging in extensive discovery efforts, including extensive fact, class certification, and expert discovery, fifteen depositions, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for four expert witnesses. Class Counsel also engaged in motion practice and opposed the Co-Executors' motions, including discovery disputes, a motion to dismiss, a motion for class certification, and a motion for summary judgment.

8.      This Settlement is the product of hard-fought litigation and takes into consideration the significant risks specific to the case. In particular, the Settlement is the result of arm's-length negotiations between the Parties facilitated by Simone K. Lelchuk, an experienced mediator. These negotiations were conducted by experienced counsel with a full understanding of both the strengths and weaknesses of their respective cases.

9.      Lead Plaintiff believes that this Settlement is an excellent result. While the time for objecting to the Settlement or counsel's fees has not yet expired, no Class Member has filed an objection to the Settlement. Any objections will be addressed in Class Counsel's reply brief (which, in accordance with the schedule set by the Court, will be filed no later than September 9, 2026).

## II.      SUMMARY OF LEAD PLAINTIFF'S ALLEGATIONS

10.      Lead Plaintiff alleges that the Co-Executors knowingly and intentionally participated in, assisted, supported, facilitated, and concealed Jeffrey Epstein's sex-trafficking venture by, among other things, ensuring Epstein had access to cash, helping Epstein avoid detection from regulators and credit card and banking representatives, and facilitating payments to Epstein's victims. *See* ECF No. 359 (Corrected Amended Complaint). Lead Plaintiff alleges that the Co-Executors' assistance to Epstein's sex-trafficking enterprise prevented the authorities from

discovering his illegal scheme and increased the size and scale of Epstein's access to and control of victims, causing damage to members of the Class.

## III.    THE REASONS FOR THE SETTLEMENT

11.    In opting to settle the Litigation, Lead Plaintiff and Class Counsel were informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on discovery issues; and participation in extensive settlement negotiations, which included mediation. Class Counsel were further informed by extensive briefing on a motion to dismiss, for class certification, and for summary judgment. Lead Plaintiff and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and the Co-Executors' defenses when they agreed to the Settlement. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein.

12.    On balance, considering all the circumstances and risks both sides faced were the case to continue to trial, both Lead Plaintiff (for herself and the Class) and the Co-Executors concluded that settlement on the terms agreed upon was in their respective best interests.

13.    Class Counsel have prosecuted the Litigation on a wholly contingent basis and have advanced and incurred substantial litigation expenses. In doing so, Class Counsel shouldered the substantial risk of an unfavorable result. Class Counsel have not yet received any compensation for their efforts.

14.    Class Counsel's fee application for 30% of the Settlement Amount is fair, reasonable, and within the range of fee awards in this District in similar class actions. *See* Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses ("Fee Motion"). Particularly under the facts of this case, this percentage is justified in light of the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, and

the nature and extent of legal services performed.

15.     Class Counsel also seek payment for expenses totaling $841,894.60 that were reasonably and necessarily incurred in the prosecution of the Litigation. *See* Declaration of Sigrid McCawley in Support of Motion for An Award of Attorneys' Fees and Expenses ¶ 8 ("BSF Decl."). These expenses include: (a) the fees and expenses of consultants and experts whose services Class Counsel required in the successful prosecution and resolution of this case; (b) the costs associated with investigations, and conducting fact and expert witness depositions, which included court reporter and videographer fees as well as travel expenses; (c) photocopying, imaging, shipping and managing a database of hundreds of thousands of pages of documents; (d) online factual and legal research; and (e) mediation fees. These expenses were reasonable and necessary to obtain a successful result.

## IV.    THE LITIGATION

16.     The following is a summary of the principal events that occurred during the course of the Litigation.

17.     Class Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class. BSF is primarily a trial firm and prepares its case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. Class Counsel took that approach here and respectfully submits that doing so led directly to the successful Settlement.

### A.    Preparation for and Commencement of the Action

18.     As described above, before filing Class Counsel investigated this complex matter by engaging in extensive research, conducting dozens of interviews, and reviewing thousands of documents. That investigation involved investigating Epstein's worldwide trafficking

scheme during the timeframe he was associated with the Co-Executors, interviewing survivors, and investigating the Co-Executors' relationships with Epstein. Additionally, Class Counsel reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-trafficking operation, including civil complaints, police reports, investigative reports, other information obtained through criminal investigations, court transcripts, news articles, audio recordings of survivors, and a multitude of other publicly available sources. Finally, Class Counsel conducted significant research into the Co-Executors.

19. On February 16, 2024, previous named class representatives, Danielle Bensky and Jane Doe 3, commenced this action by filing an individual and class action complaint against the Co-Executors on behalf of themselves and on behalf of "[a]ll women who were sexually abused or trafficked by Jeffrey Epstein between January 1, 1995 and August 10, 2019, both dates inclusive." *See* ECF No. 1 at ¶ 189.

20. On April 8, 2024, the Co-Executors moved to dismiss or strike the complaint. *See* ECF Nos. 29, 30. Danielle Bensky and Jane Doe 3 filed a response on May 23, 2024, *see* ECF No. 60, and the Co-Executors filed a reply on June 12, 2024, *see* ECF No. 65.

21. On August 5, 2024, the Court entered an order granting in part and denying in part the Co-Executors' motion to dismiss, and dismissed Bensky from this action because she had previously signed a release that barred her claims. *See* ECF No. 80.

22. The Co-Executors answered the initial complaint on August 19, 2024. *See* ECF Nos. 92, 93, 94.

23. The Co-Executors also separately challenged Jane Doe 3's anonymity, which Class Counsel opposed. *See* ECF Nos. 81, 82, 98, 100. The Court denied the motion on September 26, 2024. *See* ECF No. 134 at 4.

24.  On October 18, 2024, Jane Doe 3 filed a motion to amend the class action complaint to add Lead Plaintiff as a named representative, which the Co-Executors opposed. *See* ECF Nos. 193, 194.

25.  The Court granted the motion to amend on August 19, 2025, *see* ECF No. 353, and Jane Doe 3 and Lead Plaintiff filed a Corrected Amended Complaint on September 3, 2025, *see* ECF No. 359 (Corrected Amended Complaint).

26.  The Co-Executors answered the Corrected Amended Complaint on September 22, 2025. *See* ECF Nos. 370, 371.

27.  On December 3, 2025, Jane Doe 3 settled and voluntarily dismissed her separately filed individual claims against the Estate as well as the Co-Executors, leaving Lead Plaintiff the sole named representative. *See* ECF No. 397.

**B.  Fact Discovery**

28.  After the matter was filed, the parties engaged in extensive years-long discovery efforts. Class Counsel served three sets of document requests on the Co-Executors, met and conferred frequently with the Co-Executors about their requests, and analyzed the over 150,000 documents produced by the Co-Executors, the Estate, and numerous third parties.

29.  During the fact-discovery period, Class Counsel took six depositions of key witnesses with relevant information, including the Co-Executors, HBRK employees Harry Beller and Bella Klein, Epstein's former house manager, and the former chief of police of the Palm Beach Police Department. These witnesses gave testimony on a wide variety of topics, including Epstein's sex-trafficking crimes, the Co-Executors' relationship with Epstein, and the Co-Executors' knowledge concerning allegations of Epstein's sex-trafficking venture.

30.  The Co-Executors served three sets of document requests on Jane Doe 3 and

one set of document requests on Lead Plaintiff, and Class Counsel collected, searched, and produced thousands of pages of responsive documents from Jane Doe 3's files and hundreds of pages of responsive documents from Lead Plaintiff's files. Class Counsel also spent significant time preparing responses and objections and meeting and conferring with the Co-Executors' Counsel about the scope of their requests. Class Counsel also sought documents from the Estate and numerous non-parties over the course of the Litigation.

### C.    Motion Practice

31.    At the time of settlement, Class Counsel had devoted substantial time and resources to multiple discovery motions and hearings, as well as three major motions. As just mentioned, the Co-Executors filed a motion to dismiss or strike the entirety of the initial complaint on April 8, 2024. *See* ECF Nos. 29, 30. In response, Class Counsel closely analyzed the motion and submitted a response in opposition to the motion. *See* ECF No. 60. The Court held oral argument on the Co-Executors' motion on June 26, 2024. The Co-Executors' motion involved complex legal theories and responding to the Co-Executors' motion required substantial resources.

32.    On September 13, 2024, Class Counsel filed a motion to certify the class, which was accompanied by a declaration and over 25 exhibits. *See* ECF Nos. 118, 119, 120. On October 21, 2024, Class Counsel filed a reply, which was accompanied by a declaration and over a dozen additional exhibits. *See* ECF Nos. 196, 197.

33.    On November 4, 2024, the Co-Executors moved for summary judgment. *See* ECF Nos. 252, 261. On November 25, 2024, Class Counsel filed an opposition, which was accompanied by a declaration and nearly 200 exhibits. *See* ECF Nos. 305, 311, 312, 313, 314.

### D.    Expert Discovery

34.    Class Counsel worked extensively with the following retained experts and their

teams and utilized their services throughout the Litigation:

    a. <u>Jane Khodarkovsky</u>: Ms. Khodarkovsky is a former prosecutor and sex-trafficking expert who provides consulting services related to anti-money laundering, human trafficking, and child exploitation. Ms. Khodarkovsky prepared a rebuttal expert report in this matter, reviewed many documents produced by the Co-Executors, provided deposition testimony on November 6, 2024, and provided valuable consulting services to Class Counsel in connection with this case.

    b. <u>Marianne DeMario</u>: Ms. DeMario is a Certified Public Accountant who specializes in forensic accounting investigations, damages analyses, and business valuations. Ms. DeMario prepared an expert report in this matter providing an analysis of (i) the amount of economic damages former lead plaintiff Jane Doe 3 suffered due to Epstein's abuse and trafficking; and (ii) potential models for calculating class-wide damages and individual damages for class members. Ms. DeMario also provided deposition testimony on October 28, 2024.

    c. <u>Chitra Raghavan</u>: Ms. Raghavan is a licensed clinical psychologist who specializes in the assessment of sex trafficking. She is the Director of the Forensic Mental Health Counseling Master's Program at CUNY's John Jay College of Criminal Justice and has authored over fifty peer-reviewed book chapters and academic journal articles on the subject. Ms. Raghavan spent significant time with Class Counsel and former lead plaintiff Jane Doe 3, prepared an expert report and declaration regarding the psychological damages

Jane Doe 3 suffered due to Epstein's abuse and trafficking, and provided deposition testimony on October 25, 2024.

35. Ms. Khodorkovsky submitted a 26-page report, Ms. DeMario submitted a 16-page report, and Ms. Raghavan submitted a 30-page report as well as a 3-page declaration. Class Counsel reviewed these reports and declaration, prepared each expert for deposition, and defended each expert's deposition prior to Settlement. Class Counsel also briefed oppositions to the Co-Executors' *Daubert* motions regarding Ms. Khodorkovsky and Ms. DeMario. *See* ECF Nos. 290, 319.

36. Class Counsel also reviewed and analyzed the Co-Executors' expert Gail Cohen's report and prepared for and took Ms. Cohen's deposition prior to Settlement.

## V.    SETTLEMENT NEGOTIATIONS AND TERMS

37. On October 28, 2025, the Parties participated in a confidential mediation before Simone K. Lelchuk, an experienced mediator.

38. Prior to the mediation, the Parties submitted confidential mediation statements and exhibits that outlined each side's critical facts and legal arguments.

39. Over the following months, Lead Plaintiff engaged in arm's-length negotiations with the Co-Executors with a view to achieving the best relief possible consistent with the interests of the Class. The settlement discussions were led by David Boies, Sigrid McCawley, and Andrew Villacastin, who have extensive experience in litigating and resolving complex cases in federal courts. The Co-Executors' counsel, who also represent the Estate, had similar experience in resolving complex litigation.

40. Because the Co-Executors are adamant that they did not participate in or facilitate Epstein's sex-trafficking venture, at mediation, the Co-Executors expressed that they

would not settle the existing claims against them absent an agreement to settle any remaining potential claims against the Estate stemming from Epstein's conduct and would continue to defend against the claims brought against them individually.

41. On December 19, 2025, the Parties reached a settlement-in-principle to resolve the Litigation. The settlement-in-principle included, among other things, the Parties' agreement to settle and dismiss with prejudice the Litigation and grant full mutual releases to the Estate and the Co-Executors in return for a cash payment of $35 million, if there are 40 or more Eligible Class Members, or $25 million, if there are less than 40 Eligible Class Members by and/or on behalf of the Estate for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

42. The parties then negotiated, drafted, finalized, and signed the formal settlement agreement detailing the terms of the proposed Settlement, which was filed with the Court on February 19, 2026, along with Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of a Settlement Class, and Approval of Notice Plan. *See* ECF Nos. 414, 415, 416.

43. On March 3, 2026, the Court granted preliminary approval of the Settlement, including the form and manner of Notice of the Settlement to the Class. *See* ECF No. 419.

44. The Settlement resolves the claims of the Class against the Co-Executors and the Estate for $35 million in cash, if there are 40 or more Eligible Class Members, or $25 million in cash, if there are less than 40 Eligible Class Members, less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, taxes, and tax expenses. The recovery to individual Class Members will depend on factors including documentary and non-documentary support for the alleged abuse or trafficking; the circumstances, severity, type, and extent of the

alleged abuse or trafficking; the nature and duration of the relationship with Epstein; the impact, harm and consequences of the alleged conduct on an Eligible Class Member; time spent assisting the preparation or prosecution of the Litigation; participation in civil litigation; and any other factors the Fund Administrator deems relevant.

45.    Since the date of the Settlement, Class Counsel have spent a tremendous amount of time and energy, along with the help of investigators, locating class members, obtaining current contact information, and providing same with adequate notice pursuant to the terms of the Order Granting Preliminary Approval.

46.    Class Counsel further communicated with last known counsel for Class Members, again to ensure that each identifiable Class Member received adequate notice of the Settlement.

47.    In total, Class Counsel caused at least approximately 160 potential Class Members to receive notification of the Settlement by mail, email, or both.

48.    Following identification and initial contact, Class Counsel met with Class Members virtually and in person, explaining the terms of the Settlement, and assisting in the preparation of Questionnaire and Release Forms to ensure that this Fund would be administered in the most effective and trauma informed manner possible.

49.    Class Counsel have also attended and helped Class Members prepare for over a dozen interviews with the Fund Administrator.

50.    It is the informed judgment of Class Counsel, based upon all proceedings to date and its extensive experience in litigating class actions, that the proposed Settlement of this matter before the Court is fair, reasonable, and adequate and in the best interest of the Class.

## VI.   LEAD PLAINTIFF'S ROLE

51.     Lead Plaintiff played an active role throughout the Litigation in furthering the interests of the Class. She has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including responding to written discovery, searching for and producing documents, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on discovery issues; and participation in extensive settlement negotiations, which included mediation. Lead Plaintiff zealously advocated for the interests of victims of Epstein and obtained a strong result on the Class's claims.

## VII.   THE RISKS OF LITIGATION

52.     The Parties vigorously litigated this case, and the Settlement in this Litigation was reached only after Class Counsel had a thorough understanding of the claims alleged in the Corrected Amended Complaint. At the time of Settlement, Plaintiff's discovery was complete, with only limited discovery regarding Lead Plaintiff remaining. Documents had been produced, expert reports had been exchanged, and depositions had been taken. Accordingly, Class Counsel firmly understood the strengths of their claims, the strengths of Co-Executors' defenses, and the potential damages suffered by the Class.

53.     The Settlement here represents an excellent result for the Class, especially given the likely amount of recovery, the defenses to liability and damages that the Co-Executors advanced, and the design of a claim process that allowed survivors to decide the extent to which they want to participate given the significant potential for re-traumatization. The Settlement

provides the Class with an immediate and certain recovery in a case that faced significant risks at summary judgment, trial, and on appeal.

54.     While Class Counsel believes that substantial evidence exists to support a jury verdict in favor of the Class, it recognizes that there were considerable risks and uncertainties if the case had proceeded to trial. The Settlement exceeds what the Class might have recovered even if Lead Plaintiff had prevailed at trial. There remained critical questions of fact to be determined at trial as to whether Lead Plaintiff would be able to prove the Co-Executors' liability under the TVPA and New York law. Each Class Member would also have to prove the amount of damages to which she is entitled based on recounting personal and intimate information. Class Counsel carefully considered these risks throughout the Litigation and in recommending that Lead Plaintiff settle this matter.

55.     The Settlement eliminates the possibility that the Litigation would not be finally decided and damages collected for many more years. The trial and appellate process would have added years to the Litigation, further delaying the Class's recovery for harm that began more than a decade ago.

## VIII.   THE PLAN OF ALLOCATION

56.     The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 416-1, Exhibit A-1.

57.     Under the Plan of Allocation, any Class Members who submit a valid and timely Questionnaire and Release to the Fund Administrator, does not otherwise exclude themselves from the Class, and who is not otherwise deemed ineligible by the Fund Administrator, will receive an Allocated Amount. The Plan describes the various factors and criteria the Fund

Administrator will take into consideration in determining an Allocated Amount.

58.     As such, the Plan of Allocation equitably distributes the Net Settlement Fund to all Eligible Class Members who follow these procedures as specified in the Notice and the Questionnaire and Release.

## IX.   CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS REASONABLE

### A.   The Requested Fee Is Reasonable

59.     Considering the nature and extent of the Litigation, the risk and uncertainty of the Litigation, the extraordinary result achieved, the rigorous prosecution of the action, the complexity of the factual and legal issues presented, and the other factors described above and in the accompanying Fee Motion, Class Counsel believe that the requested fee of 30% of the Global Settlement Amount, including interest at the rate earned by the Global Settlement Fund, is fair and reasonable.

60.     A 30% fee award is also entirely consistent with percentages awarded by courts in comparable class actions in the Second Circuit and this District, as well as around the country, and is justified by the specific facts and circumstances in this case—including the strong result obtained for the Class—and the substantial risks that Class Counsel overcame during the Litigation. *See generally* Fee Motion.

### B.   The Requested Fee Is Supported by the Effort Expended and Results Achieved

61.     As discussed in greater detail above, the Litigation entailed significant risks with respect to Lead Plaintiff's ability to prove both liability and damages. Success was by no means assured. The Co-Executors disputed both liability and damages, as well as class certification. Were this Settlement not achieved, and even if Lead Plaintiff prevailed at trial, Lead Plaintiff (and the Class) potentially faced years of costly and risky appellate litigation, with

ultimate success far from certain. And, it is also possible that a jury could have found no liability, lesser damages, or no damages.

62.     As a result of this Settlement, Class Members will benefit and receive compensation for their losses and avoid the significant risk of no recovery in the absence of a settlement. These factors also support Class Counsel's request for an award of attorneys' fees of 30% of the Settlement Amount, plus interest.

C.     **The Risk of Contingent Class Action Litigation Supports the Requested Fee Award**

63.     As set forth in the accompanying Fee Motion, a determination of a fair and reasonable fee should include consideration of the contingent nature of the fee, the financial burden and attendant risk carried by Class Counsel, and the litigation challenges that were overcome in obtaining the Settlement.

64.     This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel committed 13,634.60 hours of attorney and professional time in the prosecution of the Litigation. *See* BSF Decl. ¶ 6.

65.     BSF fully assumed the risk of an unsuccessful result. BSF has not received any compensation for its services during the course of this Litigation and has incurred significant expenses in litigating for the benefit of the Class. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

66.     Class Counsel's efforts were performed on a wholly contingent basis despite significant risk and in the face of determined opposition. Under these circumstances, it is appropriate to award counsel a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Class. A 30% fee, plus interest, is fair and reasonable under the

circumstances present here.

## X.    CONCLUSION

67.    For all of the foregoing reasons, Class Counsel respectfully request that the Court approve the Settlement and Plan of Allocation, and award Class Counsel 30% of the Settlement Amount and $841,894.60 in expenses, plus interest on both amounts at the same rate as earned on the Global Settlement Fund until paid.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 12, 2026                         Respectfully submitted,

By: */s/ Sigrid S. McCawley*
Sigrid S. McCawley
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com

*Counsel for Allyson Ward*

17