UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLYSON WARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>Defendants. | Case No. 1:24-cv-01204-AS |

# LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350

*Counsel for Allyson Ward*

**TABLE OF CONTENTS**


I. THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT ............................ 1

II. THE COURT SHOULD OVERRULE THE OBJECTIONS ................................................ 2

A. The CSAM Objection Fails (Objection 1). .................................................................. 2

B. The Release of the Estate Was the Product of Arm's Length Negotiations and Adequate Representation (Objections 2(a)–(b)). ............................................................................ 5

C. The Release of the Estate Is Proper and the Settlement Provides Adequate Relief (Objections 2(c)–(d)). ......................................................................................... 6

D. Notice Is Adequate (Objection 2(e)). ...................................................................... 9

III. CONCLUSION ..........................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Rose*,
2003 WL 21982207 (2d Cir. Aug. 20, 2003) .................... 9

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) .................... 4

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................... 4

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................... 2

*Doe 1 v. Deutsche Bank*,
22-cv-10018 (S.D.N.Y. Sept. 15, 2023) .................... 9

*Doe 1 v. JP Morgan Chase Bank, N.A.*,
22-cv-10019 (S.D.N.Y. Oct. 19, 2023) .................... 2, 9

*Doe v. Bank of America, N.A.*,
25-cv-08520 (S.D.N.Y. Aug. 27, 2026) .................... 2, 3, 10

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................... 7

*Grant v. Bethlehem Steel Corp.*,
823 F.2d 20 (2d Cir. 1987) .................... 5

*Harrington v. Purdue Pharma L. P.*,
603 U.S. 204 (2024) .................... 8

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................... 6

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................... 2

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) .................... 8

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) .................... 4

*In re Lloyd's Am. Tr. Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................... 9

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) .......... 8

*In re Sci. Control Corp.*,
80 F.R.D. 237 (S.D.N.Y. 1978) .......... 9

*In re WorldCom, Inc. Sec. Litig.*,
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) .......... 9

*Marshall v. Northrop Grumman Corp.*,
469 F. Supp. 3d 942 (C.D. Cal. 2020) .......... 9

*Moses v. The New York Times Co.*,
2026 WL 364231 (2d Cir. Feb. 10, 2026) .......... 6

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
660 F.2d 9 (2d Cir. 1981) .......... 8

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exchange*,
660 F.2d 9 (2d Cir. 1981) .......... 8

*Old Jericho Enter., Inc. v. Visa, Inc.*,
175 F.4th 172 (2d Cir. 2026) .......... 4

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 8

*Stephenson v. Dow Chem. Co.*,
273 F.3d 249 (2d Cir. 2001) .......... 4

*Stinson v. City of New York*,
256 F. Supp. 3d 283 (S.D.N.Y. 2017) .......... 3

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) .......... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 2, 4, 7

**Rules**

Fed. R. Civ. P. 23 .......... 5, 8

Lead Plaintiff Allyson Ward ("Lead Plaintiff"), individually and on behalf of a class of similarly situated victims (the "Class"), respectfully submits this reply in support of her motion for: (i) final approval of the Settlement[1] of *Allyson Ward v. Darren K. Indyke, et al.*, No. 24-cv-01204-AS (S.D.N.Y.) (the "Litigation"), and (ii) approval of the Plan of Allocation. ECF No. 423.

After years of hard-fought litigation, Class Counsel secured a life-altering $35 million settlement for the survivors of Jeffrey Epstein who had never received compensation from Epstein or his Estate. In granting preliminary approval, the Court found the settlement fair, reasonable, and adequate, and authorized Notice to the Class. ECF No. 419 ¶¶ 1–2. More than 80 individuals submitted claims, many expressing strong support for the Settlement.[2] The lone objection—filed by attorney Jennifer Freeman of the Marsh Law Firm on behalf of five purported Class Members—is conclusory, speculative, and without merit. *See* ECF No. 430 (the "Objection" or "Obj.").[3] It should be overruled.

## I. THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT

It is widely recognized that overwhelming class support indicates the proposed settlement is fair, reasonable, and adequate. *See, e.g.*, *Davis v. JP Morgan Chase & Co.*, 827 F. Supp. 2d 172,

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in ECF Nos. 416-1, 423, 426. All emphasis is added and all citations are omitted unless otherwise noted.

[2] The Fund Administrator has provided updated numbers to Class Counsel, confirming that over 80 individuals submitted claims, 64 of which have already been determined to be Eligible Class Members.

[3] Attached as Exhibit A is a letter Class Counsel received from a lawyer in the U.S. Virgin Islands purporting to be an objection. Though the letter was never properly filed with the Court, Class Counsel attaches it for completeness. Lead Plaintiff respectfully submits that the purported objection is procedurally and substantively deficient and, if considered, should be overruled for the reasons set forth herein and in Lead Plaintiff's opening papers. *See* ECF No. 423 at 14 n.4.

177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement"); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013). Indeed, "the favorable reaction of the overwhelming majority of class members . . . is perhaps the most significant factor in [the] *Grinnell* inquiry." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005). Here, more than 80 individuals submitted claims, many expressing "meaningful gratitude" for the Settlement. *See* ECF No. 423 at 11.

## II. THE COURT SHOULD OVERRULE THE OBJECTIONS

On August 26, 2026, the Marsh Law Firm filed its third objection to an Epstein-related class action settlement in the past three years,[4] this time on behalf of five purported Class Members, MLF 1–MLF 5 (the "Objectors"). *See* Obj. at 1. The Objectors support the Settlement "in large part," but challenge only two aspects of the Settlement and Plan of Allocation—the scope of the release as to Class Members who may have child sexual abuse material ("CSAM") claims, and the release of the Estate. *Id.* at 1. The Objections are legally and factually insufficient.

### A. The CSAM Objection Fails (Objection 1).

The first Objection concerns CSAM claims, "such as those based on the production, possession, transportation or distribution of CSAM, or image-based exploitation." *Id.* at 15. The Objectors contend that the release is overbroad as applied to those claims and ask the Court to "revise the Proposed Release to carve out CSAM claims." *Id.* at 14–17. This Objection fails for numerous reasons.

***First***, the Objectors do not identify any CSAM claims affected by the Settlement with

---

4 *See Doe v. Bank of America, N.A.*, 25-cv-08520, ECF No. 160 (S.D.N.Y. Aug. 6, 2026); *Doe 1 v. JP Morgan Chase Bank, N.A.*, No. 22-cv-10019, ECF No. 247 (S.D.N.Y. Oct. 19, 2023). Both objections were overruled.

sufficient specificity to evaluate their objections. As Judge Rakoff explained in rejecting a nearly identical objection, the issue involves "so many unknowns and hypotheticals that no court should try to answer it now." *See* Exhibit B, Settlement Hearing Tr. at 21:1–22, *Doe v. Bank of America, N.A.*, No. 25-cv-08520 (S.D.N.Y. Aug. 27, 2026). That reasoning applies with equal force here. The Objection asks the Court to determine whether the release covers unspecified Class Members' hypothetical CSAM claims without identifying the claims, the defendants against whom they would be asserted, or the specific underlying facts. Without a specific claim or facts sufficient to determine whether a CSAM claimant is a Class Member bound by the release, the Court should not resolve this question now. *See Stinson v. City of New York*, 256 F. Supp. 3d 283, 292–93 (S.D.N.Y. 2017) (explaining that "the hypothetical nature of the objections … do not weigh against approving a Settlement").

***Second***, even assuming the Court could resolve these hypotheticals, the Objectors have not established that they are ***both*** CSAM claimants ***and*** Class Members. The Class definition covers "all females who were sexually assaulted or abused or trafficked by Jeffrey Epstein" during the Class Period and who had not previously executed a settlement releasing claims against the Estate and the Co-Executors. ECF No. 416-1 § 1.3. Females depicted in CSAM who were not themselves sexually assaulted, abused, or trafficked by Epstein fall outside that definition. *See also* ECF No. 431-7. Ms. Freeman's declaration alleges only that MLF 2 and MLF 4 were "subjected to child abuse and exploitation via Epstein's possession and/or distribution" of CSAM depicting them. ECF No. 431 ¶¶ 5, 7. It does not allege that Epstein otherwise sexually assaulted, abused, or trafficked either woman. Thus, the only Objectors identified as having potential CSAM claims do not appear to be Class Members and therefore lack standing to challenge a release that does not bind them. *See Stinson*, 256 F. Supp. 3d at 291.

***Third***, even if a Class Member held CSAM-related claims against a Released Defendant Party, those claims would arise from the same factual predicate as the trafficking and sexual abuse claims alleged here and therefore are appropriately covered by the release. This is true regardless of whether CSAM claims were pled in the complaint. *See, e.g.*, *Wal-Mart*, 396 F.3d at 108 (holding that "the overlap between elements of *claims* is not dispositive," and "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims"); *Old Jericho Enters., Inc. v. Visa, Inc.*, 175 F.4th 172, 180 (2d Cir. 2026) (affirming overruling of objections because "[w]e conclude, as the district court did, that the Old Jericho Plaintiffs are asserting claims based on a different legal theory but the same factual predicate as those in the Settlement Agreement").

***Fourth***, for the same reasons, the Objectors' adequacy argument fails. There is no "fundamental" conflict among Class Members. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). Class Members with CSAM-related claims share the Class's interest "in maximizing recovery for all class members" harmed by Epstein's sex-trafficking venture, while CSAM claimants outside the Class definition are not bound by the Settlement. *See Old Jericho*, 175 F.4th at 180. The Objection identifies no antagonistic interests requiring separate representation.[5]

***Finally***, the Objectors' challenge under *Grinnell* factor two is meritless. As evidenced by the Objectors' own submissions, the Marsh Law Firm's May 7, 2026 letter to Class Counsel

---

[5] *Amchem* and *Stephenson* are distinguishable. Both cases concerned interests of class members who had already manifested tort-related injuries that diverged from those who had been exposed but had not yet shown signs of injury. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607–08, 626 (1997); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 260–61 (2d Cir. 2001). Here, the Settlement secures relief for a single class based on the same predicate facts: Epstein's sex-trafficking venture and the Co-Executors' alleged knowing facilitation of it.

concerning whether the Settlement covers CSAM claims was not a proper "objection," nor was it "ignored." Obj. at 17; *see* ECF No. 419 ¶¶ 19–20 (requirements for objections); ECF No. 431-7 (Class Counsel responding to letter). The Class overwhelmingly supports the Settlement, *see supra* Section I, and the five Objectors (all represented by the same law firm) and sixteen opt-outs represent only a small percentage of the overall class. *See Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (affirming approval of settlement despite "opposition" from 36% of the class); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462, 464 (2d Cir. 1982) (affirming approval of settlement over objections of a "majority" of the class).

**B. The Release of the Estate Was the Product of Arm's Length Negotiations and Adequate Representation (Objections 2(a)–(b)).**

The Objectors assert that the release of the Estate "was not the product of arm's length negotiation[s]" because of Indyke and Kahn's role as defendants, Co-Executors, and Estate beneficiaries. Obj. at 18. As the Court found in granting preliminary approval, however, the Settlement was "the result of good faith, extensive arm's-length and non-collusive negotiations." ECF No. 419 ¶ 2; *see also* ECF No. 423 at 6–7. The alleged conflicts concern the Co-Executors' duties to the Estate and its beneficiaries, not any conflict between Lead Plaintiff or Class Counsel and the Class. Even if the Co-Executors had competing incentives, the Estate's participation made its resources available to fund the Settlement, thereby benefitting rather than prejudicing the Class. None of the Objectors' authorities concerning fiduciary duties address whether a settlement was negotiated at arm's length under Rule 23(e)(2)(B). Any fiduciary dispute is a matter for the Estate and its beneficiaries, not a basis for finding that the Settlement was not negotiated at arm's length.

Nor was the Class inadequately represented regarding the Estate's release. The Objectors assert only that Class Counsel failed to "investigate, disclose, litigate or account for" the alleged conflict, without identifying any specific deficiency in the representation. Obj. at 21. To the

contrary, the Settlement is the product of years of litigation, extensive and well-informed negotiations, and vigorous advocacy on behalf of Epstein survivors. At the outset of the Litigation, it was confirmed on the record that the Estate was indemnifying the Co-Executors in connection with this Litigation. *See* ECF No. 173 at 5:8–21. Moreover, the Estate's release was made abundantly clear in the settlement materials, the Notice, and communications with Class Members. *See* ECF Nos. 415, 421-1 at 9. The Objectors' remaining arguments concerning the investigation of the Estate's assets and potential insurance coverage, and the impact of potentially revived Gender Motivated Violence Act ("GMVA") claims, do not establish any conflict between Lead Plaintiff or Class Counsel and the Class. At most, they challenge the adequacy of the Settlement and fail for the reasons in Section II.C. *infra*.

**C. The Release of the Estate Is Proper and the Settlement Provides Adequate Relief (Objections 2(c)–(d)).**

The Objectors' contention that the Settlement's release of the Estate provides inadequate relief to the Class misstates the applicable legal standard. The adequacy of a settlement is assessed "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). The Court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Moses v. The New York Times Co.*, 2026 WL 364231, at *3 (2d Cir. Feb. 10, 2026). The Objectors fail to appreciate that any hypothetical amount of damages must account for the delays and uncertainty of success for the Class, including the difficulties of obtaining and maintaining class certification through trial, succeeding at trial, and

succeeding in appeals. *See also* ECF No. 423 at 8, 13, 17; ECF No. 426 ¶¶ 52–55. Accounting for these risks, the $35 million Settlement is a strong result.

The Objectors' reliance on the more than 1,000 Epstein victims referenced by the U.S. Department of Justice ("DOJ") memorandum does not establish that the Settlement amount is inadequate. The DOJ's figure is not coextensive with the Class and likely includes individuals who fall outside the Class definition, including those who previously settled with or released claims against Epstein or the Estate. Nor does speculation that unreviewed documents might reveal additional absent Class Members, or that the recent GMVA amendment might revive additional claims, warrant rejecting an otherwise reasonable Settlement. Where, as here, a "settlement assures immediate payment of substantial amounts to class members," courts will approve the settlement, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). Moreover, the Release preserves Class Members' claims against any natural person, other than Epstein, who sexually abused them, so those revived GMVA claims would not be covered by the release. *See* ECF No. 416-1 § 5.2.

The release of the Estate satisfies the identical-factual-predicate requirement regardless of whether the Co-Executors were sued only in their individual capacities. *See, e.g.*, *Wal-Mart*, 396 F.3d at 109 (collecting cases that hold that class action settlements can release claims against a non-party where they are based on "the same underlying factual predicate as the claims asserted against the parties to the action being settled"). Terms such as "any and all claims" or the inclusion of multiple Released Defendant Parties does not improperly expand the release because all released claims arise from the same underlying factual predicate: Epstein's sex-trafficking venture and the Co-Executors' alleged facilitation of it.

The Objectors' reliance on *Ortiz*, *Purdue Pharma*, and *Keene* is misplaced. Those cases involved Rule 23(b)(1)(B) mandatory limited-fund class actions or bankruptcy proceedings presenting fundamentally different concerns about extinguishing claims. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n.13 (1999) ("In contrast to class actions under subdivision (b)(3), in cases brought under subdivision (b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude themselves from class membership as of right."); *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 227 (2024) (holding that the Bankruptcy Code does not permit a Chapter 11 plan to discharge claims against a nondebtor "without the consent of affected claimants"); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 733 (2d Cir. 1993) (rejecting attempt to use a Rule 23(b)(1)(B) limited-fund class action to compel adjustment of creditors' rights outside the Bankruptcy Code). Those concerns are absent here because this is a Rule 23(b)(3) settlement and Class Members received notice and an opportunity to opt out.

The Objectors' remaining authorities are likewise distinguishable. In *National Super Spuds*, the objecting class member held an ***existing***, separately filed lawsuit against the same defendants, asserting claims that were factually and legally distinct. *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 11–12 (2d Cir. 1981). The Second Circuit reversed approval of the settlement because the release extinguished the objector's pending claims. *Id.* at 18–21. Here, by contrast, the Objection does not identify any claim against the Co-Executors, the Estate, or any Released Defendant Party, and the Release preserves Class Members' claims against any natural person, other than Epstein, who sexually abused them. ECF No. 416-1 § 5.2. The remaining cases are similarly inapposite. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233–37 (2d Cir. 2016) (reversing settlement where subclasses with divergent interests were represented by the same counsel); *Marshall v. Northrop Grumman Corp.*, 469 F.

Supp. 3d 942, 949 (C.D. Cal. 2020) (denying settlement where the release broadly encompassed claims logically or causally connected to the released claims).

**D. Notice Is Adequate (Objection 2(e)).**

The Objectors' challenge to the adequacy of notice is meritless. MLF 1–MLF 4 lack standing to challenge the Notice Plan because they received notice ***and*** opted into the Class. *See* ECF No. 431 ¶¶ 3–7; *In re Sci. Control Corp.*, 80 F.R.D. 237, 240 (S.D.N.Y. 1978) ("Griffin also protests that notice to the class was inadequate. This is plainly not correct . . . having received notice himself, he lacks standing to complain."). As to MLF 5, it is unclear whether she requested leave from the Fund Administrator to submit an untimely claim, having purportedly learned of the Settlement only three weeks after the May 12 claim submission deadline. *See* ECF No. 431 ¶ 8; ECF No. 432 ¶ 8. Regardless, "the failure of some class members to receive a Notice does not necessarily mean that notice of the settlement was inadequate or not in compliance with Rule 23." *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *9 n.29 (S.D.N.Y. Nov. 12, 2004); *see also In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *18 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, 2003 WL 21982207 (2d Cir. Aug. 20, 2003).

The Court-approved Notice Plan was comprehensive and substantially similar to the notice plans approved in prior Epstein class action settlements. *See Doe 1 v. JP Morgan Chase Bank, N.A.*, 22-cv-10019, ECF No. 234 (S.D.N.Y. Oct. 5, 2023) (email notification to identifiable class members, publication on settlement website, and publication in *USA Today*); *Doe 1 v. Deutsche Bank*, 22-cv-10018, ECF No. 101 (S.D.N.Y. Sept. 15, 2023) (mail notification to identifiable class members, publication on settlement website, and publication in *USA Today* and *Gazeta*

*Wyborcza*).[6] It included: (i) direct mailing or emailing to 160 potential Class Members identified by Class Counsel based on extensive investigation of hundreds of thousands of documents, flight logs, message pads, police reports, news articles, and productions from the Estate and third parties; (ii) publication in *USA Today* and *Gazeta Wyborcza* (a prominent Eastern European publication); (iii) a dedicated Settlement website; (iv) international multilingual investigators to locate potential Class Members, including efforts to reach potential Class Members in countries such as Russia, where publication presented difficulties; and (v) supplemental mailings and outreach.

Contrary to the Objection's contention, the Notice was not inadequate because Class Counsel did not directly notify more than 1,000 Epstein victims as referenced by the DOJ or review all 3.5 million pages of the public Epstein files. The DOJ's figure is not coextensive with the Class. *See supra* Section II.C. As outlined above, the Settlement was widely publicized on multiple channels. "Notice need not be perfect, but need be only the best notice practicable under the circumstances." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). The Objectors' argument that unreviewed documents might reveal additional absent Class Members is speculative and would, if credited, delay justice indefinitely for the survivors who have already come forward and have a present need for the funds the Objection would deny them.

Nor was the Notice inadequate because Class Counsel did not contact the Objectors'

---

[6] The notice plans in this case and *Doe v. Bank of America, N.A.* substantially overlapped. At Judge Rakoff's request, the *Bank of America* notice plan included a social media campaign and was approved on April 3, 2026, approximately one month after the Court approved the Notice Plan here. *See Doe v. Bank of America, N.A.*, 25-cv-08520, ECF No. 134 ¶ 10 (S.D.N.Y. Apr. 3, 2026). That campaign ran on Facebook and Instagram from April 14, 2026 through May 11, 2026—during the claims period in this case. *See id.*, ECF No. 150-1 ¶ 11 (S.D.N.Y. July 13, 2026). Although separately approved, the notice plans operated in tandem during a critical period for providing notice to Epstein victims. The similar number of claims submitted in both cases further confirms that the Notice Plan in this case was successful. *See id.*, ECF No. 152 at 22 ("[A]approximately 90 potential Class Members have submitted Confidential Questionnaires and Releases.").

counsel. Class Counsel identified potential Class Members known to Class Counsel who met the Class definition. Where Class Counsel were unable to reach an individual directly, they provided notice to the individual's last known counsel. Ms. Freeman and the Marsh Law Firm were not known counsel to any individual on that list. Moreover, Ms. Freeman and the Marsh Law Firm indisputably had actual knowledge of the Settlement before the May 12 claims deadline and thus had an opportunity to notify and advise any potential Class Members they represented of the Settlement. *See* ECF No. 431 ¶ 9.

## III. CONCLUSION

The $35 million Settlement is a strong recovery that will deliver life-changing relief to Epstein survivors. For the reasons set forth herein and in their opening papers, Lead Plaintiff and Class Counsel respectfully request that the Court overrule the Objection, approve the Settlement and Plan of Allocation, and award the requested attorneys' fees and expenses.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Sigrid S. McCawley*
Sigrid S. McCawley
Daniel Crispino (*pro hac vice*)
Megan Nyman (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com

David Boies
Andrew Villacastin
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards

New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: alaw@bsfllp.com

*Counsel for Allyson Ward*

**CERTIFICATE OF COMPLIANCE**

I, Sigrid S. McCawley, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 3,496 words, exclusive of the cover page, certificate of compliance, table of contents, tables of authorities, and signature block, and therefore complies with the word-count limitations set forth in Local Rule 7.1(c).

*/s/ Sigrid S. McCawley*