# EXHIBIT A

**THE PATE LAW FIRM**
P.O. BOX 370 • CHRISTIANSTED, VI 00821
OFFICE: 340.777.7283 • FAX: 888.889.1132 • EMAIL: PATE@SUNLAWVI.COM

May 29, 2026

**VIA USPS Priority Mail with Tracking**
Simone K. Lelchuk, Fund Admin.
C/O Frejka PLLC
415 East 52nd Street, Suite 3
New York, NY 10022
efrejka@frejka.com
epsteinsettlement@bsfllp.com
Claims@SDNYSettlementFund2026.com

**Re:** *Doe 3, et al. v. Indyke & Kahn,* Case No. 1:24-cv-01204 (AS)
**Objection to Class-Action Settlement Release Terms**
**Notice of Intent to Appear at Sept. 16 Settlement Hearing**

Dear Ms. Lelchuk and Judge Subramanian,

I am an attorney licensed and practicing in the United States Virgin Islands. I am inactive in the States of Texas, North Carolina and Florida. I am also admitted in the District Court of the Virgin Islands, the District Court of Puerto Rico, the Northern District of Texas, the Third Circuit and the Supreme Court. I was the President of the Virgin Islands Bar Association in 2016 and 2025. Along with my trial team, I hold the record for the highest personal injury and wrongful death verdict in the U.S. Virgin Islands for $83 million in *Brown v. R.J. Reynolds Tobacco Company* (2018).

I submit this objection because I recently became aware of this proposed class settlement. This settlement purports to release not only the named defendants Indyke and Kahn, but also the Estate of Jeffrey Epstein – a non-party to the pleadings – whose domicile and jurisdictional "home" is in the U.S. Virgin Islands. In my view, the proposed release of the Estate is not "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e), and the settlement structure raises serious due process and jurisdictional concerns, particularly as to the rights of unknown victims with potential claims against the Epstein Estate.

There could be dozens of unknown victims, who never receive actual notice of this class-action settlement, but would have their claims extinguished even though these victims may have timely claims pursuant to statute-of-limitations tolling available in the U.S. Virgin Islands or their home court jurisdictions. This is a Due Process problem. Accordingly, this class-action settlement should be modified to either (1) move to an "opt-in" for plaintiffs to join the class-action settlement or (2) not release the Estate of Jeffery Epstein for any unknown victim that does not make a claim in this class-action settlement.

## I. THE ESTATE OF JEFFREY EPSTEIN SHOULD NOT BE RELEASED

The Epstein Estate is not a pleaded defendant in the SDNY Complaint and is a Virgin Islands entity. The operative complaint names only Indyke and Kahn as defendants. The Epstein Estate is instead brought in at the settlement stage, via the Settlement Agreement dated February 19, 2026, which provides that "the Estate will be added as a party to the Settlement and this Settlement Agreement" and that the Estate will fund the $25–35 million settlement in exchange for a global release of Estate-related claims. (Settlement Agreement ¶¶ 2.2, 3.1, 5.1, and Notice at p. 3, "Statement of Class Recovery").

The Epstein Estate, however, is a Virgin Islands entity administered under Virgin Islands law, and the situs of the Estate—including its approximately $120 million in remaining assets—is in a U.S. Virgin Islands' probate proceeding. The proposed Judgment from this Court would effectively adjudicate the rights of present and future tort claimants against the Epstein Estate, including those who might sue in the Virgin Islands.

A crucial issue is that Virgin Islands law materially differs from New York law. New York follows an archaic legal principle that when a defendant dies, like Jeffery Epstein, victims can no longer seek punitive damages, despite Epstein's outrageous, egregious and reprehensible intentional conduct. The Virgin Islands, like Pennsylvania, Ohio and a minority of other States, follows a more enlightened approach: That the death of a defendant changes nothing in the case; not the claims or the damages. Essentially, Jeffery Epstein's Estate inherits the same liability and damages as every claim "survives" to his Estate, including punitive damages.

Thus, a single jury verdict in the U.S. Virgin Islands arising from Jeffery Epstein's reprehensible sex-trafficking and sexual abuse conduct could easily reach an eight-figure compensatory damages award. Then a jury could award a very substantial punitive damages award as punishment and deterrence for such outrageous, reprehensible and intentional conduct. A plausible scenario under Virgin Islands' law would be, for example, a $10 million in compensatory damages and then $90 million in punitive damages for a single victim in a case tried to verdict against the Estate in its home forum.

Looking through this analysis, an approximate $875,000 total recovery award per known victim (before expenses and attorneys' fees) from this class-action looks paltry when compared to resolution in the U.S. Virgin Islands. Perhaps $875,000 is adequate in New York without punitive damages, but this analysis is woefully inadequate when any victim could seek resolution in the U.S. Virgin Islands because it is the home-forum of the Jeffery Epstein Estate. (This is part of the problem with federal class actions attempting to resolve personal injury. Personal injury laws are highly State/Territory specific. A local court often overlooks or discounts the law of other jurisdictions, particularly in a nationwide class – or in this case – a world-wide class. It's especially evident here, where counsels to the parties are all New York or Florida attorneys. There are no attorneys from the U.S. Virgin Islands. And from my research this Court has never requested any analysis from U.S. Virgin Islands attorneys, judges or legal experts.)

## II. PROTECTING THE ESTATE OF JEFFREY EPSTEIN ENSURES THAT INDYKE AND KAHN WILL BE UNJUSTLY ENRICHED BY MILLIONS OF DOLLARS

The proposed settlement fund is $35 million if there are 40 or more Eligible Class Members, or $25 million if fewer. (Notice at p. 3) This settlement will globally resolve and release all claims (known and unknown) against the Epstein Estate. Essentially, this class-action settlement clears-the-field for the Epstein Estate. No unknown victim can ever come forward and file suit against the Estate for Jeffery Epstein's abuse, even if that victim's suit is proper and timely under some other State laws (or foreign country laws) other than the Southern District of New York. As a practical effect, this settlement will leave approximately $85–95 million remaining in the Estate. Without any expectation of future victim liability (due this class-action settlement extinguishing all claims world-wide for every possible victim) that $85-$95 million will be distributed to the Epstein Estate's heirs, Indyke and Kahn, among other friends and cronies of Epstein.

In the plainest English possible: This settlement provides absolute immunity to the Epstein Estate from any future victim's lawsuit, which, logically will protect tens of millions of dollars in Epstein's Estate. The Epstein Estate will then distribute this excess money to Indyke and Kahn as Epstein's heirs. This result is perverse.

Further, this class-action settlement robs victims who may come forward of going to the best venue possible for justice, the U.S. Virgin Islands. Instead of reserving the resultant $80 million that will be left in Epstein Estate for additional future victims that may come forward, this Court blesses and provides immunity to Epstein's Estate, *forever*, though Epstein's Estate was never a named defendant in this case.

The class claims actually pleaded in the Complaint are solely against Indyke and Kahn for alleged TVPA violations, aiding and abetting, negligence, and related theories. There is no claim for punitive damages. Based on those theories, it may be reasonable to compromise the claims (under New York law) against Indyke and Kahn individually for an amount in the range of $25–35 million (roughly hundreds of thousands of dollars per victim, depending on final class size). But that same dollar figure becomes "woefully inadequate" if used to buy a global release of the Epstein Estate's liability—including punitive damages eligible claims—arising out of Epstein's intentional sex abuse as a resident and domicile of the U.S. Virgin Islands.

Further, it makes little sense to bar unknown victims who may live anywhere in the world from coming forward in the future. She may decide to come to the U.S. Virgin Islands to sue Epstein's Estate in its home forum. She may also qualify for tolling under the U.S. Virgin Islands statute of limitations and have a valid claim. Further, she may have a claim for punitive damages under U.S. Virgin Islands law for Epstein's intentional sex abuse and sex trafficing. New York should not rob that victim of pursuing punitive damages against Epstein's Estate under U.S. Virgin Islands law; the law that Jeffery Epstein chose to live under, and that his Estate exists under.

On these facts, releasing the Estate on the same terms as Indyke and Kahn is neither fair nor reasonable to the unknown class members with potential Estate claims in the Virgin Islands and elsewhere. Indyke and Kahn, in their capacity as co-executors and co-beneficiaries, get the benefit of a sweeping class wide release that insulates the Estate (and thus themselves, as fiduciaries and beneficiaries) from massive future liability, at a fraction of the Estate's remaining total assets. Approving this settlement ensures that Indyke and Khan will receive millions of dollars from the Epstein Estate, yet Indyke and Khan are part of the reason that Epstein was able to conduct his abuse of young women for so long.

In sum, the Epstein Estate should not be released. As an alternative, the Epstein Estate should be ordered to pay the settlement of $25 or $35 million, but then put whatever assets remain in the Estate (which should be around $80 million) into the SDNY's court escrow account; or perhaps stay held in the U.S. Virgin Islands' court escrow. This money is held for ten (10) years. At the end of ten (10) years, if there are no claims regarding Jeffery Epstein's wrongful conduct, that money is then turned over to non-profits that assist women and girls who have been sexual abused.

## III. CLASS-WIDE RESOLUTION OF PERSONAL-INJURY SEXUAL-ABUSE CLAIMS IS IMPROPER UNDER AMCHEM / ORTIZ PRINCIPLES

Supreme Court precedent disfavors class-wide settlement of personal-injury/future-injury claims. My practice is in asbestos litigation, where the Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), rejected attempts to use Rule 23(b)(3) settlement classes to extinguish present and future personal-injury claims. The Court emphasized:

- fundamental intra-class conflicts between currently injured plaintiffs and unknown other claimants;
- individualized issues of injury, causation, damages, and choice of law; and
- the lack of adequate representation and due process for persons whose claims were unknown, unmatured, or not yet asserted.

Sexual-abuse and sex-trafficking claims are quintessential personal-injury claims. They are highly individualized: the nature, extent, timing, and psychological impact of the abuse; the jurisdictions involved; the governing substantive law; and the potential damages (especially punitive damages) all vary dramatically from victim to victim. Further, from a review of the docket, I was unable to find any attorney appointed to represent the unknown victims in this case. Generally in class-actions or bankruptcies, an attorney or former judge is appointed to represent "future" or "unknown" possible claimants; to protect their interests, as they have no voice in the litigation.

Historical experience in tobacco litigation confirms the limits of class-action aggregation. Tobacco defendants, like asbestos companies, tried to engineer comprehensive releases of personal-injury claims through class mechanisms—the 46-state Master Settlement Agreement, the Louisiana *Castano* national class action, and the *Engle* class action litigation in Florida. The Fifth Circuit in *Castano v. American Tobacco*

*Co.*, 84 F.3d 734 (5th Cir. 1996) was amazingly prescient of SCOTUS' future rational a year later in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Guided by *Castano, Amchem* and *Windsor*, the Supreme Court of Florida found that a class-action resolution for smoking-related personal injuries was inappropriate. See, *Engle v. Liggett Group, Inc.,* 945 So.2d 1246 (Fla. 2006)

Granted, there is a lot of pressure for courts to approve class-action personal injury settlements. The Defendants want to buy "peace" once and for all, settling all unknown litigation. The Plaintiffs' attorneys desire to settle all future unknown claims in one swoop as it raises the total recovery and the possibility of a higher attorney fee lodestar. Yet, courts have repeatedly declined to use Rule 23 to bind future or unknown claimants to a one-size-fits-all settlement. In fact, Florida courts have tried nearly one thousand tobacco personal injury cases since the 2006 *Engle* opinion to ascertain individual liability and damage awards. The lesson from asbestos and tobacco is consistent: courts are rightly skeptical of using Rule 23 to aggregate and globally resolve individualized personal-injury claims, especially where future claimants and/or unknown victims are swept in.

Coordinated proceedings (MDLs, bellwethers, etc.) create efficiencies and preserve the fundamental principle that personal-injury claims are individual cases, which should be resolved by individual judgments or settlements with individualized releases. It is not acceptable under *Amchem*/*Ortiz* to use a settlement class to:

- bar unknown or future personal-injury claims; and
- bind persons who have not yet come forward, whose injuries are not yet fully understood, or whose legal options in other forums (such as the Virgin Islands) remain open.
- At most, this Court can approve a settlement that resolves the claims of known, consenting class members (aka "opt-in" members) who knowingly release both the Epstein Estate and Indyke/Kahn, if they choose to do so. This Court should not approve a structure that extinguishes unknown or future-filed personal-injury claims of victims who have never meaningfully participated in this case; or perhaps have had no actual or meaningful notice this class-action case even exists – and that it implicates their rights.

In sum, personal-injury sexual-abuse claims should be handled via individual suits or MDL-style coordination, not a global bar. It is permissible for this Court to put together a global settlement for all known plaintiffs to "opt-into." But it is not permissible for the Court to put together a class-action global settlement that mandates a forced opt-out for all unknown plaintiffs, who have no actual notice of their rights being extinguished in the Southern District of New York.

///

## IV. THE PROPOSED SETTLEMENT IMPROPERLY SEEKS TO BAR INTERNATIONAL AND OUT-OF-TERRITORY CLAIMS, INCLUDING CLAIMS IN THE VIRGIN ISLANDS

The Notice defines the Class to include "ALL FEMALES WHO WERE SEXUALLY ASSAULTED OR ABUSED OR TRAFFICKED BY JEFFREY EPSTEIN FROM JANUARY 1, 1995 TO AUGUST 10, 2019," without any U.S. residency limitation (Notice, p. 1–2). The release of "Released Plaintiffs' Claims" expressly includes claims under "foreign law" and "any other law, rule, or regulation, even if revived at some later date" (Notice, p. 8; Settlement Agreement ¶1.25).

This means that the proposed Judgment purports to bar, for example:

- a victim residing in Europe or Latin America who was abused abroad but who later chooses to sue in her home Country, or
- a foreign victim who qualifies for tolling provisions under U.S. Virgin Islands' law for sexual-abuse survivors, and who, when psychologically able, elects to bring suit in the Estate's home forum of the U.S. Virgin Islands, and requests compensatory and punitive damages which are permissible under USVI law.

Victims outside the United States, victims psychologically unable to come forward, and/or victims that have no actual notice of this SDNY class-action, deserve a meaningful choice of forum. They should not be forever barred from a lawsuit by the Southern District of New York, without actual notice. The psychological literature is clear—and the record in this very litigation acknowledges—that sexual-abuse survivors often delay litigation for many years. The Virgin Islands has tolling provisions for sexual abuse due to this exact phenomena, and in practice, Virgin Islands courts have shown openness to allowing victims to pursue claims when they are ready under the statute and the common law Discovery Rule.

As a matter of comity, due process, and sound policy, a U.S. District Court in New York should not preemptively extinguish the ability of:

- unknown victims,
- foreign victims, or
- victims currently outside the class action's notice reach; who have no actual notice

who may choose later to file a personal-injury action in the U.S. Virgin Islands, where the Epstein Estate is domiciled and can be sued for Jeffrey Epstein's sexual abuse by any victim living anwyere in the world (as this was Jeffery Epstein's domicile and his Estate's domicile). A Virgin Islands jury can then weight the facts and liability and determine the appropriate compensatory and punitive damages under Virgin Islands law.

Even if one assumed that Rule 23 could theoretically reach foreign claimants and unknown future victims (a proposition already in tension with *Amchem* and *Ortiz*), the practical notice problem is profound. The class Notice here is being published primarily in U.S. media (e.g., USA Today) plus a single foreign Polish newspaper (Gazeta Wyborcza), along with a website. That is not realistic or sufficient as "the best

notice that is practicable" to unknown victims across the Caribbean, Europe, Eastern Europe, Russia, Latin America, and other regions where Epstein's network operated. The print edition of the U.S. Today is not even sold in the U.S. Virgin Islands. The Court has literally created a needle in a haystack. Anecdotally, this notice method reminds me of Douglas Adams's *The Hitchhiker's Guide to the Galaxy* (1979) where notice of the destruction of Earth, for a new hyper-galactic express route, was published on Alpha Centauri's Planning Department for 50 Earth years. Unfortunately, no Earthling knew about it.

Recognizing these limits, the more prudent and fair course is:

- to bind only those victims who actually received notice and are known (or can reasonably be deemed to have received notice);
- who affirmatively opt-in and knowingly choose to release both Indyke/Kahn and the Estate;
- Leave all unknown or future claimants free to pursue their personal-injury claims either in their home-country courts or in the courts of the U.S. Virgin Islands.

## V. NOTICE TO VIRGIN ISLANDS STAKEHOLDERS IS INADEQUATE FOR THE BREADTH OF THE PROPOSED RELEASE.

Although the CAFA notice (JND letter dated February 27, 2026, at pp. 12–13) states that notice was sent to "the Appropriate Federal and State Officials," and anticipates that the class "may include Class Members residing in U.S. territories and associated states," there is no indication that:

- That any Federal or State Officials received any directive to advertise this class-action notice in their respective States, that they actually did so, or whether those officials actually had the budget or staff to do so;
- How one foreign newspaper (Gazeta Wyborcza) in Polish will reach all foreign victims across the World.
- Given that the Estate is domiciled in the Virgin Islands and that the settlement would effectively foreclose substantial claims under Virgin Islands law:
  - That the Virgin Islands probate court overseeing the Estate has been specifically apprised that this federal class action will globally release the Epstein Estate from future victim tort liability;
  - That the organized Virgin Islands Bar, particularly practitioners in tort and probate litigation, have been given any meaningful opportunity to be heard about the impact on unknown or future claimants.
  - That this Court appoint an attorney or judge to act as counsel for all unknown possible victims. My recommendation is the Honorable Wilma A. Lewis (retired), a 15-year federal judge in the U.S. Virgin Islands, first female United States Attorney for the District of Columbia, Inspector General of the Department of the Interior, and Harvard Law alumnus, amount other accolades.

**VI. CONCLUSION**

For the foregoing reasons, I respectfully submit that:

1) The Court should scrutinize, under *Amchem* and *Ortiz*, whether a Rule 23(b)(3) settlement class is an appropriate vehicle at all for globally resolving highly individualized sexual-abuse and sex-trafficking personal-injury claims, especially as to unknown or future victims.
2) That this class-action settlement be converted to an "opt-in" settlement, so that unknown victims will not have their claims (which could still be possible in the U.S. Virgin Islands or in their home courts) extinguished without proof of actual notice to them.
    a) This Court should allow those victims to sue in their choice-of-venue, the U.S. Virgin Islands, or other proper jurisdictions. Or if the victim chooses the Southern District of New York, to allow the victim to use choice-of-law of the domicile of Epstein's Estate, the U.S. Virgin Islands, which allows punitive damages against an Estate.
3) That this Court appoint an attorney or judge to act as counsel for all unknown possible victims, to protect their interests.
4) That any final approval order should not release the Estate of Jeffrey Epstein for unknown victims. Or in the alternative, this Court requires the Estate to put all its remaining assets (post-settlement) into a court escrow account for ten (10) for future possible victims. If any Estate assets are left over at the end of ten years, those monies go to non-profits that help women and girls who have been sexually abused.

Thank you for considering these objections and recommendations.

Best Regards,

J. Russell B. Pate, Esq.
Attorney at Law
St. Croix, U.S. Virgin Islands