**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLYSON WARD, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN,<br><br>*Defendants*. | Case No. 1:24-cv-01204 (AS) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN ALLOCATION**

HUGHES HUBBARD & REED LLP

Daniel H. Weiner, Esq.
Marc A. Weinstein, Esq.
Fara Tabatabai, Esq.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
daniel.weiner@hugheshubbard.com
marc.weinstein@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Attorneys for Defendant Darren K. Indyke*

PATTERSON BELKNAP WEBB & TYLER LLP

Daniel S. Ruzumna, Esq.
Amy N. Vegari, Esq.
Tara J. Norris, Esq.
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
druzumna@pbwt.com
avegari@pbwt.com
tnorris@pbwt.com

*Attorneys for Defendant Richard D. Kahn*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................ 1

ARGUMENT ........................................ 1

I. A CARVE-OUT FOR CSAM CLAIMS IS UNNECESSARY AND IMPROPER ........................................ 1

II. THE RELEASE OF THE ESTATE IS NECESSARY AND PROPER ........................................ 4

A. The Objectors' Conflict-Of-Interest Argument Fails ........................................ 4

B. The Settlement Amount Is Sufficient to Cover Claims Against the Estate ........................................ 5

C. The Authorities Cited by the Objectors Are Irrelevant and Inapposite ........................................ 9

D. Release of the Estate Is Essential to the Settlement ........................................ 9

CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*CITGO Petroleum Corp. v. Starstone Insurance SE*,
2023 WL 2525651 (S.D.N.Y. Mar. 15, 2023) ....................6

*Matter of Energetic Tank, Inc.*,
No. 18-CV-1359, 2024 WL 327396 (S.D.N.Y. July 2, 2024) ....................4

*Matter of Epstein Estate*,
June 2, 2020 Order. The Court....................5

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................7

*Jane Doe 1, et al. v. JPMorgan Chase*,
22-cv-10019-JSR (S.D.N.Y.)....................7

*Jane Doe 1 v. Bank of America, N.A.*,
Case No. 25-cv-8520-JSR (S.D.N.Y.) ....................7

*Jane Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*,
22-cv-10018-JSR (S.D.N.Y.)....................6

*In re Joint Eastern and Southern District Asbestos Litigation*,
14 F.3d 726 (2d Cir. 1993)....................9

*Lewis v. S. L. & E., Inc.*,
629 F.2d 764 (2d Cir. 1980)....................4

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011)....................3

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*,
196 F.3d 409 (2d Cir. 1999)....................4

*Mayhew v. KAS Direct, LLC*,
2018 WL 3122059 (S.D.N.Y. June 26, 2018) ....................3

*Old Jericho Enter., Inc. v. Visa, Inc.*,
175 F.4th 172 (2d Cir. 2026) ....................3

*Oliver v. Terminix Int'l Co.*,
73 V.I. 210 (Super. Ct. 2020)....................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ... 9

*Pantelyat v. Bank of Am., N.A.*,
2019 WL 402854 ... 10

*Parker v. Alexander*,
171 F.4th 146 (2d Cir. 2026) ... 8

*Parker v. Alexander*,
779 F. Supp. 3d 361 (S.D.N.Y. 2025) ... 8

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ... 7

*Renz v. Beeman*,
589 F.2d 735 (2d Cir. 1978) ... 4

*In re Russo*,
100 A.D.3d 1547 (App. Div. 2012) ... 5

*Sam v. Sam*,
139 N.M. 474 (2006) ... 8

*In re Snively*,
42 Misc.3d 1214(A) (Sur. Ct. 2014) ... 4

*United States v. Marin*,
No. 18 CV 9307, 2020 WL 378094 (S.D.N.Y. Jan. 23, 2020) ... 4

*United States v. Maxwell*,
20-Cr.-330 (PAE), ECF No. 809 ... 6

**Statutes**

18 U.S.C. § 1595(c) ... 8

New York Child Victims Act ... 8

New York City Gender Motivated Violence Protection Law ... 8, 9

New York Adult Survivors Act ... 8

Defendants Darren K. Indyke and Richard D. Kahn respectfully submit this reply memorandum in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement (the "Settlement") and Approval of Plan of Allocation. ECF Nos. 422, 423.

## INTRODUCTION

After extensive, arms-length negotiations between experienced counsel, the parties agreed to the Settlement, which will provide substantial monetary relief to the Class while securing necessary finality for Defendants. That finality—including a release of potential claims against the Estate of Jeffrey Epstein (the "Estate")—was essential to the Settlement, and Defendants would not have agreed to resolve this litigation without assurance that all claims encompassed by the parties' bargain would be fully and finally resolved. In granting preliminary approval, the Court preliminarily found these terms to be fair, reasonable, and adequate. ECF No. 419. The objections filed by five individuals (the "Objectors") provide no basis to disturb that conclusion. Instead, the Objectors' arguments misunderstand the nature and scope of the Settlement and its release provisions, mischaracterize the significant relief available to Class Members, and misstate settled law governing class settlements. Each objection should be overruled.

## ARGUMENT

### I. A CARVE-OUT FOR CSAM CLAIMS IS UNNECESSARY AND IMPROPER

The Objectors first argue that the Settlement's release is overbroad "to the extent that" it applies to women with claims related to child pornography or child sex abuse images ("CSAM"). Objections, ECF No. 430 ("Obj.") at 14-15. Although the Objectors recognize that the underlying Complaint concerns only "hands-on sexual assault, abuse, and trafficking," they contend that alleged CSAM victims should be "expressly carved out of the proposed release." *Id.* at 16. This objection misunderstands the scope of the Settlement and its release provisions.

The Settlement defines the proposed "Class" as including only "females *who were sexually*

*assaulted or abused or trafficked* by Jeffrey Epstein during the time from January 1, 1995 to August 10, 2019." Proposed Settlement, ECF No. 416-1 at ¶ 1.3 ("Settlement") (emphasis added). By its express terms, the Settlement's definition of "Class" extends only to women who were themselves "assaulted or abused or trafficked" by Epstein, not to women whose only claims relate to Epstein's possession or use of CSAM. Thus, if an individual's CSAM were downloaded or distributed by Epstein—but she were not otherwise "assaulted or abused or trafficked by" him (Settlement ¶ 1.3)—she does not fall within the Settlement's definition of "Class," and the release provisions do not apply to her. *See id.* ¶ 1.4 ("Class Member" includes only members of the "Class"); ¶ 1.25 (release provisions apply only to claims of a "Class Member"). That would include, for example, two of the Objectors in this case who allege only that Epstein "possess[ed] and/or distribut[ed]" their CSAM. *See* ECF No. 431 at ¶¶ 5, 7. The Objectors' concern about the lack of a carve-out for such women is therefore unfounded: no carve-out is necessary because these women are not members of the Class in the first place.[1]

As to women who *do* allege that they were "assaulted or abused or trafficked by" Epstein—and thus fall within the definition of "Class Member"—the Settlement's release provisions properly extend to related claims involving CSAM. *See* Settlement at ¶ 1.25 (extending release to claims that a "Class Member … could have asserted in any other action or forum against the Released Defendant Parties"). The Objectors argue that "CSAM causes of action are materially

[1] The Objectors' counsel, Jennifer Freeman, attests in a sworn declaration that "defense counsel verbally stated that they hadn't considered CSAM claims in this case and didn't believe that the proposed release applied to CSAM claims." ECF No. 431, ¶ 10. That is not accurate. On May 11, 2026, one of Defendants' counsel spoke to Ms. Freeman's colleague, Margaret Mabie, and offered the preliminary view based on the express definition of the Class that females who were not themselves sexually abused or trafficked but instead whose CSAM may have been possessed or distributed by Epstein would not be Class Members and therefore would not release claims under the Settlement. *See* Decl. of D. Ruzumna, ¶ 4. Ms. Mabie said she intended to file protective claims with the Claims Administrator but would consider dropping the claims if her clients were not included in the Class.

different from hands-on abuse injuries underlying the claims asserted against Defendants." Obj. at 15. But the relevant question is not whether the facts related to Class Members' CSAM claims are literally identical to those alleged in the Complaint. Rather, released claims need only arise from the "same core of facts" underlying the settled claims. *Mayhew v. KAS Direct, LLC,* 2018 WL 3122059, at *8 (S.D.N.Y. June 26, 2018).

That is the case here: if a Class Member who alleges "hands-on abuse" also claims that Epstein downloaded or distributed her CSAM, both allegations arise from the "same core of facts" underlying Epstein's pattern of abuse. *Id.* Release provisions that encompass both categories of claims are therefore permissible under well-settled law. *See, e.g.*, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011) (noting that "[p]arties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions," and cautioning against "an overly narrow view of the factual predicate of [the class's] claims"); *Old Jericho Enter., Inc. v. Visa, Inc.*, 175 F.4th 172, 179 (2d Cir. 2026) (released claims need only "share the same integral facts as [the] settled claims," even if they "were not and could not have been asserted in the class action").

The Objectors further argue that "nowhere in the settlement papers is there any suggestion that CSAM claims have been examined or valued." Obj. at 15. That is wrong: Section 4.3 of the Settlement Agreement provides that the Fund Administrator "shall consider" a range of information before making eligibility and compensation decisions, including "the circumstances, severity, type, and extent of the alleged" injuries, "the impact, harm, and consequences of the alleged conduct," and "any other factors the Fund Administrator deems relevant." The Settlement thus empowers the Fund Administrator to factor in CSAM-related injuries in assessing the value of a claim. No CSAM-specific "carve-out" is needed, and this objection should be overruled.

## II. THE RELEASE OF THE ESTATE IS NECESSARY AND PROPER

### A. The Objectors' Conflict-Of-Interest Argument Fails

The Objectors argue that the Co-Executors have a conflict of interest that prevents approval of the class settlement. They do not. Moreover, the Objectors cannot show any harm or unfairness to the Class resulting from the purported conflict.

*First*, the Co-Executors and the Estate do not have "structurally irreconcilable" interests. Obj. at 27. Rather, as the Court recognized, the Co-Executors and the Estate share an interest in "ensur[ing] global peace with Epstein's victims" by "mak[ing] sure that no one in the estate's orbit could be sued" and that Indyke and Kahn do not need to continue to draw on the Estate's indemnity obligations to them. Opinion and Order (ECF No. 80) at 6. Nor is there any divergence between the Co-Executors' interest in resolving outstanding claims and their obligation to protect Estate assets. A global settlement of claims by Epstein's victims against both the Estate and those to whom it has indemnity obligations provides finality and predictability, and avoids the depletion of Estate assets in expensive litigation and the attendant risks of litigation.[2]

*Second*, to the extent the Objectors argue that the Co-Executors cannot serve as fiduciaries in this matter, that argument is properly addressed to the USVI Superior Court, which is supervising the Estate's ongoing probate proceeding, in that proceeding—not to this Court. But the USVI Superior Court already has addressed and overruled substantially the same objection the

[2] The Objection does not cite any cases that address the purported conflict of interest here. Instead, the cited cases concern inapposite disputes among beneficiaries of a trust or estate, which none of the Objectors is here (*Renz v. Beeman*, 589 F.2d 735 (2d Cir. 1978); *Matter of Energetic Tank, Inc.*, 2024 WL 327396 (S.D.N.Y. July 2, 2024); *In re Snively*, 42 Misc.3d 1214(A) (Sur. Ct. 2014)); claims relating to interested-party corporate transactions (*Lewis v. S. L. & E., Inc.*, 629 F.2d 764 (2d Cir. 1980)); fraudulent concealment claims against a diocese related to priest sexual abuse (*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999)); and claims by the U.S. Internal Revenue Service that an executor improperly used estate assets to pay non-priority debts over which the U.S. government had priority claims (*United States v. Marin*, 2020 WL 378094 (S.D.N.Y. Jan. 23, 2020)).

Objectors raise here. The Government of the Virgin Islands argued that the Co-Executors had an irreconcilable conflict of interest that prevented them from establishing a compensation program for Epstein's victims, particularly as the proposed compensation plan would require participants to release both the Estate and the Co-Executors in their official and individual capacities. *See In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (V.I. Super. Ct.) ("*Matter of Epstein Estate*"), Govt's Opp. to Estate's Motion for Establishment of a Voluntary Claims Resolution Program (Jan. 23, 2020) at 8-9. The USVI Superior Court approved the compensation program, including the broad release, over that objection. *Matter of Epstein Estate*, June 2, 2020 Order. The Court should similarly disregard the conflict-of-interest objection here. *See, e.g.*, *In re Russo*, 100 A.D.3d 1547, 1548-9 (App. Div. 2012) ("A potential conflict of interest on the part of a fiduciary, without actual misconduct, is not sufficient to render the fiduciary unfit to serve.").

*Finally*, the Objectors cannot identify any harm to them or the Class that results from the claimed conflict of interest. To the contrary, to the extent the Objectors complain that the Co-Executors were incentivized to have the Estate contribute assets to the Settlement (in exchange for a release of the Estate), that incentive only *increased* the size of the Settlement and *benefitted* the Objectors as members of the Class eligible to participate in that Settlement. There is no unfairness to the Class that results from that incentive and no basis to undo the Settlement.

**B. The Settlement Amount Is Sufficient to Cover Claims Against the Estate**

The Objectors next claim that the Settlement "provides inadequate relief" to the Class because the $35 million settlement amount is purportedly insufficient to cover claims against the Estate. Obj. at 1, 22-23. According to the Objectors, the U.S. Government "revealed" in 2025 that Epstein had "over 1,000" victims, and therefore a "Future Claims Fund" is necessary to set aside funds for additional claimants not previously identified. *Id.* at 23. But the Government has never "revealed" any evidence that the number of victims approached this number. The Objectors

are referring to an unsourced, page-and-a-half-long letter released by the Department of Justice ("DOJ") in July 2025 that summarily suggested that Epstein had "harmed over one thousand victims."[3] This letter contains no citations, identifies no documentary evidence or percipient witness as a source, names no author of its contents, provides no factual basis for its representations, and does not even explain what is meant by "harmed."

The law does not require—or permit—blind acceptance of such uncorroborated statements simply because they came from the Government. *See CITGO Petroleum Corp. v. Starstone Insurance SE*, 2023 WL 2525651, at *7-8 (S.D.N.Y. Mar. 15, 2023) (refusing to judicially notice "the truth of 'the predicate facts underlying [the] official positions'" of the President and Secretary of State absent "evidence definitively proving the indisputability of the given assertions"). That is particularly true in this context, given Judge Engelmayer's recent conclusion that DOJ's submissions to the Court relating to Epstein were not reliable and that its statements to the public were disingenuous. *See United States v. Maxwell*, 20-Cr.-330 (PAE), ECF No. 809 at 16, 20.

Moreover, the assertion that "Epstein harmed over one thousand victims" is inconsistent with both the history of Epstein-related settlements and the record before the Court. Extensive efforts have been undertaken over the last six years to identify every potential victim of Epstein's abuse. In 2020, Defendants established the Epstein Victims' Compensation Program ("EVCP"), which identified 136 women who received over $121 million in compensation and released their claims against Defendants. *See* ECF No. 181 at 3-4. An additional 58 individuals have resolved their claims directly with the Estate and released their claims. *Id.* at 4. Class Counsel has likewise engaged in substantial efforts to identify and notify all potential Epstein victims in connection with three separate class actions: *Jane Doe 1 v. Deutsche Bank Aktiengesellchaft, et al.*, 22-cv-10018-

---

[3] *See* DOJ, https://www.justice.gov/opa/media/1407001/dl (July 6, 2025).

JSR (S.D.N.Y. 2022); *Jane Doe 1, et al. v. JPMorgan Chase*, 22-cv-10019-JSR (S.D.N.Y. 2022); and *Jane Doe 1 v. Bank of America, N.A.,* Case No. 25-cv-8520-JSR (S.D.N.Y. 2025). The Objectors' insistence that hundreds of additional, heretofore unidentified Epstein victims have viable future claims is not credible.

In a similar vein, the Objectors complain that "the financial terms of the … settlement were determined well before" the DOJ's public release of the "Epstein Files" in 2025 and 2026. Obj. at 10. But Class Counsel did not need to wait for the release of these files to identify Epstein's potential victims: they already had ample opportunity to do so by reviewing the voluminous records produced *in this litigation*, most of which came from the Estate itself.[4] Class discovery in this case ran for months, and Class Counsel served sprawling requests for production designed precisely to identify all victims of Epstein's abuse. And unlike the Epstein Files, which were redacted to shield victims' names, discovery here was unredacted and intended to identify victims. The Objectors offer no explanation why the public release of the Epstein Files would have changed the settlement value assessed by Class Counsel, who had access to confidential discovery.[5]

Even if the Objectors had a plausible basis to suggest that a significant number of additional claimants could be identified (they do not), they overlook that the vast majority of any remaining claims against the Estate would be time-barred. The statute of limitations under the federal Trafficking Victims Protection Act is 10 years, meaning any claims that accrued before this date

[4] This case was consolidated for discovery purposes with Case No. 24-cv-02192-AS, which included claims against the Estate, and the productions in both cases were made in parallel.

[5] While Class Counsel will address separately the Objectors' claim that notice to Class Members was inadequate, Defendants note that these extensive procedures (*see* ECF No. 415 at 38-39) were more than adequate to notify potential claimants of the Settlement. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (notice is adequate so long as it is "reasonably calculated … to apprise interested parties of the pendency of the action"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *12 (S.D.N.Y. Dec. 18, 2019) ("'Notice need not be perfect' or received by every class member" so long as it reaches class members "who can be identified through reasonable effort") (citation omitted). Indeed, these procedures are nearly identical to those approved by Judge Rakoff in the class settlements resolved earlier.

in 2016 (like the Objectors' claims here)[6] are time-barred. 18 U.S.C. § 1595(c). The claim-revival periods for New York's Adult Survivors Act ("ASA") and Child Victims Act ("CVA") have also passed. *See* CPLR §§ 214-g, 214-j. And because claims arising from Epstein's abuse could not have accrued after his death in 2019, the relevant statutes of limitations for tort claims in other jurisdictions where Epstein resided have expired. *See Sam v. Sam*, 134 P.3d 761, 763 (N.M. 2006) (three-year statute of limitations for New Mexico tort actions); *Oliver v. Terminix Int'l Co.*, 73 V.I. 210, 215 (V.I. Super. Ct. 2020) (two-year statute of limitations for Virgin Islands torts).

Although the Objectors also reference the extension of the revival period under New York City's Gender Motivated Violence Protection Law ("GMVPL") (Obj. at 21), they ignore that the validity of that extension is in substantial doubt. Both the ASA and CVA provided that "*[n]otwithstanding any provision of law which imposes a period of limitation to the contrary*," eligible plaintiffs must assert claims arising from sexual offenses in New York "*not later than*" the end date of those statutes' now-expired revival periods. CPLR §§ 214-g, 214-j (emphases added). The City Council's attempt to enact a different lookback window through the GMVPL conflicts head-on with the ASA and CVA. *See Parker v. Alexander*, 779 F. Supp. 3d 361, 365 (S.D.N.Y. 2025). Thus, the Second Circuit certified the question of whether the ASA and CVA preempt the GMVPL's revival period to the New York Court of Appeals. *Parker v. Alexander*, 171 F.4th 146 (2d Cir. 2026). In the likely event that the Court of Appeals finds the GMVPL preempted, such claims will also be time-barred. *See id.* at 155 (Jacobs, J., concurring) (suggesting that GMVPL is preempted and emphasizing that "the question practically answers itself").

Regardless, the GMVPL extends only to individuals who allegedly suffered gender-motivated violence in New York City—not women who were abused in other jurisdictions or

---

[6] The declaration filed in support of the objections alleges that the Objectors' abuse occurred between approximately 1999 and 2013. *See* ECF No. 431 at 2-3.

women with only CSAM claims. Even if not preempted, the GMVPL alone would not begin to create the "the substantially larger number of" claims proposed by the Objectors. Obj. at 23.

### C. The Authorities Cited by the Objectors Are Irrelevant and Inapposite

The Objectors attempt to confuse the relevant issues by citing irrelevant cases that bear no resemblance to the facts at issue here. They cite *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), for the proposition that "[t]he U.S. Supreme Court has cautioned against granting a comprehensive release of all claims to an estate that contributes only a fraction of its assets to a class action settlement fund." Obj. at 23. That is a gross mischaracterization. *Ortiz* concerned "the conditions for certifying a *mandatory settlement class* on a *limited fund theory* under Federal Rule of Civil Procedure 23(b)(1)(B)." *Ortiz*, 527 U.S. at 821 (1999) (emphases added). The "limited fund theory" applies where the defendant lacks the funds needed to compensate all class members, so a "limited fund" is established to pay class members a "pro rata" share of what is available. *Id.* at 836. The Court in *Ortiz* merely held that, because inclusion in such a class is "mandatory," *i.e.*, no opt outs, it was "essential" for the defendant to prove through evidence that its available funds were insufficient to compensate all potential class members. *Id.* at 864. Here, the parties are not operating under a "limited funds theory" and do not seek a "mandatory settlement." The Settlement included an express opt-out period that allowed all potential claimants to opt out of the Class if they wished to do so. *See* ECF No. 416-1 ¶ 17. This authority is irrelevant.[7]

### D. Release of the Estate Is Essential to the Settlement

The Objectors' last claim that the Settlement's release provisions should not cover the Estate because "[t]his case was brought against Defendants in their individual capacities only."

[7] Similarly, the court in *In re Joint Eastern and Southern District Asbestos Litigation*, 14 F.3d 726 (2d Cir. 1993), held only that a company could not avoid bankruptcy court by seeking to pay its creditors through the "mandatory" settlement of a "limited funds" class action. *Id.* at 732.

Obj. at 26. But the claims against the Co-Executors are entirely derivative of the underlying claims against Epstein. Courts routinely permit class action settlements to release nonparties where the claims against a defendant arise from the same "core of facts" as released potential claims against a nonparty. *See, e.g.*, *Pantelyat v. Bank of Am.*, *N.A.*, 2019 WL 402854, at *5 (S.D.N.Y. Jan. 31, 2019) ("[T]here is nothing unusual about releasing a third party in a class action settlement when [the claims are] … based on the same factual predicate as the claims presently being settled.").

The Co-Executors deny that they had any knowledge of, or involvement in, Epstein's abuse, and neither has ever been accused of abusing any woman, being present when any abuse occurred, being told of Epstein's abuse, or being asked for assistance by any victim during Epstein's lifetime. Neither has been charged with any crime, and the Epstein Files reveal that the DOJ and FBI never considered them to be Epstein's co-conspirators. Because Defendants deny any involvement in Epstein's sex-trafficking venture, they would not have settled the claims against them absent an agreement to settle any remaining potential claims against the Estate stemming from Epstein's conduct. From the outset of their appointment as Co-Executors of the Estate, they have been determined to provide compensation to women injured by Epstein: indeed, the inclusion of the Estate in the Settlement will permit Class Members to recover from the Estate at a time their claims would otherwise face substantial—and likely insurmountable—hurdles. *See supra* at 7-8.

In short, the purpose of resolving any remaining claims against the Estate is what drove the Co-Executors' agreement to enter into the Settlement. Without finality for the Estate, Defendants would continue to defend the allegations made against them individually. The inclusion of the Estate is therefore essential for this Settlement to survive.

## CONCLUSION

Defendants respectfully request that the Court overrule the objections and approve the Settlement and Plan of Allocation.

Dated: September 9, 2026
New York, New York

*/s/ Daniel H. Weiner*

Daniel H. Weiner
Marc A. Weinstein
Fara Tabatabai
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
daniel.weiner@hugheshubbard.com
marc.weinstein@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Attorneys for Defendant Darren K. Indyke*

*/s/ Daniel S. Ruzumna*

Daniel S. Ruzumna
Amy N. Vegari
Tara J. Norris
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
druzumna@pbwt.com
avegari@pbwt.com
tnorris@pbwt.com

*Attorneys for Defendant Richard D. Kahn*